## Exhibit 1

## Bidding Procedures

# BIDDING PROCEDURES[3]

By motion (the "<u>Motion</u>"), dated March 29, 2021, Greensill Capital Inc., as debtor and debtor in possession ("<u>Greensill US</u>" or the "<u>Debtor</u>") in the chapter 11 case pending under case number 21-10561 (MEW) (the "<u>Chapter 11 Case</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") sought, among other things, approval of the process and procedures for the sale of 100% of the outstanding shares in Finacity Corporation, a Delaware corporation (the "<u>Finacity Equity</u>").

A stock purchase and settlement agreement (including all exhibits, schedules and ancillary agreements related thereto, the "<u>Stalking Horse Purchase Agreement</u>"), a copy of which is attached as Exhibit B to the Motion, has been entered into, subject to the Bidding Procedures described below (the "<u>Bidding Procedures</u>"), among the Debtor, Finacity Corporation, and Adrian Katz, Dana Katz, and the Katz Family Trust, as purchasers (collectively, the "<u>Stalking Horse Bidder</u>"), which Stalking Horse Purchase Agreement contemplates a transaction for the sale of the Finacity Equity to the Stalking Horse Bidder (the "<u>Sale Transaction</u>").  The Sale Transaction will be (a) subject to the auction and marketing process described in these Bidding Procedures and (b) approval of the Bankruptcy Court at the Sale Hearing (as defined below).

The Bankruptcy Court has entered an order approving these Bidding Procedures (the "<u>Bidding Procedures Order</u>").  Among other things, the Bidding Procedures Order authorized the Debtor to pursue the Sale Transaction through the Bidding Procedures and scheduled a hearing to consider approval of the Sale Transaction (the "<u>Sale Hearing</u>").  The Sale Hearing is currently scheduled for April 27, 2021 at 11:00 a.m. (ET).

1. **Important Dates and Contact Information**

   Following entry of the Bidding Procedures Order, the Debtor will:

   (a) solicit and assist Potential Bidders (as defined below) in conducting their respective due diligence and accept Qualified Bids (as defined below) until the deadline for receipt of Qualified Bids, which is 4:00 p.m. on April 21, 2021 (the "<u>Bid Deadline</u>").

   (b) negotiate with Qualified Bidders (as defined below) in preparation for an auction (the "<u>Auction</u>"), if necessary, to begin at 10:00 a.m. (ET) on April 23, 2021, to be held virtually pursuant to a Zoom link to be provided to Qualified Bidders in advance of the Auction; and

   (c) select the Successful Bidder (as defined below) at the conclusion of the Auction and seek authority to sell the Finacity Equity to such Successful Bidder at the Sale Hearing to be held by the Bankruptcy Court at 11:00 a.m. (ET) on April 27, 2021.

---

[3] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order or the Motion, as applicable.

Information that must be provided under these Bidding Procedures must be provided to the following parties (collectively, the "Notice Parties") (i) counsel to the Debtor, Togut, Segal & Segal LLP, Kyle J. Ortiz, Esq. (kortiz@teamtogut.com) and Bryan M. Kotliar, Esq. (bkotliar@teamtogut.com), (ii) investment banker for the Debtor, GLC Advisors & Co., LLC (adam.fiedor@glca.com) (the "Investment Banker"), and (iii) counsel for any statutory committee appointed in this Chapter 11 Case (each, a "Committee").

All dates and times set forth in these Bidding Procedures may be adjusted by the Debtor after consultation with counsel for any Committee.

2. **The Sale Hearing.**

At the Sale Hearing, the Debtor will seek the entry of an order in substantially the form of the order attached as **Exhibit C** to the Motion (the "Sale Order"), *inter alia*, authorizing and approving the Sale Transaction (a) if no other Qualified Bid with respect to the Finacity Equity is received by the Debtor, to the Stalking Horse Bidder pursuant to the terms and conditions set forth in the Stalking Horse Purchase Agreement or (b) if another Qualified Bid is received by the Debtor with respect to the Finacity Equity, to the Stalking Horse Bidder and/or such other Qualified Bidder(s) as the Debtor, in the exercise of its good faith business judgment determines to have made the highest or otherwise best offer to purchase the Finacity Equity, consistent with the Bidding Procedures. The Sale Hearing may be adjourned without further notice by announcement at the Sale Hearing or by the filing of a notice or agenda on the docket of the Chapter 11 Case.

