**<u>Exhibit C</u>**

**Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GREENSILL CAPITAL INC.,[1] | : | Case No. 21-10561 (MEW) |
| | : | |
| Debtor. | : | **Related Docket No. __** |
| | : | |

**ORDER (A) APPROVING THE SALE OF THE DEBTOR'S OWNERSHIP INTEREST IN FINACITY CORPORATION FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (B) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Greensill Capital Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), for entry of an order (this "Sale Order"):  (a) authorizing the sale (the "Sale") of the Debtor's 100% ownership interests in Finacity Corporation (the "Finacity Equity") free and clear of all liens, claims, interests, and encumbrances; and (b) granting related relief;  and upon the Declaration of Lee Jason Goldberg attached to the Motion as Exhibit D, the Stock Sale and Settlement Agreement (the "Stalking Horse Purchase Agreement")[2] attached to the Motion as Exhibit B, among the Debtor, as seller, and Finacity Corporation ("Finacity") and Adrian Katz, Dana Katz, and the Katz Family Trust, as purchasers (each, a "Katz Party," collectively, the "Katz Parties," and with the Debtor and Finacity, the "Parties"), and the statements of counsel and the evidence adduced with respect to the Motion at any hearing before the Court (the "Hearing"); and after due deliberation thereon; and good and sufficient cause appearing therefor:

---

[1]   The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's corporate headquarters is located at 2 Gansevoort Street, New York, New York 10014.

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Stalking Horse Purchase Agreement.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the Stalking Horse Purchase Agreement and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b).  Venue of the Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  **Statutory Predicates**.  The statutory predicates for the approval of the Stalking Horse Purchase Agreement and the transactions contemplated thereby are sections 105, 363 and 502 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 9014 and 9019.

C.  **Notices**.  Proper, timely, adequate and sufficient notice of the Motion and the Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004.  The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Hearing, the Stalking Horse Purchase Agreement and transactions contemplated thereby is required.  The disclosures made by the Debtor concerning the Stalking Horse Purchase Agreement and the transactions contemplated thereby and the Hearing were sufficient, complete and adequate.

D.  Actual written notice of the Motion, the Hearing, the Stalking Horse Purchase Agreement and the transactions contemplated thereby, and a fair and reasonable opportunity to object or otherwise be heard with respect thereto, has been afforded to all known interested individuals and entities, including the following parties:

   a) the Office of the United States Trustee for the Southern District of New York, Region 2 (the "U.S. Trustee"),

b) counsel to any statutory committee appointed in this Chapter 11 Case,

c) all of the Debtor's creditors, including the Debtor's top 20 unsecured creditors as of the Petition Date,

d) all entities reasonably known to have expressed an interest in the acquisition, directly or indirectly, of Finacity or the Finacity Equity,

e) the Internal Revenue Service, United States Securities and Exchange Commission, and any other governmental authorities that (i) as a result of the Sale, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Finacity Equity or may have a claim against the Debtor or other reasonably known interest in the relief requested by the Motion relating to the Sale,

f) counsel to the administrator for Greensill Capital (UK) Limited,

g) counsel to Greensill Capital Pty Limited,

h) each party to the Stalking Horse Purchase Agreement;

i) all persons and entities known by the Debtor to have asserted any lien, claim, interest or encumbrance in the Finacity Equity; and

j) all other parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof.

E. **<u>Court Approval Required</u>**.  Entry of an order approving and authorizing the Parties' entry into the Stalking Horse Purchase Agreement, and the Parties' performance of all the provisions thereof, is a necessary condition precedent to the Parties' obligations under the Stalking Horse Purchase Agreement with respect to Closing.

