

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 21-10561-mew

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GREENSILL CAPITAL INC.,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY   10004

14

15                  March 26, 2021

16                  3:03 PM

17

18

19

20

21   B E F O R E :

22   HON MICHAEL WILES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   HEARING re First Day Motions

2

3   HEARING re Creditor Matrix Motion

4

5   HEARING re Wages and Benefits Motion

6

7   HEARING re Section 345 Motion

8

9   HEARING re DIP Motion

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    TOGUT, SEGAL & SEGAL LLP

4          Attorneys for Debtor

5          1 Penn Plaza

6          New York, NY 10119

7

8    BY:   KYLE ORTIZ (TELEPHONICALLY)

9          ALBERT TOGUT (TELEPHONICALLY)

10         BRYAN M. KOTLIAR (TELEPHONICALLY)

11         AMANDA GLAUBACH (TELEPHONICALLY)

12         EITAN BLANDER (TELEPHONICALLY)

13         BRIAN MOORE (TELEPHONICALLY)

14

15   UNITED STATES DEPARTMENT OF JUSTICE

16         Attorney for United States Trustee

17         201 Varick Street, Suite 1006

18         New York, NY 10014

19

20   BY:   GREG ZIPES (TELEPHONICALLY)

21

22

23

24

25

1   KLUK FARBER LAW

2        Attorneys for Peter Greensill Family Trust

3        166 Mercer Street

4        New York, NY 10012

5

6   BY:  EITAN HOENIG (TELEPHONICALLY)

7

8   ALLEN & OVERY LLP

9        Attorneys for Joint Administrators

10        1221 Avenue of the Americas

11        New York, NY 10020

12

13   BY:  DANIEL GUYDER (TELEPHONICALLY)

14

15   ALSO PRESENT TELEPHONICALLY:

16   MATTHEW TOCKS

17   JILL FRIZZLEY

18

19

20

21

22

23

24

25

Page 5

P R O C E E D I N G S

1

2          THE COURT:  Good afternoon, everybody.  Mr. Ortiz,

3   are you taking the lead here or are you, Mr. Togut?

4          MR. ORTIZ:  Good afternoon, Your Honor.  Go ahead,

5   Al.

6          MR. TOGUT:  Yeah, I just wanted to say hello, Your

7   Honor.  But this is Mr. Ortiz's baby not mine.

8          THE COURT:  Okay.

9          MR. ORTIZ:  Thank you, Al.  Good afternoon, Your

10  Honor.  Kyle Ortiz of Togut Segal & Segal for the debtor

11  Greensill Capital, Inc.  It's good to be in front of you

12  again, Your Honor.  First of all, we'd like to thank Your

13  Honor and Your Honor's chambers for allocating us time late

14  on a Friday afternoon.  We understand that you have been

15  tied in a trial essentially since we filed so we greatly

16  appreciate Your Honor making time for us.  We'll try to pay

17  that back by being efficient this afternoon.

18          We have worked through all of the first day

19  pleadings with Ms. Arbeit at the U.S. Trustee Office who

20  unfortunately had a conflict for this hearing but Mr. Zipes

21  is on the line and familiar with the pleadings.  We have

22  very much appreciated Ms. Arbeit's time, input, and

23  professionalism to help us get to a consensual first day

24  hearing today, working with us on open times late into the

25  night for the past week.

Page 6

1           Joining me in the virtual courtroom today are my

2    colleagues Bryan Kotliar, Amanda Glaubach, Eitan Blander,

3    Brian Moore, and, of course, Mr. Togut.  We also have

4    Matthew Tocks who is the company's head of restructuring and

5    is our first day declarant and on a listen-only, we have our

6    independent director Jill Frizzley.  We filed an agenda,

7    Your Honor, last night at docket number 9.  If it's alright

8    with Your Honor, I'll provide a quick overview of the

9    debtor, what led us here, what the next steps are today, and

10   in the next week, and what we ultimately plan to achieve and

11   what you'll see is an accelerated case timeline.

12           THE COURT:  All right.  I have read all the papers

13   so I've read the declaration and the description of the

14   background that (indiscernible) included in there.  But go

15   ahead and give your --

16           MR. ORTIZ:  Yeah, we'll try to make it quick.

17           So Your Honor, Greensill Capital, Inc., the

18   debtor, is just one piece of a much larger global story, but

19   as we'll explain, the larger story is really only relevant

20   for context of why we needed to file and ultimately is

21   somewhat peripheral to what we plan to accomplish in this

22   case which is essentially a sale of the debtor's primary

23   asset to maximize value for our creditors, which creditor

24   body consists almost entirely of our former employees.

25           To kind of explain where the debtor fits into the

Page 7

1    global enterprise, Your Honor, it might be helpful to turn

2    to the organization chart that was attached to the 1007

3    declaration filed at docket number 2, specifically, page --

4    pdf page 25 of that document, which I'm sure you've already

5    seen.  I would like to say look at the green box but they're

6    all green.  So with the debtor, which appears on the far

7    left in the third level down on that organization chart, is

8    a wholly owned subsidiary of Greensill Capital Management UK

9    which I'm going to refer to as GCMC, and that entity second

10   from the left in a dark, dark green on the second level down

11   on that same organizational chart.  And GCMC is a direct

12   wholly owned subsidiary of the Australian parent company

13   Greensill Capital Limited which I'll refer to as Greensill

14   Parents.

15           Another key piece of the puzzle is the entity that

16   is just slightly off the very center of the page to the

17   right, Greensill Capital UK Limited which we refer as GCUK.

18   And as I refer to the kind of entire enterprise, I'll call

19   that the Company, and historically, the Company arranged

20   factoring and reverse factoring programs for clients around

21   the globe.  Reverse factoring is interesting stuff, Your

22   Honor, but it's not strictly relevant to what we need to

23   accomplish here so I'll spare everyone on a Friday afternoon

24   and just note that in 2019, the global company provided 143

25   billion of financing to roughly 10 million customers.

Page 8

1          So zooming in now on the debtor here in the U.S.,

2     the debtor's role in this massive multibillion dollar global

3     operation was important but relatively small.  The debtor

4     acted essentially as an employment vehicle for the Company's

5     sales force in the United States and the Americas employing

6     over 70 people, primarily out of their New York office,

7     selling the Company's products and services to clients and

8     investors in the Americas with all of that revenue from the

9     sales going to GCUK.  Although I understand the debtor did

10    earn some origination fees in connection with these

11    transactions, the debtor had relatively limited revenue in

12    the grand scheme of the enterprise and is historically

13    funded payroll, rent, and other expenses through funds

14    received from GCUK, pursuant to an intercompany services

15    agreement.

16          So moving on, Your Honor, to how we got here

17    requires kind of zooming back out for a moment to the global

18    operations of the larger Company.  Earlier this year, Your

19    Honor, the Company began to experience severe cascading

20    financial distress as a consequence of a whole host of

21    factors, including most critically the expiration of a key

22    insurance policy for GCUK, the results of which was the loss

23    of insurance coverage from the Company's newly originated

24    assets.  This led to the withdrawal of financial support

25    from certain key creditors and pressure to reduce exposure

Page 9

1    to certain large customers.

2            These cascading pressures ultimately led to the

3    halt of GCUK's operations and on a March 8th, 2021, the

4    English High Court appointed administrators from Grant

5    Thornton UK to administer the estates of both GCUK and the

6    debtor's direct parent which is GCMC.  And subsequently, the

7    directors of the ultimate parent in Australia put that

8    entity into administration as well.  Prior to the

9    administration proceedings and even a little after their

10   commencement, there was hope that parts of the company could

11   be saved through a kind of global sales process.  The

12   company undertook efforts to potentially sell the company's

13   business and certain of its assets, including the U.S.

14   debtor's subsidiary non-debtor (indiscernible), which we'll

15   discuss a bit more shortly, and received a nonbinding

16   proposal from certain funds managed by Apollo and entered

17   into an exclusivity agreement with these Apollo investors.

18   Unfortunately, Your Honor, that exclusivity expired on March

19   15th, 2021, without an agreement being reached.

20            So, Your Honor, zooming back in on the U.S. entity

21   and how these global events impacted it, with exclusivity

22   having expired and the hopes of a sale transaction

23   essentially dashed, the debtor found itself with its one

24   source of funding, GCUK, in administration and no continuing

25   need for the majority of its employees or services.  Thus,

Page 10

1    on March 17th, the debtors terminated substantial all off

2    their employees other than 14 employees necessary to

3    administer and assist with the Chapter 11 case, including

4    pursuit of a sale of the debtor's primary assets, again, the

5    equity (indiscernible) and to assist the administrators in

6    the process of maximizing recoveries for creditors with

7    respect to transactions with counterparties in the Americas

8    for the benefit of the larger company.

9          With part of the remaining employees 0:10:24

10   duties relating the administrators in the UK, the debtor and

11   GCUK were able to enter into a services agreement on March

12   25th whereby GCUK has actually agreed to pay amounts to the

13   debtor necessary to meet the go-forward employment

14   obligations of these remaining employees while they remain

15   employed including wages and benefits which we'll provide

16   greater detail on in connection on with the wage's motion a

17   little later in the agenda.

18          So that brings us, Your Honor, to next steps and

19   what we are hoping to accomplish in the near and long-term.

20   Although the debtor is not able to currently generate

21   revenue with the global business having halted, it does

22   still have a significant asset in the form of its wholly

23   owned non-debtor subsidiary in Finacity -- rhymes with

24   tenacity -- which the debtor acquired in June of 2019.

25   Finacity is the -- is in the business of structuring asset-

Page 11

1    backed working capital, funding solutions, and they do this

2    across the globe and service agent on upstanding

3    transactions of borrowers and obligors in more than 175

4    countries.

5            Although some of their services that they provide

6    do overlap with what the larger Company did, Finacity truly

7    operates as a separate business from the debtor and the

8    global Greensill company.  The debtor does believe that

9    Finacity is a strong company with a unique business and has

10   real value that can be monetized for the benefit of the

11   debtor's creditors.  This Chapter 11 process is designed to

12   aid in that goal but we are starting from a challenging

13   position, Your Honor.  Specifically, Your Honor, when the

14   music stops, so to speak, with the administrators being

15   appointed and the exclusivity for a potential sale expiring,

16   the debtor was left with just a few hundred thousand dollars

17   in liquidity, no ability to generate additional revenue,

18   large amounts coming due, and little means to realize on the

19   Finacity asset.

20           Faced with this dire situation, the debtor got to

21   work and in the roughly one week since the music stopped

22   moment, the debtor has worked to engage restructuring

23   professionals, secured a commitment for debtor in possession

24   financing from the Peter Greensill family trust of $2

25   million to fund certain first day costs and the sale

                                                                Page 12

1    process,  and we are in the process of negotiating a

2    stalking-horse bid with parties connected to Adrian Katz who

3    is the CEO of Finacity which we expect to be filing bid

4    procedure papers for by Monday with the Katz parties serving

5    as a stalking-horse bid.

6            Last Sunday, the debtor hired Jill Frizzley, an

7    experienced bankruptcy petitioner that practiced at Sherman

8    Sterling and Weil Gotshal and has served on the board of

9    over 20 distressed companies.  Just yesterday, Your Honor,

10   the debtor hired GLC Advisors as their investment banker.

11   And GLC has hit the ground running.  They are already

12   plugged in with Finacity and are at full sprint to get

13   together a competitive and robust marketing process pursuant

14   to the bidding (indiscernible) papers that, again, we plan

15   to file by Monday and we will seek to get approved quickly.

16           In the meantime, the debtors and their

17   professionals will aggressively market the asset and

18   hopefully hold a robust and competitive auction to maximize

19   value for the benefit of creditors and other parties and

20   interest.  And I'd note, Your Honor, that in the less than

21   24 hours since the filing was made public, we've already

22   begun to receive some unsolicited inbound request to get

23   under NDA so we are optimistic about this process.

24           So, Your Honor, that brings me to next steps in

25   the next week and some of the things we'd like to come back

Page 13

1    to on shortly, but I'm only going to preview it because the

2    outcome of some of today's motions may dictate your view on

3    things, but we'd like to at least preview it so you can kind

4    of have that in the context of some today's relief.

5           So, again, we do really appreciate Your Honor's

6    willingness to hear us today so quickly after the filing.

7    But we will be seeking to get in front of you again pretty

8    quickly on two items.  One is we filed last night our

9    omnibus contract rejection motion and that included the

10   rejection of our New York lease which we are currently paid

11   up on until April 1st so we would like that rejection

12   approved ahead of the 1st.  I pause for Your Honor to note

13   that the debtors were current on all obligations to

14   creditors up until the music stopped moment earlier this

15   month.  The other key piece we have which I've mentioned a

16   few times now is we will be filing bidding procedures and

17   we'd like to have those procedures approved quickly so that

18   we can run a swift process but still provide plenty of

19   notice with regard to an auction and eventual sale hearing.

20          So those are the near-term big events that we'll

21   come back at the end of the hearing and seek a date for,

22   Your Honor.  But longer term, we expect to conduct the sale

23   and quickly thereafter file a plan that distributes the

24   proceeds to creditors and if (indiscernible) successful, to

25   equity.  Our general unsecured claims pool, putting aside

Page 14

1    intercompany claims both up to the UK and down at Finacity,

2    is roughly 7.5 million made up almost entirely of employee

3    claims, the afore mentioned landlord who isn't technically a

4    creditor yet but will be post-rejection, and then a tiny

5    smattering of small rejection damage claims.

6            So I'll pause here, Your Honor, to see if you have

7    any questions before turning over things to my colleagues

8    who will address the pleadings and then I'll come back at

9    the end for some potential hearing dates next week on the

10   lease and bidding procedures items.

11           THE COURT:  I do have some questions.  The

12   bankruptcy petition says that the estimated liabilities are

13   between 50 and $100 million but the 20 largest creditor list

14   only listed relatively small obligations to former employees

15   so what makes up the other 50 to $100 million?

16           MR. ORTIZ:  Right.  So there are -- there is a

17   large intercompany note with GCUK that we're still looking

18   at and may ultimately dispute parts of it.  Maybe we won't.

19   We're still kind of looking at that but that's a note that

20   sits there.  It appears if -- as if it was largely to kind

21   of fund payroll and other things but that's contingent.  So

22   that wasn't in the top 20 list because it's intercompany and

23   then there's also potentially claims for -- in connection

24   with the 2019 sale of Finacity for certain earn-out and

25   other claims that may be there.  So that's where you kind of

1    get a larger universe, and that's why I said earlier, you

2    know, if you take out intercompany, we're looking at a

3    universe that seems to be in the neighborhood of 7.5 but it

4    -- you know, some of that intercompany is going to be

5    potentially addressed in connection with some of the sale

6    transactions.  So we didn't list intercompany.  We just

7    listed non-intercompany on the petition, but those are the

8    other claims that kind of make up a larger number that we

9    ultimately will have to address, Your Honor.

10          THE COURT:  And the earn-out claims.  Explain

11   those to me what they are and what they're potential size.

12          MR. ORTIZ:  So the earn-out -- in connection with

13   the sale in 2019, part of the consideration was an earn-out

14   for certain of the parties which includes Adrian Katz who I

15   mentioned earlier as a potential stalking-horse bid.  I

16   believe he asserts that they're -- if they hit the targets

17   that they have hit in the past, that those will be in the

18   neighborhood of $21 million.  In the bid that's still being

19   put together -- and I don't want to get too ahead of

20   ourselves because we're still negotiating the stalking-horse

21   bid -- but it is contemplated that those will be waived and

22   then, you know, there's the value that would come from them

23   being waived of roughly 21 million.  But those are things

24   that we're still trying to kind of work out in the sales

25   transaction so, you know, anything beyond that is kind of

Page 16

1    getting a little bit ahead of where we are.  But that's how

2    they would -- you know, in a universe where none of this was

3    happening and you're just saying, here's a claim, at least

4    the Katz parties assert that those are roughly 21 million as

5    long as they were to actually hit the earning targets for

6    the next couple years.

7                  THE COURT:  And who was given notice of today's

8    applications?  Was the landlord?  Were the parties to this

9    earn-out transaction?  I see the joint administrator so I

10   can understand that the GCUK people at least know about

11   this.

12                 MR. ORTIZ:  Yes.  Notice was given to all of the

13   employees.  Notice was given to the landlord.  Notice was

14   given to some of the other smaller counterparties that

15   relate to the lease such as Verizon, Xerox, Pitney Bowes

16   type -- kind of creditors -- the administrator, the Katz

17   parties, Finacity.  Notice was given to all of those

18   parties.

19                 THE COURT:  And the process that preceding the

20   point where Apollo was given exclusivity rights, what was

21   the sale process that proceeded that for the Finacity

22   company in particular?

23                 MR. ORTIZ:  Proceeded in connection with the

24   larger Apollo transaction from earlier this month?

25                 THE COURT:  Right.

Page 17

1              MR. ORTIZ:  In connection with Finacity, that was

2       just a -- one component of a larger transaction that we're a

3       little bit less familiar with because it involved kind of

4       the big global enterprise in the UK and Australia and

5       elsewhere but we understand -- and I haven't -- we haven't

6       actually been able to diligence to the point where we've

7       seen the specific proposal on -- that Apollo had just

8       Tenacity other than, you know, we understand that Finacity

9       was part  of that package and something that they were

10      interested but of course it all ultimately fell apart.

11              THE COURT:  Has there been any separate marketing

12      of Finacity as -- on a standalone basis?

13              MR. ORTIZ:  There -- other than there was Apollo

14      and then in the last kind of weeks since that didn't occur -

15      - I guess it was a little bit more than a week -- Mr.

