## Exhibit D

**Redline comparison of the Plan and the Solicitation Plan**

**NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST.  THE PLAN IS SUBJECT TO BANKRUPTCY COURT'S APPROVAL AND CERTAIN OTHER CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN MAY NOT BEARE BEING SOLICITED UNTILPURSUANT TO THE ACCOMPNAYING DISCLOSURE STATEMENT, WHICH THE BANKRUPTCY COURT HAS APPROVED AN ACCOMPANYING DISCLOSURE STATEMENT IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE.ON A PROVISIONAL BASIS, SUBJECT TO FINAL APPROVAL AT THE COMBINED HEARING.  ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.:  21-10561 (MEW) |
| Debtor.[1] | |

## CHAPTER 11 PLAN OF LIQUIDATION FOR GREENSILL CAPITAL INC.

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Albert Togut
Kyle J. Ortiz
Bryan M. Kotliar
Amanda C. Glaubach

*Attorneys for the Debtor and*
*Debtor in Possession*

Dated:    August 27September 24, 2021
             New York, New York

---

[1]    The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ................................1

ARTICLE II UNCLASSIFIED CLAIMS .................................................................................17

2.1    FINACITY SALE ORDER SUPERPRIORITY CLAIMS .............................................18

2.2    ADMINISTRATIVE CLAIMS. .......................................................................................18

2.3    PAYMENT OF U.S. TRUSTEE FEES .............................................................................18

2.4    PROFESSIONAL FEE CLAIMS .....................................................................................18

2.5    PRIORITY TAX CLAIMS ...............................................................................................19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..20

3.1    CLASSIFICATION IN GENERAL .................................................................................20

3.2    SUMMARY OF CLASSIFICATION ..............................................................................20

3.3    TREATMENT OF CLASSES ..........................................................................................20

3.4    ALTERNATIVE TREATMENT ......................................................................................22

3.5    SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS .............................23

3.6    SUBORDINATED CLAIMS. ...........................................................................................23

3.7    CONTROVERSY CONCERNING IMPAIRMENT. .....................................................23

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN .........................................23

4.1    ACCEPTANCE BY CLASS ENTITLED TO VOTE ....................................................23

4.2    PRESUMED ACCEPTANCE OF THE PLAN ..............................................................23

4.3    ELIMINATION OF CLASSES .........................................................................................23

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN .....................................24

5.1    PLAN OBJECTIVE.........................................................................................24

5.2    ALLOWANCE AND CLASSIFICATION OF GCUK CLAIMS; GCUK CLAIM
CONTRIBUTION.......................................................................................................24

5.3    GLOBAL SETTLEMENT.. .............................................................................24

5.4    INTELLECTUAL PROPERTY ASSIGNMENT. ...........................................25

5.5    VESTING OF ASSETS. ...................................................................................25

5.6    CONTINUED CORPORATE EXISTENCE OF THE DEBTOR; TERMINATION
OF CURRENT OFFICERS, DIRECTORS, EMPLOYEES AND PROFESSIONALS...........25

5.7    LIQUIDATION TRUST...................................................................................26

5.8    EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ...........................32

5.9    EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES. 32

5.10   FURTHER AUTHORIZATION. ....................................................................33

ARTICLE VI DISTRIBUTIONS.............................................................................33

6.1    DISBURSING AGENT. .................................................................................33

6.2    NO POSTPETITION INTEREST ON CLAIMS.. .........................................33

6.3    DATE OF DISTRIBUTIONS..........................................................................33

6.4    DISTRIBUTION RECORD DATE ................................................................33

6.5    BOOKS AND RECORDS...............................................................................33

6.6    DELIVERY OF DISTRIBUTIONS................................................................34

6.7    REVERSION ...................................................................................................34

6.8    SATISFACTION OF CLAIMS.......................................................................34

6.9     MANNER OF PAYMENT UNDER PLAN ...................................................................34

6.10    DE MINIMIS CASH DISTRIBUTIONS ........................................................................34

6.11    NO DISTRIBUTION IN EXCESS OF AMOUNT OF ALLOWED CLAIM .............34

6.12    ALLOCATION OF DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST35

6.13    SETOFFS AND RECOUPMENTS ..................................................................................35

6.14    RIGHTS AND POWERS OF DISBURSING AGENT ...................................................35

6.15    WITHHOLDING AND REPORTING REQUIREMENTS ........................................35

6.16    CLAIMS PAID OR PAYABLE BY THIRD PARTIES .................................................36

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ......................................................37

7.1     ALLOWANCE OF CLAIMS .........................................................................................37

7.2     OBJECTIONS TO CLAIMS ..........................................................................................37

7.3     ESTIMATION OF CLAIMS ..........................................................................................38

7.4     NO DISTRIBUTIONS PENDING ALLOWANCE ......................................................38

7.5     RESOLUTION OF CLAIMS ..........................................................................................38

7.6     DISALLOWED CLAIMS ...............................................................................................39

7.7     NO RECOURSE ..............................................................................................................39

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ....................................................................................................................................39

8.1     REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........39

8.2     INDEMNIFICATION .....................................................................................................40

8.3     CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES. ...........................................................................................................40

8.4      RESERVATION OF RIGHTS. ......................................................................40

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ......................................................................41

9.1      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE......................................41

9.2      WAIVER OF CONDITIONS PRECEDENT .................................................41

ARTICLE X EFFECT OF PLAN CONFIRMATION ................................................42

10.1     BINDING EFFECT...............................................................................42

10.2     RELEASES AND RELATED MATTERS .......................................................42

10.3     INJUNCTION.....................................................................................44

10.4     EXCULPATION AND LIMITATION OF LIABILITY................................................45

10.5     NO DISCHARGE...............................................................................45

10.6     TERM OF BANKRUPTCY INJUNCTION OR STAYS.............................................45

10.7     POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS .................45

ARTICLE XI RETENTION OF JURISDICTION.....................................................46

11.1     RETENTION OF JURISDICTION. ...........................................................46

11.2     NO LIMITATION ON ENFORCEMENT BY SEC OR THE U.S. ATTORNEY'S
OFFICE ON NON-DEBTORS. ..........................................................................47

ARTICLE XII MISCELLANEOUS PROVISIONS ...................................................48

12.1     PAYMENT OF STATUTORY FEES ...........................................................48

12.2     DISSOLUTION OF THE CREDITORS' COMMITTEE. ............................................48

12.3     AMENDMENT OR MODIFICATION OF THE PLAN.............................................48

12.4     SUBSTANTIAL CONSUMMATION...........................................................48

12.5     SEVERABILITY OF PLAN PROVISIONS.....................................................................48

12.6     SUCCESSORS AND ASSIGNS ...................................................................................49

12.7     REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION .........................49

12.8     GOVERNING LAW .....................................................................................................49

12.9     TIME ............................................................................................................................49

12.10     IMMEDIATE BINDING EFFECT .............................................................................49

12.11     ENTIRE AGREEMENT...............................................................................................50

12.12     NOTICE........................................................................................................................50

ARTICLE XIII CONFIRMATION REQUEST .........................................................................51

## INTRODUCTION

Greensill Capital Inc. as debtor and debtor in possession in the above-captioned case, proposes the following plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtor.  Subject to Section 12.7 of the Plan, certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation (as such term is defined in section 1101 of the Bankruptcy Code).

Holders of Claims and Interests should refer to the Disclosure Statement for information concerning, among other things, (a) the Debtor's history, assets, and liabilities, and (b) the Plan and related matters.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCE OR REJECTIONS OF THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    ***2019 Acquisition*** means the Debtor's acquisition of the outstanding equity interest in Finacity Corporation in 2019 pursuant to that certain Stock Purchase Agreement, dated as of June 10, 2019 (as modified by that certain Letter Agreement, dated December 20, 2019) and all agreements or obligations incurred thereby.

1.2    ***2019 Acquisition Causes of Action*** means all legal, equitable, and beneficial right, under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, other than the Katz Parties, including, without limitation, claims for fraudulent transfer, preference or otherwise under chapter 5 of the Bankruptcy Code or applicable state law in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfers of value resulting from, the 2019 Acquisition.

1.3    ***Accrued Professional Compensation*** means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying

any retainer that has been provided by the Debtor to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.4    ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to:  (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estate and operating the business of the Debtors, including for wages, salaries or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Estate;  (b) Professional Fee Claims;  (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code;  and (d) all other Claims entitled to Administrative Claim status pursuant to an order of the Bankruptcy Court.

1.5    ***Administrative Claims Bar Date*** shall have the meaning set forth in Section 2.2.

1.6    ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.7    ***Allowed*** means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed, and as to which the Debtor, Creditors' Committee, Liquidation Trust or other parties in interest have not filed an objection by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date or Administrative Claims Bar Date, and as to which the Debtor, Creditors' Committee, Liquidation Trust, or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court;  *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been timely filed and any Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is not considered Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.8     ***Amended Bylaws*** means the amended or amended and restated bylaws for the Debtor, a substantially final form of which will be contained in the Plan Supplement to the extent it contains material changes to the Debtor's existing bylaws.

1.9     ***Amended Certificate of Incorporation*** means the amended or amended and restated certificate of incorporation for the Debtor, a substantially final form of which will be contained in the Plan Supplement to the extent it contains material changes to the Debtor's existing certificate of incorporation.

1.10     ***Assumed Contracts*** means those Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan and set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement.

1.11     ***Australian Liquidators*** means Matthew Byrnes, Philip Campbell-Wilson and Michael McCann of Grant Thornton Australia Limited of Level 22, Tower 5 Collins Square 727 Collins Street Melbourne VIC 3008, Australia, in their capacity as joint liquidators of Greensill Australia and without personal liability.