3. **Determination by the Debtor**

The Bidding Procedures as described herein are calculated to obtain the highest or otherwise best offer for the Finacity Equity. The Debtor will (a) determine, with the assistance of the Investment Banker, whether any person or entity is a Qualified Bidder, (b) receive bids from Qualified Bidders, (c) negotiate any bids, and (d) conduct the Auction (clauses (a) through (d) and Section 1 above, collectively, the "Bidding Process"). Any person or entity who wishes to make a bid to purchase the Finacity Equity in the Bidding Process must be a Qualified Bidder. The Stalking Horse Bidder is a Qualified Bidder. Neither the Debtor nor any of its representatives will be obligated to furnish any information of any kind whatsoever relating to the Finacity Equity or Finacity to any person or entity who is not a Potential Bidder and who does not comply with the requirements set forth herein.

4. **Stalking Horse Provisions**

In the event the Debtor consummates a transaction for the sale of the Finacity Equity to any party other than the Stalking Horse Bidder (an "Alternative Transaction"), the Debtor shall pay the Stalking Horse Bidder an amount equal to $500,000 (the "Break-Up Fee") by wire transfer to an account designated by the Stalking Horse Bidder. The Debtor shall also pay the Stalking Horse Bidder by wire transfer to a designated account, reimbursement of all reasonable and documented attorneys' fees and other costs and expenses of the Stalking Horse Bidder actually incurred in

2

connection with Stalking Horse Bidder's efforts to negotiate and consummate the transactions contemplated by the Stalking Horse Purchase Agreement (including, without limitation, the fees and expenses of counsel), upon the earliest to occur of the following: (i) the termination of Stalking Horse Purchase Agreement based on the Debtor's breach thereof and (ii) the Debtor's consummation of an Alternative Transaction; provided, however, that such reimbursement shall be capped at $100,000 (the "Expense Reimbursement").  The Break-Up Fee and Expense Reimbursement (to the extent due and owing) shall constitute a first priority administrative expense of the Debtor's bankruptcy estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

5. **Due Diligence**

To participate in the Bidding Process, each interested party must deliver to the Notice Parties: (a) an executed confidentiality agreement in form and substance satisfactory to the Debtor; (b) a statement and other factual support demonstrating to the Debtor's satisfaction in the exercise of its reasonable business judgment that the interested party has a bona fide interest in purchasing the Finacity Equity; and (c) sufficient information, as determined by the Debtor, to allow the Debtor in the exercise of its reasonable business judgment to determine that the interested party has the financial wherewithal to complete the Sale Transaction.  If the Debtor determines that an interested party meets the foregoing requirements, (i) such interested party will be deemed a "Potential Bidder" and (ii) the Debtor will deliver to such Potential Bidder (a) an information package containing information and financial data with respect to the Finacity Equity and Finacity (the "Information Package"), (b) an electronic copy of the Stalking Horse Agreement, and (d) access to the confidential electronic data room concerning Finacity (the "Data Room").

Following the determination by the Debtor that any interested party is a Potential Bidder until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtor will provide (and facilitate the provision of from Finacity) such due diligence access or additional information to the Potential Bidder as may be reasonably requested by the Potential Bidder that the Debtor determine to be reasonable in the circumstances.  All additional due diligence requests must be directed to the Investment Banker at adam.fiedor@glca.com.  The Debtor, with the assistance of the Investment Banker, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtor will simultaneously provide such materials to all Potential Bidders by furnishing such information to the Data Room.

Unless otherwise determined by the Debtor, the availability of additional due diligence to a Potential Bidder will cease if: (a) the Potential Bidder does not become a Qualified Bidder during the period commencing on the Bid Deadline and concluding on the Auction Date or (b) the Bidding Process is terminated.

6. **Bid Deadline**

A Potential Bidder that desires to make a bid must deliver written copies of its bid by e-mail in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format to the Notice Parties so as to be received no later than the Bid Deadline of **4:00 p.m. (ET) on April 20, 2021**. The Bid Deadline may be adjourned by the Debtor at any time by notice to Potential Bidders sent via e-mail and/or by the filing of a notice on the docket of the Chapter 11 Case.

7. **Form and Content of a Qualified Bid**

A bid is a written proposal from a Potential Bidder that provides, at a minimum, that:

(a) the Potential Bidder offers to purchase the Finacity Equity at the purchase price and upon the terms and conditions set forth in a copy of the Stalking Horse Purchase Agreement enclosed therewith, marked to show any proposed amendments and modifications, or such other form of agreement customarily used in stock sale transactions (the "Proposed Purchase Agreement");

(b) states that all necessary filings under applicable regulatory, antitrust and other laws will be made (pursuant to the terms and conditions in the Proposed Purchase Agreement) and that payment of the fees associated with such filings will be made by the Potential Bidder;

(c) is formal, binding and unconditional (except for those conditions expressly set forth in the applicable Proposed Purchase Agreement) and is not subject to any due diligence or contingency and is irrevocable until the selection of the Successful Bid (as defined below);

(d) does not entitle a bidder (other than the Stalking Horse Bidder) to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code;

(e) is determined by the Debtor, after consultation with counsel to any Committee, to be higher or better than the terms of the Stalking Horse Purchase Agreement, taking into account the Break-Up Fee, Expense Reimbursement, and the Minimum Overbid (as defined below);

(f) includes cash consideration sufficient to pay the Break-Up Fee and the Expense Reimbursement;

(g) is accompanied by the Good Faith Deposit; and

(h) is received by the Bid Deadline.