F.  **Business Judgment**.  The Debtor has demonstrated good, sufficient and sound business purposes and justifications for entry of this Order and the approval of the Stalking Horse Purchase Agreement and the transactions contemplated thereby.  The Stalking Horse Purchase Agreement and the transactions contemplated thereby, and the Parties' entry into and performance under the Stalking Horse Purchase Agreement: (i) constitute a sound and reasonable exercise of business judgment; (ii) provide fair value and are beneficial to the Debtor's estate, and are in the best interests of the Debtor and its estate, creditors and other parties in interest; and (iii) are fair, reasonable, equitable and otherwise appropriate under the circumstances.

G.  **Sale Free and Clear**:  Pursuant to the Stalking Horse Purchase Agreement, and all ancillary documents filed therewith or described therein, upon Closing, the sale of the Finacity Equity to the Katz Parties shall be free and clear of liens, claims, defenses and interests (collectively, "Encumbrances"), including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens (including mechanic's liens), encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, alter ego and other liabilities, causes of action, contract rights, to the fullest extent of the law, in each case, of any kind or nature (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or

unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable. But for the protections afforded to the Katz Parties under the Bankruptcy Code and this Order, the Katz Parties and Finacity would not have offered the consideration contemplated by the Stalking Horse Purchase Agreement. Except for the Debtor's debtor-in-possession financing (the "DIP Financing"), the Debtor is unaware of any asserted liens on or security interests in the Finacity Equity.

       H.      The Debtor's DIP Financing lender has consented to the sale. To the extent any other Encumbrance exists, each entity with an Encumbrance, (i) has consented to the sale of the Finacity Equity or is deemed to have consented to such sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Encumbrances, if any, attach to the proceeds of the sale, in the same order of priority and with the same validity, force and effect that such Encumbrances had before such transfer and assignment, subject to any rights, claims and defenses of the Debtor or its estate, as applicable, or as otherwise provided herein. Therefore, approval of the sale of the Finacity Equity free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtor's estate, its creditors and other parties in interest.

I.   The Katz Parties and Finacity would not have entered into the Stalking Horse Purchase Agreement, and would not consummate the transactions thereunder if such sale was not free and clear of all Encumbrances.  A transaction, other than one free and clear of all liens and Encumbrances, would yield substantially less value for the Debtor's estate, with less certainty than the transactions contemplated by the Stalking Horse Purchase Agreement.

J.   **Arm's Length Agreement**.  The consideration to be given by the Katz Parties and Finacity under the Stalking Horse Purchase Agreement, including the compromise of claims by the Katz Parties both against the Debtor, and against Finacity (a wholly-owned subsidiary of the Debtor), was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration.  The terms and conditions set forth in the Stalking Horse Purchase Agreement, and all ancillary documents filed therewith or described therein are fair and reasonable under these circumstances and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtor or its creditors.  None of the Parties is entering the Stalking Horse Purchase Agreement, and all ancillary documents filed therewith or described therein, or proposing to consummate the transactions contemplated thereby, fraudulently.

K.   **Good Faith**.  The Debtor, the Katz Parties, and Finacity, each of the parties to the Stalking Horse Purchase Agreement, acted in good faith in negotiating the Stalking Horse Purchase Agreement and related agreements.  The Katz Parties are good faith purchasers for value and, as such, are entitled to all of the protections afforded by 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Katz Parties and Finacity have at all times proceeded in good faith in all respects in connection with this Chapter 11 Case in that, among other things, all payments to be made by or to the Katz

Parties in connection with the Stalking Horse Purchase Agreement and the transactions contemplated thereby have been disclosed.  It has further been disclosed that (a) certain of the Katz Parties are insiders of the Debtor's direct and indirect subsidiaries, including as a director of a subsidiary and a relative of a director of a subsidiary, and (b) the Stalking Horse Purchase Agreement and the transactions contemplated thereby involve the compromise and settlement of various claims by and among the Katz Parties, the Debtor, the Debtor's indirect parent, and the Debtor's direct and indirect subsidiaries and, accordingly, the Stalking Horse Purchase Agreement and the transaction contemplated thereby will result in the settlement and compromise of certain intercompany claims as well as guarantee claims against insiders of the Debtor.  The Katz Parties will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in the closing of the transactions as contemplated by the Stalking Horse Purchase Agreement.