16      Greensill and others have reached out to a few parties but

17      they focused on Mr. Katz and had a fairly limited amount of

18      time because we're coming up on payroll.  WE were coming up

19      on a -- on the lease and needed to get the Company in and

20      start a process and actually get some financing so there

21      hasn't been a broad marketing to date.  And, you know -- but

22      like I said, we have our banker in place now.  We've started

23      to get some inbounds, and we're planning to very

24      aggressively market in the next -- in the 30 or so days and

25      hope to have a very successful, robust, and competitive

Page 18

1    process that maximizes value for our creditors and parties

2    and interest.

3           THE COURT:  All right.  We'll come back to this in

4    more detail, but on the proposed DIP budget, I see the

5    largest expense item is called exit employee expenses of

6    $1.545 million.  Is that offer to terminated employees?

7           MR. ORTIZ:  That's correct.  If I said something

8    wrong, I'm sure Mr. Kotliar will correct me.  But we're --

9    you know, we'll get into the details on how those interact

10   with the budget and the particular items in more detail in

11   the wagers order, but that's my understanding.

12          THE COURT:  As to professional expenses, have

13   retainers been paid?

14          MR. ORTIZ:  Retainers have been paid for the Togut

15   firm.  The investment banker was hired post-filing so a

16   retainer has not been paid.  And you'll -- so the only

17   retainer is to -- the Togut firm had a retainer.

18          THE COURT:  And what's the amount of that

19   retainer?

20          MR. ORTIZ:  $200,000, Your Honor.

21          THE COURT:  Okay.  And the retained employees,

22   were any advances paid to them or anything paid to them in

23   anticipation of the filing?

24          MR. ORTIZ:  No.  They are waiting for approval of

25   the wages order before they're going to be paid anything.

Page 19

1   But there are no advances made, no expenses paid, and they

2   were -- no one has been paid yet for the March time worked

3   and that includes both remaining and terminated.

4          THE COURT:  And just so I understand what GCUK has

5   agreed to pay or not pay, anything that I approve for

6   payment to the retained employees, is that all to be

7   reimbursed by GCUK?

8          MR. ORTIZ:  Everything from March 17th on.  So for

9   the portion that is March 17th and before -- before there

10  was the kind of termination event of a number of other

11  employees, that's still being covered by the estate.  But

12  from March 17th forward, yes, all wages and benefits are to

13  be covered by GCUK under the services agreement entered into

14  yesterday.

15         THE COURT:  How much are you seeking today -- the

16  authority to pay to retained employees that would not be

17  reimbursed by GCUK?

18         MR. ORTIZ:  To retained employees?

19         THE COURT:  Yes.

20         MR. ORTIZ:  All right.  So that just be the period

21  from March 1st to March 1st to March 17th.  I'm actually

22  going to have to hand that over to Mr. Kotliar who has that

23  number at his fingertips because he's going to be doing the

24  wages motion.

25         MR. KOTLIAR:  Good afternoon, Your Honor.  Bryan

                                                            Page 20

1    Kotliar of Togut Segal & Segal on behalf of the debtor.  I

2    just want to make sure that I understand Your Honor's

3    question correctly.  I think you may be asking for the one

4    number that we haven't crunched, but this would be March 1st

5    through March 17th for all employees not being reimbursed by

6    GCUK?  So this would be the cost of the estate through the

7    17th for the remaining employees?

8            THE COURT:  I'm trying to distinguish -- I

9    understand you're trying to pay some terminated employees.

10   I'm trying to set aside those for a minute and talk only

11   about the continuing employees.  I think you've called them

12   the retained employees, and I'm -- just want to understand

13   what are you seeking approval for today to actually pay to

14   those people that would not be reimbursed by GCUK?

15           MR. KOTLIAR:  It would be, Your Honor, the first

16   17 days of the month because GCUK is only picking up the

17   second half.  That number for the full month for those

18   remaining employees -- so March 1st through March 31st -- is

19   $330,000.  That number comes down a little bit because about

20   (indiscernible) people -- we'll check the numbers -- are

21   subject to the priority cap and so we're not seeking to pay

22   any amounts to any employees in excess of the cap on a first

23   day basis.  But it's about $330,000 for the whole month and

24   a little less half of that for the first 17 days -- a little

25   less than (indiscernible).

Page 21

1            THE COURT:  Okay.  So essentially what you're

2    seeking is about $165,000 or less as payments by the estate

3    here that would not be paid by GCUK as to the retained

4    employees?

5            MR. KOTLIAR:  Correct, Your Honor.

6            THE COURT:  and then the terminated employees

7    would be the 1,545,000?

8            MR. KOTLIAR:  The $1,545,000 includes the

9    remaining employees as well so the terminated employees

10   (indiscernible) cost is -- it's about 1.1 million.

11           THE COURT:  Okay.  All right.  I think those --

12   that answers my background questions.  Why don't you proceed

13   to your individual applications?

14           MR. ORTIZ:  Thank you, Your Honor.  Kyle Ortiz of

15   Togut Segal & Segal again.  One quick thing to note.  We're

16   in a virtual courtroom so the little sticky notes come

17   through as emails.  Our general counsel reminds me that we

18   also pay a $30,000 retainer to Mayer Brown who is assisting

19   with some aspects of the sale, including tax aspects.  So

20   there's additional retainer that was paid to Mayer Brown

21   that I had forgotten about.

22           Your Honor, before handing over the podium to Mr.

23   Blander who will handle the creditor matrix motion that is

24   the first item on the calendar, I note that all of our first

25   day pleadings are supported by the declaration of Matthew

Page 22

1    Tocks, head of restructuring Americas for the debtor.  Mr.

2    Tocks is on the line and if called upon to testimony, would

3    attest to the truth and accuracy of his declaration.  So at

4    this time I respectfully request entry of the first day

5    declaration with regard to the motions we will be

6    considering today into evidence in support of the motions

7    for consideration.

8           THE COURT:  All right.  Are there any objections

9    to the admission of that declaration into evidence?  I hear

10   no objection.

11          MAN 1:  No, Your Honor.

12          THE COURT:  Is there anyone on the phone who

13   wishes to cross-examine the witness as to any of the

14   statements made in the declaration?  I hear no such request.

15   Okay.  The declaration is admitted.

16          (Declaration of Matthew Tocks Admitted Into

17   Evidence)

18          MR. ORTIZ:  Thank you, Your Honor.  With that, I

19   will hand it off to Mr. Blander to handle the creditor

20   matrix motion which is the procedural matter on the agenda.

21   Thank you.

22          MR. BLANDER:  Good morning, Your Honor.  Eitan

23   Blander, Togut Segal & Segal for the debtor.  Before the

24   Court is the debtor's application for entry of an order,

25   one, waiving certain creditor list filing requirements, and

Page 23

1    two, authorizing the debtor to establish notice procedures

2    for the commencement of this case, including approval of the

3    form of notice of commencement.  The motion is filed at

4    docket entry number 3 and affidavit of service is at docket

5    number 11.

6            First, the debtor seeks the waiver of certain

7    creditor matrix filing requirements pursuant to local

8    bankruptcy rule 1007.  If the debtor does not retain a

9    claims and noticing agent, it is required to upload a

10   creditor matrix in a particular format to the CNECF creditor

11   database.  In preparation for the filing, the debtor

12   prepares a list of creditors and parties of interest in

13   electronic form based on the names and addresses as

14   maintained in their books and records or were otherwise

15   ascertainable prior to the petition date.  This format may

16   not comply with all the list filing requirements of Rule

17   1007 as well as the local rule, however, the debtor has

18   provided the clerk of court an electronic version of the

19   creditor list.

20           Based on these circumstances, reformatting the

21   creditor list to comply with the matrix requirements may be

22   unduly burdensome.  Accordingly, the debtor requests that

23   the Court waive the statutory requirements and deem the

24   creditor list adequately provided.  That is the first

25   element of the relief.

1          The second is that the debtor seeks approval of

2     the proposed procedures for the notice of commencement of

3     this case.  (indiscernible) Rule 2002(a) provides that the

4     notice of a Section 341 meeting be provided by mail on 21

5     days' notice.  The debtor proposes mailing the notice of

6     commencement substantial in the form attached to the order

7     of Exhibit 1 to all creditors.  The debtor submits that this

8     notice procedure is appropriate to provide adequate notice

9     of the commencement of this case.

10          If Your Honor has no questions or no further

11     questions, we would ask that you please enter the proposed

12     order attached to the motion at Exhibit A.

13          THE COURT:  I think there's a notice of the 341

14     meeting that's been posted on the docket so you certainly

15     could add that to your form.

16          MR. KOTLIAR:  Yes.

17          THE COURT:  Are you contemplating hiring a notice

18     agent or not?

19          MR. KOTLIAR:  I would have to defer to Mr. Ortiz

20     on that.

21          MR. ORTIZ:  Your Honor -- good afternoon again,

22     Your Honor.  Kyle Ortiz for the debtor.  We are not.  We

23     only have 100 creditors -- actually less than 100 -- so it's

24     not required.  We do have an arrangement and you will see

25     that in our retention application when it's filed which is

Page 25

1   really because with COVID and being a relatively small firm,

2   we're not in the office.  We don't have the ability to send

3   people to the office to stuff envelopes.  So we've hired as

4   Togut Segal, Stretto to just simply stuff envelopes for us

5   and send the mailing and then we will have that be a pass-

6   through expense in our retention application.  But we do not

7   have a 156 application for a noticing -- for a claims agent

8   because the amount of creditors in this case.

9            THE COURT:  Okay.

10           MR. ORTIZ:  And of course, we're also very

11  mindful, as you've seen the budget, of cost.

12           THE COURT:  Right.  Have you given the proposed --

13  I don't know if there's going to be a circumstance where our

14  clerk's office is going to be required as a result to send

15  notices -- but have you given your proposed information to

16  the clerk's office and confirmed that it's satisfactory to

17  them?

18           MR. ORTIZ:  Yes, we've been communicating with the

19  clerk's office.  We've provided our list.  And we are still

20  going to be doing the servicing --

21           THE COURT:  Okay.

22           MR. ORTIZ:  -- through Stretto.

23           THE COURT:  I have no problem with any of this

24  unless and until I hear from (indiscernible) clerk's office

25  that it's not (indiscernible) them in which case it will

1    have to be changed, but otherwise, it's fine with me.

2              MR. ORTIZ:  Thank you, Your Honor.

3              MR. TOGUT:  Your Honor, it's Al Togut.  Prior to

4    the filing, I spoke to Vito Genovese.  He understands the

5    arrangement on serving creditors and he's fine with it.

6              THE COURT:  All right.  That's fine and the form

7    of notice was fine, too.

8              MR. BLANDER:  Thank you, Your Honor.

9              I will also be taking the next motion which is the

10   Section 354 motion.  Good morning again, Your Honor.  Eitan

11   Blander, Togut Segal & Segal for the debtor.  Before the

12   Court is the debtor's motion for interim relief in the form

13   of an order extending time for the debtor to comply with

14   Section 345(b) of the bankruptcy code or seek waiver thereof

15   and for related relief.  The motion is filed at docket entry

16   number 4.  An affidavit of service is likewise at docket

17   entry number 11.

18              As the Court is aware, Section 345(b) requires

19   that the debtor maintain its deposits at a institution that

20   is either insured by the U.S. government or, alternatively,

21   is secured by the undertaking of an adequate corporate

22   surety.  The U.S. Trustee has devised a list of authorized

23   depositories which satisfy these tests.  The debtor

24   currently maintains a deposit bank account at the Canadian

25   Imperial Bank of Commerce or CIBC.  CIBC is not designated

1    as an authorized depository by the U.S. Trustee's office.

2    The debtor is in the process of opening a new deposit

3    account with an authorized depository in accordance with the

4    U.S. Trustee's guidelines.  However, this process has not

5    been completed as of the petition date.  As a result, the

6    debtor seeks an extension of 45 days to comply with 345(b)

7    or to seek waiver thereof.

8            Although CIBC is not authorized by the U.S.

9    Trustee's office, it is a highly rated and federally charted

10   bank subject to the supervision of regulators.  The debtor

11   therefore asserts that cause exists to extend the time to

12   comply with Section 345(b).

13           As requested in the motion, the debtor seeks

14   additional related relief in the form of a waiver of the

15   U.S. Trustee's requirements to, among other things, order

16   new business forms and checks referencing the debtor as

17   debtor in possession.  In the event that the debtor

18   generates new business forms, they will of course refer to

19   the debtor as debtor in possession and to the extent

20   possible the debtor will include this designation on any

21   electronically created forms.

22           In light of the above, the debtor submits that the

23   relief requested is warranted.  And if Your Honor has no

24   questions, we'd ask that you please enter the proposed order

25   attached to motion as Exhibit 1, the interim order.

1              THE COURT:  Are there any parties --

2              MR. ZIPES:  Your Honor.

3              THE COURT:  Yes.  Who was speaking?

4              MR. ZIPES:  I'm sorry, Your Honor.  Greg Zipes

5      with the U.S. Trustee's office, and I didn't mean to

6      interrupt the Court.

7              THE COURT:  All right.  Go ahead.

8              MR. ZIPES:  Your Honor, my office has reviewed

9      this motion as well as the motion on for today.  As to this

10     motion, we obviously take an interest in bank and -- whether

11     authorized or not -- as authorized depositories in the

12     Southern District of New York.  And we do understand that

13     the debtor is moving from the current bank to an authorized

14     bank and that will take a little bit of time.  We're okay

15     with the order as proposed.

16             THE COURT:  Okay.  Is there anybody who objects

17     the relief that's been requested in this motion?  Okay.  I

18     hear no objections.  It's fine with me.  I have one change

19     to the proposed order that I make in all of these

20     situations.  There's a paragraph that deals with the bank's

21     ability to pay checks that were issued or to honor checks

22     that were issued pre-bankruptcy and it says that they have

23     no liability if they follow the debtor's instructions which

24     I don't have a problem with, but it lists a couple different

25     things.

1          At (ii), it says that in addition to having no

2     liability for following the debtor's instructions, they have

3     no liability if they make payment in the good faith belief

4     that it was okay.  I never approve that language.  So please

5     take it out.

6          MR. BLANDER:  Understood.  Thank you, Your Honor,

7     and good afternoon, Your Honor, correcting my prior

8     statements.  I pass the podium to Mr. Kotliar.

9          THE COURT:  Okay.

10         MR. KOTLIAR:  Good afternoon, Your Honor.  Again,

11    Bryan Kotliar of Togut Segal & Segal for the debtor.

12         The next item on the agenda is the debtor's motion

13    to pay certain pre-petition wages, benefits, and related

14    obligations and to continue paying wages, benefits, and

15    related obligations in the ordinary course of business

16    pursuant to the debtor's existing compensation and benefits

17    programs where such program may be amended in the ordinary

18    course.  The motion was filed at docket number 6 and a

19    proposed form of interim order is attached as Exhibit A.

20    The motion was served last night by email where available,

21    which includes all of the employees as of the last 30 days

22    and today by mail.

23         Historically, prior to the petition date, the

24    debtor employed approximately 75 people across 14 states,

25    the vast majority of which were in the New York office.  As

1    Mr. Ortiz described, on March 17th, the debtor terminated

2    substantially all employees other than certain corporate and

3    sealed employees to administer to Chapter 11 case, pursue

4    the Finacity sale process, wind up this debtor's estate, and

5    assist the administrators for the UK entities with the

6    process of collecting and liquidating assets in the United

7    States.

8              THE COURT:  Why --

9              MR. KOTLIAR:  Under a --

10             THE COURT:  Why is the payment of monies to

11   terminated employees necessary to avoid an irreparable harm

12   to these estates today?

13             MR. KOTLIAR:  Yes, Your Honor.  In this -- in the

14   facts of this case where you have a eventual liquidation of

15   this company which is very likely the most possible outcome

16   here and you have a large scale termination of the work

17   forced prior to the petition date, for this company which

18   was essentially the employment vehicle of the business up

19   until that business ceased operating a few weeks ago, it's

20   important for employee morale, particularly the remaining

21   employees who become that much more essential from and after

22   the termination -- for terminated employees to receive the

23   wages that they're entitled to receive for the time that

24   they actually worked while in the employment of the debtor.

25             In addition, the failure of pay wages worked to

1   employees for time that they actually worked can result in

2   third party and related party liability as well as

3   additional taxes and fines in their applicable non-

4   bankruptcy law.  So in addition to the -- kind of the

5   nonmonetary issues related to employee morale and keeping

6   what's left of the business going through the closing of the

7   liquidation process, there is also potential fines and

8   penalties on their non-bankruptcy law.

9           THE COURT:  And let's focus specifically on the

10  remaining -- or excuse me -- the terminated employees.

11  What's the emergency that calls for paying today as opposed

12  to considering that issue on the date of a final hearing?

13          MR. KOTLIAR:  Your Honor, these employees have

14  worked this time in March and employees rely on their

15  paychecks to pay living expenses.  They rely on it to pay

16  for the cost of living and so we are just asking for it on

17  an interim basis.

18          THE COURT:  I understand the employees would like

19  to be paid but every creditor would like to be paid.  Every

20  creditor relies on payments to some extent in their personal

21  lives or in their businesses but the issue under the rules

22  is for me to authorize payment of a pre-petition obligation

23  -- it's supposed to necessary to avoid immediate and

24  irreparable harm to the estate.  And I'm having trouble

25  understanding what that is as to the terminated employees.

Page 32

1            Let me be direct.  I'm having -- the problem is,

2    it seems to me that what you want to pay to the terminated

3    employees is the entire reason why you would need an interim

4    DIP that looks extremely expensive and that imposes at the

5    cost of a lot of penalties and extremely short sale schedule

6    so why -- what's the immediate and irreparable harm that

7    requires us to do all that today?