1.12     ***Avoidance Action*** means any claim or Cause of Action of the Estate to recover or avoid transfers or to avoid liens under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including but not limited to sections 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of the Debtor's or the Estate's claim, counterclaim, setoff, or offset rights, regardless of whether or not such action has been commenced prior to the Effective Date.

1.13     ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject the Plan and on which the Holder is to indicate, among other things, acceptance or rejection of the Plan.

1.14     ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

1.15     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York.

1.16     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.17     ***Bar Date*** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any

3

applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) September 20, 2019 at 5:00 p.m. (prevailing Eastern Time) for Governmental Units; and (e) the Administrative Claims Bar Date.

1.18    ***Bar Date Order*** means the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 253].

1.19    ***Beneficiaries*** means the Holders of Claims and Interests who are the beneficiaries of the Liquidation Trust.

1.20    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.21    ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.22    ***Cause of Action*** means any action, proceeding, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, setoff, recoupment, cross-claim, counterclaim, third-party claim, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. "*Cause of Action*" includes: (a) any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

1.23    ***Chapter 11 Case*** means the bankruptcy case of the Debtor pending under case number 21-10561 (MEW) in the Bankruptcy Court.

1.24    ***Claim*** means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.25    ***Claims Objection Deadline*** means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim;  and (c) such other objection deadline as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.  For the avoidance of doubt, the Claims Objection Deadline may be extended one

or more times by the Bankruptcy Court upon the request of the Debtor or the Liquidation Trust, as applicable.

1.26    ***Claims Register*** means the official register of Claims maintained by the clerk of the Bankruptcy Court.

1.27    ***Class*** means a category of Claims or Interests, as described in Article III hereof.

1.28    ***Confirmation*** means the confirmation of the Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.29    ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.30    ***Confirmation Hearing*** means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

1.31    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the UK Administrators with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.32    ***Creditors' Committee*** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code.

1.33    ***Cure Amount*** means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, pursuant to Bankruptcy Code section 365, arising under any Assumed Contract.

1.34    ***D&O Policy*** means any and all insurance policies and contracts for directors' and officers' liability maintained by the Debtor, including any directors' and officers' "tail policy", including, but not limited to, that certain $5,000,000 Axis Management & Entity Liability Insurance Policy, Policy No. P-001-000412753-01.

1.35    ***Debtor*** means Greensill Capital Inc.

1.36    ***Disallowed*** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed;  unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.37    ***Disbursing Agent*** means the Liquidation Trustee or the Entity or Entities selected by the Liquidation Trustee to make or facilitate Distributions contemplated under the Plan after the Effective Date.

1.38    ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as amended, modified, or supplemented from time to time.

1.39    ***Disputed Claim*** means (a) any Claim as to which the Debtor, Creditors' Committee, Liquidation Trust or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Creditors' Committee, Liquidation Trust, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order;  (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed;  (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed;  or (d) any Claim prior to it having become an Allowed Claim.

1.40    ***Distribution*** means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

1.41    ***Distribution Date*** means a date or dates, including the Initial Distribution Date as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.42    ***Distribution Record Date*** means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to received Distributions, which date shall be the first day of the Confirmation Hearing or such other date as designated in a Final Order of the Bankruptcy Court.

1.43    ***Effective Date*** means the Business Day the Plan becomes effective as provided in Article IX hereof.

1.44    ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.45    ***Estate*** means the chapter 11 estate of the Debtor created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.46    ***Exchange Act*** means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

1.47    ***Exculpated Parties*** means the following parties in their respective capacities as such: (a) the Debtor; (b) the Creditors' Committee and its members (each in their capacities as such); and (c) with respect to each of the foregoing persons in clauses (a) and (b), each of their Related Parties.

1.48    ***Executory Contract*** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.49    ***Exhibit*** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.50     ***Federal Judgment Rate*** means the federal judgment rate, 28 U.S.C. § 1961, in effect as of the Petition Date, compounded annually.

1.51     ***Finacity Sale*** means the Debtor's sale of its 100% ownership interest in Finacity Corporation to the Purchaser pursuant to the Finacity Sale Documents as approved by the Finacity Sale Order.

1.52     ***Finacity Sale Documents*** means that certain Stock Sale Agreement, among the Debtor, Finacity Corporation, and the Purchaser, a copy of which is attached as Exhibit A to the Finacity Sale Order (together with the schedules and/or exhibits and all related documents, including the Finacity Settlement Agreement), as they may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

1.53     ***Finacity Sale Indemnity Obligations*** means the requirement under section 2(g) of the Finacity Settlement Agreement for the Debtor and the Liquidation Trust to indemnify the Purchaser, Finacity Corporation, and the Katz Parties in accordance with section 2(g) of the Finacity Settlement Agreement, which obligations the Liquidation Trust may satisfy at any time in accordance with the Finacity Sale Documents, and upon such satisfaction, any Finacity Sale Reserve Obligations or Finacity Sale Order Superpriority Claims with respect to such satisfied Finacity Sale Indemnity Obligation shall be immediately satisfied, terminated, discharged, and expunged without further order of the Court.

1.54     ***Finacity Sale Order*** means that certain order of the Bankruptcy Court, entered on August 18, 2021 [Docket No. 236] approving the Finacity Sale.

1.55     ***Finacity Sale Order Superpriority Claims*** means the Finacity Superpriority Claim and the Katz Superpriority Claim.

1.56     ***Finacity Sale Reserve Obligations*** means the requirement under paragraph 4 of the Finacity Sale Order for the Debtor and the Liquidation Trust to hold any proceeds of a 2019 Acquisition Cause of Action in trust on account of Finacity Sale Indemnity Obligations arising from such 2019 Acquisition Cause of Action until the Finacity Sale Order Superpriority Claim for such Finacity Sale Indemnity Obligation, if any, is asserted and resolved or as may otherwise be agreed to by the Debtor or the Liquidation Trust, as applicable, and Finacity Corporation or the Katz Parties, as applicable, or, alternatively, until Finacity Corporation and the Katz Parties receive releases, in form and substance satisfactory to Finacity Corporation and the Katz Parties (respectively) that eliminate such Finacity Sale Indemnity Obligation.

1.57     ***Finacity Settlement Agreement*** means that certain Settlement Agreement among the Debtor, GCUK, GCMC, the UK Administrators, Greensill Australia, the Australian Liquidators, Finacity Corporation, Neely Funding LLC, and the Katz Parties, a copy of which is attached as Exhibit B to the Finacity Sale Order.

1.58     ***Finacity Superpriority Claim*** has the meaning set forth in the Finacity Sale Order.

1.59    ***Final Order*** means an order or judgment, the operation or effect of
which has not been reversed, stayed, modified, or amended, and as to which order or
judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to
appeal, seek certiorari, or request re-argument or further review or rehearing has
expired and no appeal, petition for certiorari, or request for re-argument or further
review or rehearing has been timely filed, or (b) any appeal that has been or may be
taken or any petition for certiorari or request for re-argument, further review, or
rehearing that has been or may be filed has been resolved by the highest court to which
the order or judgment was appealed, from which certiorari was sought, or to which the
request was made, and no further appeal, petition for certiorari, or request for
re-argument, further review, or rehearing has been or can be taken or granted.

1.60    ***GCMC*** means Greensill Capital Management (UK) Limited (in
administration), a United Kingdom corporation acting by the UK Administrators.

1.61    ***GCUK*** means Greensill Capital (UK) Limited (in administration), a
United Kingdom corporation acting by the UK Administrators.

1.62    ***GCUK Claim Contribution*** means GCUK's contribution to the
Debtor of all legal, equitable, and beneficial right under bankruptcy and non-
bankruptcy law, to assert any and all claims and causes of action against the
shareholders who sold stock of Finacity Corporation to the Debtor and terminated
options pursuant to the 2019 Acquisition, including, without limitation, Avoidance
Actions in relation to the 2019 Acquisition and/or any transactions consummated
pursuant to, or transfer of value resulting from, the 2019 Acquisition.

1.63    ***GCUK / GCMC Parties*** means the following parties in their
respective capacities as such:  (a) GCUK, (b) GCMC, and (c) the UK Administrators.

1.64    ***GCUK / GCMC Release Requirements*** means that the GCUK /
GCMC Parties shall be included as released parties for purposes of Sections 10.2(a) and
10.2(b) only to the extent that the GCUK / GCMC Parties (a) vote to accept the Plan
(solely to the extent such party is entitled to vote) (b) support, act in good faith, and take
all reasonable actions necessary to consummate the Plan and implement the terms of
the Global Settlement (it being understood that the GCUK / GCMC Parties shall be
under no obligation to incur any expense or liability in connection therewith, except to
the extent expressly set forth in the Global Settlement), or (c) do not take any action,
directly or indirectly, that could reasonably be expected to materially delay, interfere
with or impede the confirmation or consummation of the Plan.

1.65    ***GCUK Intercompany Loan*** means that certain Call Account Loan
Agreement, dated January 1, 2019, between the Debtor as borrower, and GCUK, as
lender.

1.66    ***GCUK Intellectual Property*** means any and all of the Debtor's
rights, title and interest in the following (together with all related software and
applications), each (other than Greensill Finance SAP) as more fully described in the
*Debtors' Motion for an Order Authorizing and Directing the Debtor to Enter into Intellectual
Property Assignment Agreement,* filed on April 21, 2021 [Docket No. 62]: (a) Accounts

Receivable Module (ARM); (b) Greensill Payments Engine (GPE); (c) New Core System
(NCS); (d) Greensill Trading Module (GTM); (e) Client File Converter (CFC); (f)
Allocation Tool; (g) Decision Engine; (h) Shared Services; (i) Verdi (completed or in
development); and (j) Greensill Finance SAP.