4

The Debtor may waive the requirement for a Potential Bidder to provide the Good Faith Deposit.  The Stalking Horse Bidder shall not be required to make the Good Faith Deposit.

The Debtor will have the right to determine that a bid is not a Qualified Bid if the Debtor determines in good faith that the terms of the bid are substantially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement and are not offset by a material increase in purchase price or other terms, which determination may take into consideration:

(a) indemnification and other provisions;

(b) whether the bid provides sufficient cash consideration to pay transfer taxes or other cash costs of the transaction (including professionals' fees);

(c) whether the bid includes a non-cash instrument or similar consideration that is not freely marketable; and

(d) any other factors the Debtor may deem relevant.

A Potential Bidder must accompany its bid with:  (a) written evidence of available cash, a binding commitment for financing (not subject to any conditions other than those expressly set forth in the applicable Proposed Purchase Agreement) or such other evidence of ability to consummate the transaction contemplated by the applicable Proposed Purchase Agreement as the Debtor may reasonably request, (b) a written statement that the Potential Bidder has obtained all applicable internal approvals to make a binding and irrevocable bid on the terms proposed, (c) a covenant to cooperate with the Debtor to provide pertinent factual information regarding the Potential Bidder's business operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements, (d) if the purchase price includes non-cash consideration or fewer contingencies than are in the Stalking Horse Purchase Agreement, an analysis in reasonable detail of the value of the non-cash consideration and sufficient back-up documentation that demonstrates that the bid is a higher and better offer than the transaction contemplated by the Stalking Horse Purchase Agreement, and (e) if the Qualified Bid includes a Proposed Purchase Agreement that is not executed, a signed statement that such bid is irrevocable until the selection of the Successful Bid.

A Potential Bidder must deposit with an escrow agent selected by the Debtor (the "Escrow Agent") a deposit equal to 10% of the proposed purchase price (any such deposit, a "Good Faith Deposit").  The Good Faith Deposit must be made by wire transfer and will be held by the Escrow Agent in accordance with the terms of the escrow agreement.

If a bid is received and, in the Debtor's judgment, it is not clear whether the bid is a Qualified Bid, the Debtor may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.  For the avoidance of doubt, the Debtor may qualify such bids for which it is pending the receipt

5

of information pursuant to the foregoing sentence after the Bid Deadline but prior to the start of the Auction.

A bid received from a Potential Bidder that is determined by the Debtor to meet the above requirements will be considered a "Qualified Bid," and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Purchase Agreement executed by the Stalking Horse Bidder is a Qualified Bid. A Qualified Bid and bids at the Auction may be valued by the Debtor based upon factors as it determines in good faith to be relevant, including: (a) the purported amount of the Qualified Bid, including non-cash consideration if applicable, (b) the value to be provided to the Debtor under the Qualified Bid, (c) contingencies with respect to the Sale Transaction and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtor, and any incremental costs to the Debtor in closing delays, (d) the ability to obtain any and all necessary antitrust or other applicable regulatory approvals for the proposed transaction, and (e) any other factors the Debtor may deem relevant.

The Debtor reserves the right to impose additional terms and conditions with respect to Qualified Bidders. With respect to the Stalking Horse Bidder, the terms of the Stalking Horse Purchase Agreement (as may be consensually modified, including at the Auction) and not the terms of this paragraph will control in connection with the matters described in the immediately preceding sentence.

The Debtor shall make a determination regarding which bids qualify as Qualified Bids and as Baseline Bids (as defined below) and shall notify bidders whether they have been selected as Qualified Bidders by no later than 2:00 p.m. (ET) on April 22, 2021.

8.  **Baseline Bid**

Qualified Bidders that have submitted Qualified Bids are eligible to participate in the Auction. The Debtor will select what it determines to be the highest or best Qualified Bid (or collection of Qualified Bids) (the "Baseline Bid") to serve as the starting point at the Auction taking into account all relevant considerations, including payment of the Break-Up Fee and Expense Reimbursement, the financial condition of the applicable bidder and certainty of closing. As soon as reasonably practicable and not later than the start of the Auction, the Debtor will identify the Baseline Bid and provide to all Qualified Bidders and counsel for any Committee copies of all Qualified Bids (with such distribution permissible by electronic means, including posting to the Data Room). For the avoidance of doubt, any Baseline Bid must provide for at least $250,000 of incremental value to the Debtor after taking into account the payment of the Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser.