L. **Insider Status**.  Certain of the Katz Parties are insiders of a subsidiary or subsidiaries of the Debtor.  None of the Katz Parties are directors, officers, persons in control of the Debtor, partnerships in which the Debtor is the general partner, general partners of the Debtor, or relatives of the foregoing.  The Katz Parties do not exercise control over the Debtor, nor do they own, or have the power to vote, the equity interests of the Debtor.

M. **No Successor Liability**.  No sale, transfer or other disposition contemplated pursuant to the Stalking Horse Purchase Agreement, including the sale of the Finacity Equity, will subject the Katz Parties, any of their affiliates, members, officers, directors, shareholders or any of their respective successors and assigns to any liability for Encumbrances (including claims, obligations, and liens) asserted against the Debtor or the Debtor's interests in property by reason of such transfer under any laws, including any bulk-transfer laws or any theory of

successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories.  By virtue of the consummation of the transactions contemplated by the Stalking Horse Purchase Agreement, (i) the Katz Parties are not an alter ego or mere or substantial continuation of the Debtor and its estate, there is no continuity or continuity of enterprise between the Katz Parties and the Debtor and there is no common identity between the Debtor and the Katz Parties; (ii) the Katz Parties are not holding themselves out to the public as a continuation of the Debtor or its estate; and (iii) the transactions contemplated by the Stalking Horse Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Katz Parties and the Debtor and/or the Debtor's estate.  Accordingly, the Katz Parties are not and shall not be deemed a successor to the Debtor or its estate as a result of the consummation of the transactions contemplated by the Stalking Horse Purchase Agreement or otherwise.  The Katz Parties' purchase of the Finacity Equity is free and clear of any "successor liability" claims of any nature whatsoever.  The Katz Parties would not enter into the Stalking Horse Purchase Agreement or consummate the transactions contemplated thereby, but for the protections against any claims based upon "successor liability" theories.

    N.    **No Third Party Beneficiaries**.  Other than expressly set forth in the Stalking Horse Purchase Agreement, there are no third party beneficiary rights.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

    1.    The Motion is GRANTED as set forth herein.

    2.    **Notice**.  Notice of the Motion and the Hearing was fair and equitable under the circumstances and complied in all respects with sections 102(1), 105(a), 363 and 502 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 6004 and Local Rules 4001-1 and 6004-1.

3. **The Stalking Horse Purchase Agreement is Approved and Authorized**. The Stalking Horse Purchase Agreement, and all ancillary documents filed therewith or described therein are approved pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002, 3001(e), 4001, 6004 and 9019 of the Bankruptcy Rules. The Debtor and its non-debtor affiliates are hereby authorized and directed to perform their obligations under the Stalking Horse Purchase Agreement and all ancillary documents, including, without limitation, the sale of the Finacity Equity to the Katz Parties. The failure to include specifically any particular provision of the Stalking Horse Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent that the Stalking Horse Purchase Agreement and all of its provisions, releases, settlements, payments and transactions provided for therein shall be authorized and approved in their entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent. In the event there is a direct conflict between the terms of this Order and the terms of the Stalking Horse Purchase Agreement, the terms of this Order shall control.

4. **Sale and Transfer Free and Clear of Encumbrances**. Upon Closing, all of the Debtor's legal, equitable and beneficial right, title and interest in and to, and possession of the Finacity Equity shall be immediately vested in the Katz Parties pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code and applicable non-bankruptcy law free and clear of all Encumbrances (including liens).

5. The Debtor is authorized to use the proceeds of the Sale to repay the DIP Financing in accordance with the terms thereof.