8            MR. TOGUT:  Your Honor, can you hang on a minute?

9    We'd like to speak to Mr. Kotliar.  Can you hang on a

10   minute?

11           THE COURT:  That's fine or one of you -- you know,

12   one of you can answer, too.  That's fine.

13           MR. TOGUT:  Kyle, why don't you go ahead.

14           MR. ORTIZ:  Sure.  Happy to.  Again, for the

15   record, Your Honor, Kyle Ortiz of Togut Segal & Segal.

16           Look, Your Honor, we understand what you're

17   saying.  We think that, you know, it will impact the morale

18   of the remaining employees but we hear what you're saying

19   and ultimately, the important thing is to have a good

20   process and hopefully lead to a sale that accomplishes

21   recoveries for everyone.  So, you know, this is something

22   that, you know -- we're not tone deaf.  We've been in front

23   of you before and I think we can probably hold off on until

24   a final hearing.

25           THE COURT:  Well, let me ask you.  What do the

Page 33

1    other parties on the phone -- what is their position?  Do

2    they oppose this?  Do they think it should wait for a final

3    hearing?  Are they in favor of it?  Anybody wish to speak?

4           MR. ZIPES:  Your Honor, it's Greg Zipes with the

5    U.S. Trustee's office.  My office did review this motion

6    with the debtor and we did understand the debtor's strong

7    position relating to the terminated employees.  We did ask

8    the debtor to try to justify this with as much evidence as

9    possible today.  It is an unusual request at the interim

10   stage.  So, Your Honor, we are soliciting for a creditors

11   committee and we would hope to have a creditors committee in

12   place by the time of the final hearing.

13          THE COURT:  Okay.  Anybody on the phone?  The

14   administrators?  The landlord?  Anybody else who's got a

15   financial stake in this who wants to be heard?  I don't know

16   if that means they don't have lifelines or that they don't

17   want to be heard, but I'm not hearing anybody volunteer.

18   Anybody support the relief and want to speak in favor of it

19   and thinks that it should be done today?  I'm not hearing

20   anything from anybody.  Okay.

21          MR. KOTLIAR:  Okay.  Your Honor, Bryan Kotliar

22   again of the debtor.  We can revise the proposed form order

23   that we submit to Your Honor's chambers following the

24   hearing.

25          I would like to just finish the presentation with

Page 34

1   respect to the remaining obligations that we're seeking to

2   pay under the motion pursuant to the interim order.  It's

3   the usual suite of compensation and benefits programs.

4   There's really nothing out of the ordinary.  It's wages,

5   obligations, withholdings, diminus processing costs for

6   third parties, COBRA continuation coverage for medical

7   benefits particularly for the terminated employees, workers'

8   compensation programs, and other benefit program like and

9   SSA and 401K.  The interim order does not authorize payment

10  of any pre-petition wages in excess of priority cap as I

11  mentioned which amounts we reserve the right to seek on a

12  final basis.

13        Unless Your Honor has any further questions, I

14  respectfully ask that Your Honor approve the motion by

15  answering the (indiscernible) order as -- in the form of

16  which we will revise following this hearing.

17        THE COURT:  Are the COBRA expenses reimbursed by

18  GCUK?

19        MR. KOTLIAR:  The go-forward COBRA costs are not

20  and that's why there's $150,000 line items in the budgets --

21  in the budget in two places which is basically assuming that

22  100 percent of the workforce elects COBRA continuation

23  coverage and that cost pursuant to the -- it's a change in

24  the law and it's -- under the federal stimulus package

25  requires the company to pay 100 percent of that cost.  So

Page 35

1    those two numbers show the budget assuming that all

2    employees elect for the two periods.

3              THE COURT:  You also reference severance payments

4    and 401K payments.  What are you seeking, if anything, that

5    I approve today?

6              MR. KOTLIAR:  Your Honor, today we are not seeking

7    approval to pay any severance amounts which we will -- which

8    the debtor reserves the right to come back and seek your

9    approval either on a final order or more likely later under

10   a Chapter 11 plan.

11             On the 401K plan, the debtor does not contribute

12   or match to the 401K.  It's simply the processing of amounts

13   due to the employee that gets passed along to a third-party

14   administrator that runs the 401K plan.  We're just seeking

15   authority to continue with that process to the extent that

16   there were any amounts withheld by the debtor under the last

17   payroll run, get pushed along to the third party under the

18   401K plan.

19             THE COURT:  All right.  I don't think I have any

20   problem with that.  Before I make any ruling about the

21   terminated employees, I want to hear about the DIP because

22   to me it's a question of how onerous is the DIP and is there

23   -- is the need for it being dictated (indiscernible)

24   payments to terminated employees and if so, why are we doing

25   that on an interim basis.  They're kind of tied together for

Page 36

1    me.

2              MR. KOTLIAR:  Yes, Your Honor.  The next item on

3    the agenda is the debtor's motion for entry and final orders

4    authorizing the debtor to obtain post-petition secured

5    financing, modifying the automatic stay, scheduling a final

6    hearing, and granting related relief.  The motion was filed

7    at docket number 7 was served by email on March 25th where

8    available and by mail on March 26th.  A proposed form of

9    order approving the motion on an interim basis is attached

10   to the motion as Exhibit A.

11             I'm happy to report that working late last might

12   with the U.S. Trustee, we were able to resolve all issues

13   consensually and we appreciate the U.S. Trustee's assistance

14   and cooperation in that regard.

15             Your Honor, the debtor seeks authorization to

16   borrow up to $2 million pursuant to the DIP credit

17   agreement, a copy of which is attached as Exhibit 1 to the

18   proposed interim order.  Of this amount, $1.5 million would

19   be available on an interim basis and the remaining $500,000

20   following entry of the final order.  The proposed financing

21   is secured by usual and customary first-priority means on

22   the debtor's unencumbered assets which here is primarily the

23   100 percent equity interest that it owns in non-debtor

24   Finacity Corporation as usual and customary junior priority

25   liens on the debtor's encumbered assets.

Page 37

1           There are no priming liens.  There are liens on

2     avoidance actions or the proceeds of avoidance actions.

3     There are no operating covenants other than one change that

4     we will report on the form of the order.  And there's no

5     milestones other than in connection with obtaining the

6     approval of the sale because that's the one aspect of the

7     debtor's asset class that would be available satisfy and

8     repay the DIP.

9           As Mr. Ortiz mentioned, the debtor intends to use

10    this Chapter 11 case to pursue a value maximizing

11    transaction for the sale of the Finacity equity pursuant to

12    an auction overseen by this Court.  The proposed DIP

13    financing furthers that objective by allowing the debtor to

14    meet ordinary course expenses and fund the cost of this

15    Chapter 11 case for the period of approximately 6 weeks

16    through the anticipated closing of the sale.

17          The debtor discussed financing with the

18    administrators (indiscernible) direct parent company and

19    affiliate which declined to provide.  Although I would note

20    that the administrators have agreed to pay for the remaining

21    employees under the terms of a pre-petition services

22    agreement.  The debtor also discussed financing with a

23    potential bidder for the Finacity equity who also declined.

24    Given that the debtor has no revenue and little substantial

25    assets and given the circumstances of the filing, the debtor

Page 38

1    did not believe there would be much interest from third-

2    party sources to fund this case as quickly as we needed it

3    to file.

4            So if you can't find financing outside on a

5    relatively short notice, you have to look inside.  Following

6    these discussions, the debtor sought financing from an

7    affiliate of Alexander Greensill the company's ultimate

8    shareholder which is the proposed DIP lender here, the Peter

9    Greensill family trust.  AS a related party the ultimate

10   shareholder, the DIP lender has a substantial interest in

11   the success of this Chapter 11 case and the sale process.

12   And because of this interest, the DIP contains mostly

13   beneficial provisions such as noncash pay interest payable

14   in kind, a low exit fee if repaid or refinanced within the

15   first 30 days or so which steps up as the process goes out a

16   little longer rising from the sale of the Finacity equity,

17   and no liens on avoidance actions.  The DIP lender was

18   represented by separated counsel and Mr. Greensill recused

19   himself from the debtor's decision to approve this DIP

20   financing.

21           Given the debtor's financial condition, its lack

22   of revenue, and lack of substantial assets, the debtor does

23   not believe that it would be able to obtain financing on an

24   unsecured basis or an unsecured super priority basis.

25   Nevertheless, the debtor is open for bids, as Mr. Ortiz

Page 39

1    mentioned, on the Finacity sale as well as for alternative

2    DIP financing and we welcome any offers in that regard.

3         So with that, I'm happy to answer any questions

4    Your Honor may have and I will note before Your Honor enters

5    the proposed order that we have a couple of changes that

6    were discussed with the DIP lender that are mostly non-

7    substantive and conforming that we'd just like to note for

8    the record.

9         THE COURT:  All right.  Let me ask a few questions

10   first.  So the interest rate under the proposed loan would

11   be 5 percent for the first 60 days but then 20 percent

12   thereafter.  Is that correct?

13        MR. KOTLIAR:  Correct, Your Honor.

14        THE COURT:  So if the case can't be wrapped up

15   within 60 days and the DIP loan repaid in that period of

16   time, we'll by paying an extremely high rate of interest.

17        MR. KOTLIAR:  Twenty -- Your Honor, 20 percent is

18   a high number.  It has a great degree of sticker shock.  I

19   would note that in some DIPs that we've seen, particularly

20   in the last 12 to 18 months and this DIP is almost -- it's

21   almost unsecured because the debtors only have one real

22   asset to repay the DIP financing.  We think it's an

23   appropriate and a market rate even at the high end.  On a

24   blended basis, it's not nearly as high as 20 percent, and I

25   think it's consistent with our intentions to move quickly

1    through the sale process, and if that becomes apparently not

2    the case, it's relatively easy to refinance the DIP because

3    at that point, the only fees that accrue would be a $50,000

4    exit fee if repaid before 30 days along with 5 percent PIK

5    interest or $100,000 exit fees if paid within 45 days at

6    along with 5 percent PIK interest.

7            THE COURT:  Well, if we go 35 days and pay

8    $100,000, right, that's the equivalent of an extremely high

9    annual rate of interest on a $2 million loan.  If we go more

10   than 60 days and pay an exit event fee of $200,000, that's

11   10 percent of the entire loan or if it's outstanding for 60

12   days, it's the equivalent of 60 percent interest on an

13   annualized basis.  That's awfully expensive, isn't it?  Have

14   you seen exit fees of this size for a loan of this size?

15           MR. KOTLIAR:  Your Honor, we can discuss with the

16   DIP lender.  If they're willing to come down on the interest

17   rates, that would certainly be beneficial to the debtor.

18           THE COURT:  It also cause for fee reimbursements

19   to the DIP lender and its counsel.  How much is that?

20           MR. KOTLIAR:  I understand there the DIP lender's

21   counsel which is local counsel here in New York which is a

22   smaller boutique and local counsel in Australia that the

23   amount of the expense reimbursement should be about $10,000

24   per month.

25           THE COURT:  10,000 per month, did you say?

Page 41

1              MR. KOTLIAR:  Yes, Your Honor.

2              THE COURT:  I'm sure why it's per month.  Isn't it

3      the expenses in putting the DIP together?

4              MR. KOTLIAR:  It would be -- Your Honor, it would

5      be the expenses in assembling the DIP and then the cost of

6      monitoring the case and -- you know, at the exit time.

7              THE COURT:  There's the 10,000 of the monitoring

8      cost -- what about the cost of putting the DIP together?

9              MR. KOTLIAR:  Your Honor, that's the number that I

10     understand from DIP lender counsel.  I believe that they

11     should be on the line and they'd be able to provide a better

12     estimate of what the fees and expenses would be for the

13     total case including the negotiation and assembly of the DIP

14     through case monitoring to repayment.

15             THE COURT:  Is the DIP lender's counsel on the

16     phone?  Who is the DIP lender's counsel?

17             MR. KOTLIAR:  It is a law firm known as Kluk

18     Farber Law.

19             THE COURT:  Are they on the phone or not?

20             MR. HOENIG:  Your Honor, this is Eitan Hoenig

21     counsel to the DIP lender from Kluk Farber Law.  So, Your

22     Honor, our estimate is that total fees will be about $30,000

23     and that includes for our effort putting the DIP together as

24     well as local counsel in Australia to assist the lender

25     who's based in Australia navigate its corporate formalities.

Page 42

1              THE COURT:  I see that interest can be -- if we go

2     over 60 days, for example, the borrower has the obligation

3     to pay interest in kind, to just add it to principle.  I

4     take it if that happens that, in effect, the interest gets

5     compounded.  Is that right?

6              MR. HOENIG:  Yes, Your Honor.

7              THE COURT:  And I'm sure I understand paragraph

8     4.04 of the proposed credit agreement.  It seems to say that

9     the borrower will pay certain taxes if they are levied --

10    and maybe I didn't read this carefully enough or was just

11    too tired when I read it -- but it seemed to include income

12    taxes.  What's that all about?

13             MR. HOENIG:  So, Your Honor, this is saying taxes

14    that would be imposed -- that should be taxes the buyer that

15    are somehow imposed in the lender.  If you paid --

16    (indiscernible) be paid by the borrower so, Your Honor, if

17    it's helpful, we're happy to clarify that.

18             THE COURT:  Okay.  All right.  I just didn't -- it

19    just seemed a little odd the way (indiscernible) worded.

20    And then could you explain paragraph 12.15?  It says

21    something to the effect of, the loan isn't discharged unless

22    the lender can convert it to currency at a rate that it

23    wants.  This is a U.S. dollar denominated loan so what is

24    this provision there for?

25             MR. HOENIG:  Your Honor, this is sort of just been

1    boiler plate from the transaction documents.  We wouldn't

2    expect to have (indiscernible) to be converted.

3                THE COURT:  Okay.  So it's just a mistake?  It

4    doesn't need to be in here?  Is that it?

5                MR. HOENIG:  Correct, Your Honor.  That's why it's

6    framed as an if.

7                THE COURT:  All right.  Let me ask counsel to the

8    debtor, this loan structure really would impose pretty

9    significant costs if the sale process lasts more than 60

10   days.  So how can I be sure today that we aren't going to

11   need more than 60 days to get this done?

12               MR. KOTLIAR:  Your Honor, Bryan Kotliar for the

13   debtor for the record.  I think that's part of the debtor's

14   business judgment in obtaining the only source of financing

15   that it could under the circumstances to pursue an outcome

16   where creditors could receive more.  And this DIP financing

17   is part and parcel of that bidding process.  It's going to

18   allow us to hopefully sign up a stalking-horse in the near

19   term and then we're off to the races.  And our expectations

20   are -- the debtor's expectations are that this time frame is

21   consistent with their goal of maximizing value as quickly as

22   possible with the assistance the its advisers.

23               THE COURT:  All right.  You know, the first day is

24   sort of -- I don't know who came up with it -- but it's sort

25   of the emergency room stage in the bankruptcy process.

Page 44

1    Things that are done later can obviously done after

2    everybody -- be done after everybody has taken a breath and

3    gotten used to where things are and can assess what makes

4    sense.  My basic question for everybody is that we seem to

5    be asking for a potentially restrictive and very expensive

6    DIP today, mainly so that we can pay terminated employees

7    today rather than waiting until the date of a final hearing

8    to do that.  I'm not sure if we need a DIP if we don't pay

9    those people today.  At least, correct me if that's wrong.

10   So tell me why that makes sense and anybody who's got a

11   financial stake in this case, please tell me whether you

12   think it makes sense and whether we should do it or not.

13            MR. KOTLIAR:  Your Honor, Bryan Kotliar for the

14   debtor.  I would just like to note that subject to Your

15   Honor's rulings on the ability to pay the pre-petition

16   claims of the terminated employees, a DIP financing -- and

17   we can revise the form of budget that was submitted -- the

18   DIP financing would still be necessary to get through the

19   first few weeks of a sales process.  So we would just

20   reserve the right to revise the financing to the extent --

21   to satisfy the legal standards consistent with Your Honor's

22   ruling.

23            THE COURT:  Why would it be necessary?  I didn't

24   see anything on the budget that would have required that.

25            MR. KOTLIAR:  Because -- it's a question of

1    timing, Your Honor.  The services agreement with the GCUK

2    entity for the first payroll cycle, because it's

3    contemplated to be paid by the debtor and that's how the

4    agreement was negotiated which is in large part consistent

5    with how a reimbursement process worked historically between

6    the two companies, these $300,000 for the go-forward

7    employee costs as well as potentially payments for COBRA

8    continuation coverage to the terminated employees -- the go-

9    forward employees costs would be half reimbursed for the

10   period of March 17th through the 31st.  That wouldn't be

11   prefunded or paid up front.  The debtor would have to be

12   out-of-pocket for that cost and then be -- and then wait on

13   the GCUK entity for reimbursement.  And that could cause

14   some friction in the first weeks, particularly as it relates

15   to the funding of the escrow for professional expenses and

16   paying other costs of the Chapter 11 case.  I think that --

17   based on the number of -- based on the cash on hand figure

18   as of today which is right around approximately $400,000, in

19   order to fund the next few weeks of the case with that

20   reimbursement overlay, the debtor would still require

21   funding today to avoid immediate and irreparable harm.

22          THE COURT:  All right.  Who wants to be heard of

23   this?

24          MR. ZIPES:  Your Honor, it's Greg Zipes with the

25   U.S. Trustee's office.  I know you wanted to hear from the

1   financial parties and I'm willing to wait.