1.67    ***GCUK Intellectual Property Assignment Agreement*** means that
certain Assignment of Intellectual Property Agreement between the Debtor and GCUK,
in form and substance reasonably acceptable to the Debtor, the Creditors' Committee,
GCUK and the UK Administrators, a copy of which shall be included in the Plan
Supplement.

1.68    ***GCUK L/C Claim*** means Proof of Claim numbered 50 (as amended
or modified from time to time) filed by GCUK asserting amounts arising under the
debiting of an account in connection with a letter of credit provided as security for the
Debtor's obligations under its former corporate headquarters.

1.69    ***General Bar Date*** means June 14, 2021 at 5:00 p.m. (prevailing
Eastern Time), the date by which each Holder of a Claim against the Debtor must have
filed a Proof of Claim unless such Claim falls within one of the exceptions set forth in
the Bar Date Order.

1.70    ***General Unsecured Claim*** means any Claim against the Debtor
other than an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an
Other Secured Claim, an Other Priority Claim, a Priority Wage Claim, or the
Subordinated GCUK Intercompany Loan Claim.  For the avoidance of doubt, the GCUK
L/C Claim shall be classified and allowed as a Class 5 General Unsecured Claim.

1.71    ***GCUK Services Agreement*** means that certain Services
Agreement, dated March 25, 2021 (as amended and restated on June 11, 2021 and as
may be further amended, modified, restated and/or supplemented from time to time).

1.72    ***Global Settlement*** means the settlements and compromises set
forth in that certain Addendum to Sale Order, dated August 12, 2021, by among the
Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators, a copy
of which is attached as Exhibit C to the Finacity Sale Order.

1.73    ***Governmental Unit*** has the meaning set forth in section 101(27) of
the Bankruptcy Code.

1.74    ***Greensill Australia*** means Greensill Capital Pty Limited (in
liquidation) (receivers and managers appointed), an Australian proprietary limited
company, acting by the Australian Liquidators.

1.75    ***Holder*** means a holder of a Claim or Interest, as applicable.

1.76    ***Impaired*** means, when used in reference to a Claim or Interest, a
Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy
Code.

1.77    ***Initial Distribution Date*** means the date or dates on which the Disbursing Agent makes the first distribution to Holders of Allowed Claims pursuant to the terms of the Plan.

1.78    ***Interest*** means any of the equity interests in the Debtor.

1.79    ***IRC*** means the Internal Revenue Code of 1986, as now in effect or hereafter amended.

1.80    ***IRS*** means the Internal Revenue Service.

1.81    ***Katz Parties*** means Adrian Katz, Danalyn Katz (a/k/a Dana Katz), and the Katz Family Trust.

1.82    ***Katz Superpriority Claim*** has the meaning set forth in the Finacity Sale Order.

1.83    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.84    ***Liquidation Trust*** means the trust established pursuant to the Plan and in accordance with the Confirmation Order and Liquidation Trust Agreement.

1.85    ***Liquidation Trust Agreement*** means the trust agreement that documents the powers, duties, and responsibilities of the Liquidation Trust, and which document will be materially consistent with this Chapter 11 Plan and in form and substance reasonably acceptable to the UK Administrators and satisfactory to the Debtor and the Creditors' Committee, as such agreement may be amended from time to time in accordance with its terms.

1.86    ***Liquidation Trust Assets*** means the Debtor's Retained Assets, including, but not limited to, (i) the remaining proceeds of all sales of the Debtor's assets, including the Finacity Sale, after the payment of all allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (ii) all Cash remaining in the Estate after the payment of allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (iii) all Retained Causes of Action; (iv) all rights to tax refunds; (v) all marketable and unsold hard assets of the Debtor, including but not limited to artwork and FFE (but excluding the GCUK Intellectual Property); and (vi) all rights with respect to the insurance policies of the Debtor, including the D&O Policies, and the right to recover therefrom, all of which shall be transferred or assigned to the Liquidation Trust on the Effective Date, free and clear of any liens or claims that might otherwise have existed in favor of any party and (b) Liquidation Trust Proceeds, but excluding the Professional Fee Escrow Account (and the funds therein) and the Plan Reserve Account (and the funds therein) until satisfaction or resolution of Professional Fee Claims and Plan Reserve Obligations, respectively, at which point the remaining funds in the Professional Fee Escrow Account, if any, and the Plan Reserve Account, if any, shall be become Liquidation Trust Assets.

1.87 ***Liquidation Trust Funding Amount*** means an amount equal to (a) the Liquidation Trust Minimum Cash Amount plus (b) all of the Debtor's Cash on hand as of the Effective Date following payments required to be made on the Effective Date on account of all Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, Priority Wage Claims, U.S. Trustee Fees, and to fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount and the Plan Reserve Account with the Plan Reserve ~~Amout~~Amount; provided that if the Debtor's Cash on hand as of the Effective Date following the payments set forth in the foregoing clause (b) shall be insufficient to satisfy the Liquidation Trust Minimum Cash Amount, the Professional Fee Escrow Amount shall be reduced accordingly on a Pro Rata basis to guarantee the Liquidation Trust Minimum Cash Amount.

1.88 ***Liquidation Trust Minimum Cash Amount*** means $250,000.

1.89 ***Liquidation Trust GCMC Interests*** means Liquidation Trust Interests representing the right to receive 100% of the Liquidation Trust Net Recovery following payment in full of all Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

1.90 ***Liquidation Trust GUC Interests*** means Liquidation Trust Interests representing the right to receive, upon and after the Effective Date, 80% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full. Notwithstanding the foregoing, and for the sake of clarity, all Estate recoveries made from Retained Causes of Action, including from any settlement thereof, effected prior to the Effective Date, shall be allocated solely (i.e. 100%) to payment of Allowed General Unsecured Claims and distributed on the Initial Distribution Date.

1.91 ***Liquidation Trust GCUK Interests*** means Liquidation Trust Interests representing the right to receive (a) upon and after the Effective Date, 20% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full and (b) following payment in full of Allowed General Unsecured Claims, 100% of the Liquidation Trust Net Recovery until the Subordinated GCUK Intercompany Loan Claim is paid in full.

1.92 ***Liquidation Trust Interests*** means a beneficial interest in the Liquidation Trust entitling the Holder thereof to the Distribution from the Liquidation Trust as provided for in the Plan and in the Liquidation Trust Agreement.

1.93 ***Liquidation Trust Net Recovery*** means the Liquidation Trust Assets available for distributions to Holders of Claims and Interests in accordance with the Plan following payment of Post-Effective Date Expenses, satisfaction of the Finacity Sale Reserve Obligations, the balance of any remaining unpaid Allowed Professional Fee Claims to the extent not satisfied in full from the Professional Fee Escrow, in each case, in accordance with their respective priorities under the Bankruptcy Code or any order of the Bankruptcy Court, including without limitation, the Confirmation Order and the Finacity Sale Order; *provided* that the Disbursing Agent shall be entitled to make Distributions of Liquidation Trust Proceeds, other than amounts used to fund the

Finacity Sale Reserve Obligations, prior to any satisfaction of the Finacity Sale Indemnity Obligations.

      1.94    ***Liquidation Trust Proceeds*** means any and all Cash, property and other rents, profits, and/or proceeds derived from the Liquidating Trust Assets, including reducing Retained Causes of Action to Cash.

      1.95    ***Liquidation Trustee*** means (a) the Person selected by the Creditors' Committee in consultation with GCUK and the UK Administrators appointed as the trustee pursuant to the Liquidation Trust Agreement or any other Person approved by the Bankruptcy Court and (b) any successor trustee(s) appointed pursuant to the Liquidation Trust Agreement that has the powers and responsibilities set forth in the Plan, the Confirmation Order, and the Liquidation Trust Agreement. Whenever the Liquidation Trustee is referred to herein, all such references are qualified by the Liquidation Trustee's powers rights, and obligations as set forth in the Liquidation Trust Agreement.

      1.96    ***Liquidation Trustee Disclosure*** means a written disclosure to be filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline disclosing the identity of the Liquidation Trustee, the Liquidation Trustee's credentials, any and all relevant affiliations, connections or actual or potential conflicts of interest and an engagement letter setting forth the terms of the Liquidation Trustee's retention.

      1.97    ***Other Priority Claim*** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

      1.98    ***Other Secured Claim*** means any Secured Claim that is not a Secured Tax Claim.

      1.99    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

      1.100    ***Petition Date*** means March 25, 2021, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

      1.101    ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time, which shall be in form and substance reasonably acceptable to the UK Administrators solely with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

      1.102    ***Plan Reserve Amount*** means the Debtor's reasonable best estimate of amounts necessary to pay in full in Cash all Plan Reserve Obligations, which shall be held in the Plan Reserve Account and used by the Liquidation Trustee to pay such Plan Reserve Obligations.

1.103    ***Plan Reserve Account*** means an escrow account to be funded by the Plan Reserve Amount on the Effective Date, which shall be used solely to pay the Plan Reserve Obligations.

1.104    ***Plan Reserve Obligations*** means the Allowed Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims that are not satisfied as of the Effective Date.

1.105    ***Plan Supplement*** means any supplement to the Plan, and the compilation of documents, forms of documents, and Exhibits to the Plan, as amended, modified, or supplemented from time to time, which may be filed in draft or substantially final or non-final form, in form and substance satisfactory to the applicable parties as provided in the Global Settlement and the Plan, which shall be filed by the Debtor no later than seven (7) calendar days prior to the Voting Deadline, and including the following, without limitation:  (a) the Liquidation Trust Agreement, (b) the Liquidation Trustee Disclosure, (c) a non-exhaustive list of the Retained Causes of Action, (d) the GCUK Intellectual Property Assignment Agreement, (e) the Schedule of Assumed Executory Contracts and Unexpired Leases, (f) the Amended Bylaws and Amended Certificate of Incorporation, and (g) any other necessary documentation related to the Plan.