9.  **"As Is, Where Is"**

Any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtor, its agent or the Debtor's chapter 11 estate, except and solely to the extent expressly set forth in the final purchase

6

agreement approved by the Bankruptcy Court. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding Finacity that is the subject of the Auction prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid. Except as otherwise provided in the final purchase agreement approved by the Bankruptcy Court, all of the Debtor's right, title and interest in the Finacity Equity will be sold free and clear of liens, claims, interests and encumbrances as proposed in the Sale Order (collectively, "Liens"), with any Liens to attach to the proceeds of the Sale Transaction as provided in the Sale Order.

10.   **Auction**

If more than one Qualified Bid is received by the Bid Deadline, the Debtor will conduct the Auction. The Auction will take place at 10:00 a.m. (ET) on April 23, 2021 (such date, or such other date as the Debtor may notify Qualified Bidders who have submitted Qualified Bids and counsel for any Committee, the "Auction Date") and be held virtually pursuant to a Zoom link to be provided to Qualified Bidders prior to the start of the Auction. Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction, subject to such limitations as the Debtor may impose in good faith. A reasonable number of representatives of the professional advisors and members of any Committee will be permitted to attend and observe the Auction.

At the Auction, participants (including the Stalking Horse Bidder) will be permitted to increase their bids. Bidding on the Finacity Equity will start at the purchase price and terms proposed in the Baseline Bid and will proceed thereafter in increments of $250,000 million (the "Minimum Overbid").

The Debtor may adopt rules for the Auction at any time that the Debtor determines in any material respect to be appropriate to promote the goals of the Bidding Process and do not conflict with the Bidding Procedures Order or these Bidding Procedures; provided that any Auction rules adopted by the Debtor will not modify or conflict with the immediately prior paragraph or any of the terms of the Stalking Horse Purchase Agreement (as may be consensually modified at any Auction) without the consent of the Stalking Horse Bidder.

The Debtor reserves the right to and may, after consultation with counsel for any Committee, reject at any time before entry of the relevant Sale Order any bid (other than the Stalking Horse Purchase Agreement) that, in the Debtor's judgment, is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, these Bidding Procedures or the terms and conditions of the Sale Transaction, or (c) contrary to the best interests of the Debtor and its estates.

Prior to the conclusion of the Auction, the Debtor will: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction, (b) identify the highest or otherwise best offer or collection of offers (the "Successful Bid") for the Finacity Equity, (c) inform

and consult with the professional advisors to any Committee regarding the foregoing, and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder (the "Successful Bidder"), the amount and other material terms of the Successful Bid.  Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Bankruptcy Court, the Debtor will not consider bids made after the Auction has been closed.  In the event the Stalking Horse Bid is the only Qualified Bid received by the Debtor by the Bid Deadline, no Auction will be conducted, and Stalking Horse Bidder will be the Successful Bidder.  At the Sale Hearing, the Debtor will present the Successful Bid to the Bankruptcy Court for approval.  Following the entry of the Sale Order, the Debtor will proceed to close the Sale Transaction upon the satisfaction or waiver of all applicable conditions precedent to closing.

11. **Acceptance of Qualified Bids**

The Debtor presently intends to seek approval of, and thereafter consummate the Sale Transaction with the Successful Bidder, subject to the entry of the Sale Order.

If a failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtor may retain the Good Faith Deposit of such Successful Bidder and reserve the right to seek, in addition to the Good Faith Deposit, any and all available damages from such Successful Bidder.  With respect to the Stalking Horse Bidder and the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement (as may be consensually modified at any Auction with the consent of the Stalking Horse Bidder) and not the terms of this paragraph will control in connection with the matters described in this paragraph.

12. **Modification of Bidding Procedures**

The Debtor may amend these Bidding Procedures or the Bidding Process at any time and from time to time in any manner that they determine in good faith will best promote the goals of the Bidding Process, including extending or modifying any of the dates described herein;  provided that, with respect to the Stalking Horse Bidder and the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement (as may be consensually modified at any Auction) and not the terms of this paragraph shall control.

13. **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders (except the Stalking Horse Bidder) will be held in escrow by the Escrow Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Escrow Agent will retain the Good Faith Deposits of the Successful Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits (other than the Successful Bidder) of the other Qualified Bidders will be returned within two Business Days of the entry of the Sale Order.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith

8

Deposit. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that has accrued thereon.

14. **Consultation Matters**

If a Committee is appointed, in the event that any member of the Committee or an affiliate thereof submits a Qualified Bid, the Committee's professional advisor must exclude such member from any discussions or deliberations between the Committee's professional advisors and the Committee regarding the sale of the Sale Transaction and must not provide any information regarding the Sale Transaction to such member, and any obligation of the Debtor hereunder or otherwise to consult with the affected party will be without further action waived, discharged and released.