6. **Order Binding**. This Order shall be binding in all respects upon all (i) entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages,

-9-

recorders of deeds, administrative agencies, governmental departments (including departments of foreign governments), secretaries of state, federal, foreign and local officials; and (ii) other persons who may be required by operation of law, the duties of their office or contract, to accept file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing is hereby directed to accept for filing any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreement.

7. This Order and the Stalking Horse Purchase Agreement shall be binding in all respects, and shall inure to the benefit of, the Debtor, its estate, and its creditors (whether known or unknown), Finacity, and the Katz Parties, including their respective affiliates, successors, and assigns, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law. The Katz Parties and Finacity shall have standing to enforce the terms of this Order. The provisions of this Order and the terms and provisions of the Stalking Horse Purchase Agreement shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtor or converting this Chapter 11 Case to a case under chapter 7, and the terms and provisions of the Stalking Horse Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Stalking Horse Purchase Agreement shall continue in these or any superseding or subsequent cases.

8. **Good Faith**. Neither the Debtor, Finacity, the Katz Parties nor any of their equity owners, officers, directors, employees, professionals or other agent have engaged in any action or inaction that would (a) cause the entry into the Stalking Horse Purchase Agreement, or

consummation of the transactions contemplated thereby, to be avoided or (b) result in costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Entry into the Stalking Horse Purchase Agreement is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Katz Parties shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to enter into the Stalking Horse Purchase Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions (including the sale of the Finacity Equity), unless such authorization is duly stayed pending such appeal. The transactions are not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy Code and the Katz Parties are entitled to all the protections and immunities thereunder.

9.  **No Successor or Transferee Liability**. The Katz Parties, Finacity and any of their respective affiliates, members, officers, directors, shareholders or any of their respective successors and assigns shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement, including the receipt of the Finacity Equity, to (a) be a legal successor, or otherwise be deemed a successor to the Debtor, (b) have, *de facto* or otherwise, merged with or into the Debtor or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation.

10. Neither Finacity nor the Katz Parties shall have any responsibility for (a) any liability or other obligation of, or claim against, the Debtor (or, in each case, any of its predecessors). All persons and entities are hereby forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Finacity or the Katz Parties, with respect to any (a) claim against the Debtor, or (b) successor or transferee liability, in each case, including, without limitation: (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; and (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof.

11. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan to be confirmed in this Chapter 11 Case or any order to be entered in this Chapter 11 Case (including any order entered after conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Stalking Horse Purchase Agreement or this Order. In the event there is a direct conflict between the terms of this Order and the terms of any subsequent chapter 11 plan or any order to be entered in this Chapter 11 Case (including any order entered after conversion of this Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code), the terms of this Order shall control.

12. **Further Assurances**. The Debtor is authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order. From time to time, as and

-12-

when requested, all parties to the Stalking Horse Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments, and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the transactions thereunder, including such actions as may be necessary to vest, perfect or confirm or record or otherwise in the Katz Parties their right, title and interest in and to the Finacity Equity.

13.     **Modifications**.  The Stalking Horse Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Parties thereto and in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor or its estate.

14.     **Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtor to the extent necessary, without further order of this Court, to allow the Parties to deliver any notice under or in connection with the Stalking Horse Purchase Agreement, and allow the Parties to take any and all actions permitted or required under the Stalking Horse Purchase Agreement in accordance with the terms and conditions thereof.  The Parties shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse Purchase Agreement.

15.     **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004(h) and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Any party objecting to this Order must exercise due diligence in filing an appeal and obtaining a stay prior to the sale of the Finacity Equity or risk its appeal being foreclosed as

moot.

16. **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order, the Stalking Horse Purchase Agreement and the transactions contemplated thereby and to hear any issues or disputes concerning this Order and the Stalking Horse Purchase Agreement or the rights and duties of the parties hereunder or thereunder.

New York, New York  
Dated: _____, 2021

                                        HONORABLE MICHAEL E. WILES  
                                      UNITED STATES BANKRUPTCY JUDGE