2           THE COURT:  Well, none of them seem to want to

3   volunteer an opinion on this so go ahead, Mr. Zipes.

4           MR. ZIPES:  Okay.  Your Honor, Greg Zipes with the

5   U.S. Trustee's office.  My office did review this motion

6   with the debtor and I think some of the assumption here was

7   that the terminated employees would be getting money,

8   possibly in the first couple weeks of this case.

9           Your Honor, we -- this interim order -- that's our

10  understanding subject to review at the final hearing and

11  there are terms in there that are tight, specifically with

12  respect to the sale process.  We would assume, and the

13  debtors can correct if we're wrong, that if a committee is

14  appointed and the committee has an issue with the terms that

15  they can be revisited at the time of the final hearing.

16          THE COURT:  Well, any terms that I approve as to

17  the interim financing, everybody's going to be stuck with.

18  Mr. Kotliar, how much interim financing would you need if

19  you weren't paying the terminated employees right out of the

20  box?

21          MR. KOTLIAR:  Your Honor, I would ask for a

22  moment's indulgence because as a lawyer, this kind of

23  complicated financial number crunching -- I know it looks

24  very simple of the page but I would have to speak to someone

25  at the company just to confirm the budget and make sure that

Page 47

1    we have the correct numbers for funding purposes.

2              THE COURT:  Okay.

3              MR. ORTIZ:  Your Honor, while Mr. Kotliar's doing

4    that -- this is Kyle Ortiz for the debtors again.  A couple

5    of things to quickly note.  One, you know, we will be back

6    for a filing hearing before any of the rates kind of pop.  I

7    also want to point that one of the reasons we're not hearing

8    a lot from financial parties is this isn't, you know, kind

9    of the typical case where you have a bunch of noteholders

10   and other things.  The financial parties and creditor body

11   is largely the employees who actually would benefit from the

12   structure as it is so they're not currently speaking up and

13   I don't think there's too many on the line because I imagine

14   individual employees, you know, didn't have the wherewithal

15   the necessarily get a attorney by today.

16             But one of the things I think is kind is important

17   to note is, the whole 60-day thing -- this is -- a lot of

18   this is driving towards a quick process and we have people

19   in place.  We have an independent director in place.  We

20   have bankers in place where we're going to pretty quickly

21   know within the next couple weeks if there's significant

22   interest in this asset or if really the only party that's

23   going to be interested is the party we already have and

24   would be closing with them quickly.  The kind of only

25   universe where we see where we're going to -- stretching out

Page 48

1    is where we actually have significant interest and we have a

2    robust process.  And I would -- you know, we're banking a

3    little bit on the attack that if you have this robust

4    process, there's going to be an ability to refinance long

5    before that comes along or you're getting sale proceeds that

6    kind of make it worthwhile to say, let's stretch it out a

7    little bit more because we want to create additional

8    competitive tension.

9            But we have a great group of bankers and we expect

10   to really know in a pretty quick time frame is -- you know,

11   where this asset's going to sell at.  Is it going to cover

12   this DIP or we going to from something much beyond the

13   stalking-horse that we have?  So, you know, that's one the

14   reasons the debtor -- in addition to the fact that, you

15   know, when you're -- you know, beggars can't quite be

16   choosers in a situation that we were in -- but that the

17   debtors look at that path and see 5 percent which is

18   actually way below market for the duration we think this is

19   going to be place.  And it pops but only in an instance

20   where you have a competitive process and there's a lot going

21   on.  Otherwise, we're going to find out we don't have

22   anybody and we're going to trying to make a sale, you know,

23   in the next 30 days that kind of fits within the time frame

24   that exists and the way this DIP is structured.

25            And finally, you know, when you don't really have

Page 49

1   an asset other than this equity and you have a lender who's

2   kind of nervous about a not super -- you know, this isn't an

3   airplane.  This isn't a tractor.  It's a equity interest in

4   a company.  They have an idea of where the stalking-horse is

5   going to be and they kind of size their DIP based on that,

6   and it's either going to sell quickly or it's -- you're

7   going to get a much more competitive process.

8            So that's kind of where the timing comes in.  And

9   then again, we'd kind of mention again the point that the

10  financial parties who are actually impacted by this are

11  actually the employees themselves.

12           THE COURT:  All right.  I've stated my questions.

13  Is there any creditor or party and interest on the line who

14  has a problem with the DIP or who objects to the DIP?

15           MR. GUYDER:  Your Honor, this is Dan Guyder from

16  Allen & Overy from Allen & Overy for the joint

17  administrators for GCUK.

18           We understand obviously the debtors need some

19  funding to get through the next couple of weeks and we

20  certainly don't opposed the efforts to do that.  We were not

21  heavily involved in the negotiation with the commercial term

22  on the DIP.  You know, we obviously looking at this somewhat

23  in real time in the way that the Togut firm has described.

24  You know, we appreciate the effort here to give them the

25  interim relief that they're looking.

1           We don't oppose, you know, kicking some of these

2     issues to a further date when they can be considered, you

3     know, with more time and considerations.  But other than

4     that, Your Honor, we obviously don't want to foreclose the

5     debtor's effort here to get the interim relief they need to

6     keep this process moving forward.

7           THE COURT:  All right.  Anybody else?

8           MR. TOCKS:  Your Honor, this Matthew Tocks with

9     Greensill Capital.  I just wanted to emphasize with respect

10    to the current and past employees the point that counsel had

11    made previously which is the importance of paying for

12    especially the work done to date for both of those groups of

13    employees.  I think that that's going to be very important,

14    not just for the needs of those individuals and their

15    families for the terminated group, but for the go-forward

16    group and the work that they're doing for the business.

17    There's obviously of lot of uncertainty surrounding this

18    particular situation and I think that giving them comfort

19    that the remaining employees will continue to get paid for

20    work done under a variety of circumstances will be important

21    to the effort that they're going to need to undertake for

22    both working together with Greensill Capital UK and

23    especially for, you know, the most effective liquidation of

24    the Finacity asset.

25           THE COURT:  Anybody else?

1          MR. ZIPES:  Your Honor, this is Greg Zipes with

2     the U.S. Trustee's office.  I -- my office does not have an

3     objection necessarily to the DIP financing in some form

4     without the benchmark for the sale.  We just note the

5     unusual posture of this case.  We have employees as the main

6     creditors here and it's not clear that there would be a need

7     for any plan or anything if -- it's not clear what the

8     bankruptcy purpose is here if the creditors are being

9     proposed to pay off today.  I understand that they won't be,

10    but I guess there is a basic question about whether this DIP

11    financing is necessary at all.

12          But, Your Honor, we do understand the debtors have

13    asked for it and they think it's a requirement to get

14    through the first couple weeks at least.

15          MR. ORTIZ:  Your Honor, this Kyle Ortiz from

16    Togut.  I'll just briefly respond to that.  I would note the

17    costs for the employee claims are many million over the

18    entire -- you know, we said it's near 7 million of what all

19    of their full package of claims they would be owed is.  This

20    debtor has less than $400,000 in the bank account so those

21    claims and anywhere near their full claims aren't getting

22    paid without a sales process and a realization on the asset

23    that we have.  There's a -- to the extent that there's a

24    question -- it's kind of, is there a purpose for this case -

25    - I think that's very clearly, yes, you need to have the

Page 52

1    room to get financing in a universe where somebody's willing

2    to give finance and with the protections they get from a

3    bankruptcy court and run a competitive sales process that

4    people are going to be -- you know, again, reminding that

5    this is part of a -- kind of a global enterprise that's

6    under a microphone so folks looking at this Finacity asset

7    are going to have a lot more comfort bidding in a structured

8    bankruptcy process where they'll ultimately going to have a

9    court order from Your Honor.

10            And that's going to maximize value to pay these

11   creditors and again, there are intercompany claims.  There

12   is a landlord.  There are a smattering of other claims.  And

13   ultimately, if we're very successful, yeah, there's

14   additional money, hopefully, going to the -- Allan Overy's

15   client at the GCUK.  So on that question, we certainly don't

16   have money anywhere close today to pay folks unless we have

17   a process and you got to kind of spend the money on the

18   process to get to the ultimate destination of hopefully

19   paying everybody.

20            THE COURT:  All right.  Anybody else?  All right.

21   I think my biggest problem is with the exit event entities.

22   I'm not been (indiscernible) that very much money is needed

23   for -- at all today.  Some of it is of marginal convenience

24   it seems to me and incurring exit event fees of this size,

25   particularly on an interim basis seems very troublesome in

1    relation to the benefit.

2            I would approve a DIP today that does not approve

3    exit event fees and that defers that issue until the final

4    hearing when people can be more organized and assess with

5    the DIP lender, whether they think it's reasonable or not.

6    Is that acceptable?

7            MR. KOTLIAR:  Your Honor, Bryan Kotliar for the

8    record.  A much less expensive is certainly acceptable to

9    the debtor's perspective.  I think we would have to speak to

10   the DIP lender's counsel and make sure that the financing

11   number that we do the math on and figure out that we do need

12   is still available on the construct that Your Honor just

13   proposed.

14           THE COURT:  All right.  Mr. Hoenig?

15           MR. HOENIG:  Your Honor, that seems reasonable.

16   We'd want to talk to debtor and just determine if any other

17   terms would need to be adjusted.

18           THE COURT:  Mr. Ortiz, what would you like to do?

19           MR. ORTIZ:  Good afternoon again, Your Honor.  I

20   think that's fine.  You know, I imagine if it's a smaller

21   draw that kind of changes the levers in various places.  You

22   know, one of the challenges we have is of course that our

23   lender is in Australia so there's time differences that we

24   have to manage, but, you know, we're happy to kind of, with

25   the guidance we've gotten at this hearing, go back with the

1    DIP lenders and then be able to kind of propose an agreed

2    interim order to Your Honor.

3            THE COURT:  All right.  Why don't you talk to

4    them?  Explain my concern about the expense here because I'm

5    not really convinced that -- I understand that there's some

6    benefit to paying off the terminated employees, but I'm not

7    convinced that it's absolutely necessary.  And the amount on

8    an interim basis that's been described to me as being needed

9    which is basically something to supplement the 400,000 to

10   make sure that you have enough is not a very big loan, and

11   the idea of locking in exit event fees of that big a size on

12   an interim basis for what seems like a relatively small loan

13   just sounds way too expensive, and I don't see how I could

14   find that that was reasonable.

15           If you were to tell me you wanted a $200,000 loan

16   to supplement your $400,000 of cash, for example, and on a

17   basis that said that if that's not paid within 60 days you

18   owe an extra $200,000, that's not just high.  That's eye-

19   popping.  Right?

20           MR. ORTIZ:  Understood, Your Honor.  And we -- you

21   know, in addition to the -- there is a -- an amount that

22   will come out that ultimately gets reimbursed that is in

23   connection with the remaining employees.  And remember part

24   of that exit employee amount is for the first 17 days of the

25   remaining employees who, you know, we do think there is

Page 55

1    potential for real harm.  People aren't getting paid for

2    work that they did from March 1st to March 17th.  They

3    ultimately would of course -- you know, somebody might not

4    be willing continue or they might not be willing to put in,

5    you know, the kind of effort that you would expect or would

6    start looking for something else which would be detrimental

7    to our ability to maximize on this asset.

8              There's also of course professional fees.  Like I

9    said, we've got a banker.  We've got an independent

10   director.  We have special counsel helping with the sale.

11   So there's disbursements that need to happen but, you know,

12   we'll -- we can work with the lender's counsel on what that

13   number is, and what's kind of appropriate particularly in

14   connection with the exit fees that Your Honor is focused.

15             THE COURT:  Okay.  All right.  Then you'll come

16   back to us with what you've decided with the exit -- with

17   the proposed DIP lender.  Okay?

18             MR. ORTIZ:  Okay.  And, Your Honor, that -- you

19   know, in some sense that segues because some of that we'll

20   probably be able to do between us, but Your Honor may, you

21   know, have your own views of kind of what we've ultimately

22   present and one of things that we did want to ask for and we

23   realize you provided time this afternoon and you have a very

24   full calendar, is if there's time potentially, you know,

25   next Wednesday -- and the reason I'm saying Wednesday is

Page 56

```
 1    Wednesday is March 31st.  Thursday is April 1st.  So we
 2    would like to be able to hear -- be heard on the lease
 3    rejection motion ahead of that date so there can be some
 4    kind of certainty for that -- for the landlord and of course
 5    for the debtors with regards to the lease.
 6            I know that court's often grant retroactive
 7    rejection but I think for the purposes of just making it
 8    cleaner and clearer for all parties involved, that might be
 9    beneficial.  And then we were hoping -- because as you've
10    seen, this is set up and there's a lot of pressure to have a
11    very quick process to file our bidding procedures by Monday
12    and to get at least the kind of procedural pieces of setting
13    up the timeline for an auction and a sale order and all of
14    those steps by Wednesday, which we realize is aggressive.
15    But there might also be a hearing that we could potentially
16    use if will be sent in after the lender's counsel and
17    debtor's counsel talk to look at the DIP on an interim basis
18    again.
19            THE COURT:  All right.  We can give you a hearing
20    on Wednesday at eleven o'clock.  You need to resume the --
21    we'll just kind of adjourn the interim DIP hearing.  If you
22    need that to be resumed before Wednesday, just let us know.
23            MR. TOGUT:  Your Honor, this is Al Togut.  Is
24    there any chance you have an opening in the afternoon?
25            THE COURT:  On what, Wednesday?
```

Page 57

1          MR. TOGUT:  Yeah.

2          THE COURT:  Bear with me while I --

3          (indiscernible)

4          MAN 1: (indiscernible) schedule the afternoon.

5          MR. TOGUT:  Right.  Because we have a omnibus

6    hearing in (indiscernible) in the morning.

7          THE COURT:  The afternoon is open.  Two o'clock?

8          MR. TOGUT:  That'd be great, Your Honor.

9          THE COURT:  Okay.  We'll give you two o'clock on

10   Wednesday afternoon.  And if you need to -- or want to

11   resume the interim DIP hearing before Wednesday, you just

12   let us know.

13         MR. ORTIZ:  Very much appreciated, Your Honor.

14         THE COURT:  Okay.  All right.  Anything else for

15   today then?

16         MR. ORTIZ:  Just one second, Your Honor.  I want

17   to kind of clarify a point quickly really around making sure

18   that balance to make a payment for the go-forward employees

19   on Monday is sufficient without the DIP and we could

20   theoretically wait until Wednesday.

21         Thank you, Your Honor.  Apologies for that delay

22   there.  It looks like we're -- we'd be very, very tight to

23   pay the current employees their payroll so we may end up

24   ultimately needing to take you up on the earlier

25   continuation of the interim on the DIP.

Page 58

```
 1              THE COURT:  All right.  We'll try to accommodate

 2     you.  On Monday morning, I will be receiving the second of

 3     my COVID vaccines so I'm not going to give you a hearing on

 4     Monday morning.  Hopefully I won't have any side effects and

 5     if you need it we can hear you Monday afternoon.

 6              MR. ORTIZ:  Very much appreciated, Your Honor.

 7     And it's good to hear that you will be fully vaccinated.

 8              THE COURT:  Thank you.  All right.  I think just

 9     rather than keeping you in suspense as to the other terms of

10     the order and the terms of the DIP, Mr. Ortiz, I think you

11     know from other cases the idea of giving automatic stay

12     relief in advance -- obviously, the -- if there's a default

13     they can terminate lending but the idea of saying in advance

14     that automatically they can enforce their liens outside of

15     the bankruptcy court is not something that I do.  I may have

16     done it but I certainly rarely do it and I wouldn't want to

17     do that particularly in an interim order.

18              MR. KOTLIAR:  Understood, Your Honor.  This is

19     Bryan Kotliar of Togut for the debtor.  We can make that

20     change on the next round of interim order that we submit.

21              THE COURT:  All right.  Anything else for today

22     then?

23              MR. ORTIZ:  No, Your Honor.  Thank you very much

24     for your time on a Friday afternoon and enjoy your weekend.

25              THE COURT:  We are adjourned then.  Thank you.
```

Page 59

1          MR. ORTIZ:   Thank you.

2          MR. KOTLIAR:   Thank you.

3          (Whereupon these proceedings were concluded at

4     4:27 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                          Page        Line

5   Creditor Matrix Motion Granted          26          1

6   Section 345 Motion Granted              28          18

7   Wages and Benefits Motion Granted       35          19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 61

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5   Sonya Ledanski            Digitally signed by Sonya Ledanski Hyde
                              DN: cn=Sonya Ledanski Hyde, o, ou,
6                             email=digital@veritext.com, c=US
    Hyde                      Date: 2021.03.29 14:30:05 -04'00'
7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  March 29, 2021

[& - adjusted]                                                                                   Page 1

| & | | | a |
|---|---|---|---|

**&**   3:3 4:8 5:10
20:1 21:15 22:23
26:11 29:11 32:15
49:16,16

**1**

**1**   3:5 22:11 24:7
27:25 36:17 57:4
60:5
**1,545,000**   21:7,8
**1.1**   21:10
**1.5**   36:18
**1.545**   18:6
**10**   7:25 40:11
**10,000**   40:23,25
41:7
**100**   14:13,15
24:23,23 34:22,25
36:23
**100,000**   40:5,8
**10004**   1:13
**10012**   4:4
**10014**   3:18
**10020**   4:11
**1006**   3:17
**1007**   7:2 23:8,17
**10119**   3:6
**11**   10:3 11:11 23:5
26:17 30:3 35:10
37:10,15 38:11
45:16
**11501**   61:23
**12**   39:20
**12.15**   42:20
**1221**   4:10
**14**   10:2 29:24
**143**   7:24
**150,000**   34:20
**156**   25:7
**15th**   9:19
**165,000**   21:2
**166**   4:3