1.106    ***Post-Effective Date Expenses*** means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date in connection with the implementation of the Plan, the administration of the post-Effective Date Estate and the implementation of the Liquidation Trust, including, but not limited to:  (a) the Liquidation Trustee's Expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidation Trust or the Liquidation Trust Assets and accrued on or after the Effective Date, (b) U.S. Trustee Fees, if any, which accrued after the Effective Date, (c) the Liquidation Trustee's Expenses in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes and filing tax returns, (d) any Expenses incurred by the Liquidation Trust or the Liquidation Trustee, (e) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidation Trustee or the Liquidation Trust, (f) the fees and expenses of any Disbursing Agent selected by the Liquidation Trustee to act as its agent in making Distributions, and (g) the Finacity Sale Order Indemnity Obligations.

1.107    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.108    ***Priority Wage Claim*** means any Claim of a kind specified in sections 507(a)(4) and/or 507(a)(5) of the Bankruptcy Code up to an amount not to exceed the $13,650 statutory cap set forth therein.

1.109    ***Professional*** means any professional employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise.

1.110    ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered and reimbursement of costs incurred prior to and including the Effective Date.

1.111    ***Professional Fee Escrow*** means an escrow account to be funded with the Professional Fee Escrow Amount on the Effective Date which shall be used solely for the purpose of paying all Allowed Professional Fee Claims and thereafter.

1.112    ***Professional Fee Escrow Amount*** means (a) the aggregate Accrued Professional Compensation incurred through the Effective Date as estimated by the Professionals in accordance with Section 2.4 and (b) the aggregate accrued U.S. Trustee Fees as estimated by the Debtor in accordance with Section 2.3.

1.113    ***Pro Rata*** means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests within such Class.

1.114    ***Proof of Claim*** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.115    ***Purchaser*** means White Oak Global Advisors, LLC.

1.116    ***Rejection Damages Claims Bar Date*** means the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be established by order of the Bankruptcy Court or as otherwise agreed to in writing by the Liquidation Trust and the applicable claimant.

1.117    ***Related Parties*** means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.118    ***Releasing Parties*** means the following parties solely to the extent acting in their respective capabilities as such: (a) any Holder of a Claim entitled to vote on the Plan that opts in to the Third Party Release on its Ballot; and (b) any Holder of a Claim entitled to vote on the Plan that does not opt in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; *provided, however,* none of GCMC, GCUK, the UK Administrators, Greensill Australia, or the Australian Liquidators is or shall be deemed to be a "Releasing Party" hereunder.

1.119    ***Retained Assets*** means any and all of the Debtor's assets ~~including, for the avoidance of doubt, the GCUK Intellectual Property),~~ including, without limitation, (a) the Debtor's Cash on hand as of the Effective Date, following payments required to be made on the Effective Date, (b) all Retained Causes of Action, (c) all

rights to tax refunds, (d) all marketable and unsold tangible and intangible assets of the Debtor, including, but not limited to, artwork and fixtures, furniture and equipment, and (d) all rights with respect to insurance policies of the Debtor, including the right to recover therefrom; *provided, however,* "Retained Assets" shall not include any assets expressly assigned or transferred by the Debtor to a party other than the Liquidation Trust pursuant to the Plan (including, for the avoidance of doubt, the GCUK Intellectual Property).

1.120   ***Retained Causes of Action*** means those Causes of Action to be retained by the Debtor and transferred to the Liquidation Trust in accordance with the Plan, which shall be set forth in the Plan Supplement. Retained Causes of Action shall include, but are not limited to:  (a) all Avoidance Actions; (b) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, managers, employees, affiliates, or insiders of the Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O Policy or fiduciary insurance policies (including for bad faith) maintained by the Debtor; and (c) the right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code.  For the avoidance of doubt, Retained Causes of Action include the 2019 Acquisition Causes of Action to the extent not released pursuant to the Finacity Settlement Agreement and Finacity Sale Order and shall not include any Causes of Action otherwise waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Bankruptcy Court order (including the Finacity Sale Order).

1.121   ***SEC*** means the U.S. Securities and Exchange Commission.

1.122   ***Securities Act*** means the Securities Act of 1933, as now in effect or hereafter amended.

1.123   ***Schedules*** means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.124   ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means a schedule that may be filed as part of the Plan Supplement of all Executory Contracts and Unexpired Leases that the Debtor intends to assume or assume and assign pursuant to the Plan.

1.125   ***Secured Claim*** means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.126   ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i)

and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitation therein and including any related Secured Claim for penalties).

1.127    ***Subordinated GCUK Intercompany Loan Claim*** means Proof of Claim numbered 49 (as may be amended or modified) filed by GCUK asserting amounts allegedly owed under that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor, as borrower, and GCUK, as lender.

1.128    ***Third Party Release*** means the release by Holders of Claims as set forth in Section 10.2(b) of the Plan.

1.129    ***UK Administrators*** means Christine Mary Laverty, Trevor Patrick O'Sullivan and William George Edward Stagg, each a licensed insolvency practitioner of Grant Thornton UK LLP of 30 Finsbury Square, London EC2A 1AG, in their capacity as joint administrators of GCUK and GCMC and without personal liability.

1.130    ***U.S. Attorney's Office*** means the Office of the United States Attorney.

1.131    ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.132    ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estate by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

1.133    ***Unclaimed Distribution*** means any Distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (i) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check, (ii) given written notice to the Disbursing Agent of an intent to accept a particular Distribution, (iii) responded in writing to the request of the Disbursing Agent for information necessary to facilitate a particular Distribution, or (iv) taken any other action necessary to facilitate such Distribution.

1.134    ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.135    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.136    ***Voting Deadline*** means the date by which a Holder of a Claim entitled to vote on the Plan must deliver a Ballot to accept or reject the Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

*Rules of Interpretation and Computation of Time.*  For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;  (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially

in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, certificates of incorporation, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation"; and (l) with reference to any Distribution under the Plan, "on" a date means on or as soon as reasonably practicable after that date.

      *Exhibits*.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required);  or (c) at the Debtor's case website at https://cases.stretto.com/greensill.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

      *Controlling Document*.  In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II

## UNCLASSIFIED CLAIMS

      In accordance with section 1123(a)(1) of the Bankruptcy Code, the Finacity Sale Order Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Priority Tax

Claims, and Professional Fee Claims are not classified and are not entitled to vote on the Plan.

2.1    ***Finacity Sale Order Superpriority Claims***.  As of the Effective Date, the Finacity Sale Order Superpriority Claims are contingent obligations of the Debtor and the Liquidation Trust, as applicable, and shall be satisfied in accordance with paragraph 4 of the Finacity Sale Order.  For the avoidance of doubt, the Finacity Sale Order Superpriority Claims shall not be cancelled and discharged absent satisfaction of the Finacity Sale Indemnity Obligations and the Finacity Sale Reserve Obligations as set forth herein.

2.2    ***Administrative Claims.***

(a)    All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; and (ii) Administrative Claims that have been Allowed on or before the Effective Date must be in writing and filed with the Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation Trustee, and the U.S. Trustee so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "**Administrative Claims Bar Date**").  Such request for payment must include at a minimum: (i) the name of the holder of the asserted Administrative Claim; (ii) the amount of the Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b)    On or as soon as reasonably practicable on the earlier of (a) the Effective Date, or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Allowed Administrative Claim becomes Allowed or payable under any agreement ~~relating~~related thereto, ~~or (c)~~ unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of ~~such~~an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

2.3    ***Payment of U.S. Trustee Fees.*** On the Effective Date, the Debtor shall (a) pay all accrued and outstanding U.S. Trustee Fees, if any, and (b) fund the Professional Fee Escrow with the Debtor's good faith estimate of U.S. Trustee Fees anticipated to be incurred through and including the Effective Date.  Following the Effective Date, the Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee, if any, in accordance with Section 11.3.

2.4    ***Professional Fee Claims***.

(a)    To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee

Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)    Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date and shall deliver such good faith estimate to the Debtor no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

(c)    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Liquidation Trust and (y) shall be held in trust for Professionals; provided that any remaining Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidation Trust.

(d)    Allowed Professional Fee Claims shall be paid in Cash to such Professionals (i) from the funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtor's and the Liquidation Trust's obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow; and (ii) if the Professional Fee Escrow is insufficient to pay Allowed Professional Fee Claims, the Allowed Professional Fee Claims shall be paid from Liquidation Trust Net Recovery on a Pro Rata basis until all Allowed Professional Fee Claims of Togut Segal, & Segal LLP, counsel to the Debtor, and Arent Fox LLP, counsel to the Creditors' Committee, have been paid in full.

(e)    The Debtor and the Liquidation Trustee, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

2.5    *Priority Tax Claims.* Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1 ***Classification in General***. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2 ***Summary of Classification***. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4 | Priority Wage Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Subordinated GCUK Intercompany Loan Claim | Impaired | Yes |
| 7 | Interests | Unimpaired | No |

3.3 ***Treatment of Classes***.

(a) *Class 1 – Secured Tax Claims*

(i) *Claims in Class*: Class 1 consists of all Secured Tax Claims.

(ii)      *Treatment*: Except to the extent that a Holder of an Allowed Secured Tax Claims agrees to different, less favorable treatment, each Holder of an Allowed Secured Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Allowed Secured Tax Claim becomes Allowed.

(iii)     *Voting:*  Class 1 is Unimpaired and not entitled to vote.

(b)      *Class 2 – Other Secured Claims*

(i)      *Claims in Class:*  Class 2 consists of all Other Secured Claims.

(ii)      *Treatment:*  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different, less favorable treatment, each Holder of an Allowed Other Secured Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed.

(iii)     *Voting:*  Class 2 is Unimpaired and not entitled to vote.