**17**   20:16,24 54:24
**175**   11:3
**17th**   10:1 19:8,9
19:12,21 20:5,7
30:1 45:10 55:2
**18**   39:20 60:6
**19**   60:7
**1st**   13:11,12 19:21
19:21 20:4,18
55:2 56:1

**2**

**2**   7:3 11:24 36:16
40:9
**20**   12:9 14:13,22
39:11,17,24
**200,000**   18:20
40:10 54:15,18
**2002**   24:3
**201**   3:17
**2019**   7:24 10:24
14:24 15:13
**2021**   1:15 9:3,19
61:25
**21**   15:18,23 16:4
24:4
**21-10561**   1:3
**24**   12:21
**25**   7:4
**25th**   10:12 36:7
**26**   1:15 60:5
**26th**   36:8
**28**   60:6
**29**   61:25

**3**

**3**   23:4
**30**   17:24 29:21
38:15 40:4 48:23
**30,000**   21:18
41:22
**300**   61:22
**300,000**   45:6
**31st**   20:18 45:10
56:1

**330**   61:21
**330,000**   20:19,23
**341**   24:4,13
**345**   2:7 26:14,18
27:6,12 60:6
**35**   40:7 60:7
**354**   26:10
**3:03**   1:16

**4**

**4**   26:16
**4.04**   42:8
**400,000**   45:18
51:20 54:9,16
**401k**   34:9 35:4,11
35:12,14,18
**45**   27:6 40:5
**4:27**   59:4

**5**

**5**   39:11 40:4,6
48:17
**50**   14:13,15
**50,000**   40:3
**500,000**   36:19

**6**

**6**   29:18 37:15
**60**   39:11,15 40:10
40:11,12 42:2
43:9,11 47:17
54:17

**7**

**7**   36:7 51:18
**7.5**   14:2 15:3
**70**   8:6
**75**   29:24

**8**

**8th**   9:3

**9**

**9**   6:7

**a**

**ability**   11:17 25:2
28:21 44:15 48:4
55:7
**able**   10:11,20 17:6
36:12 38:23 41:11
54:1 55:20 56:2
**absolutely**   54:7
**accelerated**   6:11
**acceptable**   53:6,8
**accommodate**
58:1
**accomplish**   6:21
7:23 10:19
**accomplishes**
32:20
**account**   26:24
27:3 51:20
**accrue**   40:3
**accuracy**   22:3
**accurate**   61:4
**achieve**   6:10
**acquired**   10:24
**acted**   8:4
**actions**   37:2,2
38:17
**add**   24:15 42:3
**addition**   29:1
30:25 31:4 48:14
54:21
**additional**   11:17
21:20 27:14 31:3
48:7 52:14
**address**   14:8 15:9
**addressed**   15:5
**addresses**   23:13
**adequate**   24:8
26:21
**adequately**   23:24
**adjourn**   56:21
**adjourned**   58:25
**adjusted**   53:17

**administer** 9:5 10:3 30:3
**administration** 9:8,9,24
**administrator** 16:9,16 35:14
**administrators** 4:9 9:4 10:5,10 11:14 30:5 33:14 37:18,20 49:17
**admission** 22:9
**admitted** 22:15,16
**adrian** 12:2 15:14
**advance** 58:12,13
**advances** 18:22 19:1
**advisers** 43:22
**advisors** 12:10
**affidavit** 23:4 26:16
**affiliate** 37:19 38:7
**afore** 14:3
**afternoon** 5:2,4,9 5:14,17 7:23 19:25 24:21 29:7 29:10 53:19 55:23 56:24 57:4,7,10 58:5,24
**agenda** 6:6 10:17 22:20 29:12 36:3
**agent** 11:2 23:9 24:18 25:7
**aggressive** 56:14
**aggressively** 12:17 17:24
**ago** 30:19
**agreed** 10:12 19:5 37:20 54:1
**agreement** 8:15 9:17,19 10:11 19:13 36:17 37:22 42:8 45:1,4

**ahead** 5:4 6:15 13:12 15:19 16:1 28:7 32:13 46:3 56:3
**aid** 11:12
**airplane** 49:3
**al** 5:5,9 26:3 56:23
**albert** 3:9
**alexander** 38:7
**allan** 52:14
**allen** 4:8 49:16,16
**allocating** 5:13
**allow** 43:18
**allowing** 37:13
**alright** 6:7
**alternative** 39:1
**alternatively** 26:20
**amanda** 3:11 6:2
**amended** 29:17
**americas** 4:10 8:5 8:8 10:7 22:1
**amount** 17:17 18:18 25:8 36:18 40:23 54:7,21,24
**amounts** 10:12 11:18 20:22 34:11 35:7,12,16
**annual** 40:9
**annualized** 40:13
**answer** 32:12 39:3
**answering** 34:15
**answers** 21:12
**anticipated** 37:16
**anticipation** 18:23
**anybody** 28:16 33:3,13,14,17,18 33:20 44:10 48:22 50:7,25 52:20
**apart** 17:10
**apollo** 9:16,17 16:20,24 17:7,13

**apologies** 57:21
**apparently** 40:1
**appears** 7:6 14:20
**applicable** 31:3
**application** 22:24 24:25 25:6,7
**applications** 16:8 21:13
**appointed** 9:4 11:15 46:14
**appreciate** 5:16 13:5 36:13 49:24
**appreciated** 5:22 57:13 58:6
**appropriate** 24:8 39:23 55:13
**approval** 18:24 20:13 23:2 24:1 35:7,9 37:6
**approve** 19:5 29:4 34:14 35:5 38:19 46:16 53:2,2
**approved** 12:15 13:12,17
**approving** 36:9
**approximately** 29:24 37:15 45:18
**april** 13:11 56:1
**arbeit** 5:19
**arbeit's** 5:22
**arranged** 7:19
**arrangement** 24:24 26:5
**ascertainable** 23:15
**aside** 13:25 20:10
**asked** 51:13
**asking** 20:3 31:16 44:5
**aspect** 37:6
**aspects** 21:19,19
**assembling** 41:5

**assembly** 41:13
**assert** 16:4
**asserts** 15:16 27:11
**assess** 44:3 53:4
**asset** 6:23 10:22 10:25 11:19 12:17 37:7 39:22 47:22 49:1 50:24 51:22 52:6 55:7
**asset's** 48:11
**assets** 8:24 9:13 10:4 30:6 36:22 36:25 37:25 38:22 41:24
**assist** 10:3,5 30:5 41:24
**assistance** 36:13 43:22
**assisting** 21:18
**assume** 46:12
**assuming** 34:21 35:1
**assumption** 46:6
**attached** 7:2 24:6 24:12 27:25 29:19 36:9,17
**attack** 48:3
**attest** 22:3
**attorney** 3:16 47:15
**attorneys** 3:4 4:2 4:9
**auction** 12:18 13:19 37:12 56:13
**australia** 9:7 17:4 40:22 41:24,25 53:23
**australian** 7:12
**authority** 19:16 35:15
**authorization** 36:15

**authorize** 31:22
34:9
**authorized** 26:22
27:1,3,8 28:11,11
28:13
**authorizing** 23:1
36:4
**automatic** 36:5
58:11
**automatically**
58:14
**available** 29:20
36:8,19 37:7
53:12
**avenue** 4:10
**avoid** 30:11 31:23
45:21
**avoidance** 37:2,2
38:17
**aware** 26:18
**awfully** 40:13

**b**

**b** 1:21 26:14,18
27:6,12
**baby** 5:7
**back** 5:17 8:17
9:20 12:25 13:21
14:8 18:3 35:8
47:5 53:25 55:16
**backed** 11:1
**background** 6:14
21:12
**balance** 57:18
**bank** 26:24,25
27:10 28:10,13,14
51:20
**bank's** 28:20
**banker** 12:10
17:22 18:15 55:9
**bankers** 47:20
48:9
**banking** 48:2

**bankruptcy** 1:1
1:11,23 12:7
14:12 23:8 26:14
28:22 31:4,8
43:25 51:8 52:3,8
58:15
**based** 23:13,20
41:25 45:17,17
49:5
**basic** 44:4 51:10
**basically** 34:21
54:9
**basis** 17:12 20:23
31:17 34:12 35:25
36:9,19 38:24,24
39:24 40:13 52:25
54:8,12,17 56:17
**bear** 57:2
**began** 8:19
**beggars** 48:15
**begun** 12:22
**behalf** 20:1
**belief** 29:3
**believe** 11:8 15:16
38:1,23 41:10
**benchmark** 51:4
**beneficial** 38:13
40:17 56:9
**benefit** 10:8 11:10
12:19 34:8 47:11
53:1 54:6
**benefits** 2:5 10:15
19:12 29:13,14,16
34:3,7 60:7
**better** 41:11
**beyond** 15:25
48:12
**bid** 12:2,3,5 15:15
15:18,21
**bidder** 37:23
**bidding** 12:14
13:16 14:10 43:17
52:7 56:11

**bids** 38:25
**big** 13:20 17:4
54:10,11
**biggest** 52:21
**billion** 7:25
**bit** 9:15 16:1 17:3
17:15 20:19 28:14
48:3,7
**blander** 3:12 6:2
21:23 22:19,22,23
26:8,11 29:6
**blended** 39:24
**board** 12:8
**body** 6:24 47:10
**boiler** 43:1
**books** 23:14
**borrow** 36:16
**borrower** 42:2,9
42:16
**borrowers** 11:3
**boutique** 40:22
**bowes** 16:15
**bowling** 1:12
**box** 7:5 46:20
**breath** 44:2
**brian** 3:13 6:3
**briefly** 51:16
**brings** 10:18
12:24
**broad** 17:21
**brown** 21:18,20
**bryan** 3:10 6:2
19:25 29:11 33:21
43:12 44:13 53:7
58:19
**budget** 18:4,10
25:11 34:21 35:1
44:17,24 46:25
**budgets** 34:20
**bunch** 47:9
**burdensome**
23:22

**business** 9:13
10:21,25 11:7,9
27:16,18 29:15
30:18,19 31:6
43:14 50:16
**businesses** 31:21
**buyer** 42:14

**c**

**c** 3:1 5:1 61:1,1
**calendar** 21:24
55:24
**call** 7:18
**called** 18:5 20:11
22:2
**calls** 31:11
**canadian** 26:24
**cap** 20:21,22
34:10
**capital** 1:7 5:11
6:17 7:8,13,17
11:1 50:9,22
**carefully** 42:10
**cascading** 8:19
9:2
**case** 1:3 6:11,22
10:3 23:2 24:3,9
25:8,25 30:3,14
37:10,15 38:2,11
39:14 40:2 41:6
41:13,14 44:11
45:16,19 46:8
47:9 51:5,24
**cases** 58:11
**cash** 45:17 54:16
**cause** 27:11 40:18
45:13
**ceased** 30:19
**center** 7:16
**ceo** 12:3
**certain** 8:25 9:1
9:13,16 11:25
14:24 15:14 22:25
23:6 29:13 30:2

42:9
**certainly** 24:14
  40:17 49:20 52:15
  53:8 58:16
**certainty** 56:4
**certified** 61:3
**challenges** 53:22
**challenging** 11:12
**chambers** 5:13
  33:23
**chance** 56:24
**change** 28:18
  34:23 37:3 58:20
**changed** 26:1
**changes** 39:5
  53:21
**chapter** 10:3
  11:11 30:3 35:10
  37:10,15 38:11
  45:16
**chart** 7:2,7,11
**charted** 27:9
**check** 20:20
**checks** 27:16
  28:21,21
**choosers** 48:16
**cibc** 26:25,25 27:8
**circumstance**
  25:13
**circumstances**
  23:20 37:25 43:15
  50:20
**claim** 16:3
**claims** 13:25 14:1
  14:3,5,23,25 15:8
  15:10 23:9 25:7
  44:16 51:17,19,21
  51:21 52:11,12
**clarify** 42:17
  57:17
**class** 37:7
**cleaner** 56:8

**clear** 51:6,7
**clearer** 56:8
**clearly** 51:25
**clerk** 23:18
**clerk's** 25:14,16
  25:19,24
**client** 52:15
**clients** 7:20 8:7
**close** 52:16
**closing** 31:6 37:16
  47:24
**cnecf** 23:10
**cobra** 34:6,17,19
  34:22 45:7
**code** 26:14
**colleagues** 6:2
  14:7
**collecting** 30:6
**come** 12:25 13:21
  14:8 15:22 18:3
  21:16 35:8 40:16
  54:22 55:15
**comes** 20:19 48:5
  49:8
**comfort** 50:18
  52:7
**coming** 11:18
  17:18,18
**commencement**
  9:10 23:2,3 24:2,6
  24:9
**commerce** 26:25
**commercial** 49:21
**commitment**
  11:23
**committee** 33:11
  33:11 46:13,14
**communicating**
  25:18
**companies** 12:9
  45:6
**company** 7:12,19
  7:19,24 8:18,19

9:10,12 10:8 11:6
  11:8,9 16:22
  17:19 30:15,17
  34:25 37:18 46:25
  49:4
**company's** 6:4 8:4
  8:7,23 9:12 38:7
**compensation**
  29:16 34:3,8
**competitive** 12:13
  12:18 17:25 48:8
  48:20 49:7 52:3
**completed** 27:5
**complicated**
  46:23
**comply** 23:16,21
  26:13 27:6,12
**component** 17:2
**compounded** 42:5
**concern** 54:4
**concluded** 59:3
**condition** 38:21
**conduct** 13:22
**confirm** 46:25
**confirmed** 25:16
**conflict** 5:20
**conforming** 39:7
**connected** 12:2
**connection** 8:10
  10:16 14:23 15:5
  15:12 16:23 17:1
  37:5 54:23 55:14
**consensual** 5:23
**consensually**
  36:13
**consequence** 8:20
**consideration**
  15:13 22:7
**considerations**
  50:3
**considered** 50:2
**considering** 22:6
  31:12

**consistent** 39:25
  43:21 44:21 45:4
**consists** 6:24
**construct** 53:12
**contains** 38:12
**contemplated**
  15:21 45:3
**contemplating**
  24:17
**context** 6:20 13:4
**contingent** 14:21
**continuation** 34:6
  34:22 45:8 57:25
**continue** 29:14
  35:15 50:19 55:4
**continuing** 9:24
  20:11
**contract** 13:9
**contribute** 35:11
**convenience**
  52:23
**convert** 42:22
**converted** 43:2
**convinced** 54:5,7
**cooperation** 36:14
**copy** 36:17
**corporate** 26:21
  30:2 41:25
**corporation** 36:24
**correct** 18:7,8
  21:5 39:12,13
  43:5 44:9 46:13
  47:1
**correcting** 29:7
**correctly** 20:3
**cost** 20:6 21:10
  25:11 31:16 32:5
  34:23,25 37:14
  41:5,8,8 45:12
**costs** 11:25 34:5
  34:19 43:9 45:7,9
  45:16 51:17