(c)      *Class 3 – Other Priority Claims*

(i)      *Claims in Class:*  Class 3 consists of all Other Priority Claims.

(ii)      *Treatment:*  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each Holder of an Allowed Other Priority Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

(iii)     *Voting:*  Class 3 is Unimpaired and not entitled to vote.

(d)      *Class 4 – Priority Wage Claims*

(i)      *Claims in Class:*  Class 4 consists of all Priority Wage Claims.

(ii)      *Treatment:*  Except to the extent that a Holder of an Allowed Priority Wage Claim agrees to different, less favorable treatment, each Holder of an Allowed Priority Wage Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Priority Wage Claim on the Effective Date.

(iii)     *Voting:*  Class 4 is Unimpaired and not entitled to vote.

(e)     *Class 5 – General Unsecured Claims*

(i)     *Claims in Class:*  Class 5 consists of all General Unsecured Claims.

(ii)     *Treatment:*  Subject to the terms herein and Section 5.6, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, Holders of Allowed General Unsecured Claims shall receive such Holder's Pro Rata share of the Liquidation Trust GUC Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, their Pro Rata share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iii)     *Voting:*  Class 5 is Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(f)     *Classes 6 – Subordinated GCUK Intercompany Loan Claim*

(i)     *Claims in Class*:  Class 6 consists of the Subordinated GCUK Intercompany Loan Claim.

(ii)     *Allowance:*  On the Effective Date, pursuant to the Global Settlement, the Subordinated GCUK Intercompany Loan Claim shall be allowed in the amount of $52,840,506.80.

(iii)     *Treatment:*  Pursuant to the Global Settlement, as the sole Holder of the Subordinated GCUK Intercompany Loan Claim, GCUK shall receive, in full and final satisfaction of such Claim, the Liquidation Trust GCUK Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, its share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iv)     *Voting:*  Class 6 is Impaired and GCUK as holder of the Subordinated GCUK Intercompany Loan Claim is entitled to vote.

(g)     *Class 7 – Interests*

(i)     *Claims in Class*:  Class 7 consists of all Interests.

(ii)     *Treatment*:  Pursuant to the Global Settlement, as the sole Holder of the Interests, (a) GCMC shall retain its Interests and (b) receive the Liquidation Trust GCMC Interests.

(iii)     *Voting*:  Class 7 is Unimpaired and not entitled to vote.

3.4     ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and the Debtor or the Liquidation Trustee, as applicable, may agree in writing;

22

*provided*, *however*, that under no circumstances may the Debtor agree to provide any other Distribution or treatment to any Holder of an Allowed Claim that would adversely impair the Distribution or treatment provided to any other Holder of an Allowed Claim.

3.5    ***Special Provision Regarding Unimpaired Claims***.  Except as otherwise provided in the Plan, nothing shall affect the Debtor's or the Liquidation Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6    ***Subordinated Claims.***  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code or otherwise.

3.7    ***Controversy Concerning Impairment.***  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1    ***Acceptance by Class Entitled to Vote***.  Classes 5 (General Unsecured Claims) and 6 (Subordinated GCUK Intercompany Loan Claim) are the Classes of Claims of the Debtor that are entitled to vote to accept or reject the Plan. Pursuant to the Global Settlement, GCUK (as a Holder of Class 5 and Class 6 Claims) has agreed to vote to accept the Plan.

4.2    ***Presumed Acceptance of the Plan***.  Classes 1 (Secured Tax Claims), 2 (Other Secured Claims), 3 (Other Priority Claims), 4 (Priority Wage Claims), and 7 (Interests) are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3    ***Elimination of Classes***.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    ***Plan Objective***.  The Plan's objective is to transfer all Retained Assets, including the Retained Causes of Action, to the Liquidation Trust.  The Liquidation Trustee will administer the Liquidation Trust and liquidate such Retained Assets, including the resolution of any Retained Causes of Action.  The Plan divides Holders' legal rights and interests into unclassified Claims and Classes of Claims and Interests based on the Holders' legal rights and interests, and the Liquidation Trustee will distribute the proceeds of the Retained Actions to Holders of Allowed Claims in satisfaction of the Debtors' obligations under the Plan.  Holders of Interests will retain their Interests and receive any remaining value on account of such Retained Assets following payment in full of Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

5.2    ***Allowance and Classification of GCUK Claims; GCUK Claim Contribution.***

(a)    Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the Subordinated GCUK Intercompany Loan Claim is allowed in the amount of $52,840,506.80 and classified in Class 6 of the Plan.

(b)    Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the GCUK L/C Claim has been allowed in the amount of $526,000 and classified in Class 5 of the Plan.

(c)    Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, GCUK shall be deemed to have made the GCUK Claim Contribution.

5.3    ***Global Settlement.***  The provisions of the Plan relating to the Global Settlement constitute a good faith compromise and settlement among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

Upon the occurrence of the Effective Date, in exchange for (a) GCUK's voluntary and consensual subordination of its claims arising under the GCUK Intercompany Loan which have been asserted as General Unsecured Claims in the amount of approximately $53 million, (b) the GCUK Claim Contribution, (c) GCUK's, GCMC's and the UK Administrators' continued support for the Debtor prior to and during the Chapter 11 Case (including pursuant to the GCUK Services Agreement) and the Plan, and (d) other valuable consideration provided under the Global Settlement, GCUK, GCMC, and the UK Administrators shall receive, as applicable, (1) allowance of the GCUK L/C Claim as a Class 5 Allowed General Unsecured Claim in the amount set forth herein, (2) the Liquidation Trust GCUK Interests and Liquidation Trust GCMC

24

Interests on account of the Subordinated GCUK Intercompany Loan Claim and Interests, respectively, (3) the Debtor's transfer and assignment of the GCUK Intellectual Property pursuant to the GCUK Intellectual Property Assignment Agreement, and (4) the Releases and Third Party Releases as provided in Section 10.2 of the Plan.

Absent the Global Settlement, the Subordinated GCUK Intercompany Loan Claims may substantially reduce the recoveries to Holders of Allowed General Unsecured Claims, and the Debtor and the Creditors' Committee would likely seek nonconsensual recharacterization or subordination of such claims arising under the GCUK Intercompany Loan, litigation in relation to which will be costly and has an uncertain outcome.

5.4     *Intellectual Property Assignment.*  On the Effective Date, pursuant to the Global Settlement, the Debtor and GCUK shall enter into the GCUK Intellectual Property Assignment Agreement pursuant to which the Debtor will assign, transfer, and convey the GCUK Intellectual Property to GCUK.  The Confirmation Order shall authorize and direct the Debtor to enter into the GCUK Intellectual Property Assignment Agreement in accordance with the terms and conditions thereof.  Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement, any and all of the Debtor's legal, equitable, and beneficial right, title, and interest in, to, and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK free and clear of any liens, claims, interests, and encumbrances.  The Debtor and the Liquidation Trust shall not be required to pay any Cure Amount in connection with their entry into the GCUK Intellectual Property Assignment Agreement or assignment of the GCUK Intellectual Property as provided therein.

5.5     *Vesting of Assets.*  Unless otherwise provided under the Plan, on the Effective Date, the Retained Assets will vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other interests.  On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidation Trust will be deemed final and irrevocable and Distributions may be made from the Liquidation Trust.  In connection with the foregoing:  (a) on the Effective Date, the appointment of the Liquidation Trustee shall become effective and the Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement and the Plan and may use, acquire and dispose of the Liquidation Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Confirmation Order will provide the Liquidation Trustee with express authority to convey, transfer, and assign any and all of the Liquidation Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action;  and (c) as of the Effective Date, the Liquidation Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.

5.6     *Continued Corporate Existence of the Debtor; Termination of Current Officers, Directors, Employees and Professionals.*  The Debtor shall continue to exist after the Effective Date as a separate corporate Entity from the Liquidation Trust with all the powers of a corporation pursuant to applicable non-bankruptcy law and its

certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval, as permitted by applicable law. On the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and Creditors' Committee shall be deemed to terminate.

5.7    *Liquidation Trust.*

(a)    *Liquidation Trustee.* On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.

(i)    The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Liquidation Trust Agreement. The Liquidation Trustee shall not be required to file a fee application to receive compensation.

(ii)    The Liquidation Trustee will be a disinterested Person designated by the Creditors' Committee, in consultation with GCUK and the UK Administrators, and identified in the Liquidation Trustee Disclosure.

(iii)    The Liquidation Trustee shall carry out the duties as set forth in this Section 5.6 and in the Liquidation Trust Agreement. Pursuant to Bankruptcy Code §1123(b)(3), the Liquidation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Retained Causes of Action in accordance with the best interests of and for the benefit of the Beneficiaries.

(iv)    The Liquidation Trustee shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation as set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Plan, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidation Trustee, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein and to conserve and protect the Liquidation Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan. The Liquidation Trustee shall have the power and authority without further approval by the Court to liquidate the Liquidation Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Claims of the Estate, including but not limited to Retained Causes of Action, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with section 345 of the

Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trust in accordance with the Plan and Liquidation Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidation Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Retained Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval but in accordance with the Liquidation Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth in the Plan and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash. Subject to the other terms and provisions of the Plan, the Liquidation Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Retained Causes of Action based upon its powers as a bankruptcy appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.

(b)     *Effectiveness of the Liquidation Trust*. On the Effective Date, if not previously signed, the Debtor and the Liquidation Trustee will execute the Liquidation Trust Agreement, and the Liquidation Trust Agreement will become effective without any further action by any party. The Liquidation Trust is organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidation Trust will be an affiliate of the Debtor (within the meaning and solely for purposes of sections 1125(e) and 1145(a) of the Bankruptcy Code. The Liquidation Trustee may elect for the Liquidation Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Liquidation Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the Beneficiaries. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

(c)     *Beneficiaries*. In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidation Trust will be the Holders of all Allowed Claims against the Debtors as provided under the Plan. The Holders of Allowed Claims will receive an allocation of the respective Liquidation Trust Interests as provided for in the Plan and the Liquidation Trust Agreement. The Holders of Liquidation Trust Interests will receive Distributions from the Liquidation Trust as

provided for in the Plan and the Liquidation Trust Agreement.  The Beneficiaries shall be treated as grantors and owners of such Beneficiaries' respective portion of the Liquidation Trust.