[counsel - designed]                                                                                    Page 5

| | | | |
|---|---|---|---|
| **counsel** 21:17 | **court's** 56:6 | **dan** 49:15 | 45:3,11,20 46:6 |
| 38:18 40:19,21,21 | **courtroom** 6:1 | **daniel** 4:13 | 48:14 51:20 53:16 |
| 40:22 41:10,15,16 | 21:16 | **dark** 7:10,10 | 58:19 |
| 41:21,24 43:7 | **covenants** 37:3 | **dashed** 9:23 | **debtor's** 6:22 8:2 |
| 50:10 53:10 55:10 | **cover** 48:11 | **database** 23:11 | 9:6,14 10:4 11:11 |
| 55:12 56:16,17 | **coverage** 8:23 | **date** 13:21 17:21 | 22:24 26:12 28:23 |
| **counterparties** | 34:6,23 45:8 | 23:15 27:5 29:23 | 29:2,12,16 30:4 |
| 10:7 16:14 | **covered** 19:11,13 | 30:17 31:12 44:7 | 33:6 36:3,22,25 |
| **countries** 11:4 | **covid** 25:1 58:3 | 50:2,12 56:3 | 37:7 38:19,21 |
| **country** 61:21 | **create** 48:7 | 61:25 | 43:13,20 50:5 |
| **couple** 16:6 28:24 | **created** 27:21 | **dates** 14:9 | 53:9 56:17 |
| 39:5 46:8 47:4,21 | **credit** 36:16 42:8 | **day** 2:1 5:18,23 | **debtors** 10:1 |
| 49:19 51:14 | **creditor** 2:3 6:23 | 6:5 11:25 20:23 | 12:16 13:13 39:21 |
| **course** 6:3 17:10 | 14:4,13 21:23 | 21:25 22:4 43:23 | 46:13 47:4 48:17 |
| 25:10 27:18 29:15 | 22:19,25 23:7,10 | 47:17 | 49:18 51:12 56:5 |
| 29:18 37:14 53:22 | 23:10,19,21,24 | **days** 17:24 20:16 | **decided** 55:16 |
| 55:3,8 56:4 | 31:19,20 47:10 | 20:24 24:5 27:6 | **decision** 38:19 |
| **court** 1:1,11 5:2,8 | 49:13 60:5 | 29:21 38:15 39:11 | **declarant** 6:5 |
| 6:12 9:4 14:11 | **creditors** 6:23 | 39:15 40:4,5,7,10 | **declaration** 6:13 |
| 15:10 16:7,19,25 | 8:25 10:6 11:11 | 40:12 42:2 43:10 | 7:3 21:25 22:3,5,9 |
| 17:11 18:3,12,18 | 12:19 13:14,24 | 43:11 48:23 54:17 | 22:14,15,16 |
| 18:21 19:4,15,19 | 16:16 18:1 23:12 | 54:24 | **declined** 37:19,23 |
| 20:8 21:1,6,11 | 24:7,23 25:8 26:5 | **deaf** 32:22 | **deem** 23:23 |
| 22:8,12,24 23:18 | 33:10,11 43:16 | **deals** 28:20 | **default** 58:12 |
| 23:23 24:13,17 | 51:6,8 52:11 | **debtor** 1:9 3:4 | **defer** 24:19 |
| 25:9,12,21,23 | **critically** 8:21 | 5:10 6:9,18,25 7:6 | **defers** 53:3 |
| 26:6,12,18 28:1,3 | **cross** 22:13 | 8:1,3,9,11 9:14,23 | **degree** 39:18 |
| 28:6,7,16 29:9 | **crunched** 20:4 | 10:10,13,20,23,24 | **delay** 57:21 |
| 30:8,10 31:9,18 | **crunching** 46:23 | 11:7,8,16,20,22 | **denominated** |
| 32:11,25 33:13 | **currency** 42:22 | 11:23 12:6,10 | 42:23 |
| 34:17 35:3,19 | **current** 13:13 | 20:1 22:1,23 23:1 | **department** 3:15 |
| 37:12 39:9,14 | 28:13 50:10 57:23 | 23:6,8,11,17,22 | **deposit** 26:24 27:2 |
| 40:7,18,25 41:2,7 | **currently** 10:20 | 24:1,5,7,22 26:11 | **depositories** |
| 41:15,19 42:1,7 | 13:10 26:24 47:12 | 26:13,19,23 27:2 | 26:23 28:11 |
| 42:18 43:3,7,23 | **customary** 36:21 | 27:6,10,13,16,17 | **depository** 27:1,3 |
| 44:23 45:22 46:2 | 36:24 | 27:17,19,19,20,22 | **deposits** 26:19 |
| 46:16 47:2 49:12 | **customers** 7:25 | 28:13 29:11,24 | **described** 30:1 |
| 50:7,25 52:3,9,20 | 9:1 | 30:1,24 33:6,8,22 | 49:23 54:8 |
| 53:14,18 54:3 | **cycle** 45:2 | 35:8,11,16 36:4 | **description** 6:13 |
| 55:15 56:19,25 | | 36:15,23 37:9,13 | **designated** 26:25 |
| 57:2,7,9,14 58:1,8 | **d** | 37:17,22,24,25 | **designation** 27:20 |
| 58:15,21,25 | **d** 5:1 60:1 | 38:6,22,25 40:17 | **designed** 11:11 |
| | **damage** 14:5 | 43:8,13 44:14 | |

destination 52:18
detail 10:16 18:4
  18:10
details 18:9
determine 53:16
detrimental 55:6
devised 26:22
dictate 13:2
dictated 35:23
differences 53:23
different 28:24
diligence 17:6
diminus 34:5
dip 2:9 18:4 32:4
  35:21,22 36:16
  37:8,12 38:8,10
  38:12,17,19 39:2
  39:6,15,20,22
  40:2,16,19,20
  41:3,5,8,10,13,15
  41:16,21,23 43:16
  44:6,8,16,18
  48:12,24 49:5,14
  49:14,22 51:3,10
  53:2,5,10 54:1
  55:17 56:17,21
  57:11,19,25 58:10
dips 39:19
dire 11:20
direct 7:11 9:6
  32:1 37:18
director 6:6 47:19
  55:10
directors 9:7
disbursements
  55:11
discharged 42:21
discuss 9:15 40:15
discussed 37:17
  37:22 39:6
discussions 38:6
dispute 14:18

distinguish 20:8
distress 8:20
distressed 12:9
distributes 13:23
district 1:2 28:12
docket 6:7 7:3
  23:4,4 24:14
  26:15,16 29:18
  36:7
document 7:4
documents 43:1
doing 19:23 25:20
  35:24 47:3 50:16
dollar 8:2 42:23
dollars 11:16
draw 53:21
driving 47:18
due 11:18 35:13
duration 48:18
duties 10:10

e

e 1:21,21 3:1,1 5:1
  5:1 60:1 61:1
earlier 8:18 13:14
  15:1,15 16:24
  57:24
earn 8:10 14:24
  15:10,12,13 16:9
earning 16:5
easy 40:2
ecro 1:25
effect 42:4,21
effective 50:23
effects 58:4
efficient 5:17
effort 41:23 49:24
  50:5,21 55:5
efforts 9:12 49:20
eitan 3:12 4:6 6:2
  22:22 26:10 41:20
either 26:20 35:9
  49:6

elect 35:2
electronic 23:13
  23:18
electronically
  27:21
elects 34:22
element 23:25
eleven 56:20
email 29:20 36:7
emails 21:17
emergency 31:11
  43:25
emphasize 50:9
employed 10:15
  29:24
employee 14:2
  18:5 30:20 31:5
  35:13 45:7 51:17
  54:24
employees 6:24
  9:25 10:2,2,9,14
  14:14 16:13 18:6
  18:21 19:6,11,16
  19:18 20:5,7,9,11
  20:12,18,22 21:4
  21:6,9,9 29:21
  30:2,3,11,21,22
  31:1,10,13,14,18
  31:25 32:3,18
  33:7 34:7 35:2,21
  35:24 37:21 44:6
  44:16 45:8,9 46:7
  46:19 47:11,14
  49:11 50:10,13,19
  51:5 54:6,23,25
  57:18,23
employing 8:5
employment 8:4
  10:13 30:18,24
encumbered
  36:25
enforce 58:14

engage 11:22
english 9:4
enjoy 58:24
enter 10:11 24:11
  27:24
entered 9:16
  19:13
enterprise 7:1,18
  8:12 17:4 52:5
enters 39:4
entire 7:18 32:3
  40:11 51:18
entirely 6:24 14:2
entities 30:5 52:21
entitled 30:23
entity 7:9,15 9:8
  9:20 45:2,13
entry 22:4,24 23:4
  26:15,17 36:3,20
envelopes 25:3,4
equity 10:5 13:25
  36:23 37:11,23
  38:16 49:1,3
equivalent 40:8
  40:12
escrow 45:15
especially 50:12
  50:23
essential 30:21
essentially 5:15
  6:22 8:4 9:23 21:1
  30:18
establish 23:1
estate 19:11 20:6
  21:2 30:4 31:24
estates 9:5 30:12
estimate 41:12,22
estimated 14:12
event 19:10 27:17
  40:10 52:21,24
  53:3 54:11
events 9:21 13:20

eventual  13:19
  30:14
everybody  5:2
  44:2,2,4 52:19
everybody's
  46:17
evidence  22:6,9
  22:17 33:8
examine  22:13
example  42:2
  54:16
excess  20:22
  34:10
exclusivity  9:17
  9:18,21 11:15
  16:20
excuse  31:10
exhibit  24:7,12
  27:25 29:19 36:10
  36:17
existing  29:16
exists  27:11 48:24
exit  18:5 38:14
  40:4,5,10,14 41:6
  52:21,24 53:3
  54:11,24 55:14,16
expect  12:3 13:22
  43:2 48:9 55:5
expectations
  43:19,20
expense  18:5 25:6
  40:23 54:4
expenses  8:13
  18:5,12 19:1
  31:15 34:17 37:14
  41:3,5,12 45:15
expensive  32:4
  40:13 44:5 53:8
  54:13
experience  8:19
experienced  12:7
expiration  8:21

expired  9:18,22
expiring  11:15
explain  6:19,25
  15:10 42:20 54:4
exposure  8:25
extend  27:11
extending  26:13
extension  27:6
extent  27:19
  31:20 35:15 44:20
  51:23
extra  54:18
extremely  32:4,5
  39:16 40:8
eye  54:18

**f**

f  1:21 61:1
faced  11:20
fact  48:14
factoring  7:20,20
  7:21
factors  8:21
facts  30:14
failure  30:25
fairly  17:17
faith  29:3
familiar  5:21 17:3
families  50:15
family  4:2 11:24
  38:9
far  7:6
farber  4:1 41:18
  41:21
favor  33:3,18
federal  34:24
federally  27:9
fee  38:14 40:4,10
  40:18
fees  8:10 40:3,5
  40:14 41:12,22
  52:24 53:3 54:11
  55:8,14

fell  17:10
figure  45:17 53:11
file  6:20 12:15
  13:23 38:3 56:11
filed  5:15 6:6 7:3
  13:8 23:3 24:25
  26:15 29:18 36:6
filing  12:3,21 13:6
  13:16 18:15,23
  22:25 23:7,11,16
  26:4 37:25 47:6
finacity  10:23,25
  11:6,9,19 12:3,12
  14:1,24 16:17,21
  17:1,8,12 30:4
  36:24 37:11,23
  38:16 39:1 50:24
  52:6
final  31:12 32:24
  33:2,12 34:12
  35:9 36:3,5,20
  44:7 46:10,15
  53:3
finally  48:25
finance  52:2
financial  8:20,24
  33:15 38:21 44:11
  46:1,23 47:8,10
  49:10
financing  7:25
  11:24 17:20 36:5
  36:20 37:13,17,22
  38:4,6,20,23 39:2
  39:22 43:14,16
  44:16,18,20 46:17
  46:18 51:3,11
  52:1 53:10
find  38:4 48:21
  54:14
fine  26:1,5,6,7
  28:18 32:11,12
  53:20

fines  31:3,7
fingertips  19:23
finish  33:25
firm  18:15,17
  25:1 41:17 49:23
first  2:1 5:12,18
  5:23 6:5 11:25
  20:15,22,24 21:24
  21:24 22:4 23:6
  23:24 36:21 38:15
  39:10,11 43:23
  44:19 45:2,14
  46:8 51:14 54:24
fits  6:25 48:23
focus  31:9
focused  17:17
  55:14
folks  52:6,16
follow  28:23
following  29:2
  33:23 34:16 36:20
  38:5
force  8:5
forced  30:17
foreclose  50:4
foregoing  61:3
forgotten  21:21
form  10:22 23:3
  23:13 24:6,15
  26:6,12 27:14
  29:19 33:22 34:15
  36:8 37:4 44:17
  51:3
formalities  41:25
format  23:10,15
former  6:24 14:14
forms  27:16,18,21
forward  10:13
  19:12 34:19 45:6
  45:9 50:6,15
  57:18
found  9:23

**frame** 43:20 48:10
48:23
**framed** 43:6
**friction** 45:14
**friday** 5:14 7:23
58:24
**frizzley** 4:17 6:6
12:6
**front** 5:11 13:7
32:22 45:11
**full** 12:12 20:17
51:19,21 55:24
**fully** 58:7
**fund** 11:25 14:21
37:14 38:2 45:19
**funded** 8:13
**funding** 9:24 11:1
45:15,21 47:1
49:19
**funds** 8:13 9:16
**further** 24:10
34:13 50:2
**furthers** 37:13

**g**

**g** 5:1
**gcmc** 7:9,11 9:6
**gcuk** 7:17 8:9,14
8:22 9:5,24 10:11
10:12 14:17 16:10
19:4,7,13,17 20:6
20:14,16 21:3
34:18 45:1,13
49:17 52:15
**gcuk's** 9:3
**general** 13:25
21:17
**generate** 10:20
11:17
**generates** 27:18
**genovese** 26:4
**getting** 16:1 46:7
48:5 51:21 55:1

**give** 6:15 49:24
52:2 56:19 57:9
58:3
**given** 16:7,12,13
16:14,17,20 25:12
25:15 37:24,25
38:21
**giving** 50:18
58:11
**glaubach** 3:11 6:2
**glc** 12:10,11
**global** 6:18 7:1,24
8:2,17 9:11,21
10:21 11:8 17:4
52:5
**globe** 7:21 11:2
**go** 5:4 6:14 10:13
28:7 32:13 34:19
40:7,9 42:1 45:6,8
46:3 50:15 53:25
57:18
**goal** 11:12 43:21
**goes** 38:15
**going** 7:9 8:9 13:1
15:4 18:25 19:22
19:23 25:13,14,20
31:6 43:10,17
46:17 47:20,23,25
48:4,11,11,12,19
48:20,21,22 49:5
49:6,7 50:13,21
52:4,7,8,10,14
58:3
**good** 5:2,4,9,11
19:25 22:22 24:21
26:10 29:3,7,10
32:19 53:19 58:7
**gotshal** 12:8
**gotten** 44:3 53:25
**government** 26:20
**grand** 8:12
**grant** 9:4 56:6

**granted** 60:5,6,7
**granting** 36:6
**great** 39:18 48:9
57:8
**greater** 10:16
**greatly** 5:15
**green** 1:12 7:5,6
7:10
**greensill** 1:7 4:2
5:11 6:17 7:8,13
7:13,17 11:8,24
17:16 38:7,9,18
50:9,22
**greg** 3:20 28:4
33:4 45:24 46:4
51:1
**ground** 12:11
**group** 48:9 50:15
50:16
**groups** 50:12
**guess** 17:15 51:10
**guidance** 53:25
**guidelines** 27:4
**guyder** 4:13 49:15
49:15

**h**

**half** 20:17,24 45:9
**halt** 9:3
**halted** 10:21
**hand** 19:22 22:19
45:17
**handing** 21:22
**handle** 21:23
22:19
**hang** 32:8,9
**happen** 55:11
**happening** 16:3
**happens** 42:4
**happy** 32:14
36:11 39:3 42:17
53:24
**harm** 30:11 31:24
32:6 45:21 55:1

**head** 6:4 22:1
**hear** 13:6 22:9,14
25:24 28:18 32:18
35:21 45:25 56:2
58:5,7
**heard** 33:15,17
45:22 56:2
**hearing** 2:1,3,5,7
2:9 5:20,24 13:19
13:21 14:9 31:12
32:24 33:3,12,17
33:19,24 34:16
36:6 44:7 46:10
46:15 47:6,7 53:4
53:25 56:15,19,21
57:6,11 58:3
**heavily** 49:21
**hello** 5:6
**help** 5:23
**helpful** 7:1 42:17
**helping** 55:10
**high** 9:4 39:16,18
39:23,24 40:8
54:18
**highly** 27:9
**hired** 12:6,10
18:15 25:3
**hiring** 24:17
**historically** 7:19
8:12 29:23 45:5
**hit** 12:11 15:16,17
16:5
**hoenig** 4:6 41:20
41:20 42:6,13,25
43:5 53:14,15
**hold** 12:18 32:23
**hon** 1:22
**honor** 5:4,7,10,12
5:13,16 6:7,8,17
7:1,22 8:16,19
9:18,20 10:18
11:13,13 12:9,20
12:24 13:12,22

14:6 15:9 18:20
19:25 20:15 21:5
21:14,22 22:11,18
22:22 24:10,21,22
26:2,3,8,10 27:23
28:2,4,8,21 29:6,7
29:10 30:13 31:13
32:8,15,16 33:4
33:10,21 34:13,14
35:6 36:2,15 39:4
39:4,13,17 40:15
41:1,4,9,20,22
42:6,13,16,25
43:5,12 44:13
45:1,24 46:4,9,21
47:3 49:15 50:4,8
51:1,12,15 52:9
53:7,12,15,19
54:2,20 55:14,18
55:20 56:23 57:8
57:13,16,21 58:6
58:18,23
**honor's**  5:13 13:5
20:2 33:23 44:15
44:21
**hope**  9:10 17:25
33:11
**hopefully**  12:18
32:20 43:18 52:14
52:18 58:4
**hopes**  9:22
**hoping**  10:19 56:9
**horse**  12:2,5
15:15,20 43:18
48:13 49:4
**host**  8:20
**hours**  12:21
**hundred**  11:16
**hyde**  2:25 61:3,8

**i**

**idea**  49:4 54:11
58:11,13

**ii**  29:1
**imagine**  47:13
53:20
**immediate**  31:23
32:6 45:21
**impact**  32:17
**impacted**  9:21
49:10
**imperial**  26:25
**importance**  50:11
**important**  8:3
30:20 32:19 47:16
50:13,20
**impose**  43:8
**imposed**  42:14,15
**imposes**  32:4
**inbound**  12:22
**inbounds**  17:23
**include**  27:20
42:11
**included**  6:14
13:9
**includes**  15:14
19:3 21:8 29:21
41:23
**including**  8:21
9:13 10:3,15
21:19 23:2 41:13
**income**  42:11
**incurring**  52:24
**independent**  6:6
47:19 55:9
**indiscernible**  6:14
9:14 10:5 12:14
13:24 20:20,25
21:10 24:3 25:24
25:25 34:15 35:23
37:18 42:16,19
43:2 52:22 57:3,4
57:6
**individual**  21:13
47:14

**individuals**  50:14
**indulgence**  46:22
**information**  25:15
**input**  5:22
**inside**  38:5
**instance**  48:19
**institution**  26:19
**instructions**  28:23
29:2
**insurance**  8:22,23
**insured**  26:20
**intends**  37:9
**intentions**  39:25
**interact**  18:9
**intercompany**
8:14 14:1,17,22
15:2,4,6,7 52:11
**interest**  12:20
18:2 23:12 28:10
36:23 38:1,10,12
38:13 39:10,16
40:5,6,9,12,16
42:1,3,4 47:22
48:1 49:3,13
**interested**  17:10
47:23
**interesting**  7:21
**interim**  26:12
27:25 29:19 31:17
32:3 33:9 34:2,9
35:25 36:9,18,19
46:9,17,18 49:25
50:5 52:25 54:2,8
54:12 56:17,21
57:11,25 58:17,20
**interrupt**  28:6
**investment**  12:10
18:15
**investors**  8:8 9:17
**involved**  17:3
49:21 56:8
**irreparable**  30:11
31:24 32:6 45:21