(d)  *Implementation of the Liquidation Trust*.  On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidation Trustee shall execute the Liquidation Trust Agreement and take all such actions that are required to transfer the Retained Assets to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee will be authorized to, and shall, implement the Liquidation Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidation Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims, prosecuting or otherwise resolving Retained Causes of Action and causing Distributions from the Liquidation Trust to be made to the Beneficiaries.

(e)  *Transfer of the Retained Assets*.  As discussed in Section 5.5, unless otherwise expressly provided under the Plan, on the Effective Date, the Retained Assets will automatically vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges and other interests, with the Liquidation Trust being vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to all Liquidation Trust Assets.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. To the extent required to implement the transfer of the Retained Assets to the Liquidation Trust, as provided for herein, all Entities and Persons shall cooperate with the Debtor and the Estate to assist the Debtor and the Estate to implement the transfers.  Upon completion of the transfer of the Liquidation Trust Assets to the Liquidation Trust, except as otherwise set forth in the Plan or Confirmation Order, the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets, or the Liquidation Trust.  Likewise, upon completion of such transfer and subject to such exceptions as may be set forth in the Plan or Confirmation Order, the Liquidation Trust shall have no rights, title, or interest in or to any property of the Debtor or the Estate other than the Liquidation Trust Assets.  The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement, which Distributions, for the avoidance of doubt, shall be made by the Liquidation Trustee or the Disbursing Agent, as applicable, and shall not be made by or on behalf of the Debtor.

(f)  *Purpose of the Liquidation Trust.*  The Liquidation Trust shall be established for the purpose of liquidating the Liquidation Trust Assets, prosecuting any Retained Causes of Action to maximize recoveries for the benefit of the Beneficiaries, and making Distributions in accordance with the Plan to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes consistent with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the trust.

(g)    *Representative of the Estate*.  The Liquidation Trustee will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and vested with the authority and power (subject to the Liquidation Trust Agreement) of the representative of the Estate.  After the Effective Date, the Liquidation Trustee shall have the authority and right on behalf of the Debtor without the need for Bankruptcy Court approval (unless otherwise expressly indicated herein), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    oversee and control the Liquidation Trust;

(ii)    collect and liquidate the Liquidation Trust Assets under the jurisdiction of the Bankruptcy Court;

(iii)    assert, prosecute, pursue, compromise, and settle in accordance with the Liquidation Trustee's reasonable business judgment, all Claims and Causes of Action, and enforce all legal or equitable remedies and defenses belonging to the Debtor or the Estate, including, without limitation, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; *provided that* (x) prior to payment in full of Allowed General Unsecured Claims, the Liquidation Trustee shall consult with the UK Administrators with respect to the negotiation of any proposed financing for Retained Causes of Action and any proposed settlements and compromises of Retained Causes of Action, and (y) following payment in full of Allowed General Unsecured Claims any proposed settlements and compromises of Retained Causes of Action shall be subject to the UK Administrators' review and consent (which shall not be unreasonably withheld, conditioned, or delayed);

(iv)    object to Claims in accordance with the Liquidation Trustee's reasonable business judgment;

(v)    make Distributions to Holders of Allowed Claims;

(vi)    exercise reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandonment of the Retained Assets and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(vii)    prosecute all Retained Causes of Action on behalf of the Debtor for the benefit of the Holders of Allowed Claims, elect not to pursue any Retained Causes of Action;

(viii)    retain, compensate and reimburse professionals to assist in performing the Liquidation Trustee's duties under the Plan;

(ix)    maintain the books and records and accounts of the Debtor and the Liquidation Trust and destroy such records consistent with applicable law and the Liquidation Trustee's duties;

(x)    invest the Cash of the Liquidation Trust and any income earned thereon;

(xi)    hold any reserves created on the Effective Date and create any reserves for payments required to be made pursuant to the Plan, including on account of the Plan Reserve Obligations, the Finacity Sale Order Indemnity Obligations, and the Finacity Sale Order Reserve Obligations;

(xii)    incur and pay reasonable and necessary expenses in connection with the performance of the Liquidation Trustee's duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidation Trustee;

(xiii)    administer the Liquidation Trust's and the Debtor's tax obligations, including (1) filing tax returns and paying tax obligations, (2) requesting, if necessary, an expedited determination of any unpaid tax liability of the Liquidation Trust or the Debtor under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtor ending after the Petition Date through the liquidation of the Liquidation Trust as determined under applicable tax laws, and (3) representing the interest and account of the Liquidation Trust and the Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit;

(xiv)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidation Trust that are required hereunder, by any Governmental Unit, or under applicable law;

(xv)    arrange for the liquidation and/or dissolution of the Debtor in accordance with applicable law and to indemnify, out of the assets of the Liquidation Trust, any liquidator appointed under the applicable law, or to seek any appropriate relief in furtherance of the Plan in any appropriate jurisdiction;

(xvi)    take such action as required to administer, wind-down and close the Chapter 11 Case; and

(xvii)    perform other duties and functions that are consistent with the implementation of the Plan as deemed by the Liquidation Trustee to implement the Plan and are not otherwise inconsistent with the Liquidation Trust Agreement.

(h)    *Liquidation Trust Funding*.  On the Effective Date, the Liquidation Trust shall be funded with the Liquidation Trust Funding Amount established from the Liquidation Trust Assets.  Subject to the provisions of the Liquidation Trust Agreement, the Liquidation Trust Funding Amount shall be used to pay the expenses of the Liquidation Trust, including, without limitation, costs and expenses of counsel.  The Liquidation Trust is authorized, without further order or approval of the Bankruptcy Court, to obtain third party financing from one or more parties as determined by the Liquidation Trustee as necessary to pursue the Liquidation Trust's objectives; *provided that* the Liquidation Trustee shall consult with the UK Administrators with respect to any proposed financing for Retained Causes of Action.

(i)       *Funding of Post-Effective Date Expenses*.  All expenses related to implementation of the Plan incurred from and after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case will be expenses of the Liquidation Trust, and the Liquidation Trustee will disburse funds from the Liquidation Trust Assets for purposes of paying the Post-Effective Date Expenses without the need for any further approval or order of the Bankruptcy Court.

(j)       *Indemnification*.  From and after the Effective Date, the Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee, solely in his or her capacity as the Liquidation Trustee for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidation Trustee's gross negligence, willful misconduct, or criminal conduct.

(k)       *Dissolution*.  The Liquidation Trustee and the Liquidation Trust shall be discharged and/or dissolved, as the case may be, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in its sole discretion, that the administration of any remaining Liquidation Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made.  If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trust may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Liquidation Trust, the Liquidation Trust may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to dissolve the Liquidation Trust, (y) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Liquidation Trust, and any insider of the Liquidation Trust, and (z) dissolve such Liquidation Trust

(l)       *Provisions Relating to Federal Income Tax Compliance.*  The Liquidation Trust generally is intended to be treated for United States federal income tax purposes, (i) in part as a grantor trust that is a liquidating trust within the meaning of Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and (ii) in part as one or more disputed ownership funds within the meaning of Treasury Regulations § 1.468B-9(c)(ii).  For United States federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of the Liquidation Trust Assets from the Debtor to the Holders of Liquidation Trust Interests, followed by the Holders of Liquidation Trust Interests' transfer of the Liquidation Trust Assets to the Liquidation Trust.  The Holders of Liquidation Trust Interests will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets. The Holders of Liquidation Trust Interests shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be

allocated by the Liquidation Trust to the Holders of Liquidation Trust Interests using any reasonable allocation method.

(m)    *Miscellaneous Tax Matters*. The Liquidation Trustee will be required by the Liquidation Trust Agreement to file income tax returns for the Liquidation Trust as a grantor trust of the Holders of the Liquidation Trust Interests (and file separate returns for the disputed ownership fund(s) pursuant to Treasury Regulations § 1.468B-9(c)(ii) and pay all taxes owed on any net income or gain of the disputed ownership fund(s), on a current basis from Liquidation Trust Assets).  In addition, the Liquidation Trust Agreement will require consistent valuation by the Liquidation Trust and the Holders of Liquidation Trust Interests, for all federal income tax and reporting purposes, of any property held by the Liquidation Trust.  The Liquidation Trust Agreement also will limit the investment powers of the Liquidation Trust in accordance with IRS Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Holders of Liquidation Trust Interests (as such may have been determined at such time) its net income (net of any payment of or provision for taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets.

(n)    *Certain Securities Laws Matters*.  The Liquidation Trust Interests shall not be "securities" under federal and state securities laws or, to the extent they are "securities," their issuance shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or other law requiring registration prior to the offering, issuance, Distribution or sale of securities, in accordance with and pursuant to section 1145 of the Bankruptcy Code.  The Plan prohibits, and the Liquidation Trust Agreement will prohibit, the transfer or assignment of the Liquidation Trust Interests except by will, intestate succession or by operation of law.  In addition, to the extent the Liquidation Trust Interests are "securities" the Liquidation Trust Interests will not be required to be registered under Section 12(g) of the Exchange Act.

5.8    ***Effectuating Documents; Further Transactions***.  Any officer or director of the Debtor and the Liquidation Trustee is authorized to execute, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The secretary of the Debtor and the Liquidation Trustee shall be authorized to certify or attest to any of the foregoing actions.