**issue**  31:12,21
46:14 53:3
**issued**  28:21,22
**issues**  31:5 36:12
50:2
**item**  18:5 21:24
29:12 36:2
**items**  13:8 14:10
18:10 34:20

**j**

**jill**  4:17 6:6 12:6
**joining**  6:1
**joint**  4:9 16:9
49:16
**judge**  1:23
**judgment**  43:14
**june**  10:24
**junior**  36:24
**justice**  3:15
**justify**  33:8

**k**

**katz**  12:2,4 15:14
16:4,16 17:17
**keep**  50:6
**keeping**  31:5 58:9
**key**  7:15 8:21,25
13:15
**kicking**  50:1
**kind**  6:25 7:18
8:17 9:11 13:3
14:19,20,25 15:8
15:24,25 16:16
17:3,14 19:10
31:4 35:25 38:14
42:3 46:22 47:6,8
47:16,24 48:6,23
49:2,5,8,9 51:24
52:5,17 53:21,24
54:1 55:5,13,21
56:4,12,21 57:17
**kluk**  4:1 41:17,21
**know**  15:2,4,22,25
16:2,10 17:8,21

18:9 25:13 32:11
32:17,21,22 33:15
41:6 43:23,24
45:25 46:23 47:5
47:8,14,21 48:2
48:10,10,13,15,15
48:22,25 49:2,22
49:24 50:1,3,23
51:18 52:4 53:20
53:22,24 54:21,25
55:3,5,11,19,21
55:24 56:6,22
57:12 58:11
**known** 41:17
**kotliar** 3:10 6:2
18:8 19:22,25
20:1,15 21:5,8
24:16,19 29:8,10
29:11 30:9,13
31:13 32:9 33:21
33:21 34:19 35:6
36:2 39:13,17
40:15,20 41:1,4,9
41:17 43:12,12
44:13,13,25 46:18
46:21 53:7,7
58:18,19 59:2
**kotliar's** 47:3
**kyle** 3:8 5:10
21:14 24:22 32:13
32:15 47:4 51:15

**l**

**lack** 38:21,22
**landlord** 14:3
16:8,13 33:14
52:12 56:4
**language** 29:4
**large** 9:1 11:18
14:17 30:16 45:4
**largely** 14:20
47:11
**larger** 6:18,19
8:18 10:8 11:6

15:1,8 16:24 17:2
**largest** 14:13 18:5
**lasts** 43:9
**late** 5:13,24 36:11
**law** 4:1 31:4,8
34:24 41:17,18,21
**lawyer** 46:22
**lead** 5:3 32:20
**lease** 13:10 14:10
16:15 17:19 56:2
56:5
**led** 6:9 8:24 9:2
**ledanski** 2:25 61:3
61:8
**left** 7:7,10 11:16
31:6
**legal** 44:21 61:20
**lender** 38:8,10,17
39:6 40:16,19
41:10,21,24 42:15
42:22 49:1 53:5
53:23 55:17
**lender's** 40:20
41:15,16 53:10
55:12 56:16
**lenders** 54:1
**lending** 58:13
**level** 7:7,10
**levers** 53:21
**levied** 42:9
**liabilities** 14:12
**liability** 28:23
29:2,3 31:2
**liens** 36:25 37:1,1
38:17 58:14
**lifelines** 33:16
**light** 27:22
**likewise** 26:16
**limited** 7:13,17
8:11 17:17
**line** 5:21 22:2
34:20 41:11 47:13
49:13 60:4

**liquidating** 30:6
**liquidation** 30:14
31:7 50:23
**liquidity** 11:17
**list** 14:13,22 15:6
22:25 23:12,16,19
23:21,24 25:19
26:22
**listed** 14:14 15:7
**listen** 6:5
**lists** 28:24
**little** 9:9 10:17
11:18 16:1 17:3
17:15 20:19,24,24
21:16 28:14 37:24
38:16 42:19 48:3
48:7
**lives** 31:21
**living** 31:15,16
**llp** 3:3 4:8
**loan** 39:10,15
40:9,11,14 42:21
42:23 43:8 54:10
54:12,15
**local** 23:7,17
40:21,22 41:24
**locking** 54:11
**long** 10:19 16:5
48:4
**longer** 13:22
38:16
**look** 7:5 32:16
38:5 48:17 56:17
**looking** 14:17,19
15:2 49:22,25
52:6 55:6
**looks** 32:4 46:23
57:22
**loss** 8:22
**lot** 32:5 47:8,17
48:20 50:17 52:7
56:10

**low** 38:14

**m**

**m** 3:10
**mail** 24:4 29:22
36:8
**mailing** 24:5 25:5
**main** 51:5
**maintain** 26:19
**maintained** 23:14
**maintains** 26:24
**majority** 9:25
29:25
**making** 5:16 56:7
57:17
**man** 22:11 57:4
**manage** 53:24
**managed** 9:16
**management** 7:8
**march** 1:15 9:3,18
10:1,11 19:2,8,9
19:12,21,21,21
20:4,5,18,18 30:1
31:14 36:7,8
45:10 55:2,2 56:1
61:25
**marginal** 52:23
**market** 12:17
17:24 39:23 48:18
**marketing** 12:13
17:11,21
**massive** 8:2
**match** 35:12
**math** 53:11
**matrix** 2:3 21:23
22:20 23:7,10,21
60:5
**matter** 1:5 22:20
**matthew** 4:16 6:4
21:25 22:16 50:8
**maximize** 6:23
12:18 52:10 55:7
**maximizes** 18:1

**maximizing**  10:6
37:10 43:21
**mayer**  21:18,20
**mean**  28:5
**means**  11:18
33:16 36:21
**medical**  34:6
**meet**  10:13 37:14
**meeting**  24:4,14
**mention**  49:9
**mentioned**  13:15
14:3 15:15 34:11
37:9 39:1
**mercer**  4:3
**mew**  1:3
**michael**  1:22
**microphone**  52:6
**milestones**  37:5
**million**  7:25 11:25
14:2,13,15 15:18
15:23 16:4 18:6
21:10 36:16,18
40:9 51:17,18
**mindful**  25:11
**mine**  5:7
**mineola**  61:23
**minute**  20:10 32:8
32:10
**mistake**  43:3
**modifying**  36:5
**moment**  8:17
11:22 13:14
**moment's**  46:22
**monday**  12:4,15
56:11 57:19 58:2
58:4,5
**monetized**  11:10
**money**  46:7 52:14
52:16,17,22
**monies**  30:10
**monitoring**  41:6,7
41:14

**month**  13:15
16:24 20:16,17,23
40:24,25 41:2
**months**  39:20
**moore**  3:13 6:3
**morale**  30:20 31:5
32:17
**morning**  22:22
26:10 57:6 58:2,4
**motion**  2:3,5,7,9
10:16 13:9 19:24
21:23 22:20 23:3
24:12 26:9,10,12
26:15 27:13,25
28:9,9,10,17
29:12,18,20 33:5
34:2,14 36:3,6,9
36:10 46:5 56:3
60:5,6,7
**motions**  2:1 13:2
22:5,6
**move**  39:25
**moving**  8:16
28:13 50:6
**multibillion**  8:2
**music**  11:14,21
13:14

**n**

**n**  3:1 5:1 60:1
61:1
**names**  23:13
**navigate**  41:25
**nda**  12:23
**near**  10:19 13:20
43:18 51:18,21
**nearly**  39:24
**necessarily**  47:15
51:3
**necessary**  10:2,13
30:11 31:23 44:18
44:23 51:11 54:7
**need**  7:22 9:25
32:3 35:23 43:4

43:11 44:8 46:18
49:18 50:5,21
51:6,25 53:11,17
55:11 56:20,22
57:10 58:5
**needed**  6:20 17:19
38:2 52:22 54:8
**needing**  57:24
**needs**  50:14
**negotiated**  45:4
**negotiating**  12:1
15:20
**negotiation**  41:13
49:21
**neighborhood**
15:3,18
**nervous**  49:2
**never**  29:4
**nevertheless**
38:25
**new**  1:2,13 3:6,18
4:4,11 8:6 13:10
27:2,16,18 28:12
29:25 40:21
**newly**  8:23
**night**  5:25 6:7
13:8 29:20
**non**  9:14 10:23
15:7 31:3,8 36:23
39:6
**nonbinding**  9:15
**noncash**  38:13
**nonmonetary**
31:5
**note**  7:24 12:20
13:12 14:17,19
21:15,24 37:19
39:4,7,19 44:14
47:5,17 51:4,16
**noteholders**  47:9
**notes**  21:16
**notice**  13:19 16:7
16:12,13,13,17

23:1,3 24:2,4,5,5
24:8,8,13,17 26:7
38:5
**notices**  25:15
**noticing**  23:9 25:7
**number**  6:7 7:3
15:8 19:10,23
20:4,17,19 23:4,5
26:16,17 29:18
36:7 39:18 41:9
45:17 46:23 53:11
55:13
**numbers**  20:20
35:1 47:1
**ny**  1:13 3:6,18 4:4
4:11 61:23

**o**

**o**  1:21 5:1 61:1
**o'clock**  56:20 57:7
57:9
**objection**  22:10
51:3
**objections**  22:8
28:18
**objective**  37:13
**objects**  28:16
49:14
**obligation**  31:22
42:2
**obligations**  10:14
13:13 14:14 29:14
29:15 34:1,5
**obligors**  11:3
**obtain**  36:4 38:23
**obtaining**  37:5
43:14
**obviously**  28:10
44:1 49:18,22
50:4,17 58:12
**occur**  17:14
**odd**  42:19
**offer**  18:6

**offers** 39:2
**office** 5:19 8:6
  25:2,3,14,16,19
  25:24 27:1,9 28:5
  28:8 29:25 33:5,5
  45:25 46:5,5 51:2
  51:2
**okay** 5:8 18:21
  21:1,11 22:15
  25:9,21 28:14,16
  28:17 29:4,9
  33:13,20,21 42:18
  43:3 46:4 47:2
  55:15,17,18 57:9
  57:14
**old** 61:21
**omnibus** 13:9
  57:5
**onerous** 35:22
**open** 5:24 38:25
  57:7
**opening** 27:2
  56:24
**operates** 11:7
**operating** 30:19
  37:3
**operation** 8:3
**operations** 8:18
  9:3
**opinion** 46:3
**oppose** 33:2 50:1
**opposed** 31:11
  49:20
**optimistic** 12:23
**order** 18:11,25
  22:24 24:6,12
  26:13 27:15,24,25
  28:15,19 29:19
  33:22 34:2,9,15
  35:9 36:9,18,20
  37:4 39:5 45:19
  46:9 52:9 54:2
  56:13 58:10,17,20

**orders** 36:3
**ordinary** 29:15,17
  34:4 37:14
**organization** 7:2
  7:7
**organizational**
  7:11
**organized** 53:4
**originated** 8:23
**origination** 8:10
**ortiz** 3:8 5:2,4,9
  5:10 6:16 14:16
  15:12 16:12,23
  17:1,13 18:7,14
  18:20,24 19:8,18
  19:20 21:14,14
  22:18 24:19,21,22
  25:10,18,22 26:2
  30:1 32:14,15
  37:9 38:25 47:3,4
  51:15,15 53:18,19
  54:20 55:18 57:13
  57:16 58:6,10,23
  59:1
**ortiz's** 5:7
**outcome** 13:2
  30:15 43:15
**outside** 38:4 58:14
**outstanding** 40:11
**overlap** 11:6
**overlay** 45:20
**overseen** 37:12
**overview** 6:8
**overy** 4:8 49:16
  49:16
**overy's** 52:14
**owe** 54:18
**owed** 51:19
**owned** 7:8,12
  10:23
**owns** 36:23

**p**

**p** 3:1,1 5:1
**package** 17:9
  34:24 51:19
**page** 7:3,4,16
  46:24 60:4
**paid** 13:10 18:13
  18:14,16,22,22,25
  19:1,2 21:3,20
  31:19,19 40:5
  42:15,16 45:3,11
  50:19 51:22 54:17
  55:1
**papers** 6:12 12:4
  12:14
**paragraph** 28:20
  42:7,20
**parcel** 43:17
**parent** 7:12 9:6,7
  37:18
**parents** 7:14
**part** 10:9 15:13
  17:9 43:13,17
  45:4 52:5 54:23
**particular** 16:22
  18:10 23:10 50:18
**particularly**
  30:20 34:7 39:19
  45:14 52:25 55:13
  58:17
**parties** 12:2,4,19
  15:14 16:4,8,17
  16:18 17:16 18:1
  23:12 28:1 33:1
  34:6 46:1 47:8,10
  49:10 56:8
**parts** 9:10 14:18
**party** 31:2,2
  35:13,17 38:2,9
  47:22,23 49:13
**pass** 25:5 29:8
**passed** 35:13

**path** 48:17
**pause** 13:12 14:6
**pay** 5:16 10:12
  19:5,5,16 20:9,13
  20:21 21:18 28:21
  29:13 30:25 31:15
  31:15 32:2 34:2
  34:25 35:7 37:20
  38:13 40:7,10
  42:3,9 44:6,8,15
  51:9 52:10,16
  57:23
**payable** 38:13
**paychecks** 31:15
**paying** 29:14
  31:11 39:16 45:16
  46:19 50:11 52:19
  54:6
**payment** 19:6
  29:3 30:10 31:22
  34:9 57:18
**payments** 21:2
  31:20 35:3,4,24
  45:7
**payroll** 8:13 14:21
  17:18 35:17 45:2
  57:23
**pdf** 7:4
**penalties** 31:8
  32:5
**penn** 3:5
**people** 8:6 16:10
  20:14,20 25:3
  29:24 44:9 47:18
  52:4 53:4 55:1
**percent** 34:22,25
  36:23 39:11,11,17
  39:24 40:4,6,11
  40:12 48:17
**period** 19:20
  37:15 39:15 45:10
**periods** 35:2

peripheral 6:21
personal 31:20
perspective 53:9
peter 4:2 11:24
  38:8
petition 14:12
  15:7 23:15 27:5
  29:13,23 30:17
  31:22 34:10 36:4
  37:21 44:15
petitioner 12:7
phone 22:12 33:1
  33:13 41:16,19
picking 20:16
piece 6:18 7:15
  13:15
pieces 56:12
pik 40:4,6
pitney 16:15
place 17:22 33:12
  47:19,19,20 48:19
places 34:21
  53:21
plan 6:10,21
  12:14 13:23 35:10
  35:11,14,18 51:7
planning 17:23
plate 43:1
plaza 3:5
pleadings 5:19,21
  14:8 21:25
please 24:11
  27:24 29:4 44:11
plenty 13:18
plugged 12:12
pm 1:16 59:4
pocket 45:12
podium 21:22
  29:8
point 16:20 17:6
  40:3 47:7 49:9
  50:10 57:17

policy 8:22
pool 13:25
pop 47:6
popping 54:19
pops 48:19
portion 19:9
position 11:13
  33:1,7
possession 11:23
  27:17,19
possible 27:20
  30:15 33:9 43:22
possibly 46:8
post 14:4 18:15
  36:4
posted 24:14
posture 51:5
potential 11:15
  14:9 15:11,15
  31:7 37:23 55:1
potentially 9:12
  14:23 15:5 44:5
  45:7 55:24 56:15
practiced 12:7
pre 28:22 29:13
  31:22 34:10 37:21
  44:15
preceding 16:19
prefunded 45:11
preparation
  23:11
prepares 23:12
present 4:15
  55:22
presentation
  33:25
pressure 8:25
  56:10
pressures 9:2
pretty 13:7 43:8
  47:20 48:10
preview 13:1,3

previously 50:11
primarily 8:6
  36:22
primary 6:22 10:4
priming 37:1
principle 42:3
prior 9:8 23:15
  26:3 29:7,23
  30:17
priority 20:21
  34:10 36:21,24
  38:24
probably 32:23
  55:20
problem 25:23
  28:24 32:1 35:20
  49:14 52:21
procedural 22:20
  56:12
procedure 12:4
  24:8
procedures 13:16
  13:17 14:10 23:1
  24:2 56:11
proceed 21:12
proceeded 16:21
  16:23
proceedings 9:9
  59:3 61:4
proceeds 13:24
  37:2 48:5
process 9:11 10:6
  11:11 12:1,1,13
  12:23 13:18 16:19
  16:21 17:20 18:1
  27:2,4 30:4,6 31:7
  32:20 35:15 38:11
  38:15 40:1 43:9
  43:17,25 44:19
  45:5 46:12 47:18
  48:2,4,20 49:7
  50:6 51:22 52:3,8
  52:17,18 56:11

processing 34:5
  35:12
products 8:7
professional
  18:12 45:15 55:8
professionalism
  5:23
professionals
  11:23 12:17
program 29:17
  34:8
programs 7:20
  29:17 34:3,8
proposal 9:16
  17:7
propose 54:1
proposed 18:4
  24:2,11 25:12,15
  27:24 28:15,19
  29:19 33:22 36:8
  36:18,20 37:12
  38:8 39:5,10 42:8
  51:9 53:13 55:17
proposes 24:5
protections 52:2
provide 6:8 10:15
  11:5 13:18 24:8
  37:19 41:11
provided 7:24
  23:18,24 24:4
  25:19 55:23
provides 24:3
provision 42:24
provisions 38:13
public 12:21
purpose 51:8,24
purposes 47:1
  56:7
pursuant 8:14
  12:13 23:7 29:16
  34:2,23 36:16
  37:11