5.9    ***Exemption from Certain Transfer Taxes and Recording Fees.***  To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

5.10    ***Further Authorization.***  The Debtor and the Liquidation Trust, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

## ARTICLE VI

## DISTRIBUTIONS

6.1    ***Disbursing Agent***.  The Liquidation Trustee shall serve as the Disbursing Agent under the Plan or select another Entity to serve as the Disbursing Agent.  Any Entity other than the Liquidation Trustee that acts as the Disbursing Agent for the Liquidation Trust will be an agent of the Liquidation Trustee and not a separate taxable Entity with respect to, among other things, the assets held, income received or disbursements or Distributions made for the Liquidation Trustee.  The Disbursing Agent shall make all Distributions required under the Plan.  The Disbursing Agent, if not the Liquidation Trustee, shall be authorized, after consultation with the Liquidation Trustee, to implement such procedures as it deems necessary to make Distributions pursuant to the Plan so as to efficiently and economically assure prompt and proportionate Distributions. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

6.2    ***No Postpetition Interest on Claims***.  Postpetition interest shall not accrue or be paid on any General Unsecured Claims or the Subordinated GCUK Intercompany Loan Claim and no Holder of such Claims shall be entitled to interest accruing on or after the Petition Date, except to the extent permitted under the Plan or the Bankruptcy Code.

6.3    ***Date of Distributions***.  Unless otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan shall be made on or before the Effective Date or as soon thereafter as is practicable, in the Liquidation Trustee's sole discretion or as otherwise required by the Liquidation Trust Agreement.

6.4    ***Distribution Record Date***.  Unless a notice of transfer of Claim or Interest has been filed with the Bankruptcy Court prior to the Distribution Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent will rely on the Claims Register when determining Holders on the Record Date.

6.5    ***Books and Records***.  The Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's

books and records.  The Debtor, the Liquidation Trustee, and Disbursing Agent (if other than the Liquidation Trustee) shall cooperate in good faith to comply with the reporting and withholding requirements outlined in Section 6.15.

6.6    ***Delivery of Distributions***.  Subject to Sections 6.7, 6.10, 6.11, 6.13, and 6.15 of the Plan, the Disbursing Agent will issue or cause to be issued the applicable consideration under the Plan and, subject to Bankruptcy Rule 9010, will make all Distributions as and when required by the Plan to Holders of Allowed Claims to the address of the Holder of such claim on the books and records of the Debtor or its agents or the address in any written notice of address change delivered to the Debtor, the Liquidation Trustee or the Disbursing Agent, as applicable, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.  In the event that any Distribution is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to locate the Holder of an Allowed Claim whose Distribution is returned as undeliverable.  If such reasonable efforts are not successful, no further Distributions to such Holder of such Claim shall be made unless and until the Disbursing Agent is notified of then-current address of such Holder of the Claim, at which time all missed Distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind. Amounts in respect of undeliverable Distributions shall be returned to the Liquidation Trust until such Distributions are claimed or become subject to Section 6.7.

6.7    ***Reversion***.  Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Liquidation Trust, free and clear of any restrictions thereon.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandonment, or unclaimed property laws to the contrary.

6.8    ***Satisfaction of Claims***.  Unless otherwise provided herein, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.9    ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtor or the Liquidation Trust, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Liquidation Trust, as applicable.

6.10    ***De Minimis Cash Distributions***. The Disbursing Agent shall not have any obligation to make a Distribution that is less than $50.00 in Cash.

6.11    ***No Distribution in Excess of Amount of Allowed Claim***. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

6.12    ***Allocation of Distributions Between Principal and Interest***.
Except as otherwise provided in the Plan and subject to Section 3.3 of the Plan, to the
extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of
indebtedness and accrued but unpaid interest thereon, such Distribution shall be
allocated first to the principal amount (as determined for federal income tax purposes)
of the Claim and then to accrued but unpaid interest.

6.13    ***Setoffs and Recoupments***. The Liquidation Trust or each Debtor or
its designee as instructed by such Liquidation Trust or Debtor, as applicable, may,
pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset
or recoup against any Allowed Claim and the Distributions to be made pursuant to the
Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action
that the Liquidation Trust or the Debtor or its successors, as applicable, may hold
against the Holder of such Allowed Claim after the Effective Date to the extent that
such setoff or recoupment is either (a) agreed in amount among the Liquidation Trust
or Debtor, as applicable, and Holder of the Allowed Claim or (b) otherwise adjudicated
by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that
neither the failure to effect a setoff or recoupment nor the allowance of any Claim
hereunder will constitute a waiver or release by the Liquidation Trust or the Debtor or
its successor, as applicable, of any claims, rights, or Causes of Action that the
Liquidation Trust or the Debtor or its successor or assign, as applicable, may possess
against such Holder.

6.14    ***Rights and Powers of Disbursing Agent***.

(a)    *Powers of the Disbursing Agent*.  The Disbursing Agent shall
be empowered to:  (i) effect all actions and execute all agreements, instruments, and
other documents necessary to perform its duties under the Plan; (ii) make all applicable
Distributions or payments provided for under the Plan; (iii) employ professionals to
represent it with respect to its responsibilities; and (iv) exercise such other powers (a) as
may be vested in the Disbursing Agent by order of the Bankruptcy Court (including
any order issued after the Effective Date) or pursuant to the Plan or (2) as deemed by
the Disbursing Agent to be necessary and proper to implement the provisions of the
Plan.

(b)    *Expenses Incurred on or After the Effective Date*.  Except as
otherwise ordered by the Bankruptcy Court and subject to the written agreement of the
Liquidation Trustee or the Debtor, as applicable, the amount of any reasonable fees and
expenses incurred by the Disbursing Agent on or after the Effective Date (including,
without limitation, taxes) and any reasonable compensation and expense
reimbursement Claims (including, without limitation, for reasonable attorneys' and
other professional fees and expenses) made by the Disbursing Agent shall be paid in
Cash by the Liquidation Trustee or the Debtor, as applicable.

6.15    ***Withholding and Reporting Requirements***.  In connection with
the Plan and all instruments issued in connection therewith and distributed thereon, the
Debtor or the Liquidation Trust, as applicable, shall comply with all withholding and
reporting requirements imposed by any federal, state, or local taxing authority, and all
Distributions under the Plan shall be subject to any such withholding and reporting

requirements.  In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Under the backup withholding rules of the Internal Revenue Service, a Holder may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which includes corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor or the Liquidation Trust, as applicable, have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

The Debtor or the Liquidation Trust, as applicable, may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder.  If the Debtor or the Liquidation Trust, as applicable, make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor or the Liquidation Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor or the Liquidation Trust, as applicable, or its respective property.

6.16    *Claims Paid or Payable by Third Parties*.

(a)    *Claims Paid by Third Parties.*  The Debtor or the Liquidation Trust, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or the Liquidation Trust.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or the Liquidation Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under Plan.  The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidation Trust, as applicable, annualized

36

interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

(b)    *Claims Payable by Third Parties*.  Except as otherwise provided in the Plan, (i) no Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Applicability of Insurance Proceeds*.  Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (i) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (ii) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1    ***Allowance of Claims***.  After the Effective Date, the Debtor and the Liquidation Trust shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

7.2    ***Objections to Claims***.

(a)    *Authority*. The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that he or she may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim after the Effective Date outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the

Bankruptcy Court or any action being required on the part of the Liquidating Trustee or the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)     *Amendments to Claims.*  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Trustee or Debtor, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)     *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, the Debtor, and after the Effective Date, the Liquidation Trust, may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Debtor or the Liquidation Trust, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Liquidation Trust, as applicable.

7.3     **Estimation of Claims**. For purposes of calculating and making Distributions and establishing reserves under the Plan, the Debtor or the Liquidation Trust, as applicable, may at any time after the Effective Date in good faith request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidation Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidation Trust as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4     **No Distributions Pending Allowance**.  If an objection to a Claim is filed as set forth in Section 7.2 hereof, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5     **Resolution of Claims**.  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor or the Liquidation Trust, as applicable, shall retain and may enforce,

sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtor or the Liquidation Trust or their respective successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor and the Liquidation Trust, as applicable.

7.6     **_Disallowed Claims_**. All Claims held by persons or entities against whom or which the Debtor or the Liquidation Trust have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this Section 7.6 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtor or the Liquidation Trust from such party have been paid.

7.7     **_No Recourse._** Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed claims in the respective Class, no Claim Holder shall have recourse against the Distribution Agent, the Debtor, the Liquidation Trustee, the Liquidation Trust, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIM.**

**ARTICLE VIII**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

8.1     **_Rejection of Executory Contracts and Unexpired Leases_**. Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date; (c) is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) has expired or terminated pursuant to its own terms; or (e) is described in Section 8.2 of the Plan. The Confirmation Order will constitute an order of

the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Debtor or the assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

8.2    ***Indemnification***. Except as otherwise specifically limited in the Plan, any obligations or rights of the Debtor to defend, indemnify, reimburse, or limit the liability of the Debtor's present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers, and consultants (the "***Covered Persons***") pursuant to the Debtor's certificate of incorporation (or Amended Certificate of Incorporation), bylaws (or Amended Bylaws), indemnification agreements, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

8.3    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.*** Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed no later than the Rejection Damages Claims Bar Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases under the Plan shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims; provided, however, that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral to secure obligations under such rejected Executory Contract or Unexpired Lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in such collateral, with the deficiency, if any, treated as a General Unsecured Claim.

8.4    ***Reservation of Rights.***    Nothing contained in the Plan shall constitute an admission by the Debtor that any particular contract or lease is in fact and

Executory Contract or Unexpired Lease, as applicable, or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor and the Liquidation Trust, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

9.1     ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)     the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)     the Plan Supplement, including the Liquidation Trust Agreement, shall have been filed with the Bankruptcy Court;

(c)     the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount, the Plan Reserve Account shall have been funded with the Plan Reserve Amount, and the Liquidation Trust shall have been funded with the Liquidation Trust Funding Amount.