**pursue** 30:3 37:10
43:15
**pursuit** 10:4
**pushed** 35:17
**put** 9:7 15:19 55:4
**putting** 13:25
41:3,8,23
**puzzle** 7:15

**q**

**question** 20:3
35:22 44:4,25
51:10,24 52:15
**questions** 14:7,11
21:12 24:10,11
27:24 34:13 39:3
39:9 49:12
**quick** 6:8,16
21:15 47:18 48:10
56:11
**quickly** 12:15
13:6,8,17,23 38:2
39:25 43:21 47:5
47:20,24 49:6
57:17
**quite** 48:15

**r**

**r** 1:21 3:1 5:1 61:1
**races** 43:19
**rarely** 58:16
**rate** 39:10,16,23
40:9 42:22
**rated** 27:9
**rates** 40:17 47:6
**reached** 9:19
17:16
**read** 6:12,13
42:10,11
**real** 11:10 39:21
49:23 55:1
**realization** 51:22
**realize** 11:18
55:23 56:14

**really** 6:19 13:5
25:1 34:4 43:8
47:22 48:10,25
54:5 57:17
**reason** 32:3 55:25
**reasonable** 53:5
53:15 54:14
**reasons** 47:7
48:14
**receive** 12:22
30:22,23 43:16
**received** 8:14 9:15
**receiving** 58:2
**record** 32:15 39:8
43:13 53:8 61:4
**records** 23:14
**recoveries** 10:6
32:21
**recused** 38:18
**reduce** 8:25
**refer** 7:9,13,17,18
27:18
**reference** 35:3
**referencing** 27:16
**refinance** 40:2
48:4
**refinanced** 38:14
**reformatting**
23:20
**regard** 13:19 22:5
36:14 39:2
**regards** 56:5
**regulators** 27:10
**reimbursed** 19:7
19:17 20:5,14
34:17 45:9 54:22
**reimbursement**
40:23 45:5,13,20
**reimbursements**
40:18
**rejection** 13:9,10
13:11 14:4,5 56:3
56:7

**relate** 16:15
**related** 26:15
27:14 29:13,15
31:2,5 36:6 38:9
**relates** 45:14
**relating** 10:10
33:7
**relation** 53:1
**relatively** 8:3,11
14:14 25:1 38:5
40:2 54:12
**relevant** 6:19 7:22
**relief** 13:4 23:25
26:12,15 27:14,23
28:17 33:18 36:6
49:25 50:5 58:12
**relies** 31:20
**rely** 31:14,15
**remain** 10:14
**remaining** 10:9
10:14 19:3 20:7
20:18 21:9 30:20
31:10 32:18 34:1
36:19 37:20 50:19
54:23,25
**remember** 54:23
**reminding** 52:4
**reminds** 21:17
**rent** 8:13
**repaid** 38:14
39:15 40:4
**repay** 37:8 39:22
**repayment** 41:14
**report** 36:11 37:4
**represented** 38:18
**request** 12:22
22:4,14 33:9
**requested** 27:13
27:23 28:17
**requests** 23:22
**require** 45:20
**required** 23:9
24:24 25:14 44:24

**requirement**
51:13
**requirements**
22:25 23:7,16,21
23:23 27:15
**requires** 8:17
26:18 32:7 34:25
**reserve** 34:11
44:20
**reserves** 35:8
**resolve** 36:12
**respect** 10:7 34:1
46:12 50:9
**respectfully** 22:4
34:14
**respond** 51:16
**restrictive** 44:5
**restructuring** 6:4
11:22 22:1
**result** 25:14 27:5
31:1
**results** 8:22
**resume** 56:20
57:11
**resumed** 56:22
**retain** 23:8
**retained** 18:21
19:6,16,18 20:12
21:3
**retainer** 18:16,17
18:17,19 21:18,20
**retainers** 18:13,14
**retention** 24:25
25:6
**retroactive** 56:6
**revenue** 8:8,11
10:21 11:17 37:24
38:22
**reverse** 7:20,21
**review** 33:5 46:5
46:10
**reviewed** 28:8

revise 33:22 34:16
  44:17,20
revisited 46:15
rhymes 10:23
right 6:12 7:17
  14:16 16:25 18:3
  19:20 21:11 22:8
  25:12 26:6 28:7
  34:11 35:8,19
  39:9 40:8 42:5,18
  43:7,23 44:20
  45:18,22 46:19
  49:12 50:7 52:20
  52:20 53:14 54:3
  54:19 55:15 56:19
  57:5,14 58:1,8,21
rights 16:20
rising 38:16
road 61:21
robust 12:13,18
  17:25 48:2,3
role 8:2
room 43:25 52:1
roughly 7:25
  11:21 14:2 15:23
  16:4
round 58:20
rule 23:8,16,17
  24:3
rules 31:21
ruling 35:20
  44:22
rulings 44:15 60:3
run 13:18 35:17
  52:3
running 12:11
runs 35:14

s

s 3:1 5:1
sale 6:22 9:22
  10:4 11:15,25
  13:19,22 14:24
  15:5,13 16:21

21:19 30:4 32:5
  32:20 37:6,11,16
  38:11,16 39:1
  40:1 43:9 46:12
  48:5,22 51:4
  55:10 56:13
sales 8:5,9 9:11
  15:24 44:19 51:22
  52:3
satisfactory 25:16
satisfy 26:23 37:7
  44:21
saved 9:11
saying 16:3 32:17
  32:18 42:13 55:25
  58:13
says 14:12 28:22
  29:1 42:20
scale 30:16
schedule 32:5
  57:4
scheduling 36:5
scheme 8:12
sealed 30:3
second 7:9,10
  20:17 24:1 57:16
  58:2
section 2:7 24:4
  26:10,14,18 27:12
  60:6
secured 11:23
  26:21 36:4,21
see 6:11 14:6 16:9
  18:4 24:24 42:1
  44:24 47:25 48:17
  54:13
seek 12:15 13:21
  26:14 27:7 34:11
  35:8
seeking 13:7
  19:15 20:13,21
  21:2 34:1 35:4,6
  35:14

seeks 23:6 24:1
  27:6,13 36:15
seen 7:5 17:7
  25:11 39:19 40:14
  56:10
segal 3:3,3 5:10
  5:10 20:1,1 21:15
  21:15 22:23,23
  25:4 26:11,11
  29:11,11 32:15,15
segues 55:19
sell 9:12 48:11
  49:6
selling 8:7
send 25:2,5,14
sense 44:4,10,12
  55:19
sent 56:16
separate 11:7
  17:11
separated 38:18
served 12:8 29:20
  36:7
service 11:2 23:4
  26:16
services 8:7,14
  9:25 10:11 11:5
  19:13 37:21 45:1
servicing 25:20
serving 12:4 26:5
set 20:10 56:10
setting 56:12
severance 35:3,7
severe 8:19
shareholder 38:8
  38:10
sherman 12:7
shock 39:18
short 32:5 38:5
shortly 9:15 13:1
show 35:1
side 58:4

sign 43:18
significant 10:22
  43:9 47:21 48:1
simple 46:24
simply 25:4 35:12
sits 14:20
situation 11:20
  48:16 50:18
situations 28:20
size 15:11 40:14
  40:14 49:5 52:24
  54:11
slightly 7:16
small 8:3 14:5,14
  25:1 54:12
smaller 16:14
  40:22 53:20
smattering 14:5
  52:12
soliciting 33:10
solutions 11:1
  61:20
somebody 55:3
somebody's 52:1
somewhat 6:21
  49:22
sonya 2:25 61:3,8
sorry 28:4
sort 42:25 43:24
  43:24
sought 38:6
sounds 54:13
source 9:24 43:14
sources 38:2
southern 1:2
  28:12
spare 7:23
speak 11:14 32:9
  33:3,18 46:24
  53:9
speaking 28:3
  47:12

[special - time]                                                                        Page 16

special   55:10
specific   17:7
specifically   7:3
    11:13 31:9 46:11
spend   52:17
spoke   26:4
sprint   12:12
ssa   34:9
stage   33:10 43:25
stake   33:15 44:11
stalking   12:2,5
    15:15,20 43:18
    48:13 49:4
standalone   17:12
standards   44:21
start   17:20 55:6
started   17:22
starting   11:12
stated   49:12
statements   22:14
    29:8
states   1:1,11 3:15
    3:16 8:5 29:24
    30:7
statutory   23:23
stay   36:5 58:11
steps   6:9 10:18
    12:24 38:15 56:14
sterling   12:8
sticker   39:18
sticky   21:16
stimulus   34:24
stopped   11:21
    13:14
stops   11:14
story   6:18,19
street   3:17 4:3
stretch   48:6
stretching   47:25
stretto   25:4,22
strictly   7:22
strong   11:9 33:6

structure   43:8
    47:12
structured   48:24
    52:7
structuring   10:25
stuck   46:17
stuff   7:21 25:3,4
subject   20:21
    27:10 44:14 46:10
submit   33:23
    58:20
submits   24:7
    27:22
submitted   44:17
subsequently   9:6
subsidiary   7:8,12
    9:14 10:23
substantial   10:1
    24:6 37:24 38:10
    38:22
substantially   30:2
substantive   39:7
success   38:11
successful   13:24
    17:25 52:13
sufficient   57:19
suite   3:17 34:3
    61:22
sunday   12:6
super   38:24 49:2
supervision   27:10
supplement   54:9
    54:16
support   8:24 22:6
    33:18
supported   21:25
supposed   31:23
sure   7:4 18:8 20:2
    32:14 41:2 42:7
    43:10 44:8 46:25
    53:10 54:10 57:17
surety   26:22

surrounding
    50:17
suspense   58:9
swift   13:18

t

t   61:1,1
take   15:2 28:10
    28:14 29:5 42:4
    57:24
taken   44:2
talk   20:10 53:16
    54:3 56:17
targets   15:16 16:5
tax   21:19
taxes   31:3 42:9,12
    42:13,14
technically   14:3
telephonically   3:8
    3:9,10,11,12,13
    3:20 4:6,13,15
tell   44:10,11
    54:15
tenacity   10:24
    17:8
tension   48:8
term   10:19 13:20
    13:22 43:19 49:21
terminate   58:13
terminated   10:1
    18:6 19:3 20:9
    21:6,9 30:1,11,22
    31:10,25 32:2
    33:7 34:7 35:21
    35:24 44:6,16
    45:8 46:7,19
    50:15 54:6
termination   19:10
    30:16,22
terms   37:21 46:11
    46:14,16 53:17
    58:9,10
testimony   22:2

tests   26:23
thank   5:9,12
    21:14 22:18,21
    26:2,8 29:6 57:21
    58:8,23,25 59:1,2
that'd   57:8
theoretically
    57:20
thereof   26:14 27:7
thing   21:15 32:19
    47:17
things   12:25 13:3
    14:7,21 15:23
    27:15 28:25 44:1
    44:3 47:5,10,16
    55:22
think   20:3,11
    21:11 24:13 32:17
    32:23 33:2 35:19
    39:22,25 43:13
    44:12 45:16 46:6
    47:13,16 48:18
    50:13,18 51:13,25
    52:21 53:5,9,20
    54:25 56:7 58:8
    58:10
thinks   33:19
third   7:7 31:2
    34:6 35:13,17
    38:1
thornton   9:5
thousand   11:16
thursday   56:1
tied   5:15 35:25
tight   46:11 57:22
time   5:13,16,22
    17:18 19:2 22:4
    26:13 27:11 28:14
    30:23 31:1,14
    33:12 39:16 41:6
    43:20 46:15 48:10
    48:23 49:23 50:3
    53:23 55:23,24

58:24
**timeline** 6:11
  56:13
**times** 5:24 13:16
**timing** 45:1 49:8
**tiny** 14:4
**tired** 42:11
**tocks** 4:16 6:4
  22:1,2,16 50:8,8
**today** 5:24 6:1,9
  13:6 19:15 20:13
  22:6 28:9 29:22
  30:12 31:11 32:7
  33:9,19 35:5,6
  43:10 44:6,7,9
  45:18,21 47:15
  51:9 52:16,23
  53:2 57:15 58:21
**today's** 13:2,4
  16:7
**togut** 3:3,9 5:3,6
  5:10 6:3 18:14,17
  20:1 21:15 22:23
  25:4 26:3,3,11
  29:11 32:8,13,15
  49:23 51:16 56:23
  56:23 57:1,5,8
  58:19
**tone** 32:22
**top** 14:22
**total** 41:13,22
**tractor** 49:3
**transaction** 9:22
  15:25 16:9,24
  17:2 37:11 43:1
**transactions** 8:11
  10:7 11:3 15:6
**transcribed** 2:25
**transcript** 61:4
**trial** 5:15
**trouble** 31:24
**troublesome**
  52:25

**true** 61:4
**truly** 11:6
**trust** 4:2 11:24
  38:9
**trustee** 3:16 5:19
  26:22 36:12
**trustee's** 27:1,4,9
  27:15 28:5 33:5
  36:13 45:25 46:5
  51:2
**truth** 22:3
**try** 5:16 6:16 33:8
  58:1
**trying** 15:24 20:8
  20:9,10 48:22
**turn** 7:1
**turning** 14:7
**twenty** 39:17
**two** 13:8 23:1
  34:21 35:1,2 45:6
  57:7,9
**type** 16:16
**typical** 47:9

**u**

**u.s.** 1:23 5:19 8:1
  9:13,20 26:20,22
  27:1,4,8,15 28:5
  33:5 36:12,13
  42:23 45:25 46:5
  51:2
**uk** 7:8,17 9:5
  10:10 14:1 17:4
  30:5 50:22
**ultimate** 9:7 38:7
  38:9 52:18
**ultimately** 6:10,20
  9:2 14:18 15:9
  17:10 32:19 52:8
  52:13 54:22 55:3
  55:21 57:24
**uncertainty** 50:17
**understand** 5:14
  8:9 16:10 17:5,8

19:4 20:2,9,12
  28:12 31:18 32:16
  33:6 40:20 41:10
  42:7 49:18 51:9
  51:12 54:5
**understanding**
  18:11 31:25 46:10
**understands** 26:4
**understood** 29:6
  54:20 58:18
**undertake** 50:21
**undertaking**
  26:21
**undertook** 9:12
**unduly** 23:22
**unencumbered**
  36:22
**unfortunately**
  5:20 9:18
**unique** 11:9
**united** 1:1,11 3:15
  3:16 8:5 30:6
**universe** 15:1,3
  16:2 47:25 52:1
**unknown** 1:25
**unsecured** 13:25
  38:24,24 39:21
**unsolicited** 12:22
**unusual** 33:9 51:5
**upload** 23:9
**upstanding** 11:2
**use** 37:9 56:16
**usual** 34:3 36:21
  36:24

**v**

**vaccinated** 58:7
**vaccines** 58:3
**value** 6:23 11:10
  12:19 15:22 18:1
  37:10 43:21 52:10
**varick** 3:17
**variety** 50:20

**various** 53:21
**vast** 29:25
**vehicle** 8:4 30:18
**veritext** 61:20
**verizon** 16:15
**version** 23:18
**view** 13:2
**views** 55:21
**virtual** 6:1 21:16
**vito** 26:4
**volunteer** 33:17
  46:3

**w**

**wage's** 10:16
**wagers** 18:11
**wages** 2:5 10:15
  18:25 19:12,24
  29:13,14 30:23,25
  34:4,10 60:7
**wait** 33:2 45:12
  46:1 57:20
**waiting** 18:24
  44:7
**waive** 23:23
**waived** 15:21,23
**waiver** 23:6 26:14
  27:7,14
**waiving** 22:25
**want** 15:19 20:2
  20:12 32:2 33:17
  33:18 35:21 46:2
  47:7 48:7 50:4
  53:16 55:22 57:10
  57:16 58:16
**wanted** 5:6 45:25
  50:9 54:15
**wants** 33:15 42:23
  45:22
**warranted** 27:23
**way** 42:19 48:18
  48:24 49:23 54:13
**we've** 12:21 17:6
  17:22 25:3,18,19

**[we've - zooming]**

32:22 39:19 53:25
55:9,9,21
**wednesday**  55:25
55:25 56:1,14,20
56:22,25 57:10,11
57:20
**week**  5:25 6:10
11:21 12:25 14:9
17:15
**weekend**  58:24
**weeks**  17:14 30:19
37:15 44:19 45:14
45:19 46:8 47:21
49:19 51:14
**weil**  12:8
**welcome**  39:2
**wherewithal**
47:14
**wholly**  7:8,12
10:22
**wiles**  1:22
**willing**  40:16 46:1
52:1 55:4,4
**willingness**  13:6
**wind**  30:4
**wish**  33:3
**wishes**  22:13
**withdrawal**  8:24
**withheld**  35:16
**withholdings**  34:5
**witness**  22:13
**worded**  42:19
**work**  11:21 15:24
30:16 50:12,16,20
55:2,12
**worked**  5:18
11:22 19:2 30:24
30:25 31:1,14
45:5
**workers**  34:7
**workforce**  34:22
**working**  5:24 11:1
36:11 50:22

**worthwhile**  48:6
**wrapped**  39:14
**wrong**  18:8 44:9
46:13

| x |
|---|

**x**  1:4,10 60:1
**xerox**  16:15

| y |
|---|

**yeah**  5:6 6:16
52:13 57:1
**year**  8:18
**years**  16:6
**yesterday**  12:9
19:14
**york**  1:2,13 3:6,18
4:4,11 8:6 13:10
28:12 29:25 40:21

| z |
|---|

**zipes**  3:20 5:20
28:2,4,4,8 33:4,4
45:24,24 46:3,4,4
51:1,1
**zooming**  8:1,17
9:20