(d)     the Debtor shall have made all Distributions required to be made on or before the Effective Date;

(e)     satisfaction of the GCUK / GCMC Release Requirements;

(f)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(g)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.2     ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 may be waived only if waived in writing by the Debtor, the Creditors' Committee, and the UK Administrators to the extent required by the Global Settlement

without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  For the avoidance of doubt and notwithstanding anything to contrary herein, waiver of the condition precedent set forth in Section 9.1(e) shall only be effective if such condition precedent is waived in writing by the UK Administrators.

## ARTICLE X

### EFFECT OF PLAN CONFIRMATION

10.1    ***Binding Effect***.  Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Liquidation Trust, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of the Plan, and their respective successors and assigns.

10.2    ***Releases and Related Matters***.

(a)    *Release by the Debtor*.  **Without limiting any other applicable provisions of, or releases contained in, the Plan or the Finacity Sale Order and Finacity Sale Documents, pursuant to section 1123(b) of the Bankruptcy Code and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, the Debtor, its Estate, the Liquidation Trustee, and any other Person or Entity seeking to exercise the rights of the Estate, to the extent permitted by applicable law, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Person or Entity seeking to exercise the rights the Estate has, had, or may have against any GCUK / GCMC Parties based on or relating to the Debtor, the Estate, the Chapter 11 case, any prepetition financing arrangements, the Debtor's financial statements, the debtor-in-possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, or any other transactions in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligation arising under the Plan or the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud.).**

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the foregoing release by the Debtor pursuant to Bankruptcy Rule 9019, and further, shall constitute the Bankruptcy Court's finding that the release is:  (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the foregoing releases by the Debtor.

(b)     *Releases by the Releasing Parties.*  **To the greatest extent permissible and without limiting any other applicable provisions of, or releases contained in, the Plan, and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, in consideration for the obligations of the Debtor under the Plan, and the consideration and other waivers, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with the Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any GCUK / GCMC Party based on or relating to the Debtor, the Estate, the Chapter 11 Case, any prepetition financing arrangements, the Debtor's financial statements, the debtor in possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof, or supplements thereto, or any other transaction in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan and the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty).  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud).**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (3) a good-faith

settlement and compromise of the Claims released by the Third-Party Release; (4) in the best interests of the Debtor and its Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; (7) consensual as to the Holders of Claims that opt in to the Third Party Release on their Ballots; and (7~~8~~) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

(c)    *Waiver of Statutory Limitation on Releases*.  Without limiting any other applicable provisions of, or releases contained in, the Plan, each Releasing Party in each of the releases contained in the Plan (including under this Section) expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, it has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the GCUK / GCMC Parties.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen

10.3    **Injunction**.  Except as otherwise provided in the Plan or the Confirmation Order, and subject to the satisfaction of the GCUK / GCMC Release Requirements, from and after the Effective Date, to the extent a party's Cause of Action has been released pursuant to Section 10.2 or otherwise treated pursuant to the Plan or the Confirmation Order (including, without limitation, being subject to exculpation pursuant to Section 10.4), such Releasing Party shall be permanently enjoined from pursuing such Cause of Action against the applicable GCUK / GCMC Party for any reason at any time on or after the Effective Date, including (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Line, Claim, or encumbrance of any kind; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, our obligation due to the Debtor, the Liquidating Trustee, the Liquidation Trust, or the GCUK / GCMC Parties unless such Releasing Party has filed a motion requesting the right to perform such setoff on or before the Effective Date, notwithstanding an indication of a claim or interest or otherwise that such Releasing Party asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing any act, in any manner, or in any place to assert any Cause of Action, or send any notice or invoice in respect of any Cause of Action that has been released under the Plan that does not otherwise comply with or is inconsistent with the provisions of the Plan, or from making or threatening to make or assert any claim in any liquidation of the Debtor under any applicable law; *provided*, *however*, that nothing contained in the Plan shall preclude a Person or Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of the Plan.

All assets of the Debtor shall be applied to the payment of Claims and expenses only in the manner and in the order set forth in the Plan, and Holder of Claims and Interests shall be enjoined from interfering with the Distributions and payments contemplated by the Plan. All of Debtor's and the Liquidation Trust's rights are reserved as to whether as a matter of non-bankruptcy law the payment, in full, of a Claim or expense obligation constitutes a "satisfaction" of that Claim or expense obligation.

**10.4** ***Exculpation and Limitation of Liability***. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE LIQUIDATION TRUST AGREEMENT, THE PLAN SUPPLEMENT, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any of the Exculpated Parties' post-Effective Date obligations under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**10.5** ***No Discharge.*** Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests other than the Releasing Parties.

**10.6** ***Term of Bankruptcy Injunction or Stays***. Except as provided otherwise in the Plan, from and after the entry of an order or other deemed action under the Plan closing the Chapter 11 Case, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

**10.7** ***Post-Confirmation Date Retention of Professionals***. Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services

rendered after such date will terminate and Debtor or the Liquidation Trust, as applicable, will employ and pay professionals in the ordinary course of business.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    ***Retention of Jurisdiction***.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(e)    modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Debtor or the Liquidation Trust,

including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)    adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)    resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)    hear and determine Retained Actions by or on behalf of the Debtor or the Liquidation Trust;

(k)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(m)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    enter an order closing the Chapter 11 Case.

11.2    ***No Limitation on Enforcement by SEC or the U.S. Attorney's Office on Non-Debtors.***    Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1     ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the
Effective Date, if any, shall be paid by the Liquidation Trust until the earlier of the
conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy
Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy
Code.  The Liquidation Trustee shall file and serve on the U.S. Trustee quarterly reports
of the disbursements made, within 15 days after the conclusion of each such period,
until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree.
Any such reports shall be prepared consistent with (both in terms and format) of the
applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2     ***Dissolution of the Creditors' Committee.***  On the Effective Date,
the Creditors' Committee shall be dissolved and the members of the Creditors'
Committee, and professionals retained by the Creditors' Committee in accordance with
section 1103 of the Bankruptcy Code shall be deemed released from their respective
fiduciary obligations, duties, and responsibilities arising from or related to the Chapter
11 Case, except with respect to: (i) prosecuting applications for professionals'
compensation and reimbursement of expenses incurred as a member of the Creditors'
Committee; (ii) asserting, disputing, and participating in the resolution of Professional
Fee Claims; and (iii) defending any appeal of the Confirmation Order or any request for
reconsideration thereof, in either case prior to entry of a Final Order or Final Orders
approving all Professional final fee applications in accordance with Section 2.4.  Upon
the conclusion of (i) through (iii) above, the Creditors' Committee shall be immediately
dissolved and released.

12.3     ***Amendment or Modification of the Plan***.  Subject to section 1127
of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of
the Bankruptcy Code, Debtor reserves the right to alter, amend, or modify the Plan at
any time prior to or after the Confirmation Date but prior to the substantial
consummation of the Plan, subject to the express written consent of the Creditors'
Committee and the UK Administrators to the extent such consent is required pursuant
to the terms hereof or the Global Settlement.  A Holder of a Claim that has accepted the
Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the
proposed alteration, amendment, or modification does not materially and adversely
change the treatment of the Claim of such Holder.

12.4     ***Substantial Consummation***.  On the Effective Date, the Plan shall
be deemed to be substantially consummated under sections 1101 and 1127(b) of the
Bankruptcy Code.

12.5     ***Severability of Plan Provisions***.  If, prior to the Confirmation Date,
any term or provision of the Plan is determined by the Bankruptcy Court, at the request
of the Debtor and with the consent of the Committee and the UK Administrators (not to
be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court
shall have the power to alter and interpret such term or provision to make it valid or
enforceable to the maximum extent practicable, consistent with the original purpose of

the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6    ***Successors and Assigns***.  The Plan shall be binding upon and inure to the benefit of the Debtor and successors and assigns, including the Liquidation Trust, as applicable.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7    ***Revocation, Withdrawal, or Non-Consummation***.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8    ***Governing Law***.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9    ***Time***.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Holders of Claims and Interests, the GCUK / GCMC Parties, the Exculpated Parties, and each of their respective successors and assigns, including the Liquidation Trust.  The Debtor will request that the Confirmation Order include a finding by the Bankruptcy Court that,

notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

12.11 ***Entire Agreement***. On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.12 ***Notice***. All notices, requests, and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> TOGUT, SEGAL & SEGAL LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn: Albert Togut, Esq., Kyle J. Ortiz, Esq., Bryan M. Kotliar, Esq., and Amanda C. Glaubach, Esq.
> E-mail: altogut@teamtogut.com, kortiz@teamtogut.com, bkotliar@teamtogut.com, and aglaubach@teamtogut.com
>
> Attorneys for the Debtor
>
> -and-
>
> ARENT FOX LLP
> 1301 Avenue of the Americas, Floor 42
> New York, NY 10019
> Attn: George P. Angelich, Esq.
> E-mail: george.angelich@arentfox.com
>
>
> - and-
>
> Arent Fox LLP
> The Prudential Tower
> 800 Boylston Street, Floor 32
> Boston, MA 02199
> Attn: Justin A. Kesselman, Esq.
> E-mail: justin.kesselman@arentfox.com

*[Remainder of page left blank intentionally; signature page follows]*

## ARTICLE XIII

## CONFIRMATION REQUEST

The Debtor requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.


Dated: ~~August 27~~September 24, 2021
New York, New York

GREENSILL CAPITAL, INC.


By:      ~~DRAFT~~ /s/   Matthew Tocks_____
Name:  Matthew Tocks
Title:    Chief Restructuring Officer