Hearing Date: October 26, 2021 at 10:00 a.m. ET

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, NY 10119
Telephone: (212) 594-5000
Albert Togut
Kyle J. Ortiz
Bryan M. Kotliar
Amanda C. Glaubach

*Counsel for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.: 21-10561 (MEW) |
| Debtor.[1] | |

**NOTICE OF FILING OF (I) SECOND AMENDED CHAPTER 11
PLAN OF LIQUIDATION FOR GREENSILL CAPITAL INC.; AND
(II) AMENDED PROPOSED FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER APPROVING THE DISCLOSURE STATEMENT
AND CONFIRMING THE SECOND AMENDED CHAPTER 11 PLAN OF
LIQUIDATION FOR GREENSILL CAPITAL INC.**

      **PLEASE TAKE NOTICE** that on September 21, 2021, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered the *Second Amended Order (I) Approving Certain Key Dates Relating to Confirmation of the Debtor's Plan, Including Scheduling a Combined Hearing to Consider Approval of the Debtor's Disclosure Statement and Plan; (II) Approving the Form and Manner of Combined Hearing Notice; (III) Approving Debtor's Disclosure Statement on a Provisional Basis; and (IV) Approving (A) Procedures for Solicitation; (B) Forms of Ballots and Notices; (C) Procedures for Tabulation of Votes; and (D) Procedures for Objections* [Docket No. 271] (the "<u>Scheduling Order</u>").

      **PLEASE TAKE FURTHER NOTICE** that on September 24, 2021, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") filed solicitation versions of the *Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 275, Ex. B] (the "<u>Solicitation Plan</u>") and the *Disclosure Statement for the Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 275, Ex. A] (the "<u>Disclosure Statement</u>").[2]

---

[1]  The last four digits of the Debtor's federal tax identification number are 3971. The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**PLEASE TAKE FURTHER NOTICE** that on October 22, 2021, the Debtor filed the *First Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 300, Ex. A] (the "First Amended Plan") incorporating certain changes to the Plan.

**PLEASE TAKE FURTHER NOTICE** that on October 22, 2021, the Debtor filed the *Proposed Findings of Fact, Conclusions of Law, and Order Approving the Disclosure Statement and Confirming First Amended Chapter 11 Plan of Liquidation for Green sill Capital Inc.* [Docket No. 303, Ex. A] (the "Proposed Confirmation Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby files (a) a second amended version of the Plan (the "Second Amended Plan"), attached hereto as **Exhibit A**, which resolves the *Limited Objection of the Official Committee of Unsecured Creditors to Confirmation of the Debtor's Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 297] (the "Limited Objection"); (b) a redline of the Second Amended Plan, attached hereto as **Exhibit B**, showing the changes to the First Amended Plan; and (c) a cumulative redline of the Second Amended Plan, attached hereto as **Exhibit C**, showing the changes to the Solicitation Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby files (a) an amended version of the Proposed Confirmation Order (the "Amended Proposed Confirmation Order"), attached hereto as **Exhibit D**, which resolves the Limited Objection; and (b) a redline of the Amended Proposed Confirmation Order, attached hereto as **Exhibit E**, showing the changes to the Proposed Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the approval of the Second Amended Plan and Disclosure Statement (the "Combined Hearing") will be held on **October 26, 2021 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, New York, New York 10004, via Court Solutions LLC at www.court-solutions.com. Instructions to register for Court Solutions LLC are attached to Gen. Ord. M-543.

*[Concludes on the Following Page]*

**PLEASE TAKE FURTHER NOTICE** that copies of the above-referenced documents and all other documents filed in the Debtor's chapter 11 case are publicly available and may be obtained from (a) the office of the Clerk of the Bankruptcy Court (the "Clerk's Office") during normal business hours; (b) the Bankruptcy Court's electronic case filing system at www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov); (c) the Debtor's counsel, Togut, Segal & Segal LLP via email at greensillballots@teamtogut.com; or (d) at the Chapter 11 case website at https://cases.stretto.com/greensill/. **PLEASE NOTE: Neither the staff of the Clerk's Office nor the Debtor's counsel can give you legal advice.**

Dated:   October 26, 2021
             New York, New York

GREENSILL CAPITAL INC.,
*Debtor and Debtor in Possession*
By its Counsel
TOGUT, SEGAL & SEGAL LLP,
By:

*/s/ Kyle J. Ortiz*
ALBERT TOGUT
KYLE J. ORTIZ
BRYAN M. KOTLIAR
AMANDA C. GLAUBACH
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

## Exhibit A

## Second Amended Plan

NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST.  THE PLAN IS SUBJECT TO BANKRUPTCY COURT'S APPROVAL AND CERTAIN OTHER CONDITIONS.  THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN ARE BEING SOLICITED PURSUANT TO THE ACCOMPANYING DISCLOSURE STATEMENT, WHICH THE BANKRUPTCY COURT HAS APPROVED ON A PROVISIONAL BASIS, SUBJECT TO FINAL APPROVAL AT THE COMBINED HEARING.  ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.:  21-10561 (MEW) |
| Debtor.[1] | |

### SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR GREENSILL CAPITAL INC.

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Albert Togut
Kyle J. Ortiz
Bryan M. Kotliar
Amanda C. Glaubach

*Attorneys for the Debtor and*
*Debtor in Possession*

Dated:   October 26, 2021
         New York, New York

---

[1]   The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .............................1

ARTICLE II UNCLASSIFIED CLAIMS ............................................................................17

2.1    FINACITY SALE ORDER SUPERPRIORITY CLAIMS..........................................17

2.2    ADMINISTRATIVE CLAIMS. ...............................................................................18

2.3    PAYMENT OF U.S. TRUSTEE FEES......................................................................18

2.4    PROFESSIONAL FEE CLAIMS .............................................................................18

2.5    PRIORITY TAX CLAIMS.......................................................................................19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
        19

3.1    CLASSIFICATION IN GENERAL ..........................................................................19

3.2    SUMMARY OF CLASSIFICATION .......................................................................20

3.3    TREATMENT OF CLASSES...................................................................................20

3.4    ALTERNATIVE TREATMENT ..............................................................................22

3.5    SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS .........................22

3.6    SUBORDINATED CLAIMS. ..................................................................................23

3.7    CONTROVERSY CONCERNING IMPAIRMENT.................................................23

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ......................................23

4.1    ACCEPTANCE BY CLASS ENTITLED TO VOTE ................................................23

4.2    PRESUMED ACCEPTANCE OF THE PLAN .........................................................23

i

4.3     ELIMINATION OF CLASSES.....................................................................23

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ..................................23

5.1     PLAN OBJECTIVE..................................................................................23

5.2     ALLOWANCE AND CLASSIFICATION OF GCUK CLAIMS; GCUK / GCMC
CLAIM CONTRIBUTION. ..................................................................................24

5.3     GLOBAL SETTLEMENT. ........................................................................24

5.4     INTELLECTUAL PROPERTY ASSIGNMENT. ......................................25

5.5     VESTING OF ASSETS...............................................................................25

5.6     TERMINATION OF CURRENT OFFICERS, DIRECTORS, EMPLOYEES AND
PROFESSIONALS.................................................................................................26

5.7     LIQUIDATION TRUST.............................................................................26

5.8     EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ......................32

5.9     EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES.
32

5.10    FURTHER AUTHORIZATION. .................................................................32

5.11    PRESERVATION OF INSURANCE..........................................................33

5.12    DISSOLUTION OF THE DEBTOR............................................................33

ARTICLE VI DISTRIBUTIONS..............................................................................33

6.1     DISBURSING AGENT. ..............................................................................33

6.2     NO POSTPETITION INTEREST ON CLAIMS. ......................................33

6.3     DATE OF DISTRIBUTIONS......................................................................33

6.4     DISTRIBUTION RECORD DATE ............................................................33

6.5     BOOKS AND RECORDS ...........................................................................34

6.6      DELIVERY OF DISTRIBUTIONS ................................................................34

6.7      REVERSION ................................................................................................34

6.8      MANNER OF PAYMENT UNDER PLAN .................................................34

6.9      DE MINIMIS CASH DISTRIBUTIONS .....................................................34

6.10     NO DISTRIBUTION IN EXCESS OF AMOUNT OF ALLOWED CLAIM .........34

6.11     ALLOCATION OF DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST 34

6.12     SETOFFS AND RECOUPMENTS ..............................................................35

6.13     RIGHTS AND POWERS OF DISBURSING AGENT ................................35

6.14     WITHHOLDING AND REPORTING REQUIREMENTS .........................35

6.15     CLAIMS PAID OR PAYABLE BY THIRD PARTIES ..............................36

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ......................................37

7.1      ALLOWANCE OF CLAIMS .......................................................................37

7.2      OBJECTIONS TO CLAIMS .......................................................................37

7.3      ESTIMATION OF CLAIMS ........................................................................38

7.4      NO DISTRIBUTIONS PENDING ALLOWANCE. .....................................38

7.5      RESOLUTION OF CLAIMS. ......................................................................38

7.6      DISALLOWED CLAIMS. ...........................................................................39

7.7      NO RECOURSE. .........................................................................................39

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ....................................................................................................................39

8.1      REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......39

8.2      INDEMNIFICATION ................................................................................40

8.3      CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES. ........................................................................................40

8.4      RESERVATION OF RIGHTS. ......................................................................40

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN.......................................................................41

9.1      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..................................41

9.2      WAIVER OF CONDITIONS PRECEDENT ...............................................41

ARTICLE X EFFECT OF PLAN CONFIRMATION ...........................................42

10.1     BINDING EFFECT....................................................................................42

10.2     RELEASES AND RELATED MATTERS ...................................................42

10.3     INJUNCTION............................................................................................44

10.4     EXCULPATION AND LIMITATION OF LIABILITY...........................................45

10.5     NO DISCHARGE.......................................................................................46

10.6     TERM OF BANKRUPTCY INJUNCTION OR STAYS.............................................46

10.7     POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS ...............46

ARTICLE XI RETENTION OF JURISDICTION....................................................46

11.1     RETENTION OF JURISDICTION. ...............................................................46

11.2     NO LIMITATION ON ENFORCEMENT BY SEC OR THE U.S. ATTORNEY'S
OFFICE ON NON-DEBTORS. ............................................................................48

ARTICLE XII MISCELLANEOUS PROVISIONS ...............................................48

12.1     PAYMENT OF STATUTORY FEES ...........................................................48

12.2     DISSOLUTION OF THE CREDITORS' COMMITTEE. ........................................48

12.3    AMENDMENT OR MODIFICATION OF THE PLAN ........................................48

12.4    SUBSTANTIAL CONSUMMATION ........................................................................49

12.5    SEVERABILITY OF PLAN PROVISIONS ................................................................49

12.6    SUCCESSORS AND ASSIGNS ...............................................................................49

12.7    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION .....................49

12.8    GOVERNING LAW ...................................................................................................50

12.9    TIME ...........................................................................................................................50

12.10   IMMEDIATE BINDING EFFECT ...........................................................................50

12.11   ENTIRE AGREEMENT .............................................................................................50

12.12   NOTICE ......................................................................................................................50

ARTICLE XIII CONFIRMATION REQUEST ....................................................................51

## INTRODUCTION

Greensill Capital Inc. as debtor and debtor in possession in the above-captioned case, proposes the following plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtor. Subject to Section 12.7 of the Plan, certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation (as such term is defined in section 1101 of the Bankruptcy Code).

Holders of Claims and Interests should refer to the Disclosure Statement for information concerning, among other things, (a) the Debtor's history, assets, and liabilities, and (b) the Plan and related matters.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCE OR REJECTIONS OF THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    ***2019 Acquisition*** means the Debtor's acquisition of the outstanding equity interest in Finacity Corporation in 2019 pursuant to that certain Stock Purchase Agreement, dated as of June 10, 2019 (as modified by that certain Letter Agreement, dated December 20, 2019) and all agreements or obligations incurred thereby.

1.2    ***2019 Acquisition Causes of Action*** means all legal, equitable, and beneficial right, under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, other than the Katz Parties, including, without limitation, claims for fraudulent transfer, preference or otherwise under chapter 5 of the Bankruptcy Code or applicable state law in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfers of value resulting from, the 2019 Acquisition.

1.3    ***Accrued Professional Compensation*** means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying

any retainer that has been provided by the Debtor to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.4 ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to:  (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estate and operating the business of the Debtors, including for wages, salaries or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Estate;  (b) Professional Fee Claims;  (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code;  and (d) all other Claims entitled to Administrative Claim status pursuant to an order of the Bankruptcy Court.

1.5 ***Administrative Claims Bar Date*** shall have the meaning set forth in Section 2.2.

1.6 ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.7 ***Allowed*** means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed, and as to which the Debtor, Creditors' Committee, Liquidation Trust or other parties in interest have not filed an objection by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date or Administrative Claims Bar Date, and as to which the Debtor, Creditors' Committee, Liquidation Trust, or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court;  *provided, however,* that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been timely filed and any Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is not considered Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.8 ***Assumed Contracts*** means those Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan and set forth on the

2

Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement.

1.9     ***Australian Liquidators*** means Matthew Byrnes, Philip Campbell-Wilson and Michael McCann of Grant Thornton Australia Limited of Level 22, Tower 5 Collins Square 727 Collins Street Melbourne VIC 3008, Australia, in their capacity as joint liquidators of Greensill Australia and without personal liability.

1.10     ***Avoidance Action*** means any claim or Cause of Action of the Estate to recover or avoid transfers or to avoid liens under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including but not limited to sections 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of the Debtor's or the Estate's claim, counterclaim, setoff, or offset rights, regardless of whether or not such action has been commenced prior to the Effective Date.

1.11     ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject the Plan and on which the Holder is to indicate, among other things, acceptance or rejection of the Plan.

1.12     ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

1.13     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York.

1.14     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.15     ***Bar Date*** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) September 20, 2019 at 5:00 p.m. (prevailing Eastern Time) for Governmental Units; and (e) the Administrative Claims Bar Date.

1.16     ***Bar Date Order*** means the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 253].

1.17     ***Beneficiaries*** means the Holders of Claims and Interests who are the beneficiaries of the Liquidation Trust.

1.18     ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.19     ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.20     ***Cause of Action*** means any action, proceeding, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, setoff, recoupment, cross-claim, counterclaim, third-party claim, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. "*Cause of Action*" includes: (a) any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

1.21     ***Chapter 11 Case*** means the bankruptcy case of the Debtor pending under case number 21-10561 (MEW) in the Bankruptcy Court.

1.22     ***Claim*** means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.23     ***Claims Objection Deadline*** means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim;  and (c) such other objection deadline as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.  For the avoidance of doubt, the Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the request of the Debtor or the Liquidation Trust, as applicable.

1.24     ***Claims Register*** means the official register of Claims maintained by the clerk of the Bankruptcy Court.

1.25     ***Class*** means a category of Claims or Interests, as described in Article III hereof.

1.26     ***Confirmation*** means the confirmation of the Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.27    ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.28    ***Confirmation Hearing*** means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

1.29    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the UK Administrators with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.30    ***Creditors' Committee*** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code.

1.31    ***Cure Amount*** means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, pursuant to Bankruptcy Code section 365, arising under any Assumed Contract.

1.32    ***D&O Policy*** means any and all insurance policies and contracts for directors' and officers' liability maintained by the Debtor, including any directors' and officers' "tail policy", including, but not limited to, that certain $5,000,000 Axis Management & Entity Liability Insurance Policy, Policy No. P-001-000412753-01.

1.33    ***Debtor*** means Greensill Capital Inc.

1.34    ***Disallowed*** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed;  unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.35    ***Disbursing Agent*** means the Liquidation Trustee or the Entity or Entities selected by the Liquidation Trustee to make or facilitate Distributions contemplated under the Plan after the Effective Date.

1.36    ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as amended, modified, or supplemented from time to time.

1.37    ***Disputed Claim*** means (a) any Claim as to which the Debtor, Creditors' Committee, Liquidation Trust or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Creditors' Committee, Liquidation Trust, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order;  (b) any

Claim scheduled by the Debtor as contingent, unliquidated, or disputed;  (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed;  or (d) any Claim prior to it having become an Allowed Claim.

1.38     ***Distribution*** means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

1.39     ***Distribution Date*** means a date or dates, including the Initial Distribution Date as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.40     ***Distribution Record Date*** means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to received Distributions, which date shall be the first day of the Confirmation Hearing or such other date as designated in a Final Order of the Bankruptcy Court.

1.41     ***Effective Date*** means the Business Day the Plan becomes effective as provided in Article IX hereof.

1.42     ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.43     ***Estate*** means the chapter 11 estate of the Debtor created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.44     ***Exchange Act*** means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

1.45     ***Exculpated Parties*** means the following parties in their respective capacities as such: (a) the Debtor; (b) the Creditors' Committee and its members (each in their capacities as such); and (c) with respect to each of the foregoing persons in clauses (a) and (b), each of their Related Parties.

1.46     ***Executory Contract*** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.47     ***Exhibit*** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.48     ***Federal Judgment Rate*** means the federal judgment rate, 28 U.S.C. § 1961, in effect as of the Petition Date, compounded annually.

1.49     ***Finacity Sale*** means the Debtor's sale of its 100% ownership interest in Finacity Corporation to the Purchaser pursuant to the Finacity Sale Documents as approved by the Finacity Sale Order.

1.50     ***Finacity Sale Documents*** means that certain Stock Sale Agreement, among the Debtor, Finacity Corporation, and the Purchaser, a copy of which is attached

as Exhibit A to the Finacity Sale Order (together with the schedules and/or exhibits and all related documents, including the Finacity Settlement Agreement), as they may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

1.51    *Finacity Sale Indemnity Obligations* means the requirement under section 2(g) of the Finacity Settlement Agreement for the Debtor and the Liquidation Trust to indemnify the Purchaser, Finacity Corporation, and the Katz Parties in accordance with section 2(g) of the Finacity Settlement Agreement, which obligations the Liquidation Trust may satisfy at any time in accordance with the Finacity Sale Documents, and upon such satisfaction, any Finacity Sale Reserve Obligations or Finacity Sale Order Superpriority Claims with respect to such satisfied Finacity Sale Indemnity Obligation shall be immediately satisfied, terminated, discharged, and expunged without further order of the Court.

1.52    *Finacity Sale Order* means that certain order of the Bankruptcy Court, entered on August 18, 2021 [Docket No. 236] approving the Finacity Sale.

1.53    *Finacity Sale Order Superpriority Claims* means the Finacity Superpriority Claim and the Katz Superpriority Claim.

1.54    *Finacity Sale Reserve Obligations* means the requirement under paragraph 4 of the Finacity Sale Order for the Debtor and the Liquidation Trust to hold any proceeds of a 2019 Acquisition Cause of Action in trust on account of Finacity Sale Indemnity Obligations arising from such 2019 Acquisition Cause of Action until the Finacity Sale Order Superpriority Claim for such Finacity Sale Indemnity Obligation, if any, is asserted and resolved or as may otherwise be agreed to by the Debtor or the Liquidation Trust, as applicable, and Finacity Corporation or the Katz Parties, as applicable, or, alternatively, until Finacity Corporation and the Katz Parties receive releases, in form and substance satisfactory to Finacity Corporation and the Katz Parties (respectively) that eliminate such Finacity Sale Indemnity Obligation.

1.55    *Finacity Settlement Agreement* means that certain Settlement Agreement among the Debtor, GCUK, GCMC, the UK Administrators, Greensill Australia, the Australian Liquidators, Finacity Corporation, Neely Funding LLC, and the Katz Parties, a copy of which is attached as Exhibit B to the Finacity Sale Order.

1.56    *Finacity Superpriority Claim* has the meaning set forth in the Finacity Sale Order.

1.57    *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the

request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.58    **GCMC** means Greensill Capital Management (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.59    **GCUK** means Greensill Capital (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.60    **GCUK / GCMC Claim Contribution** means GCUK's and GCMC's contribution to the Debtor of all legal, equitable, and beneficial right under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action (i) against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, including, without limitation, Avoidance Actions in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfer of value resulting from, the 2019 Acquisition and (ii) that constitute Avoidance Actions that seek the avoidance or recovery of any transfers made by or on behalf of the Debtor of proceeds where such transfers were treated by GCUK as advances under the GCUK Intercompany Loan.

1.61    **GCUK / GCMC Parties** means the following parties in their respective capacities as such:  (a) GCUK, (b) GCMC, and (c) the UK Administrators.

1.62    **GCUK / GCMC Release Requirements** means that the GCUK / GCMC Parties shall be included as released parties for purposes of Sections 10.2(a) and 10.2(b) only to the extent that the GCUK / GCMC Parties (a) vote to accept the Plan (solely to the extent such party is entitled to vote) (b) support, act in good faith, and take all reasonable actions necessary to consummate the Plan and implement the terms of the Global Settlement, or (c) do not take any action, directly or indirectly, that could reasonably be expected to materially delay, interfere with or impede the confirmation or consummation of the Plan.

1.63    **GCUK Intercompany Loan** means that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor as borrower, and GCUK, as lender.

1.64    **GCUK Intellectual Property** means any and all of the Debtor's rights, title and interest in the following (together with all related software and applications), each (other than Greensill Finance SAP) as more fully described in the *Debtors' Motion for an Order Authorizing and Directing the Debtor to Enter into Intellectual Property Assignment Agreement,* filed on April 21, 2021 [Docket No. 62]: (a) Accounts Receivable Module (ARM); (b) Greensill Payments Engine (GPE); (c) New Core System (NCS); (d) Greensill Trading Module (GTM); (e) Client File Converter (CFC); (f) Allocation Tool; (g) Decision Engine; (h) Shared Services; (i) Verdi (completed or in development); and (j) Greensill Finance SAP.

1.65    **GCUK Intellectual Property Assignment Agreement** means that certain Assignment of Intellectual Property Agreement between the Debtor and GCUK, in form and substance reasonably acceptable to the Debtor, the Creditors' Committee,

GCUK and the UK Administrators, a copy of which shall be included in the Plan Supplement.

1.66 **_GCUK L/C Claim_** means Proof of Claim numbered 50 (as amended or modified from time to time) filed by GCUK asserting amounts arising under the debiting of an account in connection with a letter of credit provided as security for the Debtor's obligations under its former corporate headquarters.

1.67 **_General Bar Date_** means June 14, 2021 at 5:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against the Debtor must have filed a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.68 **_General Unsecured Claim_** means any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, a Priority Wage Claim, or the Subordinated GCUK Intercompany Loan Claim. For the avoidance of doubt, the GCUK L/C Claim shall be classified and allowed as a Class 5 General Unsecured Claim.

1.69 **_GCUK Services Agreement_** means that certain Services Agreement, dated March 25, 2021 (as amended and restated on June 11, 2021 and as may be further amended, modified, restated and/or supplemented from time to time).

1.70 **_Global Settlement_** means the settlements and compromises set forth in that certain Addendum to Sale Order, dated August 12, 2021, by among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators, a copy of which is attached as Exhibit C to the Finacity Sale Order.

1.71 **_Governmental Unit_** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.72 **_Greensill Australia_** means Greensill Capital Pty Limited (in liquidation) (receivers and managers appointed), an Australian proprietary limited company, acting by the Australian Liquidators.

1.73 **_Holder_** means a holder of a Claim or Interest, as applicable.

1.74 **_Impaired_** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.75 **_Initial Distribution Date_** means the date or dates on which the Disbursing Agent makes the first distribution to Holders of Allowed Claims pursuant to the terms of the Plan.

1.76 **_Interest_** means any of the equity interests in the Debtor.

1.77 **_IRC_** means the Internal Revenue Code of 1986, as now in effect or hereafter amended.

1.78    ***IRS*** means the Internal Revenue Service.

1.79    ***Katz Parties*** means Adrian Katz, Danalyn Katz (a/k/a Dana Katz), and the Katz Family Trust.

1.80    ***Katz Superpriority Claim*** has the meaning set forth in the Finacity Sale Order.

1.81    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.82    ***Liquidation Trust*** means the trust established pursuant to the Plan and in accordance with the Confirmation Order and Liquidation Trust Agreement.

1.83    ***Liquidation Trust Agreement*** means the trust agreement that documents the powers, duties, and responsibilities of the Liquidation Trust, and which document will be materially consistent with this Plan and in form and substance reasonably acceptable to the UK Administrators and satisfactory to the Debtor and the Creditors' Committee, as such agreement may be amended from time to time in accordance with its terms.

1.84    ***Liquidation Trust Assets*** means the Debtor's Retained Assets, including, but not limited to, (i) the remaining proceeds of all sales of the Debtor's assets, including the Finacity Sale, after the payment of all allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (ii) all Cash remaining in the Estate after the payment of allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (iii) all Retained Causes of Action; (iv) all rights to tax refunds; (v) all marketable and unsold hard assets of the Debtor, including but not limited to artwork and FFE (but excluding the GCUK Intellectual Property); and (vi) all rights with respect to the insurance policies of the Debtor, including the D&O Policies, and the right to recover therefrom, all of which shall be transferred or assigned to the Liquidation Trust on the Effective Date, free and clear of any liens or claims that might otherwise have existed in favor of any party and (b) Liquidation Trust Proceeds, but excluding the Professional Fee Escrow Account (and the funds therein) and the Plan Reserve Account (and the funds therein) until satisfaction or resolution of Professional Fee Claims and Plan Reserve Obligations, respectively, at which point the remaining funds in the Professional Fee Escrow Account, if any, and the Plan Reserve Account, if any, shall be become Liquidation Trust Assets.

1.85    ***Liquidation Trust Funding Amount*** means an amount equal to (a) the Liquidation Trust Minimum Cash Amount plus (b) all of the Debtor's Cash on hand as of the Effective Date following payments required to be made on the Effective Date on account of all Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, Priority Wage Claims, U.S. Trustee Fees, and to fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount and the Plan Reserve Account with the Plan Reserve Amount; provided that if the Debtor's Cash on hand as of the Effective Date following the payments set forth in the foregoing clause (b) shall be insufficient to satisfy the Liquidation Trust Minimum

Cash Amount, the Professional Fee Escrow Amount shall be reduced accordingly on a Pro Rata basis to guarantee the Liquidation Trust Minimum Cash Amount.

1.86    ***Liquidation Trust Minimum Cash Amount*** means $250,000.

1.87    ***Liquidation Trust GCMC Interests*** means Liquidation Trust Interests representing the right to receive 100% of the Liquidation Trust Net Recovery following payment in full of all Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

1.88    ***Liquidation Trust GUC Interests*** means Liquidation Trust Interests representing the right to receive, upon and after the Effective Date, 80% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full. Notwithstanding the foregoing, and for the sake of clarity, all Estate recoveries made from Retained Causes of Action, including from any settlement thereof, effected prior to the Effective Date, shall be allocated solely (i.e. 100%) to payment of Allowed General Unsecured Claims and distributed on the Initial Distribution Date.

1.89    ***Liquidation Trust GCUK Interests*** means Liquidation Trust Interests representing the right to receive (a) upon and after the Effective Date, 20% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full and (b) following payment in full of Allowed General Unsecured Claims, 100% of the Liquidation Trust Net Recovery until the Subordinated GCUK Intercompany Loan Claim is paid in full.

1.90    ***Liquidation Trust Interests*** means a beneficial interest in the Liquidation Trust entitling the Holder thereof to the Distribution from the Liquidation Trust as provided for in the Plan and in the Liquidation Trust Agreement.

1.91    ***Liquidation Trust Net Recovery*** means the Liquidation Trust Assets available for distributions to Holders of Claims and Interests in accordance with the Plan following payment of Post-Effective Date Expenses, satisfaction of the Finacity Sale Reserve Obligations, the balance of any remaining unpaid Allowed Professional Fee Claims to the extent not satisfied in full from the Professional Fee Escrow, in each case, in accordance with their respective priorities under the Bankruptcy Code or any order of the Bankruptcy Court, including without limitation, the Confirmation Order and the Finacity Sale Order; *provided* that the Disbursing Agent shall be entitled to make Distributions of Liquidation Trust Proceeds, other than amounts used to fund the Finacity Sale Reserve Obligations, prior to any satisfaction of the Finacity Sale Indemnity Obligations.

1.92    ***Liquidation Trust Proceeds*** means any and all Cash, property and other rents, profits, and/or proceeds derived from the Liquidating Trust Assets, including reducing Retained Causes of Action to Cash.

1.93    ***Liquidation Trustee*** means (a) the Person selected by the Creditors' Committee in consultation with GCUK and the UK Administrators appointed as the trustee pursuant to the Liquidation Trust Agreement or any other Person approved by the Bankruptcy Court and (b) any successor trustee(s) appointed

pursuant to the Liquidation Trust Agreement that has the powers and responsibilities set forth in the Plan, the Confirmation Order, and the Liquidation Trust Agreement. Whenever the Liquidation Trustee is referred to herein, all such references are qualified by the Liquidation Trustee's powers rights, and obligations as set forth in the Liquidation Trust Agreement.

1.94    ***Liquidation Trustee Disclosure*** means a written disclosure to be filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline disclosing the identity of the Liquidation Trustee, the Liquidation Trustee's credentials, any and all relevant affiliations, connections or actual or potential conflicts of interest.

1.95    ***Other Priority Claim*** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.96    ***Other Secured Claim*** means any Secured Claim that is not a Secured Tax Claim.

1.97    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.98    ***Petition Date*** means March 25, 2021, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

1.99    ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time, which shall be in form and substance reasonably acceptable to the UK Administrators solely with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.100    ***Plan Reserve Amount*** means the Debtor's reasonable best estimate of amounts necessary to pay in full in Cash all Plan Reserve Obligations, which shall be held in the Plan Reserve Account and used by the Liquidation Trustee to pay such Plan Reserve Obligations.

1.101    ***Plan Reserve Account*** means an escrow account to be funded by the Plan Reserve Amount on the Effective Date, which shall be used solely to pay the Plan Reserve Obligations.

1.102    ***Plan Reserve Obligations*** means the Allowed Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims that are not satisfied as of the Effective Date.

1.103    ***Plan Supplement*** means any supplement to the Plan, and the compilation of documents, forms of documents, and Exhibits to the Plan, as amended, modified, or supplemented from time to time, which may be filed in draft or

substantially final or non-final form, in form and substance satisfactory to the applicable parties as provided in the Global Settlement and the Plan, which shall be filed by the Debtor no later than seven (7) calendar days prior to the Voting Deadline, and including the following, without limitation:  (a) the Liquidation Trust Agreement, (b) the Liquidation Trustee Disclosure, (c) a non-exhaustive list of the Retained Causes of Action, (d) the GCUK Intellectual Property Assignment Agreement, (e) the Schedule of Assumed Executory Contracts and Unexpired Leases, and (f) any other necessary documentation related to the Plan.

1.104    ***Post-Effective Date Expenses*** means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date in connection with the implementation of the Plan, the administration of the post-Effective Date Estate and the implementation of the Liquidation Trust, including, but not limited to:  (a) the Liquidation Trustee's Expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidation Trust or the Liquidation Trust Assets and accrued on or after the Effective Date, (b) U.S. Trustee Fees, if any, which accrued after the Effective Date, (c) the Liquidation Trustee's Expenses in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes and filing tax returns, (d) any Expenses incurred by the Liquidation Trust or the Liquidation Trustee, (e) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidation Trustee or the Liquidation Trust, (f) the fees and expenses of any Disbursing Agent selected by the Liquidation Trustee to act as its agent in making Distributions, and (g) the Finacity Sale Order Indemnity Obligations.

1.105    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.106    ***Priority Wage Claim*** means any Claim of a kind specified in sections 507(a)(4) and/or 507(a)(5) of the Bankruptcy Code up to an amount not to exceed the $13,650 statutory cap set forth therein.

1.107    ***Professional*** means any professional employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise.

1.108    ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered and reimbursement of costs incurred prior to and including the Effective Date.

1.109    ***Professional Fee Escrow*** means an escrow account to be funded with the Professional Fee Escrow Amount on the Effective Date which shall be used solely for the purpose of paying all Allowed Professional Fee Claims and thereafter.

1.110    ***Professional Fee Escrow Amount*** means (a) the aggregate Accrued Professional Compensation incurred through the Effective Date as estimated by the

13

Professionals in accordance with Section 2.4 and (b) the aggregate accrued U.S. Trustee Fees as estimated by the Debtor in accordance with Section 2.3.

1.111    ***Pro Rata*** means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests within such Class.

1.112    ***Proof of Claim*** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.113    ***Purchaser*** means White Oak Global Advisors, LLC.

1.114    ***Rejection Damages Claims Bar Date*** means the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be established by order of the Bankruptcy Court or as otherwise agreed to in writing by the Liquidation Trust and the applicable claimant.

1.115    ***Related Parties*** means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.116    ***Releasing Parties*** means the following parties solely to the extent acting in their respective capabilities as such: (a) any Holder of a Claim entitled to vote on the Plan that opts in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; and (b) any Holder of a Claim entitled to vote on the Plan that does not opt in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; *provided, however,* none of GCMC, GCUK, the UK Administrators, Greensill Australia, or the Australian Liquidators is or shall be deemed to be a "Releasing Party" hereunder.

1.117    ***Retained Assets*** means any and all of the Debtor's assets including, without limitation, (a) the Debtor's Cash on hand as of the Effective Date, following payments required to be made on the Effective Date, (b) all Retained Causes of Action, (c) all rights to tax refunds, (d) all marketable and unsold tangible and intangible assets of the Debtor, including, but not limited to, artwork and fixtures, furniture and equipment, and (d) all rights with respect to insurance policies of the Debtor, including the right to recover therefrom; *provided, however,* "Retained Assets" shall not include any assets expressly assigned or transferred by the Debtor to a party other than the Liquidation Trust pursuant to the Plan (including, for the avoidance of doubt, the GCUK Intellectual Property).

1.118    ***Retained Causes of Action*** means those Causes of Action to be retained by the Debtor and transferred to the Liquidation Trust in accordance with the

Plan, which shall be set forth in the Plan Supplement. Retained Causes of Action shall include, but are not limited to:  (a) all Avoidance Actions; (b) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, managers, employees, affiliates, or insiders of the Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O Policy or fiduciary insurance policies (including for bad faith) maintained by the Debtor; and (c) the right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code.  For the avoidance of doubt, Retained Causes of Action include the 2019 Acquisition Causes of Action to the extent not released pursuant to the Finacity Settlement Agreement and Finacity Sale Order and shall not include any Causes of Action otherwise waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Bankruptcy Court order (including the Finacity Sale Order).

1.119    *SEC* means the U.S. Securities and Exchange Commission.

1.120    ***Securities Act*** means the Securities Act of 1933, as now in effect or hereafter amended.

1.121    ***Schedules*** means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.122    ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means a schedule that may be filed as part of the Plan Supplement of all Executory Contracts and Unexpired Leases that the Debtor intends to assume or assume and assign pursuant to the Plan.

1.123    ***Secured Claim*** means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.124    ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitation therein and including any related Secured Claim for penalties).

1.125    ***Subordinated GCUK Intercompany Loan Claim*** means Proof of Claim numbered 49 (as may be amended or modified) filed by GCUK asserting amounts allegedly owed under that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor, as borrower, and GCUK, as lender.

1.126    ***Third Party Release*** means the release by Holders of Claims as set forth in Section 10.2(b) of the Plan.

1.127    ***UK Administrators*** means Christine Mary Laverty, Trevor Patrick O'Sullivan and William George Edward Stagg, each a licensed insolvency practitioner of Grant Thornton UK LLP of 30 Finsbury Square, London EC2A 1AG, in their capacity as joint administrators of GCUK and GCMC and without personal liability.

1.128    ***U.S. Attorney's Office*** means the Office of the United States Attorney.

1.129    ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.130    ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estate by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

1.131    ***Unclaimed Distribution*** means any Distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (i) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check, (ii) given written notice to the Disbursing Agent of an intent to accept a particular Distribution, (iii) responded in writing to the request of the Disbursing Agent for information necessary to facilitate a particular Distribution, or (iv) taken any other action necessary to facilitate such Distribution.

1.132    ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.133    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.134    ***Voting Deadline*** means the date by which a Holder of a Claim entitled to vote on the Plan must deliver a Ballot to accept or reject the Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

*Rules of Interpretation and Computation of Time*.  For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;  (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;  (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Plan;  (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns;  (e) all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan;  (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;  (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;  (h) subject to the provisions of any contract,

certificates of incorporation, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation"; and (l) with reference to any Distribution under the Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required); or (c) at the Debtor's case website at https://cases.stretto.com/greensill.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

*Controlling Document*.  In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided,* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Finacity Sale Order Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Priority Tax Claims, and Professional Fee Claims are not classified and are not entitled to vote on the Plan.

2.1    ***Finacity Sale Order Superpriority Claims***.  As of the Effective Date, the Finacity Sale Order Superpriority Claims are contingent obligations of the Debtor and the Liquidation Trust, as applicable, and shall be satisfied in accordance with paragraph 4 of the Finacity Sale Order.  For the avoidance of doubt, the Finacity Sale Order Superpriority Claims shall not be cancelled and discharged absent

satisfaction of the Finacity Sale Indemnity Obligations and the Finacity Sale Reserve Obligations as set forth herein.

### 2.2    *Administrative Claims.*

(a)    All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; and (ii) Administrative Claims that have been Allowed on or before the Effective Date must be in writing and filed with the Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation Trustee, and the U.S. Trustee so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "**Administrative Claims Bar Date**").  Such request for payment must include at a minimum: (i) the name of the holder of the asserted Administrative Claim; (ii) the amount of the Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b)    On or as soon as reasonably practicable on the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Allowed Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

### 2.3    *Payment of U.S. Trustee Fees.*  On the Effective Date, the Debtor shall (a) pay all accrued and outstanding U.S. Trustee Fees, if any, and (b) fund the Professional Fee Escrow with the Debtor's good faith estimate of U.S. Trustee Fees anticipated to be incurred through and including the Effective Date.  Following the Effective Date, the Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee, if any, in accordance with Section 11.3.

### 2.4    *Professional Fee Claims*.

(a)    To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)    Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date and shall deliver such good

faith estimate to the Debtor no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

(c)    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Liquidation Trust and (y) shall be held in trust for Professionals; provided that any remaining Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidation Trust.

(d)    Allowed Professional Fee Claims shall be paid in Cash to such Professionals (i) from the funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtor's and the Liquidation Trust's obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow; and (ii) if the Professional Fee Escrow is insufficient to pay Allowed Professional Fee Claims, the Allowed Professional Fee Claims shall be paid from Liquidation Trust Net Recovery on a Pro Rata basis until all Allowed Professional Fee Claims of Togut Segal, & Segal LLP, counsel to the Debtor, and Arent Fox LLP, counsel to the Creditors' Committee, have been paid in full.

(e)    The Debtor and the Liquidation Trustee, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

2.5    ***Priority Tax Claims.*** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    ***Classification in General***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class

for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     ***Summary of Classification***.  The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4 | Priority Wage Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Subordinated GCUK Intercompany Loan Claim | Impaired | Yes |
| 7 | Interests | Impaired | Yes |

3.3     ***Treatment of Classes***.

(a)     *Class 1 – Secured Tax Claims*

(i)     *Claims in Class*:  Class 1 consists of all Secured Tax Claims.

(ii)     *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claims agrees to different, less favorable treatment, each Holder of an Allowed Secured Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Allowed Secured Tax Claim becomes Allowed.

(iii)     *Voting:*  Class 1 is Unimpaired and not entitled to vote.

(b)     *Class 2 – Other Secured Claims*

(i)     *Claims in Class:*  Class 2 consists of all Other Secured Claims.

(ii)     *Treatment:*  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different, less favorable treatment, each Holder of an Allowed Other Secured Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed.

(iii)     *Voting:*  Class 2 is Unimpaired and not entitled to vote.

(c)     *Class 3 – Other Priority Claims*

(i)     *Claims in Class:*  Class 3 consists of all Other Priority Claims.

(ii)     *Treatment:*  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each Holder of an Allowed Other Priority Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

(iii)     *Voting:*  Class 3 is Unimpaired and not entitled to vote.

(d)     *Class 4 – Priority Wage Claims*

(i)     *Claims in Class:*  Class 4 consists of all Priority Wage Claims.

(ii)     *Treatment:*  Except to the extent that a Holder of an Allowed Priority Wage Claim agrees to different, less favorable treatment, each Holder of an Allowed Priority Wage Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Priority Wage Claim on the Effective Date.

(iii)     *Voting:*  Class 4 is Unimpaired and not entitled to vote.

(e)     *Class 5 – General Unsecured Claims*

(i)     *Claims in Class:*  Class 5 consists of all General Unsecured Claims.

(ii)     *Treatment:*  Subject to the terms herein and Section 5.7, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, Holders of Allowed General Unsecured Claims shall receive such

Holder's Pro Rata share of the Liquidation Trust GUC Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, their Pro Rata share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iii)    *Voting:* Class 5 is Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(f)    *Classes 6 – Subordinated GCUK Intercompany Loan Claim*

(i)    *Claims in Class*:  Class 6 consists of the Subordinated GCUK Intercompany Loan Claim.

(ii)    *Allowance:* On the Effective Date, pursuant to the Global Settlement, the Subordinated GCUK Intercompany Loan Claim shall be allowed in the amount of $52,840,506.80.

(iii)    *Treatment:* Pursuant to the Global Settlement, as the sole Holder of the Subordinated GCUK Intercompany Loan Claim, GCUK shall receive, in full and final satisfaction of such Claim, the Liquidation Trust GCUK Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, its share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iv)    *Voting:* Class 6 is Impaired and GCUK as holder of the Subordinated GCUK Intercompany Loan Claim is entitled to vote.

(g)    *Class 7 –  Interests*

(i)    *Claims in Class*:  Class 7 consists of all Interests.

(ii)    *Treatment*:  As the sole Holder of the Interests, GCMC (a) will not retain any Interests under the Plan,  and on the Effective Date the Interests will be cancelled, and (b) will receive the Liquidation Trust GCMC Interests.

(iii)    *Voting*:  Class 7 is Impaired and GCMC as holder of the Interests is entitled to vote.

3.4    ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and the Debtor or the Liquidation Trustee, as applicable, may agree in writing; *provided*, *however*, that under no circumstances may the Debtor agree to provide any other Distribution or treatment to any Holder of an Allowed Claim that would adversely impair the Distribution or treatment provided to any other Holder of an Allowed Claim.

3.5    ***Special Provision Regarding Unimpaired Claims***.  Except as otherwise provided in the Plan, nothing shall affect the Debtor's or the Liquidation Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired

Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6     ***Subordinated Claims.***  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code or otherwise.

3.7     ***Controversy Concerning Impairment.***  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     ***Acceptance by Class Entitled to Vote***.  Classes 5 (General Unsecured Claims), 6 (Subordinated GCUK Intercompany Loan Claim), and 7 (Interests) are the Classes of Claims and Interests of the Debtor that are entitled to vote to accept or reject the Plan.  Pursuant to the Global Settlement, GCUK (as a Holder of Class 5 and Class 6 Claims) has agreed to vote to accept the Plan.

4.2     ***Presumed Acceptance of the Plan***.  Classes 1 (Secured Tax Claims), 2 (Other Secured Claims), 3 (Other Priority Claims), and 4 (Priority Wage Claims), are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3     ***Elimination of Classes***.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     ***Plan Objective***.  The Plan's objective is to transfer all Retained Assets, including the Retained Causes of Action, to the Liquidation Trust.  The Liquidation Trustee will administer the Liquidation Trust and liquidate such Retained Assets, including the resolution of any Retained Causes of Action.  The Plan divides Holders' legal rights and interests into unclassified Claims and Classes of Claims and Interests based on the Holders' legal rights and interests, and the Liquidation Trustee will distribute the proceeds of the Retained Actions to Holders of Allowed Claims in

satisfaction of the Debtors' obligations under the Plan.  Holders of the Interests will receive any remaining value on account of such Retained Assets following payment in full of Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

5.2      ***Allowance and Classification of GCUK Claims; GCUK / GCMC Claim Contribution.***

(a)      Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the Subordinated GCUK Intercompany Loan Claim is allowed in the amount of $52,840,506.80 and classified in Class 6 of the Plan.

(b)      Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the GCUK L/C Claim has been allowed in the amount of $526,000 and classified in Class 5 of the Plan.

(c)      Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, GCUK shall be deemed to have made the GCUK / GCMC Claim Contribution.

5.3      ***Global Settlement.***   The provisions of the Plan relating to the Global Settlement constitute a good faith compromise and settlement among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

Upon the occurrence of the Effective Date, in exchange for (a) GCUK's voluntary and consensual subordination of its claims arising under the GCUK Intercompany Loan which have been asserted as General Unsecured Claims in the amount of approximately $53 million, (b) the GCUK / GCMC Claim Contribution, (c) GCUK's, GCMC's and the UK Administrators' continued support for the Debtor prior to and during the Chapter 11 Case (including pursuant to the GCUK Services Agreement) and the Plan, and (d) other valuable consideration provided under the Global Settlement, GCUK, GCMC, and the UK Administrators shall receive, as applicable, (1) allowance of the GCUK L/C Claim as a Class 5 Allowed General Unsecured Claim in the amount set forth herein, (2) the Liquidation Trust GCUK Interests and Liquidation Trust GCMC Interests on account of the Subordinated GCUK Intercompany Loan Claim and Interests, respectively, (3) the Debtor's transfer and assignment of the GCUK Intellectual Property pursuant to the GCUK Intellectual Property Assignment Agreement, and (4) the Releases and Third Party Releases as provided in Section 10.2 of the Plan.

Absent the Global Settlement, the Subordinated GCUK Intercompany Loan Claims may substantially reduce the recoveries to Holders of Allowed General Unsecured Claims, and the Debtor and the Creditors' Committee would likely seek nonconsensual recharacterization or subordination of such claims arising under the

GCUK Intercompany Loan, litigation in relation to which will be costly and has an uncertain outcome.

5.4 ***Intellectual Property Assignment.*** On the Effective Date, pursuant to the Global Settlement, the Debtor and GCUK shall enter into the GCUK Intellectual Property Assignment Agreement pursuant to which the Debtor will assign, transfer, and convey the GCUK Intellectual Property to GCUK. The Confirmation Order shall authorize and direct the Debtor to enter into the GCUK Intellectual Property Assignment Agreement in accordance with the terms and conditions thereof. Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement, any and all of the Debtor's legal, equitable, and beneficial right, title, and interest in, to, and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK free and clear of any liens, claims, interests, and encumbrances. The Debtor and the Liquidation Trust shall not be required to pay any Cure Amount in connection with their entry into the GCUK Intellectual Property Assignment Agreement or assignment of the GCUK Intellectual Property as provided therein.

5.5 ***Vesting of Assets.*** Unless otherwise provided under the Plan, on the Effective Date, the Retained Assets will vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other interests. On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidation Trust will be deemed final and irrevocable and Distributions may be made from the Liquidation Trust. In connection with the foregoing: (a) on the Effective Date, the appointment of the Liquidation Trustee shall become effective and the Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement and the Plan and may use, acquire and dispose of the Liquidation Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Confirmation Order will provide the Liquidation Trustee with express authority to convey, transfer, and assign any and all of the Liquidation Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action; and (c) as of the Effective Date, the Liquidation Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. To the extent the GCUK / GCMC Parties have possession, custody, or control of the Debtor's documents, they shall preserve all of such documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing), in accordance with the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) in the context of their pending English law administration proceedings, until the earlier of (i) their making them available to or transfer to the Debtor and/or the Liquidation Trustee, as applicable, (ii) the termination of the GCUK / GCMC Administration Proceedings or conversion of same to liquidation proceedings, and (ii) any further order of the Court. All rights of the GCUK / GCMC Parties are reserved with respect to the characterization or ownership of any and all books and records in possession or control of the GCUK / GCMC Parties.

5.6    ***Termination of Current Officers, Directors, Employees and Professionals.***  On the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and Creditors' Committee shall be deemed to terminate.

5.7    ***Liquidation Trust.***

(a)    *Liquidation Trustee.*  On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.

(i)   The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Liquidation Trust Agreement.  The Liquidation Trustee shall not be required to file a fee application to receive compensation.

(ii)  The Liquidation Trustee will be a disinterested Person designated by the Creditors' Committee, in consultation with GCUK and the UK Administrators, and identified in the Liquidation Trustee Disclosure.

(iii) The Liquidation Trustee shall carry out the duties as set forth in this Section 5.7 and in the Liquidation Trust Agreement.  Pursuant to Bankruptcy Code §1123(b)(3), the Liquidation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Retained Causes of Action in accordance with the best interests of and for the benefit of the Beneficiaries.

(iv) The Liquidation Trustee shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation as set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Plan, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidation Trustee, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein and to conserve and protect the Liquidation Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.  The Liquidation Trustee shall have the power and authority without further approval by the Court to liquidate the Liquidation Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Claims of the Estate, including but not limited to Retained Causes of Action, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with section 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trust in accordance with the Plan and Liquidation Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or

approval, employees and professionals to assist the Liquidation Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Retained Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval but in accordance with the Liquidation Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth in the Plan and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash. Subject to the other terms and provisions of the Plan, the Liquidation Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Retained Causes of Action based upon its powers as a bankruptcy appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.

(b) *Effectiveness of the Liquidation Trust.* On the Effective Date, if not previously signed, the Debtor and the Liquidation Trustee will execute the Liquidation Trust Agreement, and the Liquidation Trust Agreement will become effective without any further action by any party. The Liquidation Trust is organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidation Trust will be an affiliate of the Debtor (within the meaning and solely for purposes of sections 1125(e) and 1145(a) of the Bankruptcy Code. The Liquidation Trustee may elect for the Liquidation Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Liquidation Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the Beneficiaries. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

(c) *Beneficiaries.* In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidation Trust will be the Holders of all Allowed Claims against the Debtors as provided under the Plan. The Holders of Allowed Claims will receive an allocation of the respective Liquidation Trust Interests as provided for in the Plan and the Liquidation Trust Agreement. The Holders of Liquidation Trust Interests will receive Distributions from the Liquidation Trust as provided for in the Plan and the Liquidation Trust Agreement. The Beneficiaries shall be treated as grantors and owners of such Beneficiaries' respective portion of the Liquidation Trust.

(d)    *Implementation of the Liquidation Trust*.  On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidation Trustee shall execute the Liquidation Trust Agreement and take all such actions that are required to transfer the Retained Assets to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee will be authorized to, and shall, implement the Liquidation Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidation Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims, prosecuting or otherwise resolving Retained Causes of Action and causing Distributions from the Liquidation Trust to be made to the Beneficiaries.

(e)    *Transfer of the Retained Assets*.  As discussed in Section 5.5, unless otherwise expressly provided under the Plan, on the Effective Date, the Retained Assets will automatically vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges and other interests, with the Liquidation Trust being vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to all Liquidation Trust Assets.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. To the extent required to implement the transfer of the Retained Assets to the Liquidation Trust, as provided for herein, all Entities and Persons shall cooperate with the Debtor and the Estate to assist the Debtor and the Estate to implement the transfers.  Upon completion of the transfer of the Liquidation Trust Assets to the Liquidation Trust, except as otherwise set forth in the Plan or Confirmation Order, the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets, or the Liquidation Trust.  Likewise, upon completion of such transfer and subject to such exceptions as may be set forth in the Plan or Confirmation Order, the Liquidation Trust shall have no rights, title, or interest in or to any property of the Debtor or the Estate other than the Liquidation Trust Assets.  The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement, which Distributions, for the avoidance of doubt, shall be made by the Liquidation Trustee or the Disbursing Agent, as applicable, and shall not be made by or on behalf of the Debtor.

(f)    *Purpose of the Liquidation Trust*.  The Liquidation Trust shall be established for the purpose of liquidating the Liquidation Trust Assets, prosecuting any Retained Causes of Action to maximize recoveries for the benefit of the Beneficiaries, and making Distributions in accordance with the Plan to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes consistent with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the trust.

(g)    *Representative of the Estate*.  The Liquidation Trustee will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and vested with the authority and power (subject to the Liquidation Trust Agreement) of the representative of the Estate.  After the Effective Date, the Liquidation Trust shall have the authority and right on behalf of the Debtor

28

without the need for Bankruptcy Court approval (unless otherwise expressly indicated herein), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)      oversee and control the Liquidation Trust;

(ii)     collect and liquidate the Liquidation Trust Assets under the jurisdiction of the Bankruptcy Court;

(iii)    assert, prosecute, pursue, compromise, and settle in accordance with the Liquidation Trustee's reasonable business judgment, all Claims and Causes of Action, and enforce all legal or equitable remedies and defenses belonging to the Debtor or the Estate, including, without limitation, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; *provided that* (x) prior to payment in full of Allowed General Unsecured Claims, the Liquidation Trustee shall consult with the UK Administrators with respect to the negotiation of any proposed financing for Retained Causes of Action and any proposed settlements and compromises of Retained Causes of Action, and (y) following payment in full of Allowed General Unsecured Claims any proposed settlements and compromises of Retained Causes of Action shall be subject to the UK Administrators' review and consent (which shall not be unreasonably withheld, conditioned, or delayed);

(iv)    object to Claims in accordance with the Liquidation Trustee's reasonable business judgment;

(v)     make Distributions to Holders of Allowed Claims;

(vi)    exercise reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandonment of the Retained Assets and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(vii)   prosecute all Retained Causes of Action on behalf of the Debtor for the benefit of the Holders of Allowed Claims, elect not to pursue any Retained Causes of Action;

(viii)  retain, compensate and reimburse professionals to assist in performing the Liquidation Trustee's duties under the Plan;

(ix)    maintain the books and records and accounts of the Debtor and the Liquidation Trust and destroy such records consistent with applicable law and the Liquidation Trustee's duties;

(x)     invest the Cash of the Liquidation Trust and any income earned thereon;

(xi)    hold any reserves created on the Effective Date and create any reserves for payments required to be made pursuant to the Plan, including on account of the Plan Reserve Obligations, the Finacity Sale Order Indemnity Obligations, and the Finacity Sale Order Reserve Obligations;

(xii)    incur and pay reasonable and necessary expenses in connection with the performance of the Liquidation Trustee's duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidation Trustee;

(xiii)    administer the Liquidation Trust's and the Debtor's tax obligations, including (1) filing tax returns on behalf of the Liquidation Trust and the Debtor, as applicable, and paying tax obligations, (2) requesting, if necessary, an expedited determination of any unpaid tax liability of the Liquidation Trust or the Debtor under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtor ending after the Petition Date through the liquidation of the Liquidation Trust as determined under applicable tax laws, and (3) representing the interest and account of the Liquidation Trust and the Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit;

(xiv)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidation Trust that are required hereunder, by any Governmental Unit, or under applicable law;

(xv)    arrange for the liquidation and/or dissolution of the Debtor in accordance with applicable law and to indemnify, out of the assets of the Liquidation Trust, any liquidator appointed under the applicable law, or to seek any appropriate relief in furtherance of the Plan in any appropriate jurisdiction;

(xvi)    take such action as required to administer, wind-down and close the Chapter 11 Case; and

(xvii)    perform other duties and functions that are consistent with the implementation of the Plan as deemed by the Liquidation Trustee to implement the Plan and are not otherwise inconsistent with the Liquidation Trust Agreement.

(h)    *Liquidation Trust Funding*.  On the Effective Date, the Liquidation Trust shall be funded with the Liquidation Trust Funding Amount established from the Liquidation Trust Assets.  Subject to the provisions of the Liquidation Trust Agreement, the Liquidation Trust Funding Amount shall be used to pay the expenses of the Liquidation Trust, including, without limitation, costs and expenses of counsel.  The Liquidation Trust is authorized, without further order or approval of the Bankruptcy Court, to obtain third party financing from one or more parties as determined by the Liquidation Trustee as necessary to pursue the Liquidation Trust's objectives; *provided that* the Liquidation Trustee shall consult with the UK Administrators with respect to any proposed financing for Retained Causes of Action.

(i)    *Funding of Post-Effective Date Expenses*.  All expenses related to implementation of the Plan incurred from and after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case will be expenses of the Liquidation Trust, and the Liquidation Trustee will disburse funds from the Liquidation Trust Assets for purposes of paying the Post-Effective Date Expenses without the need for any further approval or order of the Bankruptcy Court.

(j)    *Indemnification.*  From and after the Effective Date, the Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee, solely in his or her capacity as the Liquidation Trustee for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidation Trustee's gross negligence, willful misconduct, or criminal conduct.

(k)    *Dissolution.*  The Liquidation Trustee and the Liquidation Trust shall be discharged and/or dissolved, as the case may be, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in its sole discretion, that the administration of any remaining Liquidation Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made.  If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trust may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Liquidation Trust, the Liquidation Trust may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to dissolve the Liquidation Trust, (y) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Liquidation Trust, and any insider of the Liquidation Trust, and (z) dissolve such Liquidation Trust

(l)    *Provisions Relating to Federal Income Tax Compliance.*  The Liquidation Trust generally is intended to be treated for United States federal income tax purposes, (i) in part as a grantor trust that is a liquidating trust within the meaning of Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and (ii) in part as one or more disputed ownership funds within the meaning of Treasury Regulations § 1.468B-9(c)(ii).  For United States federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of the Liquidation Trust Assets from the Debtor to the Holders of Liquidation Trust Interests, followed by the Holders of Liquidation Trust Interests' transfer of the Liquidation Trust Assets to the Liquidation Trust.  The Holders of Liquidation Trust Interests will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets. The Holders of Liquidation Trust Interests shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be allocated by the Liquidation Trust to the Holders of Liquidation Trust Interests using any reasonable allocation method.

(m)    *Miscellaneous Tax Matters.* The Liquidation Trustee will be required by the Liquidation Trust Agreement to file income tax returns for the Liquidation Trust as a grantor trust of the Holders of the Liquidation Trust Interests (and file separate returns for the disputed ownership fund(s) pursuant to Treasury Regulations § 1.468B-9(c)(ii) and pay all taxes owed on any net income or gain of the disputed ownership fund(s), on a current basis from Liquidation Trust Assets).  In

addition, the Liquidation Trust Agreement will require consistent valuation by the Liquidation Trust and the Holders of Liquidation Trust Interests, for all federal income tax and reporting purposes, of any property held by the Liquidation Trust. The Liquidation Trust Agreement also will limit the investment powers of the Liquidation Trust in accordance with IRS Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Holders of Liquidation Trust Interests (as such may have been determined at such time) its net income (net of any payment of or provision for taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets.

(n)  *Certain Securities Laws Matters.* The Liquidation Trust Interests shall not be "securities" under federal and state securities laws or, to the extent they are "securities," their issuance shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or other law requiring registration prior to the offering, issuance, Distribution or sale of securities, in accordance with and pursuant to section 1145 of the Bankruptcy Code. The Plan prohibits, and the Liquidation Trust Agreement will prohibit, the transfer or assignment of the Liquidation Trust Interests except by will, intestate succession or by operation of law. In addition, to the extent the Liquidation Trust Interests are "securities" the Liquidation Trust Interests will not be required to be registered under Section 12(g) of the Exchange Act.

5.8  ***Effectuating Documents; Further Transactions***. Any officer or director of the Debtor and the Liquidation Trustee is authorized to execute, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary of the Debtor and the Liquidation Trustee shall be authorized to certify or attest to any of the foregoing actions.

5.9  ***Exemption from Certain Transfer Taxes and Recording Fees.*** To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.10  ***Further Authorization.*** The Debtor and the Liquidation Trust, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

5.11    ***Preservation of Insurance.***  Nothing contained in this Plan shall diminish or impair the enforceability of any insurance policy, including the D&O Policy that may cover claims against the Debtor or any additional insureds, including the directors and officers thereof.

5.12    ***Dissolution of the Debtor.***  Upon the Effective Date, the Debtor shall be deemed dissolved without any further notice, action or order.  Except as otherwise provided herein, on the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and the Creditors' Committee shall be deemed to terminate.

## ARTICLE VI

## DISTRIBUTIONS

6.1    ***Disbursing Agent***.  The Liquidation Trustee shall serve as the Disbursing Agent under the Plan or select another Entity to serve as the Disbursing Agent.  Any Entity other than the Liquidation Trustee that acts as the Disbursing Agent for the Liquidation Trust will be an agent of the Liquidation Trustee and not a separate taxable Entity with respect to, among other things, the assets held, income received or disbursements or Distributions made for the Liquidation Trustee.  The Disbursing Agent shall make all Distributions required under the Plan.  The Disbursing Agent, if not the Liquidation Trustee, shall be authorized, after consultation with the Liquidation Trustee, to implement such procedures as it deems necessary to make Distributions pursuant to the Plan so as to efficiently and economically assure prompt and proportionate Distributions. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

6.2    ***No Postpetition Interest on Claims.***  Postpetition interest shall not accrue or be paid on any General Unsecured Claims or the Subordinated GCUK Intercompany Loan Claim and no Holder of such Claims shall be entitled to interest accruing on or after the Petition Date, except to the extent permitted under the Plan or the Bankruptcy Code.

6.3    ***Date of Distributions***.  Unless otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan shall be made on or before the Effective Date or as soon thereafter as is practicable, in the Liquidation Trustee's sole discretion or as otherwise required by the Liquidation Trust Agreement.

6.4    ***Distribution Record Date***.  Unless a notice of transfer of Claim or Interest has been filed with the Bankruptcy Court prior to the Distribution Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent will rely on the Claims Register when determining Holders on the Record Date.

6.5    ***Books and Records***.  The Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's books and records.  The Debtor, the Liquidation Trustee, and Disbursing Agent (if other than the Liquidation Trustee) shall cooperate in good faith to comply with the reporting and withholding requirements outlined in Section 6.15.

6.6    ***Delivery of Distributions***.  Subject to Sections 6.7, 6.10, 6.11, 6.13, and 6.15 of the Plan, the Disbursing Agent will issue or cause to be issued the applicable consideration under the Plan and, subject to Bankruptcy Rule 9010, will make all Distributions as and when required by the Plan to Holders of Allowed Claims to the address of the Holder of such claim on the books and records of the Debtor or its agents or the address in any written notice of address change delivered to the Debtor, the Liquidation Trustee or the Disbursing Agent, as applicable, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.  In the event that any Distribution is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to locate the Holder of an Allowed Claim whose Distribution is returned as undeliverable.  If such reasonable efforts are not successful, no further Distributions to such Holder of such Claim shall be made unless and until the Disbursing Agent is notified of then-current address of such Holder of the Claim, at which time all missed Distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind. Amounts in respect of undeliverable Distributions shall be returned to the Liquidation Trust until such Distributions are claimed or become subject to Section 6.7.

6.7    ***Reversion***.  Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Liquidation Trust, free and clear of any restrictions thereon.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandonment, or unclaimed property laws to the contrary.

6.8    ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtor or the Liquidation Trust, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Liquidation Trust, as applicable.

6.9    ***De Minimis Cash Distributions***. The Disbursing Agent shall not have any obligation to make a Distribution that is less than $50.00 in Cash.

6.10    ***No Distribution in Excess of Amount of Allowed Claim***. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

6.11    ***Allocation of Distributions Between Principal and Interest***. Except as otherwise provided in the Plan and subject to Section 3.3 of the Plan, to the

extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

6.12    ***Setoffs and Recoupments***. The Liquidation Trust or each Debtor or its designee as instructed by such Liquidation Trust or Debtor, as applicable, may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Liquidation Trust or the Debtor or its successors, as applicable, may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Liquidation Trust or Debtor, as applicable, and Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Liquidation Trust or the Debtor or its successor, as applicable, of any claims, rights, or Causes of Action that the Liquidation Trust or the Debtor or its successor or assign, as applicable, may possess against such Holder.

6.13    ***Rights and Powers of Disbursing Agent***.

(a)    *Powers of the Disbursing Agent*.  The Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable Distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (a) as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date) or pursuant to the Plan or (2) as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(b)    *Expenses Incurred on or After the Effective Date*.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Liquidation Trustee or the Debtor, as applicable, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidation Trustee or the Debtor, as applicable.

6.14    ***Withholding and Reporting Requirements***.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or the Liquidation Trust, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements.  In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property

and sell such withheld property to generate the Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Under the backup withholding rules of the Internal Revenue Service, a Holder may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which includes corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. The Debtor or the Liquidation Trust, as applicable, have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

The Debtor or the Liquidation Trust, as applicable, may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtor or the Liquidation Trust, as applicable, make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor or the Liquidation Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor or the Liquidation Trust, as applicable, or its respective property.

6.15    ***Claims Paid or Payable by Third Parties.***

(a)    *Claims Paid by Third Parties.*  The Debtor or the Liquidation Trust, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or the Liquidation Trust. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or the Liquidation Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

(b)     *Claims Payable by Third Parties*.  Except as otherwise provided in the Plan, (i) no Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     *Applicability of Insurance Proceeds*.  Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (i) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (ii) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1     ***Allowance of Claims***.  After the Effective Date, the Debtor and the Liquidation Trust shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

7.2     ***Objections to Claims***.

(a)     *Authority*. The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that he or she may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim after the Effective Date outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Trustee or the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)    *Amendments to Claims.*  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Trustee or Debtor, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)    *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, the Debtor, and after the Effective Date, the Liquidation Trust, may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Debtor or the Liquidation Trust, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Liquidation Trust, as applicable.

7.3    ***Estimation of Claims***.  For purposes of calculating and making Distributions and establishing reserves under the Plan, the Debtor or the Liquidation Trust, as applicable, may at any time after the Effective Date in good faith request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidation Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidation Trust as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4    ***No Distributions Pending Allowance.***.  If an objection to a Claim is filed as set forth in Section 7.2 hereof, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5    ***Resolution of Claims.***  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor or the Liquidation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and

any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtor or the Liquidation Trust or their respective successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor and the Liquidation Trust, as applicable.

7.6     ***Disallowed Claims.***  All Claims held by persons or entities against whom or which the Debtor or the Liquidation Trust have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Section 7.6 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtor or the Liquidation Trust from such party have been paid.

7.7     ***No Recourse.***  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed claims in the respective Class, no Claim Holder shall have recourse against the Distribution Agent, the Debtor, the Liquidation Trustee, the Liquidation Trust, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property.  **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIM.**

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1     ***Rejection of Executory Contracts and Unexpired Leases***.  Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order);  (b) is the subject of a motion to assume filed on or before the Effective Date;  (c) is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases;  (d) has expired or terminated pursuant to its own terms;  or (e) is described in Section 8.2 of the Plan.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired

Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Debtor or the assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

8.2    ***Indemnification***. Except as otherwise specifically limited in the Plan, any obligations or rights of the Debtor to defend, indemnify, reimburse, or limit the liability of the Debtor's present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers, and consultants (the "***Covered Persons***") pursuant to the Debtor's certificate of incorporation, bylaws, indemnification agreements, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

8.3    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.*** Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed no later than the Rejection Damages Claims Bar Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases under the Plan shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims; provided, however, that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral to secure obligations under such rejected Executory Contract or Unexpired Lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in such collateral, with the deficiency, if any, treated as a General Unsecured Claim.

8.4    ***Reservation of Rights.*** Nothing contained in the Plan shall constitute an admission by the Debtor that any particular contract or lease is in fact and Executory Contract or Unexpired Lease, as applicable, or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor and the Liquidation Trust, as applicable, shall have forty-five (45) days following entry of a

Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

9.1     ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)     the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)     the Plan Supplement, including the Liquidation Trust Agreement, shall have been filed with the Bankruptcy Court;

(c)     the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount, the Plan Reserve Account shall have been funded with the Plan Reserve Amount, and the Liquidation Trust shall have been funded with the Liquidation Trust Funding Amount.

(d)     the Debtor shall have made all Distributions required to be made on or before the Effective Date;

(e)     satisfaction of the GCUK / GCMC Release Requirements;

(f)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(g)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.2     ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 may be waived only if waived in writing by the Debtor, the Creditors' Committee, and the UK Administrators to the extent required by the Global Settlement without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  For the avoidance of doubt and notwithstanding anything to contrary herein, waiver of the condition precedent set

forth in Section 9.1(e) shall only be effective if such condition precedent is waived in writing by the UK Administrators.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1    ***Binding Effect***.  Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Liquidation Trust, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of the Plan, and their respective successors and assigns.

10.2    ***Releases and Related Matters***.

(a)    *Release by the Debtor*.  **Without limiting any other applicable provisions of, or releases contained in, the Plan or the Finacity Sale Order and Finacity Sale Documents, pursuant to section 1123(b) of the Bankruptcy Code and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, the Debtor, its Estate, the Liquidation Trustee, and any other Person or Entity seeking to exercise the rights of the Estate, to the extent permitted by applicable law, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Person or Entity seeking to exercise the rights the Estate has, had, or may have against any GCUK / GCMC Parties based on or relating to the Debtor, the Estate, the Chapter 11 case, any prepetition financing arrangements, the Debtor's financial statements, the debtor-in-possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, or any other transactions in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligation arising under the Plan or the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud). For the avoidance of doubt, nothing in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair, release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action against the GCUK / GCMC Parties arising from facts that occur after the Effective Date based on a breach or an alleged breach of the standards and**

42

**practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) arising from or related to the ownership, custodianship, preservation, and/or retention of the Debtor's documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing). Nothing in the Plan releases actions against the GCUK / GCMC Parties under sections 542 and 543 of the Bankruptcy Code.**

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the foregoing release by the Debtor pursuant to Bankruptcy Rule 9019, and further, shall constitute the Bankruptcy Court's finding that the release is: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the foregoing releases by the Debtor.

(b)    *Releases by the Releasing Parties*.    **To the greatest extent permissible and without limiting any other applicable provisions of, or releases contained in, the Plan, and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, in consideration for the obligations of the Debtor under the Plan, and the consideration and other waivers, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with the Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any GCUK / GCMC Party based on or relating to the Debtor, the Estate, the Chapter 11 Case, any prepetition financing arrangements, the Debtor's financial statements, the debtor in possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof, or supplements thereto, or any other transaction in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan and the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or**

omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud).  Notwithstanding anything to the contrary herein, nothing set forth in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair, release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action by Sage Realty Corporation and its affiliates ("*Sage*") against GCUK and their affiliates (other than the Debtor), including but not limited to those claims and Causes of Action arising from or related to: (i) that certain indenture of lease, dated July 20, 2016 (as amended from time to time) by and between Sage and the Debtor for a certain parcel of non-residential real property located at 2 Gansevoort Street, New York, New York 10014 (the "*Lease*"); (ii) guarantees or any other obligations by GCUK with respect to the Lease, including that certain guaranty (as amended from time to time) dated July 14, 2016 executed by GCUK (the "*Guarantee*").

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (3) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (4) in the best interests of the Debtor and its Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; (7) consensual as to the Holders of Claims that opt in to the Third Party Release on their Ballots; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

(c)    *Waiver of Statutory Limitation on Releases*.  Without limiting any other applicable provisions of, or releases contained in, the Plan, each Releasing Party in each of the releases contained in the Plan (including under this Section) expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, it has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the GCUK / GCMC Parties.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen

10.3    **Injunction**.  Except as otherwise provided in the Plan or the Confirmation Order, and subject to the satisfaction of the GCUK / GCMC Release Requirements, from and after the Effective Date, to the extent a party's Cause of Action has been released pursuant to Section 10.2 or otherwise treated pursuant to the Plan or the Confirmation Order (including, without limitation, being subject to exculpation

pursuant to Section 10.4), such Releasing Party shall be permanently enjoined from pursuing such Cause of Action against the applicable GCUK / GCMC Party for any reason at any time on or after the Effective Date, including (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Line, Claim, or encumbrance of any kind; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, our obligation due to the Debtor, the Liquidating Trustee, the Liquidation Trust, or the GCUK / GCMC Parties unless such Releasing Party has filed a motion requesting the right to perform such setoff on or before the Effective Date, notwithstanding an indication of a claim or interest or otherwise that such Releasing Party asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing any act, in any manner, or in any place to assert any Cause of Action, or send any notice or invoice in respect of any Cause of Action that has been released under the Plan that does not otherwise comply with or is inconsistent with the provisions of the Plan, or from making or threatening to make or assert any claim in any liquidation of the Debtor under any applicable law; *provided, however,* that nothing contained in the Plan shall preclude a Person or Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of the Plan.

All assets of the Debtor shall be applied to the payment of Claims and expenses only in the manner and in the order set forth in the Plan, and Holder of Claims and Interests shall be enjoined from interfering with the Distributions and payments contemplated by the Plan.  All of Debtor's and the Liquidation Trust's rights are reserved as to whether as a matter of non-bankruptcy law the payment, in full, of a Claim or expense obligation constitutes a "satisfaction" of that Claim or expense obligation.

10.4    ***Exculpation and Limitation of Liability***. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE LIQUIDATION TRUST AGREEMENT, THE PLAN SUPPLEMENT, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL**

**RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any of the Exculpated Parties' post-Effective Date obligations under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

10.5    ***No Discharge.***  Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests other than the Releasing Parties.

10.6    ***Term of Bankruptcy Injunction or Stays***.  Except as provided otherwise in the Plan, from and after the entry of an order or other deemed action under the Plan closing the Chapter 11 Case, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

10.7    ***Post-Confirmation Date Retention of Professionals***.  Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and Debtor or the Liquidation Trust, as applicable, will employ and pay professionals in the ordinary course of business.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    ***Retention of Jurisdiction***.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)        resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(e)        modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)        hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Debtor or the Liquidation Trust, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)        adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)        resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)        hear and determine Retained Actions by or on behalf of the Debtor or the Liquidation Trust;

(k)        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(m)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    enter an order closing the Chapter 11 Case.

11.2    ***No Limitation on Enforcement by SEC or the U.S. Attorney's Office on Non-Debtors.***  Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Liquidation Trust until the earlier of the conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  The Liquidation Trustee shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2    ***Dissolution of the Creditors' Committee.***  On the Effective Date, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee, and professionals retained by the Creditors' Committee in accordance with section 1103 of the Bankruptcy Code shall be deemed released from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Case, except with respect to: (i) prosecuting applications for professionals' compensation and reimbursement of expenses incurred as a member of the Creditors' Committee; (ii) asserting, disputing, and participating in the resolution of Professional Fee Claims; and (iii) defending any appeal of the Confirmation Order or any request for reconsideration thereof, in either case prior to entry of a Final Order or Final Orders approving all Professional final fee applications in accordance with Section 2.4.  Upon the conclusion of (i) through (iii) above, the Creditors' Committee shall be immediately dissolved and released.

12.3    ***Amendment or Modification of the Plan***.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, Debtor reserves the right to alter, amend, or modify the Plan at

any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan, subject to the express written consent of the Creditors' Committee and the UK Administrators to the extent such consent is required pursuant to the terms hereof or the Global Settlement.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.4    ***Substantial Consummation***.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.5    ***Severability of Plan Provisions***.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court, at the request of the Debtor and with the consent of the Committee and the UK Administrators (not to be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6    ***Successors and Assigns***.  The Plan shall be binding upon and inure to the benefit of the Debtor and successors and assigns, including the Liquidation Trust, as applicable.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7    ***Revocation, Withdrawal, or Non-Consummation***.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8    ***Governing Law***.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9    ***Time***.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Holders of Claims and Interests, the GCUK / GCMC Parties, the Exculpated Parties, and each of their respective successors and assigns, including the Liquidation Trust.  The Debtor will request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

12.11    ***Entire Agreement***.  On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.12    ***Notice***.  All notices, requests, and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> TOGUT, SEGAL & SEGAL LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn:  Albert Togut, Esq., Kyle J. Ortiz, Esq., Bryan M. Kotliar, Esq., and Amanda C. Glaubach, Esq.
> E-mail: altogut@teamtogut.com, kortiz@teamtogut.com, bkotliar@teamtogut.com, and aglaubach@teamtogut.com
>
> Attorneys for the Debtor

-and-

ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Attn:  George P. Angelich, Esq.
E-mail:  george.angelich@arentfox.com

- and-

Arent Fox LLP
The Prudential Tower
800 Boylston Street, Floor 32
Boston, MA 02199
Attn:  Justin A. Kesselman, Esq.
E-mail:  justin.kesselman@arentfox.com

## ARTICLE XIII

## CONFIRMATION REQUEST

The Debtor requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: October 26, 2021
         New York, New York

GREENSILL CAPITAL, INC.


By:      /s/ Matthew Tocks
         Name:  Matthew Tocks
         Title:    Chief Restructuring Officer

## Exhibit B

**Redline Comparison of the First Amended Plan and the Second Amended Plan**

> NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN
> OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE
> DEBTOR OR ANY OTHER PARTY IN INTEREST.  THE PLAN IS SUBJECT TO
> BANKRUPTCY COURT'S APPROVAL AND CERTAIN OTHER CONDITIONS.
> THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.
> ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN ARE BEING
> SOLICITED PURSUANT TO THE ACCOMPANYING DISCLOSURE
> STATEMENT, WHICH THE BANKRUPTCY COURT HAS APPROVED ON A
> PROVISIONAL BASIS, SUBJECT TO FINAL APPROVAL AT THE COMBINED
> HEARING.  ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN
> COMPLIANCE WITH APPLICABLE LAW.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.:  21-10561 (MEW) |
| Debtor.[1] | |

**~~FIRST~~SECOND AMENDED CHAPTER 11 PLAN OF
LIQUIDATION FOR GREENSILL CAPITAL INC.**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Albert Togut
Kyle J. Ortiz
Bryan M. Kotliar
Amanda C. Glaubach

*Attorneys for the Debtor and
Debtor in Possession*

Dated:    October ~~22~~26, 2021
              New York, New York

---

[1]    The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is
       c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ............................1

ARTICLE II UNCLASSIFIED CLAIMS ................................................................17

2.1    FINACITY SALE ORDER SUPERPRIORITY CLAIMS..........................................17

2.2    ADMINISTRATIVE CLAIMS. ......................................................................18

2.3    PAYMENT OF U.S. TRUSTEE FEES............................................................18

2.4    PROFESSIONAL FEE CLAIMS ....................................................................18

2.5    PRIORITY TAX CLAIMS............................................................................19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
        19

3.1    CLASSIFICATION IN GENERAL ..................................................................19

3.2    SUMMARY OF CLASSIFICATION ................................................................20

3.3    TREATMENT OF CLASSES..........................................................................20

3.4    ALTERNATIVE TREATMENT ......................................................................22

3.5    SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS ..........................22

3.6    SUBORDINATED CLAIMS. ........................................................................23

3.7    CONTROVERSY CONCERNING IMPAIRMENT.................................................23

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ......................................23

4.1    ACCEPTANCE BY CLASS ENTITLED TO VOTE ................................................23

4.2    PRESUMED ACCEPTANCE OF THE PLAN ........................................................23

4.3     ELIMINATION OF CLASSES........................................................................23

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ..................................23

5.1     PLAN OBJECTIVE....................................................................................23

5.2     ALLOWANCE AND CLASSIFICATION OF GCUK CLAIMS; GCUK / GCMC
CLAIM CONTRIBUTION. .........................................................................24

5.3     GLOBAL SETTLEMENT. ..........................................................................24

5.4     INTELLECTUAL PROPERTY ASSIGNMENT. .......................................25

5.5     VESTING OF ASSETS................................................................................25

5.6     TERMINATION OF CURRENT OFFICERS, DIRECTORS, EMPLOYEES AND
PROFESSIONALS......................................................................................26

5.7     LIQUIDATION TRUST..............................................................................26

5.8     EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ........................32

5.9     EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES.
32

5.10    FURTHER AUTHORIZATION. ..................................................................32

5.11    PRESERVATION OF INSURANCE..........................................................33

5.12    DISSOLUTION OF THE DEBTOR............................................................33

ARTICLE VI DISTRIBUTIONS...............................................................................33

6.1     DISBURSING AGENT. ..............................................................................33

6.2     NO POSTPETITION INTEREST ON CLAIMS. .......................................33

6.3     DATE OF DISTRIBUTIONS......................................................................33

6.4     DISTRIBUTION RECORD DATE .............................................................33

6.5     BOOKS AND RECORDS ...........................................................................34

6.6      DELIVERY OF DISTRIBUTIONS .................................................................34

6.7      REVERSION ...............................................................................................34

6.8      MANNER OF PAYMENT UNDER PLAN .................................................34

6.9      DE MINIMIS CASH DISTRIBUTIONS .......................................................34

6.10     NO DISTRIBUTION IN EXCESS OF AMOUNT OF ALLOWED CLAIM .........34

6.11     ALLOCATION OF DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST
         34

6.12     SETOFFS AND RECOUPMENTS ...............................................................35

6.13     RIGHTS AND POWERS OF DISBURSING AGENT ............................................35

6.14     WITHHOLDING AND REPORTING REQUIREMENTS ....................................35

6.15     CLAIMS PAID OR PAYABLE BY THIRD PARTIES ............................................36

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ...................................................37

7.1      ALLOWANCE OF CLAIMS .......................................................................37

7.2      OBJECTIONS TO CLAIMS .......................................................................37

7.3      ESTIMATION OF CLAIMS ........................................................................38

7.4      NO DISTRIBUTIONS PENDING ALLOWANCE. ..................................................38

7.5      RESOLUTION OF CLAIMS. ......................................................................38

7.6      DISALLOWED CLAIMS. ...........................................................................39

7.7      NO RECOURSE. .......................................................................................39

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES..............................................................................................................39

8.1      REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......39

8.2      INDEMNIFICATION .................................................................................40

8.3      CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES. ..................................................................................40

8.4      RESERVATION OF RIGHTS. .......................................................................40

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN .......................................................................41

9.1      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..................................41

9.2      WAIVER OF CONDITIONS PRECEDENT .............................................................41

ARTICLE X EFFECT OF PLAN CONFIRMATION .............................................42

10.1     BINDING EFFECT.............................................................................................42

10.2     RELEASES AND RELATED MATTERS .................................................................42

10.3     INJUNCTION....................................................................................................44

10.4     EXCULPATION AND LIMITATION OF LIABILITY...........................................45

10.5     NO DISCHARGE..............................................................................................46

10.6     TERM OF BANKRUPTCY INJUNCTION OR STAYS...........................................46

10.7     POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS ...............46

ARTICLE XI RETENTION OF JURISDICTION.................................................46

11.1     RETENTION OF JURISDICTION. .......................................................................46

11.2     NO LIMITATION ON ENFORCEMENT BY SEC OR THE U.S. ATTORNEY'S
OFFICE ON NON-DEBTORS. ............................................................................48

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................48

12.1     PAYMENT OF STATUTORY FEES ...........................................................................48

12.2     DISSOLUTION OF THE CREDITORS' COMMITTEE. ........................................48

12.3    AMENDMENT OR MODIFICATION OF THE PLAN...........................................49

12.4    SUBSTANTIAL CONSUMMATION.........................................................................49

12.5    SEVERABILITY OF PLAN PROVISIONS.................................................................49

12.6    SUCCESSORS AND ASSIGNS ..................................................................................49

12.7    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION.....................49

12.8    GOVERNING LAW ....................................................................................................50

12.9    TIME ...........................................................................................................................50

12.10   IMMEDIATE BINDING EFFECT.............................................................................50

12.11   ENTIRE AGREEMENT...............................................................................................50

12.12   NOTICE.......................................................................................................................50

ARTICLE XIII CONFIRMATION REQUEST .....................................................................51

## INTRODUCTION

Greensill Capital Inc. as debtor and debtor in possession in the above-captioned case, proposes the following plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtor.  Subject to Section 12.7 of the Plan, certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation (as such term is defined in section 1101 of the Bankruptcy Code).

Holders of Claims and Interests should refer to the Disclosure Statement for information concerning, among other things, (a) the Debtor's history, assets, and liabilities, and (b) the Plan and related matters.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCE OR REJECTIONS OF THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    ***2019 Acquisition*** means the Debtor's acquisition of the outstanding equity interest in Finacity Corporation in 2019 pursuant to that certain Stock Purchase Agreement, dated as of June 10, 2019 (as modified by that certain Letter Agreement, dated December 20, 2019) and all agreements or obligations incurred thereby.

1.2    ***2019 Acquisition Causes of Action*** means all legal, equitable, and beneficial right, under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, other than the Katz Parties, including, without limitation, claims for fraudulent transfer, preference or otherwise under chapter 5 of the Bankruptcy Code or applicable state law in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfers of value resulting from, the 2019 Acquisition.

1.3    ***Accrued Professional Compensation*** means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying

any retainer that has been provided by the Debtor to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.4     ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to:  (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estate and operating the business of the Debtors, including for wages, salaries or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Estate;  (b) Professional Fee Claims;  (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code;  and (d) all other Claims entitled to Administrative Claim status pursuant to an order of the Bankruptcy Court.

1.5     ***Administrative Claims Bar Date*** shall have the meaning set forth in Section 2.2.

1.6     ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.7     ***Allowed*** means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed, and as to which the Debtor, Creditors' Committee, Liquidation Trust or other parties in interest have not filed an objection by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date or Administrative Claims Bar Date, and as to which the Debtor, Creditors' Committee, Liquidation Trust, or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court;  *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been timely filed and any Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is not considered Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.8     ***Assumed Contracts*** means those Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan and set forth on the

Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement.

1.9    **Australian Liquidators** means Matthew Byrnes, Philip Campbell-Wilson and Michael McCann of Grant Thornton Australia Limited of Level 22, Tower 5 Collins Square 727 Collins Street Melbourne VIC 3008, Australia, in their capacity as joint liquidators of Greensill Australia and without personal liability.

1.10    **Avoidance Action** means any claim or Cause of Action of the Estate to recover or avoid transfers or to avoid liens under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including but not limited to sections 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of the Debtor's or the Estate's claim, counterclaim, setoff, or offset rights, regardless of whether or not such action has been commenced prior to the Effective Date.

1.11    **Ballot** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject the Plan and on which the Holder is to indicate, among other things, acceptance or rejection of the Plan.

1.12    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

1.13    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

1.14    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.15    **Bar Date** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) September 20, 2019 at 5:00 p.m. (prevailing Eastern Time) for Governmental Units; and (e) the Administrative Claims Bar Date.

1.16    **Bar Date Order** means the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 253].

1.17    **Beneficiaries** means the Holders of Claims and Interests who are the beneficiaries of the Liquidation Trust.

1.18    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.19    ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.20    ***Cause of Action*** means any action, proceeding, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, setoff, recoupment, cross-claim, counterclaim, third-party claim, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. "*Cause of Action*" includes: (a) any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

1.21    ***Chapter 11 Case*** means the bankruptcy case of the Debtor pending under case number 21-10561 (MEW) in the Bankruptcy Court.

1.22    ***Claim*** means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.23    ***Claims Objection Deadline*** means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim;  and (c) such other objection deadline as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.  For the avoidance of doubt, the Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the request of the Debtor or the Liquidation Trust, as applicable.

1.24    ***Claims Register*** means the official register of Claims maintained by the clerk of the Bankruptcy Court.

1.25    ***Class*** means a category of Claims or Interests, as described in Article III hereof.

1.26    ***Confirmation*** means the confirmation of the Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.27     ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.28     ***Confirmation Hearing*** means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

1.29     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the UK Administrators with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.30     ***Creditors' Committee*** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code.

1.31     ***Cure Amount*** means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, pursuant to Bankruptcy Code section 365, arising under any Assumed Contract.

1.32     ***D&O Policy*** means any and all insurance policies and contracts for directors' and officers' liability maintained by the Debtor, including any directors' and officers' "tail policy", including, but not limited to, that certain $5,000,000 Axis Management & Entity Liability Insurance Policy, Policy No. P-001-000412753-01.

1.33     ***Debtor*** means Greensill Capital Inc.

1.34     ***Disallowed*** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed;  unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.35     ***Disbursing Agent*** means the Liquidation Trustee or the Entity or Entities selected by the Liquidation Trustee to make or facilitate Distributions contemplated under the Plan after the Effective Date.

1.36     ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as amended, modified, or supplemented from time to time.

1.37     ***Disputed Claim*** means (a) any Claim as to which the Debtor, Creditors' Committee, Liquidation Trust or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Creditors' Committee, Liquidation Trust, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order;  (b) any

5

Claim scheduled by the Debtor as contingent, unliquidated, or disputed;  (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed;  or (d) any Claim prior to it having become an Allowed Claim.

1.38    ***Distribution*** means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

1.39    ***Distribution Date*** means a date or dates, including the Initial Distribution Date as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.40    ***Distribution Record Date*** means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to received Distributions, which date shall be the first day of the Confirmation Hearing or such other date as designated in a Final Order of the Bankruptcy Court.

1.41    ***Effective Date*** means the Business Day the Plan becomes effective as provided in Article IX hereof.

1.42    ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.43    ***Estate*** means the chapter 11 estate of the Debtor created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.44    ***Exchange Act*** means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

1.45    ***Exculpated Parties*** means the following parties in their respective capacities as such: (a) the Debtor; (b) the Creditors' Committee and its members (each in their capacities as such); and (c) with respect to each of the foregoing persons in clauses (a) and (b), each of their Related Parties.

1.46    ***Executory Contract*** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.47    ***Exhibit*** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.48    ***Federal Judgment Rate*** means the federal judgment rate, 28 U.S.C. § 1961, in effect as of the Petition Date, compounded annually.

1.49    ***Finacity Sale*** means the Debtor's sale of its 100% ownership interest in Finacity Corporation to the Purchaser pursuant to the Finacity Sale Documents as approved by the Finacity Sale Order.

1.50    ***Finacity Sale Documents*** means that certain Stock Sale Agreement, among the Debtor, Finacity Corporation, and the Purchaser, a copy of which is attached

6

as Exhibit A to the Finacity Sale Order (together with the schedules and/or exhibits and all related documents, including the Finacity Settlement Agreement), as they may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

1.51 ***Finacity Sale Indemnity Obligations*** means the requirement under section 2(g) of the Finacity Settlement Agreement for the Debtor and the Liquidation Trust to indemnify the Purchaser, Finacity Corporation, and the Katz Parties in accordance with section 2(g) of the Finacity Settlement Agreement, which obligations the Liquidation Trust may satisfy at any time in accordance with the Finacity Sale Documents, and upon such satisfaction, any Finacity Sale Reserve Obligations or Finacity Sale Order Superpriority Claims with respect to such satisfied Finacity Sale Indemnity Obligation shall be immediately satisfied, terminated, discharged, and expunged without further order of the Court.

1.52 ***Finacity Sale Order*** means that certain order of the Bankruptcy Court, entered on August 18, 2021 [Docket No. 236] approving the Finacity Sale.

1.53 ***Finacity Sale Order Superpriority Claims*** means the Finacity Superpriority Claim and the Katz Superpriority Claim.

1.54 ***Finacity Sale Reserve Obligations*** means the requirement under paragraph 4 of the Finacity Sale Order for the Debtor and the Liquidation Trust to hold any proceeds of a 2019 Acquisition Cause of Action in trust on account of Finacity Sale Indemnity Obligations arising from such 2019 Acquisition Cause of Action until the Finacity Sale Order Superpriority Claim for such Finacity Sale Indemnity Obligation, if any, is asserted and resolved or as may otherwise be agreed to by the Debtor or the Liquidation Trust, as applicable, and Finacity Corporation or the Katz Parties, as applicable, or, alternatively, until Finacity Corporation and the Katz Parties receive releases, in form and substance satisfactory to Finacity Corporation and the Katz Parties (respectively) that eliminate such Finacity Sale Indemnity Obligation.

1.55 ***Finacity Settlement Agreement*** means that certain Settlement Agreement among the Debtor, GCUK, GCMC, the UK Administrators, Greensill Australia, the Australian Liquidators, Finacity Corporation, Neely Funding LLC, and the Katz Parties, a copy of which is attached as Exhibit B to the Finacity Sale Order.

1.56 ***Finacity Superpriority Claim*** has the meaning set forth in the Finacity Sale Order.

1.57 ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the

request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.58 **GCMC** means Greensill Capital Management (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.59 **GCUK** means Greensill Capital (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.60 **GCUK / GCMC Claim Contribution** means GCUK's and GCMC's contribution to the Debtor of all legal, equitable, and beneficial right under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action (i) against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, including, without limitation, Avoidance Actions in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfer of value resulting from, the 2019 Acquisition and (ii) that constitute Avoidance Actions that seek the avoidance or recovery of any transfers made by or on behalf of the Debtor of proceeds where such transfers were treated by GCUK as advances under the GCUK Intercompany Loan.

1.61 **GCUK / GCMC Parties** means the following parties in their respective capacities as such:  (a) GCUK, (b) GCMC, and (c) the UK Administrators.

1.62 **GCUK / GCMC Release Requirements** means that the GCUK / GCMC Parties shall be included as released parties for purposes of Sections 10.2(a) and 10.2(b) only to the extent that the GCUK / GCMC Parties (a) vote to accept the Plan (solely to the extent such party is entitled to vote) (b) support, act in good faith, and take all reasonable actions necessary to consummate the Plan and implement the terms of the Global Settlement, or (c) do not take any action, directly or indirectly, that could reasonably be expected to materially delay, interfere with or impede the confirmation or consummation of the Plan.

1.63 **GCUK Intercompany Loan** means that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor as borrower, and GCUK, as lender.

1.64 **GCUK Intellectual Property** means any and all of the Debtor's rights, title and interest in the following (together with all related software and applications), each (other than Greensill Finance SAP) as more fully described in the *Debtors' Motion for an Order Authorizing and Directing the Debtor to Enter into Intellectual Property Assignment Agreement,* filed on April 21, 2021 [Docket No. 62]: (a) Accounts Receivable Module (ARM); (b) Greensill Payments Engine (GPE); (c) New Core System (NCS); (d) Greensill Trading Module (GTM); (e) Client File Converter (CFC); (f) Allocation Tool; (g) Decision Engine; (h) Shared Services; (i) Verdi (completed or in development); and (j) Greensill Finance SAP.

1.65 **GCUK Intellectual Property Assignment Agreement** means that certain Assignment of Intellectual Property Agreement between the Debtor and GCUK, in form and substance reasonably acceptable to the Debtor, the Creditors' Committee,

GCUK and the UK Administrators, a copy of which shall be included in the Plan Supplement.

1.66    ***GCUK L/C Claim*** means Proof of Claim numbered 50 (as amended or modified from time to time) filed by GCUK asserting amounts arising under the debiting of an account in connection with a letter of credit provided as security for the Debtor's obligations under its former corporate headquarters.

1.67    ***General Bar Date*** means June 14, 2021 at 5:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against the Debtor must have filed a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.68    ***General Unsecured Claim*** means any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, a Priority Wage Claim, or the Subordinated GCUK Intercompany Loan Claim.  For the avoidance of doubt, the GCUK L/C Claim shall be classified and allowed as a Class 5 General Unsecured Claim.

1.69    ***GCUK Services Agreement*** means that certain Services Agreement, dated March 25, 2021 (as amended and restated on June 11, 2021 and as may be further amended, modified, restated and/or supplemented from time to time).

1.70    ***Global Settlement*** means the settlements and compromises set forth in that certain Addendum to Sale Order, dated August 12, 2021, by among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators, a copy of which is attached as Exhibit C to the Finacity Sale Order.

1.71    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.72    ***Greensill Australia*** means Greensill Capital Pty Limited (in liquidation) (receivers and managers appointed), an Australian proprietary limited company, acting by the Australian Liquidators.

1.73    ***Holder*** means a holder of a Claim or Interest, as applicable.

1.74    ***Impaired*** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.75    ***Initial Distribution Date*** means the date or dates on which the Disbursing Agent makes the first distribution to Holders of Allowed Claims pursuant to the terms of the Plan.

1.76    ***Interest*** means any of the equity interests in the Debtor.

1.77    ***IRC*** means the Internal Revenue Code of 1986, as now in effect or hereafter amended.

1.78    **IRS** means the Internal Revenue Service.

1.79    **Katz Parties** means Adrian Katz, Danalyn Katz (a/k/a Dana Katz), and the Katz Family Trust.

1.80    **Katz Superpriority Claim** has the meaning set forth in the Finacity Sale Order.

1.81    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.82    **Liquidation Trust** means the trust established pursuant to the Plan and in accordance with the Confirmation Order and Liquidation Trust Agreement.

1.83    **Liquidation Trust Agreement** means the trust agreement that documents the powers, duties, and responsibilities of the Liquidation Trust, and which document will be materially consistent with this Plan and in form and substance reasonably acceptable to the UK Administrators and satisfactory to the Debtor and the Creditors' Committee, as such agreement may be amended from time to time in accordance with its terms.

1.84    **Liquidation Trust Assets** means the Debtor's Retained Assets, including, but not limited to, (i) the remaining proceeds of all sales of the Debtor's assets, including the Finacity Sale, after the payment of all allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (ii) all Cash remaining in the Estate after the payment of allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (iii) all Retained Causes of Action; (iv) all rights to tax refunds; (v) all marketable and unsold hard assets of the Debtor, including but not limited to artwork and FFE (but excluding the GCUK Intellectual Property); and (vi) all rights with respect to the insurance policies of the Debtor, including the D&O Policies, and the right to recover therefrom, all of which shall be transferred or assigned to the Liquidation Trust on the Effective Date, free and clear of any liens or claims that might otherwise have existed in favor of any party and (b) Liquidation Trust Proceeds, but excluding the Professional Fee Escrow Account (and the funds therein) and the Plan Reserve Account (and the funds therein) until satisfaction or resolution of Professional Fee Claims and Plan Reserve Obligations, respectively, at which point the remaining funds in the Professional Fee Escrow Account, if any, and the Plan Reserve Account, if any, shall be become Liquidation Trust Assets.

1.85    **Liquidation Trust Funding Amount** means an amount equal to (a) the Liquidation Trust Minimum Cash Amount plus (b) all of the Debtor's Cash on hand as of the Effective Date following payments required to be made on the Effective Date on account of all Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, Priority Wage Claims, U.S. Trustee Fees, and to fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount and the Plan Reserve Account with the Plan Reserve Amount; provided that if the Debtor's Cash on hand as of the Effective Date following the payments set forth in the foregoing clause (b) shall be insufficient to satisfy the Liquidation Trust Minimum

Cash Amount, the Professional Fee Escrow Amount shall be reduced accordingly on a Pro Rata basis to guarantee the Liquidation Trust Minimum Cash Amount.

1.86    ***Liquidation Trust Minimum Cash Amount*** means $250,000.

1.87    ***Liquidation Trust GCMC Interests*** means Liquidation Trust Interests representing the right to receive 100% of the Liquidation Trust Net Recovery following payment in full of all Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

1.88    ***Liquidation Trust GUC Interests*** means Liquidation Trust Interests representing the right to receive, upon and after the Effective Date, 80% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full.  Notwithstanding the foregoing, and for the sake of clarity, all Estate recoveries made from Retained Causes of Action, including from any settlement thereof, effected prior to the Effective Date, shall be allocated solely (i.e. 100%) to payment of Allowed General Unsecured Claims and distributed on the Initial Distribution Date.

1.89    ***Liquidation Trust GCUK Interests*** means Liquidation Trust Interests representing the right to receive (a) upon and after the Effective Date, 20% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full and (b) following payment in full of Allowed General Unsecured Claims, 100% of the Liquidation Trust Net Recovery until the Subordinated GCUK Intercompany Loan Claim is paid in full.

1.90    ***Liquidation Trust Interests*** means a beneficial interest in the Liquidation Trust entitling the Holder thereof to the Distribution from the Liquidation Trust as provided for in the Plan and in the Liquidation Trust Agreement.

1.91    ***Liquidation Trust Net Recovery*** means the Liquidation Trust Assets available for distributions to Holders of Claims and Interests in accordance with the Plan following payment of Post-Effective Date Expenses, satisfaction of the Finacity Sale Reserve Obligations, the balance of any remaining unpaid Allowed Professional Fee Claims to the extent not satisfied in full from the Professional Fee Escrow, in each case, in accordance with their respective priorities under the Bankruptcy Code or any order of the Bankruptcy Court, including without limitation, the Confirmation Order and the Finacity Sale Order; *provided* that the Disbursing Agent shall be entitled to make Distributions of Liquidation Trust Proceeds, other than amounts used to fund the Finacity Sale Reserve Obligations, prior to any satisfaction of the Finacity Sale Indemnity Obligations.

1.92    ***Liquidation Trust Proceeds*** means any and all Cash, property and other rents, profits, and/or proceeds derived from the Liquidating Trust Assets, including reducing Retained Causes of Action to Cash.

1.93    ***Liquidation Trustee*** means (a) the Person selected by the Creditors' Committee in consultation with GCUK and the UK Administrators appointed as the trustee pursuant to the Liquidation Trust Agreement or any other Person approved by the Bankruptcy Court and (b) any successor trustee(s) appointed

pursuant to the Liquidation Trust Agreement that has the powers and responsibilities set forth in the Plan, the Confirmation Order, and the Liquidation Trust Agreement. Whenever the Liquidation Trustee is referred to herein, all such references are qualified by the Liquidation Trustee's powers rights, and obligations as set forth in the Liquidation Trust Agreement.

1.94    ***Liquidation Trustee Disclosure*** means a written disclosure to be filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline disclosing the identity of the Liquidation Trustee, the Liquidation Trustee's credentials, any and all relevant affiliations, connections or actual or potential conflicts of interest.

1.95    ***Other Priority Claim*** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.96    ***Other Secured Claim*** means any Secured Claim that is not a Secured Tax Claim.

1.97    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.98    ***Petition Date*** means March 25, 2021, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

1.99    ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time, which shall be in form and substance reasonably acceptable to the UK Administrators solely with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.100    ***Plan Reserve Amount*** means the Debtor's reasonable best estimate of amounts necessary to pay in full in Cash all Plan Reserve Obligations, which shall be held in the Plan Reserve Account and used by the Liquidation Trustee to pay such Plan Reserve Obligations.

1.101    ***Plan Reserve Account*** means an escrow account to be funded by the Plan Reserve Amount on the Effective Date, which shall be used solely to pay the Plan Reserve Obligations.

1.102    ***Plan Reserve Obligations*** means the Allowed Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims that are not satisfied as of the Effective Date.

1.103    ***Plan Supplement*** means any supplement to the Plan, and the compilation of documents, forms of documents, and Exhibits to the Plan, as amended, modified, or supplemented from time to time, which may be filed in draft or

12

substantially final or non-final form, in form and substance satisfactory to the applicable parties as provided in the Global Settlement and the Plan, which shall be filed by the Debtor no later than seven (7) calendar days prior to the Voting Deadline, and including the following, without limitation: (a) the Liquidation Trust Agreement, (b) the Liquidation Trustee Disclosure, (c) a non-exhaustive list of the Retained Causes of Action, (d) the GCUK Intellectual Property Assignment Agreement, (e) the Schedule of Assumed Executory Contracts and Unexpired Leases, and (f) any other necessary documentation related to the Plan.

1.104    ***Post-Effective Date Expenses*** means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date in connection with the implementation of the Plan, the administration of the post-Effective Date Estate and the implementation of the Liquidation Trust, including, but not limited to: (a) the Liquidation Trustee's Expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidation Trust or the Liquidation Trust Assets and accrued on or after the Effective Date, (b) U.S. Trustee Fees, if any, which accrued after the Effective Date, (c) the Liquidation Trustee's Expenses in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes and filing tax returns, (d) any Expenses incurred by the Liquidation Trust or the Liquidation Trustee, (e) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidation Trustee or the Liquidation Trust, (f) the fees and expenses of any Disbursing Agent selected by the Liquidation Trustee to act as its agent in making Distributions, and (g) the Finacity Sale Order Indemnity Obligations.

1.105    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.106    ***Priority Wage Claim*** means any Claim of a kind specified in sections 507(a)(4) and/or 507(a)(5) of the Bankruptcy Code up to an amount not to exceed the $13,650 statutory cap set forth therein.

1.107    ***Professional*** means any professional employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise.

1.108    ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered and reimbursement of costs incurred prior to and including the Effective Date.

1.109    ***Professional Fee Escrow*** means an escrow account to be funded with the Professional Fee Escrow Amount on the Effective Date which shall be used solely for the purpose of paying all Allowed Professional Fee Claims and thereafter.

1.110    ***Professional Fee Escrow Amount*** means (a) the aggregate Accrued Professional Compensation incurred through the Effective Date as estimated by the

Professionals in accordance with Section 2.4 and (b) the aggregate accrued U.S. Trustee Fees as estimated by the Debtor in accordance with Section 2.3.

1.111    ***Pro Rata*** means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests within such Class.

1.112    ***Proof of Claim*** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.113    ***Purchaser*** means White Oak Global Advisors, LLC.

1.114    ***Rejection Damages Claims Bar Date*** means the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be established by order of the Bankruptcy Court or as otherwise agreed to in writing by the Liquidation Trust and the applicable claimant.

1.115    ***Related Parties*** means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.116    ***Releasing Parties*** means the following parties solely to the extent acting in their respective capabilities as such: (a) any Holder of a Claim entitled to vote on the Plan that opts in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; and (b) any Holder of a Claim entitled to vote on the Plan that does not opt in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; *provided, however,* none of GCMC, GCUK, the UK Administrators, Greensill Australia, or the Australian Liquidators is or shall be deemed to be a "Releasing Party" hereunder.

1.117    ***Retained Assets*** means any and all of the Debtor's assets including, without limitation, (a) the Debtor's Cash on hand as of the Effective Date, following payments required to be made on the Effective Date, (b) all Retained Causes of Action, (c) all rights to tax refunds, (d) all marketable and unsold tangible and intangible assets of the Debtor, including, but not limited to, artwork and fixtures, furniture and equipment, and (d) all rights with respect to insurance policies of the Debtor, including the right to recover therefrom; *provided, however,* "Retained Assets" shall not include any assets expressly assigned or transferred by the Debtor to a party other than the Liquidation Trust pursuant to the Plan (including, for the avoidance of doubt, the GCUK Intellectual Property).

1.118    ***Retained Causes of Action*** means those Causes of Action to be retained by the Debtor and transferred to the Liquidation Trust in accordance with the

Plan, which shall be set forth in the Plan Supplement. Retained Causes of Action shall include, but are not limited to:  (a) all Avoidance Actions; (b) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, managers, employees, affiliates, or insiders of the Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O Policy or fiduciary insurance policies (including for bad faith) maintained by the Debtor; and (c) the right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code.  For the avoidance of doubt, Retained Causes of Action include the 2019 Acquisition Causes of Action to the extent not released pursuant to the Finacity Settlement Agreement and Finacity Sale Order and shall not include any Causes of Action otherwise waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Bankruptcy Court order (including the Finacity Sale Order).

1.119    *SEC* means the U.S. Securities and Exchange Commission.

1.120    ***Securities Act*** means the Securities Act of 1933, as now in effect or hereafter amended.

1.121    ***Schedules*** means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.122    ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means a schedule that may be filed as part of the Plan Supplement of all Executory Contracts and Unexpired Leases that the Debtor intends to assume or assume and assign pursuant to the Plan.

1.123    ***Secured Claim*** means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.124    ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitation therein and including any related Secured Claim for penalties).

1.125    ***Subordinated GCUK Intercompany Loan Claim*** means Proof of Claim numbered 49 (as may be amended or modified) filed by GCUK asserting amounts allegedly owed under that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor, as borrower, and GCUK, as lender.

1.126    ***Third Party Release*** means the release by Holders of Claims as set forth in Section 10.2(b) of the Plan.

1.127    ***UK Administrators*** means Christine Mary Laverty, Trevor Patrick O'Sullivan and William George Edward Stagg, each a licensed insolvency practitioner of Grant Thornton UK LLP of 30 Finsbury Square, London EC2A 1AG, in their capacity as joint administrators of GCUK and GCMC and without personal liability.

1.128    ***U.S. Attorney's Office*** means the Office of the United States Attorney.

1.129    ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.130    ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estate by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

1.131    ***Unclaimed Distribution*** means any Distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (i) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check, (ii) given written notice to the Disbursing Agent of an intent to accept a particular Distribution, (iii) responded in writing to the request of the Disbursing Agent for information necessary to facilitate a particular Distribution, or (iv) taken any other action necessary to facilitate such Distribution.

1.132    ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.133    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.134    ***Voting Deadline*** means the date by which a Holder of a Claim entitled to vote on the Plan must deliver a Ballot to accept or reject the Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

*Rules of Interpretation and Computation of Time*.  For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;  (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;  (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Plan;  (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns;  (e) all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan;  (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;  (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;  (h) subject to the provisions of any contract,

certificates of incorporation, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation"; and (l) with reference to any Distribution under the Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required); or (c) at the Debtor's case website at https://cases.stretto.com/greensill.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

*Controlling Document*.  In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided,* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Finacity Sale Order Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Priority Tax Claims, and Professional Fee Claims are not classified and are not entitled to vote on the Plan.

2.1     ***Finacity Sale Order Superpriority Claims***.  As of the Effective Date, the Finacity Sale Order Superpriority Claims are contingent obligations of the Debtor and the Liquidation Trust, as applicable, and shall be satisfied in accordance with paragraph 4 of the Finacity Sale Order.  For the avoidance of doubt, the Finacity Sale Order Superpriority Claims shall not be cancelled and discharged absent

satisfaction of the Finacity Sale Indemnity Obligations and the Finacity Sale Reserve Obligations as set forth herein.

### 2.2 *Administrative Claims.*

(a)    All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; and (ii) Administrative Claims that have been Allowed on or before the Effective Date must be in writing and filed with the Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation Trustee, and the U.S. Trustee so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "**Administrative Claims Bar Date**").  Such request for payment must include at a minimum: (i) the name of the holder of the asserted Administrative Claim; (ii) the amount of the Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b)    On or as soon as reasonably practicable on the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Allowed Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

### 2.3 *Payment of U.S. Trustee Fees.*  On the Effective Date, the Debtor shall (a) pay all accrued and outstanding U.S. Trustee Fees, if any, and (b) fund the Professional Fee Escrow with the Debtor's good faith estimate of U.S. Trustee Fees anticipated to be incurred through and including the Effective Date.  Following the Effective Date, the Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee, if any, in accordance with Section 11.3.

### 2.4 *Professional Fee Claims*.

(a)    To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)    Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date and shall deliver such good

faith estimate to the Debtor no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

(c)    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Liquidation Trust and (y) shall be held in trust for Professionals; provided that any remaining Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidation Trust.

(d)    Allowed Professional Fee Claims shall be paid in Cash to such Professionals (i) from the funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtor's and the Liquidation Trust's obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow; and (ii) if the Professional Fee Escrow is insufficient to pay Allowed Professional Fee Claims, the Allowed Professional Fee Claims shall be paid from Liquidation Trust Net Recovery on a Pro Rata basis until all Allowed Professional Fee Claims of Togut Segal, & Segal LLP, counsel to the Debtor, and Arent Fox LLP, counsel to the Creditors' Committee, have been paid in full.

(e)    The Debtor and the Liquidation Trustee, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

2.5    ***Priority Tax Claims.*** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    ***Classification in General***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class

for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2    ***Summary of Classification***.  The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4 | Priority Wage Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Subordinated GCUK Intercompany Loan Claim | Impaired | Yes |
| 7 | Interests | Impaired | Yes |

3.3    ***Treatment of Classes***.

(a)    *Class 1 – Secured Tax Claims*

(i)    *Claims in Class*:  Class 1 consists of all Secured Tax Claims.

(ii)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claims agrees to different, less favorable treatment, each Holder of an Allowed Secured Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Allowed Secured Tax Claim becomes Allowed.

(iii)    *Voting:*  Class 1 is Unimpaired and not entitled to vote.

(b)    *Class 2 – Other Secured Claims*

(i)    *Claims in Class:* Class 2 consists of all Other Secured Claims.

(ii)    *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different, less favorable treatment, each Holder of an Allowed Other Secured Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed.

(iii)    *Voting:* Class 2 is Unimpaired and not entitled to vote.

(c)    *Class 3 – Other Priority Claims*

(i)    *Claims in Class:* Class 3 consists of all Other Priority Claims.

(ii)    *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each Holder of an Allowed Other Priority Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

(iii)    *Voting:* Class 3 is Unimpaired and not entitled to vote.

(d)    *Class 4 – Priority Wage Claims*

(i)    *Claims in Class:* Class 4 consists of all Priority Wage Claims.

(ii)    *Treatment:* Except to the extent that a Holder of an Allowed Priority Wage Claim agrees to different, less favorable treatment, each Holder of an Allowed Priority Wage Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Priority Wage Claim on the Effective Date.

(iii)    *Voting:* Class 4 is Unimpaired and not entitled to vote.

(e)    *Class 5 – General Unsecured Claims*

(i)    *Claims in Class:* Class 5 consists of all General Unsecured Claims.

(ii)    *Treatment:* Subject to the terms herein and Section 5.7, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, Holders of Allowed General Unsecured Claims shall receive such

Holder's Pro Rata share of the Liquidation Trust GUC Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, their Pro Rata share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iii)    *Voting:* Class 5 is Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(f)    *Classes 6 – Subordinated GCUK Intercompany Loan Claim*

(i)    *Claims in Class*: Class 6 consists of the Subordinated GCUK Intercompany Loan Claim.

(ii)    *Allowance:* On the Effective Date, pursuant to the Global Settlement, the Subordinated GCUK Intercompany Loan Claim shall be allowed in the amount of $52,840,506.80.

(iii)    *Treatment:* Pursuant to the Global Settlement, as the sole Holder of the Subordinated GCUK Intercompany Loan Claim, GCUK shall receive, in full and final satisfaction of such Claim, the Liquidation Trust GCUK Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, its share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iv)    *Voting:* Class 6 is Impaired and GCUK as holder of the Subordinated GCUK Intercompany Loan Claim is entitled to vote.

(g)    *Class 7 – Interests*

(i)    *Claims in Class*: Class 7 consists of all Interests.

(ii)    *Treatment*: As the sole Holder of the Interests, GCMC (a) will not retain any Interests under the Plan, and on the Effective Date the Interests will be cancelled, and (b) will receive the Liquidation Trust GCMC Interests.

(iii)    *Voting*: Class 7 is Impaired and GCMC as holder of the Interests is entitled to vote.

3.4    ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and the Debtor or the Liquidation Trustee, as applicable, may agree in writing; *provided, however*, that under no circumstances may the Debtor agree to provide any other Distribution or treatment to any Holder of an Allowed Claim that would adversely impair the Distribution or treatment provided to any other Holder of an Allowed Claim.

3.5    ***Special Provision Regarding Unimpaired Claims***. Except as otherwise provided in the Plan, nothing shall affect the Debtor's or the Liquidation Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired

Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6     ***Subordinated Claims.***  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code or otherwise.

3.7     ***Controversy Concerning Impairment.***  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     ***Acceptance by Class Entitled to Vote***.  Classes 5 (General Unsecured Claims), 6 (Subordinated GCUK Intercompany Loan Claim), and 7 (Interests) are the Classes of Claims and Interests of the Debtor that are entitled to vote to accept or reject the Plan.  Pursuant to the Global Settlement, GCUK (as a Holder of Class 5 and Class 6 Claims) has agreed to vote to accept the Plan.

4.2     ***Presumed Acceptance of the Plan***.  Classes 1 (Secured Tax Claims), 2 (Other Secured Claims), 3 (Other Priority Claims), and 4 (Priority Wage Claims), are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3     ***Elimination of Classes***.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     ***Plan Objective***.  The Plan's objective is to transfer all Retained Assets, including the Retained Causes of Action, to the Liquidation Trust.  The Liquidation Trustee will administer the Liquidation Trust and liquidate such Retained Assets, including the resolution of any Retained Causes of Action.  The Plan divides Holders' legal rights and interests into unclassified Claims and Classes of Claims and Interests based on the Holders' legal rights and interests, and the Liquidation Trustee will distribute the proceeds of the Retained Actions to Holders of Allowed Claims in

satisfaction of the Debtors' obligations under the Plan.  Holders of the Interests will receive any remaining value on account of such Retained Assets following payment in full of Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

5.2     ***Allowance and Classification of GCUK Claims; GCUK / GCMC Claim Contribution.***

(a)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the Subordinated GCUK Intercompany Loan Claim is allowed in the amount of $52,840,506.80 and classified in Class 6 of the Plan.

(b)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the GCUK L/C Claim has been allowed in the amount of $526,000 and classified in Class 5 of the Plan.

(c)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, GCUK shall be deemed to have made the GCUK / GCMC Claim Contribution.

5.3     ***Global Settlement.***  The provisions of the Plan relating to the Global Settlement constitute a good faith compromise and settlement among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

Upon the occurrence of the Effective Date, in exchange for (a) GCUK's voluntary and consensual subordination of its claims arising under the GCUK Intercompany Loan which have been asserted as General Unsecured Claims in the amount of approximately $53 million, (b) the GCUK / GCMC Claim Contribution, (c) GCUK's, GCMC's and the UK Administrators' continued support for the Debtor prior to and during the Chapter 11 Case (including pursuant to the GCUK Services Agreement) and the Plan, and (d) other valuable consideration provided under the Global Settlement, GCUK, GCMC, and the UK Administrators shall receive, as applicable, (1) allowance of the GCUK L/C Claim as a Class 5 Allowed General Unsecured Claim in the amount set forth herein, (2) the Liquidation Trust GCUK Interests and Liquidation Trust GCMC Interests on account of the Subordinated GCUK Intercompany Loan Claim and Interests, respectively, (3) the Debtor's transfer and assignment of the GCUK Intellectual Property pursuant to the GCUK Intellectual Property Assignment Agreement, and (4) the Releases and Third Party Releases as provided in Section 10.2 of the Plan.

Absent the Global Settlement, the Subordinated GCUK Intercompany Loan Claims may substantially reduce the recoveries to Holders of Allowed General Unsecured Claims, and the Debtor and the Creditors' Committee would likely seek nonconsensual recharacterization or subordination of such claims arising under the

GCUK Intercompany Loan, litigation in relation to which will be costly and has an uncertain outcome.

5.4 **_Intellectual Property Assignment._**  On the Effective Date, pursuant to the Global Settlement, the Debtor and GCUK shall enter into the GCUK Intellectual Property Assignment Agreement pursuant to which the Debtor will assign, transfer, and convey the GCUK Intellectual Property to GCUK.  The Confirmation Order shall authorize and direct the Debtor to enter into the GCUK Intellectual Property Assignment Agreement in accordance with the terms and conditions thereof.  Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement, any and all of the Debtor's legal, equitable, and beneficial right, title, and interest in, to, and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK free and clear of any liens, claims, interests, and encumbrances.  The Debtor and the Liquidation Trust shall not be required to pay any Cure Amount in connection with their entry into the GCUK Intellectual Property Assignment Agreement or assignment of the GCUK Intellectual Property as provided therein.

5.5 **_Vesting of Assets._**  Unless otherwise provided under the Plan, on the Effective Date, the Retained Assets will vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other interests.  On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidation Trust will be deemed final and irrevocable and Distributions may be made from the Liquidation Trust.  In connection with the foregoing:  (a) on the Effective Date, the appointment of the Liquidation Trustee shall become effective and the Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement and the Plan and may use, acquire and dispose of the Liquidation Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Confirmation Order will provide the Liquidation Trustee with express authority to convey, transfer, and assign any and all of the Liquidation Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action;  and (c) as of the Effective Date, the Liquidation Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  To the extent the GCUK / GCMC Parties have possession, custody, or control of the Debtor's documents, they shall preserve all of such documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing), in accordance with the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) in the context of their pending English law administration proceedings, until the earlier of (i) their making them available to or transfer to the Debtor and/or the Liquidation Trustee, as applicable, (ii) the termination of the GCUK / GCMC Administration Proceedings or conversion of same to liquidation proceedings, and (ii) any further order of the Court.  All rights of the GCUK / GCMC Parties are reserved with respect to the characterization or ownership of any and all books and records in possession or control of the GCUK / GCMC Parties.

5.6     ***Termination of Current Officers, Directors, Employees and Professionals.***  On the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and Creditors' Committee shall be deemed to terminate.

5.7     ***Liquidation Trust.***

(a)     *Liquidation Trustee.*  On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.

(i)   The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Liquidation Trust Agreement.  The Liquidation Trustee shall not be required to file a fee application to receive compensation.

(ii)  The Liquidation Trustee will be a disinterested Person designated by the Creditors' Committee, in consultation with GCUK and the UK Administrators, and identified in the Liquidation Trustee Disclosure.

(iii) The Liquidation Trustee shall carry out the duties as set forth in this Section 5.7 and in the Liquidation Trust Agreement.  Pursuant to Bankruptcy Code §1123(b)(3), the Liquidation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Retained Causes of Action in accordance with the best interests of and for the benefit of the Beneficiaries.

(iv) The Liquidation Trustee shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation as set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Plan, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidation Trustee, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein and to conserve and protect the Liquidation Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.  The Liquidation Trustee shall have the power and authority without further approval by the Court to liquidate the Liquidation Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Claims of the Estate, including but not limited to Retained Causes of Action, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with section 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trust in accordance with the Plan and Liquidation Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or

approval, employees and professionals to assist the Liquidation Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Retained Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval but in accordance with the Liquidation Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth in the Plan and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash. Subject to the other terms and provisions of the Plan, the Liquidation Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Retained Causes of Action based upon its powers as a bankruptcy appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.

(b)     *Effectiveness of the Liquidation Trust*.  On the Effective Date, if not previously signed, the Debtor and the Liquidation Trustee will execute the Liquidation Trust Agreement, and the Liquidation Trust Agreement will become effective without any further action by any party.  The Liquidation Trust is organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Liquidation Trust will be an affiliate of the Debtor (within the meaning and solely for purposes of sections 1125(e) and 1145(a) of the Bankruptcy Code.  The Liquidation Trustee may elect for the Liquidation Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Liquidation Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the Beneficiaries.  The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

(c)     *Beneficiaries*.  In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidation Trust will be the Holders of all Allowed Claims against the Debtors as provided under the Plan.  The Holders of Allowed Claims will receive an allocation of the respective Liquidation Trust Interests as provided for in the Plan and the Liquidation Trust Agreement.  The Holders of Liquidation Trust Interests will receive Distributions from the Liquidation Trust as provided for in the Plan and the Liquidation Trust Agreement.  The Beneficiaries shall be treated as grantors and owners of such Beneficiaries' respective portion of the Liquidation Trust.

27

(d)     *Implementation of the Liquidation Trust*.  On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidation Trustee shall execute the Liquidation Trust Agreement and take all such actions that are required to transfer the Retained Assets to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee will be authorized to, and shall, implement the Liquidation Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidation Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims, prosecuting or otherwise resolving Retained Causes of Action and causing Distributions from the Liquidation Trust to be made to the Beneficiaries.

(e)     *Transfer of the Retained Assets*.  As discussed in Section 5.5, unless otherwise expressly provided under the Plan, on the Effective Date, the Retained Assets will automatically vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges and other interests, with the Liquidation Trust being vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to all Liquidation Trust Assets.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. To the extent required to implement the transfer of the Retained Assets to the Liquidation Trust, as provided for herein, all Entities and Persons shall cooperate with the Debtor and the Estate to assist the Debtor and the Estate to implement the transfers.  Upon completion of the transfer of the Liquidation Trust Assets to the Liquidation Trust, except as otherwise set forth in the Plan or Confirmation Order, the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets, or the Liquidation Trust.  Likewise, upon completion of such transfer and subject to such exceptions as may be set forth in the Plan or Confirmation Order, the Liquidation Trust shall have no rights, title, or interest in or to any property of the Debtor or the Estate other than the Liquidation Trust Assets.  The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement, which Distributions, for the avoidance of doubt, shall be made by the Liquidation Trustee or the Disbursing Agent, as applicable, and shall not be made by or on behalf of the Debtor.

(f)     *Purpose of the Liquidation Trust*.  The Liquidation Trust shall be established for the purpose of liquidating the Liquidation Trust Assets, prosecuting any Retained Causes of Action to maximize recoveries for the benefit of the Beneficiaries, and making Distributions in accordance with the Plan to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes consistent with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the trust.

(g)     *Representative of the Estate*.  The Liquidation Trustee will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and vested with the authority and power (subject to the Liquidation Trust Agreement) of the representative of the Estate.  After the Effective Date, the Liquidation Trust shall have the authority and right on behalf of the Debtor

28

without the need for Bankruptcy Court approval (unless otherwise expressly indicated herein), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)       oversee and control the Liquidation Trust;

(ii)      collect and liquidate the Liquidation Trust Assets under the jurisdiction of the Bankruptcy Court;

(iii)     assert, prosecute, pursue, compromise, and settle in accordance with the Liquidation Trustee's reasonable business judgment, all Claims and Causes of Action, and enforce all legal or equitable remedies and defenses belonging to the Debtor or the Estate, including, without limitation, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; *provided that* (x) prior to payment in full of Allowed General Unsecured Claims, the Liquidation Trustee shall consult with the UK Administrators with respect to the negotiation of any proposed financing for Retained Causes of Action and any proposed settlements and compromises of Retained Causes of Action, and (y) following payment in full of Allowed General Unsecured Claims any proposed settlements and compromises of Retained Causes of Action shall be subject to the UK Administrators' review and consent (which shall not be unreasonably withheld, conditioned, or delayed);

(iv)      object to Claims in accordance with the Liquidation Trustee's reasonable business judgment;

(v)       make Distributions to Holders of Allowed Claims;

(vi)      exercise reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandonment of the Retained Assets and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(vii)     prosecute all Retained Causes of Action on behalf of the Debtor for the benefit of the Holders of Allowed Claims, elect not to pursue any Retained Causes of Action;

(viii)    retain, compensate and reimburse professionals to assist in performing the Liquidation Trustee's duties under the Plan;

(ix)      maintain the books and records and accounts of the Debtor and the Liquidation Trust and destroy such records consistent with applicable law and the Liquidation Trustee's duties;

(x)       invest the Cash of the Liquidation Trust and any income earned thereon;

(xi)      hold any reserves created on the Effective Date and create any reserves for payments required to be made pursuant to the Plan, including on account of the Plan Reserve Obligations, the Finacity Sale Order Indemnity Obligations, and the Finacity Sale Order Reserve Obligations;

(xii)    incur and pay reasonable and necessary expenses in connection with the performance of the Liquidation Trustee's duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidation Trustee;

(xiii)    administer the Liquidation Trust's and the Debtor's tax obligations, including (1) filing tax returns on behalf of the Liquidation Trust and the Debtor, as applicable, and paying tax obligations, (2) requesting, if necessary, an expedited determination of any unpaid tax liability of the Liquidation Trust or the Debtor under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtor ending after the Petition Date through the liquidation of the Liquidation Trust as determined under applicable tax laws, and (3) representing the interest and account of the Liquidation Trust and the Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit;

(xiv)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidation Trust that are required hereunder, by any Governmental Unit, or under applicable law;

(xv)    arrange for the liquidation and/or dissolution of the Debtor in accordance with applicable law and to indemnify, out of the assets of the Liquidation Trust, any liquidator appointed under the applicable law, or to seek any appropriate relief in furtherance of the Plan in any appropriate jurisdiction;

(xvi)    take such action as required to administer, wind-down and close the Chapter 11 Case; and

(xvii)    perform other duties and functions that are consistent with the implementation of the Plan as deemed by the Liquidation Trustee to implement the Plan and are not otherwise inconsistent with the Liquidation Trust Agreement.

(h)    *Liquidation Trust Funding.*  On the Effective Date, the Liquidation Trust shall be funded with the Liquidation Trust Funding Amount established from the Liquidation Trust Assets.  Subject to the provisions of the Liquidation Trust Agreement, the Liquidation Trust Funding Amount shall be used to pay the expenses of the Liquidation Trust, including, without limitation, costs and expenses of counsel.  The Liquidation Trust is authorized, without further order or approval of the Bankruptcy Court, to obtain third party financing from one or more parties as determined by the Liquidation Trustee as necessary to pursue the Liquidation Trust's objectives; *provided that* the Liquidation Trustee shall consult with the UK Administrators with respect to any proposed financing for Retained Causes of Action.

(i)    *Funding of Post-Effective Date Expenses.*  All expenses related to implementation of the Plan incurred from and after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case will be expenses of the Liquidation Trust, and the Liquidation Trustee will disburse funds from the Liquidation Trust Assets for purposes of paying the Post-Effective Date Expenses without the need for any further approval or order of the Bankruptcy Court.

(j)     *Indemnification.*  From and after the Effective Date, the Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee, solely in his or her capacity as the Liquidation Trustee for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidation Trustee's gross negligence, willful misconduct, or criminal conduct.

(k)     *Dissolution.*  The Liquidation Trustee and the Liquidation Trust shall be discharged and/or dissolved, as the case may be, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in its sole discretion, that the administration of any remaining Liquidation Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made.  If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trust may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Liquidation Trust, the Liquidation Trust may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to dissolve the Liquidation Trust, (y) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Liquidation Trust, and any insider of the Liquidation Trust, and (z) dissolve such Liquidation Trust

(l)     *Provisions Relating to Federal Income Tax Compliance.*  The Liquidation Trust generally is intended to be treated for United States federal income tax purposes, (i) in part as a grantor trust that is a liquidating trust within the meaning of Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and (ii) in part as one or more disputed ownership funds within the meaning of Treasury Regulations § 1.468B-9(c)(ii).  For United States federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of the Liquidation Trust Assets from the Debtor to the Holders of Liquidation Trust Interests, followed by the Holders of Liquidation Trust Interests' transfer of the Liquidation Trust Assets to the Liquidation Trust.  The Holders of Liquidation Trust Interests will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets. The Holders of Liquidation Trust Interests shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be allocated by the Liquidation Trust to the Holders of Liquidation Trust Interests using any reasonable allocation method.

(m)     *Miscellaneous Tax Matters*. The Liquidation Trustee will be required by the Liquidation Trust Agreement to file income tax returns for the Liquidation Trust as a grantor trust of the Holders of the Liquidation Trust Interests (and file separate returns for the disputed ownership fund(s) pursuant to Treasury Regulations § 1.468B-9(c)(ii) and pay all taxes owed on any net income or gain of the disputed ownership fund(s), on a current basis from Liquidation Trust Assets).  In

31

addition, the Liquidation Trust Agreement will require consistent valuation by the Liquidation Trust and the Holders of Liquidation Trust Interests, for all federal income tax and reporting purposes, of any property held by the Liquidation Trust. The Liquidation Trust Agreement also will limit the investment powers of the Liquidation Trust in accordance with IRS Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Holders of Liquidation Trust Interests (as such may have been determined at such time) its net income (net of any payment of or provision for taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets.

(n) *Certain Securities Laws Matters*. The Liquidation Trust Interests shall not be "securities" under federal and state securities laws or, to the extent they are "securities," their issuance shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or other law requiring registration prior to the offering, issuance, Distribution or sale of securities, in accordance with and pursuant to section 1145 of the Bankruptcy Code. The Plan prohibits, and the Liquidation Trust Agreement will prohibit, the transfer or assignment of the Liquidation Trust Interests except by will, intestate succession or by operation of law. In addition, to the extent the Liquidation Trust Interests are "securities" the Liquidation Trust Interests will not be required to be registered under Section 12(g) of the Exchange Act.

5.8 ***Effectuating Documents; Further Transactions***. Any officer or director of the Debtor and the Liquidation Trustee is authorized to execute, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary of the Debtor and the Liquidation Trustee shall be authorized to certify or attest to any of the foregoing actions.

5.9 ***Exemption from Certain Transfer Taxes and Recording Fees.*** To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.10 ***Further Authorization.*** The Debtor and the Liquidation Trust, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

5.11    ***Preservation of Insurance.***  Nothing contained in this Plan shall diminish or impair the enforceability of any insurance policy, including the D&O Policy that may cover claims against the Debtor or any additional insureds, including the directors and officers thereof.

5.12    ***Dissolution of the Debtor.***  Upon the Effective Date, the Debtor shall be deemed dissolved without any further notice, action or order.  Except as otherwise provided herein, on the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and the Creditors' Committee shall be deemed to terminate.

# ARTICLE VI

## DISTRIBUTIONS

6.1    ***Disbursing Agent***.  The Liquidation Trustee shall serve as the Disbursing Agent under the Plan or select another Entity to serve as the Disbursing Agent.  Any Entity other than the Liquidation Trustee that acts as the Disbursing Agent for the Liquidation Trust will be an agent of the Liquidation Trustee and not a separate taxable Entity with respect to, among other things, the assets held, income received or disbursements or Distributions made for the Liquidation Trustee.  The Disbursing Agent shall make all Distributions required under the Plan.  The Disbursing Agent, if not the Liquidation Trustee, shall be authorized, after consultation with the Liquidation Trustee, to implement such procedures as it deems necessary to make Distributions pursuant to the Plan so as to efficiently and economically assure prompt and proportionate Distributions. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

6.2    ***No Postpetition Interest on Claims.***  Postpetition interest shall not accrue or be paid on any General Unsecured Claims or the Subordinated GCUK Intercompany Loan Claim and no Holder of such Claims shall be entitled to interest accruing on or after the Petition Date, except to the extent permitted under the Plan or the Bankruptcy Code.

6.3    ***Date of Distributions***.  Unless otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan shall be made on or before the Effective Date or as soon thereafter as is practicable, in the Liquidation Trustee's sole discretion or as otherwise required by the Liquidation Trust Agreement.

6.4    ***Distribution Record Date***.  Unless a notice of transfer of Claim or Interest has been filed with the Bankruptcy Court prior to the Distribution Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent will rely on the Claims Register when determining Holders on the Record Date.

6.5 ***Books and Records***.  The Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's books and records.  The Debtor, the Liquidation Trustee, and Disbursing Agent (if other than the Liquidation Trustee) shall cooperate in good faith to comply with the reporting and withholding requirements outlined in Section 6.15.

6.6 ***Delivery of Distributions***.  Subject to Sections 6.7, 6.10, 6.11, 6.13, and 6.15 of the Plan, the Disbursing Agent will issue or cause to be issued the applicable consideration under the Plan and, subject to Bankruptcy Rule 9010, will make all Distributions as and when required by the Plan to Holders of Allowed Claims to the address of the Holder of such claim on the books and records of the Debtor or its agents or the address in any written notice of address change delivered to the Debtor, the Liquidation Trustee or the Disbursing Agent, as applicable, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.  In the event that any Distribution is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to locate the Holder of an Allowed Claim whose Distribution is returned as undeliverable.  If such reasonable efforts are not successful, no further Distributions to such Holder of such Claim shall be made unless and until the Disbursing Agent is notified of then-current address of such Holder of the Claim, at which time all missed Distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind. Amounts in respect of undeliverable Distributions shall be returned to the Liquidation Trust until such Distributions are claimed or become subject to Section 6.7.

6.7 ***Reversion***.  Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Liquidation Trust, free and clear of any restrictions thereon.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandonment, or unclaimed property laws to the contrary.

6.8 ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtor or the Liquidation Trust, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Liquidation Trust, as applicable.

6.9 ***De Minimis Cash Distributions***. The Disbursing Agent shall not have any obligation to make a Distribution that is less than $50.00 in Cash.

6.10 ***No Distribution in Excess of Amount of Allowed Claim***. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

6.11 ***Allocation of Distributions Between Principal and Interest***. Except as otherwise provided in the Plan and subject to Section 3.3 of the Plan, to the

extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

6.12    ***Setoffs and Recoupments***. The Liquidation Trust or each Debtor or its designee as instructed by such Liquidation Trust or Debtor, as applicable, may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Liquidation Trust or the Debtor or its successors, as applicable, may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Liquidation Trust or Debtor, as applicable, and Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Liquidation Trust or the Debtor or its successor, as applicable, of any claims, rights, or Causes of Action that the Liquidation Trust or the Debtor or its successor or assign, as applicable, may possess against such Holder.

6.13    ***Rights and Powers of Disbursing Agent***.

(a)    *Powers of the Disbursing Agent*.  The Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable Distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (a) as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date) or pursuant to the Plan or (2) as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(b)    *Expenses Incurred on or After the Effective Date*.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Liquidation Trustee or the Debtor, as applicable, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidation Trustee or the Debtor, as applicable.

6.14    ***Withholding and Reporting Requirements***.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or the Liquidation Trust, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements.  In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property

and sell such withheld property to generate the Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Under the backup withholding rules of the Internal Revenue Service, a Holder may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which includes corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor or the Liquidation Trust, as applicable, have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

The Debtor or the Liquidation Trust, as applicable, may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder.  If the Debtor or the Liquidation Trust, as applicable, make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor or the Liquidation Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor or the Liquidation Trust, as applicable, or its respective property.

6.15    ***Claims Paid or Payable by Third Parties***.

(a)    *Claims Paid by Third Parties.*  The Debtor or the Liquidation Trust, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or the Liquidation Trust.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or the Liquidation Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under Plan.  The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

(b)      *Claims Payable by Third Parties*.  Except as otherwise provided in the Plan, (i) no Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)      *Applicability of Insurance Proceeds*.  Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (i) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (ii) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1      **Allowance of Claims**.  After the Effective Date, the Debtor and the Liquidation Trust shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

7.2      **Objections to Claims**.

(a)      *Authority*. The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that he or she may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim after the Effective Date outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Trustee or the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)     *Amendments to Claims.*  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Trustee or Debtor, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)     *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, the Debtor, and after the Effective Date, the Liquidation Trust, may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Debtor or the Liquidation Trust, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Liquidation Trust, as applicable.

7.3     ***Estimation of Claims***.  For purposes of calculating and making Distributions and establishing reserves under the Plan, the Debtor or the Liquidation Trust, as applicable, may at any time after the Effective Date in good faith request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidation Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidation Trust as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4     ***No Distributions Pending Allowance.***.  If an objection to a Claim is filed as set forth in Section 7.2 hereof, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5     ***Resolution of Claims.***  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor or the Liquidation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and

any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  The Debtor or the Liquidation Trust or their respective successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor and the Liquidation Trust, as applicable.

7.6     ***Disallowed Claims.***  All Claims held by persons or entities against whom or which the Debtor or the Liquidation Trust have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Section 7.6 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtor or the Liquidation Trust from such party have been paid.

7.7     ***No Recourse.***  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed claims in the respective Class, no Claim Holder shall have recourse against the Distribution Agent, the Debtor, the Liquidation Trustee, the Liquidation Trust, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property.  **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIM.**

## ARTICLE VIII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     ***Rejection of Executory Contracts and Unexpired Leases***.  Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order);  (b) is the subject of a motion to assume filed on or before the Effective Date;  (c) is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases;  (d) has expired or terminated pursuant to its own terms;  or (e) is described in Section 8.2 of the Plan.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired

Leases in the Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Debtor or the assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

8.2    ***Indemnification***.  Except as otherwise specifically limited in the Plan, any obligations or rights of the Debtor to defend, indemnify, reimburse, or limit the liability of the Debtor's present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers, and consultants (the "***Covered Persons***") pursuant to the Debtor's certificate of incorporation, bylaws, indemnification agreements, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

8.3    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed no later than the Rejection Damages Claims Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases under the Plan shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims;  provided, however, that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral to secure obligations under such rejected Executory Contract or Unexpired Lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in such collateral, with the deficiency, if any, treated as a General Unsecured Claim.

8.4    ***Reservation of Rights.***    Nothing contained in the Plan shall constitute an admission by the Debtor that any particular contract or lease is in fact and Executory Contract or Unexpired Lease, as applicable, or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor and the Liquidation Trust, as applicable, shall have forty-five (45) days following entry of a

Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

9.1    ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)    the Plan Supplement, including the Liquidation Trust Agreement, shall have been filed with the Bankruptcy Court;

(c)    the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount, the Plan Reserve Account shall have been funded with the Plan Reserve Amount, and the Liquidation Trust shall have been funded with the Liquidation Trust Funding Amount.

(d)    the Debtor shall have made all Distributions required to be made on or before the Effective Date;

(e)    satisfaction of the GCUK / GCMC Release Requirements;

(f)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(g)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.2    ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 may be waived only if waived in writing by the Debtor, the Creditors' Committee, and the UK Administrators to the extent required by the Global Settlement without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  For the avoidance of doubt and notwithstanding anything to contrary herein, waiver of the condition precedent set

forth in Section 9.1(e) shall only be effective if such condition precedent is waived in writing by the UK Administrators.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1  ***Binding Effect***.  Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Liquidation Trust, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of the Plan, and their respective successors and assigns.

10.2  ***Releases and Related Matters***.

(a)  *Release by the Debtor*.  **Without limiting any other applicable provisions of, or releases contained in, the Plan or the Finacity Sale Order and Finacity Sale Documents, pursuant to section 1123(b) of the Bankruptcy Code and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, the Debtor, its Estate, the Liquidation Trustee, and any other Person or Entity seeking to exercise the rights of the Estate, to the extent permitted by applicable law, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Person or Entity seeking to exercise the rights the Estate has, had, or may have against any GCUK / GCMC Parties based on or relating to the Debtor, the Estate, the Chapter 11 case, any prepetition financing arrangements, the Debtor's financial statements, the debtor-in-possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, or any other transactions in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligation arising under the Plan or the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud).** ~~For the avoidance of doubt, nothing in the Plan releases actions against the GCUK / GCMC Parties under section 542 of the Bankruptcy Code.  All rights and defenses of the GCUK / GCMC Parties are expressly reserved and preserved.~~**For the avoidance of doubt, nothing in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair,**

**release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action against the GCUK / GCMC Parties arising from facts that occur after the Effective Date based on a breach or an alleged breach of the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) arising from or related to the ownership, custodianship, preservation, and/or retention of the Debtor's documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing).   Nothing in the Plan releases actions against the GCUK / GCMC Parties under sections 542 and 543 of the Bankruptcy Code.**

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the foregoing release by the Debtor pursuant to Bankruptcy Rule 9019, and further, shall constitute the Bankruptcy Court's finding that the release is:  (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the foregoing releases by the Debtor.

(b)      *Releases by the Releasing Parties.*  **To the greatest extent permissible and without limiting any other applicable provisions of, or releases contained in, the Plan, and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, in consideration for the obligations of the Debtor under the Plan, and the consideration and other waivers, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with the Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any GCUK / GCMC Party based on or relating to the Debtor, the Estate, the Chapter 11 Case, any prepetition financing arrangements, the Debtor's financial statements, the debtor in possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof, or supplements thereto, or any other transaction in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan and the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty).  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the**

**Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud). Notwithstanding anything to the contrary herein, nothing set forth in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair, release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action by Sage Realty Corporation and its affiliates ("*Sage*") against GCUK and their affiliates (other than the Debtor), including but not limited to those claims and Causes of Action arising from or related to: (i) that certain indenture of lease, dated July 20, 2016 (as amended from time to time) by and between Sage and the Debtor for a certain parcel of non-residential real property located at 2 Gansevoort Street, New York, New York 10014 (the "*Lease*"); (ii) guarantees or any other obligations by GCUK with respect to the Lease, including that certain guaranty (as amended from time to time) dated July 14, 2016 executed by GCUK (the "*Guarantee*").**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (3) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (4) in the best interests of the Debtor and its Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; (7) consensual as to the Holders of Claims that opt in to the Third Party Release on their Ballots; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

(c)    *Waiver of Statutory Limitation on Releases*.  Without limiting any other applicable provisions of, or releases contained in, the Plan, each Releasing Party in each of the releases contained in the Plan (including under this Section) expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, it has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the GCUK / GCMC Parties.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen

10.3    **Injunction**.  Except as otherwise provided in the Plan or the Confirmation Order, and subject to the satisfaction of the GCUK / GCMC Release

Requirements, from and after the Effective Date, to the extent a party's Cause of Action has been released pursuant to Section 10.2 or otherwise treated pursuant to the Plan or the Confirmation Order (including, without limitation, being subject to exculpation pursuant to Section 10.4), such Releasing Party shall be permanently enjoined from pursuing such Cause of Action against the applicable GCUK / GCMC Party for any reason at any time on or after the Effective Date, including (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Line, Claim, or encumbrance of any kind; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, our obligation due to the Debtor, the Liquidating Trustee, the Liquidation Trust, or the GCUK / GCMC Parties unless such Releasing Party has filed a motion requesting the right to perform such setoff on or before the Effective Date, notwithstanding an indication of a claim or interest or otherwise that such Releasing Party asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing any act, in any manner, or in any place to assert any Cause of Action, or send any notice or invoice in respect of any Cause of Action that has been released under the Plan that does not otherwise comply with or is inconsistent with the provisions of the Plan, or from making or threatening to make or assert any claim in any liquidation of the Debtor under any applicable law; *provided, however*, that nothing contained in the Plan shall preclude a Person or Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of the Plan.

All assets of the Debtor shall be applied to the payment of Claims and expenses only in the manner and in the order set forth in the Plan, and Holder of Claims and Interests shall be enjoined from interfering with the Distributions and payments contemplated by the Plan.  All of Debtor's and the Liquidation Trust's rights are reserved as to whether as a matter of non-bankruptcy law the payment, in full, of a Claim or expense obligation constitutes a "satisfaction" of that Claim or expense obligation.

10.4    ***Exculpation and Limitation of Liability***. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE LIQUIDATION TRUST AGREEMENT, THE PLAN SUPPLEMENT, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS**

NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any of the Exculpated Parties' post-Effective Date obligations under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.5     *No Discharge*.  Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests other than the Releasing Parties.

10.6     *Term of Bankruptcy Injunction or Stays*.  Except as provided otherwise in the Plan, from and after the entry of an order or other deemed action under the Plan closing the Chapter 11 Case, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

10.7     *Post-Confirmation Date Retention of Professionals*.  Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and Debtor or the Liquidation Trust, as applicable, will employ and pay professionals in the ordinary course of business.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1     *Retention of Jurisdiction*.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)     decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments,

releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)       resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(e)       modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)       hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date the payment of fees and expenses by the Debtor or the Liquidation Trust, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)       adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)       resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)       hear and determine Retained Actions by or on behalf of the Debtor or the Liquidation Trust;

(k)       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)       determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document

created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(m)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    enter an order closing the Chapter 11 Case.

11.2    ***No Limitation on Enforcement by SEC or the U.S. Attorney's Office on Non-Debtors.***  Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Liquidation Trust until the earlier of the conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  The Liquidation Trustee shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree. Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2    ***Dissolution of the Creditors' Committee.***  On the Effective Date, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee, and professionals retained by the Creditors' Committee in accordance with section 1103 of the Bankruptcy Code shall be deemed released from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Case, except with respect to: (i) prosecuting applications for professionals' compensation and reimbursement of expenses incurred as a member of the Creditors' Committee; (ii) asserting, disputing, and participating in the resolution of Professional Fee Claims; and (iii) defending any appeal of the Confirmation Order or any request for reconsideration thereof, in either case prior to entry of a Final Order or Final Orders approving all Professional final fee applications in accordance with Section 2.4.  Upon the conclusion of (i) through (iii) above, the Creditors' Committee shall be immediately dissolved and released.

12.3     ***Amendment or Modification of the Plan***.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, Debtor reserves the right to alter, amend, or modify the Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan, subject to the express written consent of the Creditors' Committee and the UK Administrators to the extent such consent is required pursuant to the terms hereof or the Global Settlement.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.4     ***Substantial Consummation***.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.5     ***Severability of Plan Provisions***.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court, at the request of the Debtor and with the consent of the Committee and the UK Administrators (not to be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6     ***Successors and Assigns***.  The Plan shall be binding upon and inure to the benefit of the Debtor and successors and assigns, including the Liquidation Trust, as applicable.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7     ***Revocation, Withdrawal, or Non-Consummation***.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further

proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8    ***Governing Law***.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9    ***Time***.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Holders of Claims and Interests, the GCUK / GCMC Parties, the Exculpated Parties, and each of their respective successors and assigns, including the Liquidation Trust.  The Debtor will request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

12.11    ***Entire Agreement***.  On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.12    ***Notice***.  All notices, requests, and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> TOGUT, SEGAL & SEGAL LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn:  Albert Togut, Esq., Kyle J. Ortiz, Esq., Bryan M. Kotliar, Esq., and Amanda C. Glaubach, Esq.
> E-mail: altogut@teamtogut.com, kortiz@teamtogut.com, bkotliar@teamtogut.com, and aglaubach@teamtogut.com
>
> Attorneys for the Debtor

-and-

ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Attn:  George P. Angelich, Esq.
E-mail:  george.angelich@arentfox.com

- and-

Arent Fox LLP
The Prudential Tower
800 Boylston Street, Floor 32
Boston, MA 02199
Attn:  Justin A. Kesselman, Esq.
E-mail:  justin.kesselman@arentfox.com

## ARTICLE XIII

## CONFIRMATION REQUEST

The Debtor requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.


Dated: October 2226, 2021
          New York, New York


GREENSILL CAPITAL, INC.


By:      /s/ Matthew Tocks
          Name:  Matthew Tocks
          Title:    Chief Restructuring Officer

**<u>Exhibit C</u>**

**Cumulative Redline Comparison of the
Second Amended Plan and the Solicitation Plan**

> NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST.  THE PLAN IS SUBJECT TO BANKRUPTCY COURT'S APPROVAL AND CERTAIN OTHER CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN ARE BEING SOLICITED PURSUANT TO THE ACCOMPNAYING ACCOMPANYING DISCLOSURE STATEMENT, WHICH THE BANKRUPTCY COURT HAS APPROVED ON A PROVISIONAL BASIS, SUBJECT TO FINAL APPROVAL AT THE COMBINED HEARING.  ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.:  21-10561 (MEW) |
| Debtor.[1] | |

**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR GREENSILL CAPITAL INC.**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Albert Togut
Kyle J. Ortiz
Bryan M. Kotliar
Amanda C. Glaubach

*Attorneys for the Debtor and*
*Debtor in Possession*

Dated:    September 24 October 26, 2021
             New York, New York

---

[1]    The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

## TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...............................1

ARTICLE II UNCLASSIFIED CLAIMS ...................................................................................17

2.1    FINACITY SALE ORDER SUPERPRIORITY CLAIMS ..........................................18

2.2    ADMINISTRATIVE CLAIMS .....................................................................................18

2.3    PAYMENT OF U.S. TRUSTEE FEES .........................................................................18

2.4    PROFESSIONAL FEE CLAIMS ..................................................................................18

2.5    PRIORITY TAX CLAIMS ............................................................................................19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........20

3.1    CLASSIFICATION IN GENERAL ...............................................................................20

3.2    SUMMARY OF CLASSIFICATION ...........................................................................20

3.3    TREATMENT OF CLASSES .......................................................................................20

3.4    ALTERNATIVE TREATMENT ...................................................................................22

3.5    SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS ..............................23

3.6    SUBORDINATED CLAIMS .........................................................................................23

3.7    CONTROVERSY CONCERNING IMPAIRMENT .....................................................23

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN .............................................23

4.1    ACCEPTANCE BY CLASS ENTITLED TO VOTE ...................................................23

4.2    PRESUMED ACCEPTANCE OF THE PLAN .............................................................23

4.3    ELIMINATION OF CLASSES .....................................................................................23

i

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 24

5.1   PLAN OBJECTIVE ................................................................................................. 24

5.2   ALLOWANCE AND CLASSIFICATION OF GCUK CLAIMS; GCUK CLAIM
CONTRIBUTION ............................................................................................................ 24

5.3   GLOBAL SETTLEMENT .......................................................................................... 24

5.4   INTELLECTUAL PROPERTY ASSIGNMENT ..................................................... 25

5.5   VESTING OF ASSETS ............................................................................................. 25

5.6   CONTINUED CORPORATE EXISTENCE OF THE DEBTOR; TERMINATION
OF CURRENT OFFICERS, DIRECTORS, EMPLOYEES AND PROFESSIONALS ........ 25

5.7   LIQUIDATION TRUST ............................................................................................ 26

5.8   EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS ........................... 32

5.9   EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES . 32

5.10  FURTHER AUTHORIZATION ................................................................................. 33

ARTICLE VI DISTRIBUTIONS ...................................................................................... 33

6.1   DISBURSING AGENT .............................................................................................. 33

6.2   NO POSTPETITION INTEREST ON CLAIMS ....................................................... 33

6.3   DATE OF DISTRIBUTIONS ..................................................................................... 33

6.4   DISTRIBUTION RECORD DATE ............................................................................ 33

6.5   BOOKS AND RECORDS .......................................................................................... 33

6.6   DELIVERY OF DISTRIBUTIONS ........................................................................... 34

6.7   REVERSION .............................................................................................................. 34

6.8   SATISFACTION OF CLAIMS .................................................................................. 34

6.9 MANNER OF PAYMENT UNDER PLAN ........................................... 34

6.10 DE MINIMIS CASH DISTRIBUTIONS ........................................... 34

6.11 NO DISTRIBUTION IN EXCESS OF AMOUNT OF ALLOWED CLAIM ............ 34

6.12 ALLOCATION OF DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST 34

6.13 SETOFFS AND RECOUPMENTS ................................................. 35

6.14 RIGHTS AND POWERS OF DISBURSING AGENT ................................ 35

6.15 WITHHOLDING AND REPORTING REQUIREMENTS ......................... 35

6.16 CLAIMS PAID OR PAYABLE BY THIRD PARTIES ............................... 36

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ............................... 37

7.1 ALLOWANCE OF CLAIMS ...................................................... 37

7.2 OBJECTIONS TO CLAIMS ...................................................... 37

7.3 ESTIMATION OF CLAIMS ...................................................... 38

7.4 NO DISTRIBUTIONS PENDING ALLOWANCE ................................. 38

7.5 RESOLUTION OF CLAIMS ...................................................... 38

7.6 DISALLOWED CLAIMS ......................................................... 39

7.7 NO RECOURSE .................................................................. 39

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES .............................................................................. 39

8.1 REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 39

8.2 INDEMNIFICATION ............................................................ 40

8.3 CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES .............................................................. 40

8.4   RESERVATION OF RIGHTS ............................................................... 40

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ........................................................... 41

9.1   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..................... 41

9.2   WAIVER OF CONDITIONS PRECEDENT ..................................... 41

ARTICLE X EFFECT OF PLAN CONFIRMATION ...................................... 42

10.1   BINDING EFFECT ............................................................... 42

10.2   RELEASES AND RELATED MATTERS ...................................... 42

10.3   INJUNCTION ..................................................................... 44

10.4   EXCULPATION AND LIMITATION OF LIABILITY ...................... 45

10.5   NO DISCHARGE .................................................................. 45

10.6   TERM OF BANKRUPTCY INJUNCTION OR STAYS ...................... 45

10.7   POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS ......... 45

ARTICLE XI RETENTION OF JURISDICTION ........................................ 46

11.1   RETENTION OF JURISDICTION .............................................. 46

11.2   NO LIMITATION ON ENFORCEMENT BY SEC OR THE U.S. ATTORNEY'S
OFFICE ON NON-DEBTORS ...................................................... 47

ARTICLE XII MISCELLANEOUS PROVISIONS ...................................... 47

12.1   PAYMENT OF STATUTORY FEES ........................................... 47

12.2   DISSOLUTION OF THE CREDITORS' COMMITTEE ...................... 48

12.3   AMENDMENT OR MODIFICATION OF THE PLAN ...................... 48

12.4   SUBSTANTIAL CONSUMMATION ........................................... 48

iv

12.5   SEVERABILITY OF PLAN PROVISIONS...........................................................48

12.6   SUCCESSORS AND ASSIGNS...........................................................................49

12.7   REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION.......................49

12.8   GOVERNING LAW.............................................................................................49

12.9   TIME.....................................................................................................................49

12.10   IMMEDIATE BINDING EFFECT......................................................................49

12.11   ENTIRE AGREEMENT......................................................................................49

12.12   NOTICE...............................................................................................................50

ARTICLE XIII CONFIRMATION REQUEST...................................................................51

INTRODUCTION.................................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION.............................1

ARTICLE II UNCLASSIFIED CLAIMS.............................................................................18

2.1     FINACITY SALE ORDER SUPERPRIORITY CLAIMS.........................18

2.2     ADMINISTRATIVE CLAIMS.................................................................18

2.3     PAYMENT OF U.S. TRUSTEE FEES......................................................18

2.4     PROFESSIONAL FEE CLAIMS..............................................................19

2.5     PRIORITY TAX CLAIMS.........................................................................20

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
        20

3.1     CLASSIFICATION IN GENERAL...........................................................20

3.2     SUMMARY OF CLASSIFICATION.........................................................20

3.3      TREATMENT OF CLASSES.................................................................................21

3.4      ALTERNATIVE TREATMENT ..........................................................................23

3.5      SPECIAL PROVISION REGARDING UNIMPAIRED CLAIMS ........................23

3.6      SUBORDINATED CLAIMS. ..............................................................................23

3.7      CONTROVERSY CONCERNING IMPAIRMENT. ............................................23

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ....................................23

4.1      ACCEPTANCE BY CLASS ENTITLED TO VOTE ..........................................23

4.2      PRESUMED ACCEPTANCE OF THE PLAN ....................................................23

4.3      ELIMINATION OF CLASSES...........................................................................24

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ..................................24

5.1      PLAN OBJECTIVE............................................................................................24

5.2      ALLOWANCE AND CLASSIFICATION OF GCUK CLAIMS; GCUK / GCMC
CLAIM CONTRIBUTION. ...............................................................................24

5.3      GLOBAL SETTLEMENT. .................................................................................24

5.4      INTELLECTUAL PROPERTY ASSIGNMENT. ...............................................25

5.5      VESTING OF ASSETS. .....................................................................................25

5.6      TERMINATION OF CURRENT OFFICERS, DIRECTORS, EMPLOYEES AND
PROFESSIONALS.............................................................................................26

5.7      LIQUIDATION TRUST......................................................................................26

5.8      EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS. ......................33

5.9      EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES.
..........33

5.10    FURTHER AUTHORIZATION...........................................................................33

5.11    PRESERVATION OF INSURANCE ............................................................33

5.12    DISSOLUTION OF THE DEBTOR............................................................33

ARTICLE VI DISTRIBUTIONS....................................................................................33

6.1    DISBURSING AGENT. ............................................................................33

6.2    NO POSTPETITION INTEREST ON CLAIMS. ........................................34

6.3    DATE OF DISTRIBUTIONS.....................................................................34

6.4    DISTRIBUTION RECORD DATE ............................................................34

6.5    BOOKS AND RECORDS ..........................................................................34

6.6    DELIVERY OF DISTRIBUTIONS ...........................................................34

6.7    REVERSION .............................................................................................35

6.8    MANNER OF PAYMENT UNDER PLAN ................................................35

6.9    DE MINIMIS CASH DISTRIBUTIONS ...................................................35

6.10    NO DISTRIBUTION IN EXCESS OF AMOUNT OF ALLOWED CLAIM.........35

6.11    ALLOCATION OF DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST
         35

6.12    SETOFFS AND RECOUPMENTS ............................................................35

6.13    RIGHTS AND POWERS OF DISBURSING AGENT................................36

6.14    WITHHOLDING AND REPORTING REQUIREMENTS .........................36

6.15    CLAIMS PAID OR PAYABLE BY THIRD PARTIES..............................37

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS..........................................38

7.1    ALLOWANCE OF CLAIMS .....................................................................38

7.2     OBJECTIONS TO CLAIMS ........................................................................38

7.3     ESTIMATION OF CLAIMS.........................................................................39

7.4     NO DISTRIBUTIONS PENDING ALLOWANCE.....................................39

7.5     RESOLUTION OF CLAIMS. ......................................................................39

7.6     DISALLOWED CLAIMS. ...........................................................................39

7.7     NO RECOURSE. ..........................................................................................40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES..................................................................................................................40

8.1     REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES......40

8.2     INDEMNIFICATION...................................................................................40

8.3     CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES. ...........................................................................................41

8.4     RESERVATION OF RIGHTS. ....................................................................41

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ...........................................................................41

9.1     CONDITIONS PRECEDENT TO THE EFFECTIVE DATE...................41

9.2     WAIVER OF CONDITIONS PRECEDENT ..............................................42

ARTICLE X EFFECT OF PLAN CONFIRMATION ...................................................42

10.1    BINDING EFFECT......................................................................................42

10.2    RELEASES AND RELATED MATTERS ..................................................43

10.3    INJUNCTION...............................................................................................45

10.4    EXCULPATION AND LIMITATION OF LIABILITY.............................46

10.5    NO DISCHARGE..........................................................................................46

10.6    TERM OF BANKRUPTCY INJUNCTION OR STAYS ............................................47

10.7    POST-CONFIRMATION DATE RETENTION OF PROFESSIONALS ...............47

ARTICLE XI RETENTION OF JURISDICTION ..................................................................47

11.1    RETENTION OF JURISDICTION. ...................................................................47

11.2    NO LIMITATION ON ENFORCEMENT BY SEC OR THE U.S. ATTORNEY'S
OFFICE ON NON-DEBTORS. ......................................................................................48

ARTICLE XII MISCELLANEOUS PROVISIONS ...............................................................49

12.1    PAYMENT OF STATUTORY FEES ................................................................49

12.2    DISSOLUTION OF THE CREDITORS' COMMITTEE. ...............................49

12.3    AMENDMENT OR MODIFICATION OF THE PLAN....................................49

12.4    SUBSTANTIAL CONSUMMATION ...............................................................49

12.5    SEVERABILITY OF PLAN PROVISIONS......................................................50

12.6    SUCCESSORS AND ASSIGNS ........................................................................50

12.7    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION ....................50

12.8    GOVERNING LAW ..........................................................................................50

12.9    TIME ..................................................................................................................50

12.10   IMMEDIATE BINDING EFFECT ....................................................................50

12.11   ENTIRE AGREEMENT ....................................................................................51

12.12   NOTICE..............................................................................................................51

ARTICLE XIII CONFIRMATION REQUEST ......................................................................52

## INTRODUCTION

Greensill Capital Inc. as debtor and debtor in possession in the above-captioned case, proposes the following plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtor. Subject to Section 12.7 of the Plan, certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation (as such term is defined in section 1101 of the Bankruptcy Code).

Holders of Claims and Interests should refer to the Disclosure Statement for information concerning, among other things, (a) the Debtor's history, assets, and liabilities, and (b) the Plan and related matters.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCE OR REJECTIONS OF THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    ***2019 Acquisition*** means the Debtor's acquisition of the outstanding equity interest in Finacity Corporation in 2019 pursuant to that certain Stock Purchase Agreement, dated as of June 10, 2019 (as modified by that certain Letter Agreement, dated December 20, 2019) and all agreements or obligations incurred thereby.

1.2    ***2019 Acquisition Causes of Action*** means all legal, equitable, and beneficial right, under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, other than the Katz Parties, including, without limitation, claims for fraudulent transfer, preference or otherwise under chapter 5 of the Bankruptcy Code or applicable state law in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfers of value resulting from, the 2019 Acquisition.

1.3    ***Accrued Professional Compensation*** means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying

any retainer that has been provided by the Debtor to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.4     ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to:  (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estate and operating the business of the Debtors, including for wages, salaries or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Estate;  (b) Professional Fee Claims;  (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code;  and (d) all other Claims entitled to Administrative Claim status pursuant to an order of the Bankruptcy Court.

1.5     ***Administrative Claims Bar Date*** shall have the meaning set forth in Section 2.2.

1.6     ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.7     ***Allowed*** means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed, and as to which the Debtor, Creditors' Committee, Liquidation Trust or other parties in interest have not filed an objection by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date or Administrative Claims Bar Date, and as to which the Debtor, Creditors' Committee, Liquidation Trust, or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been timely filed and any Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is not considered Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.8     *Amended Bylaws* means the amended or amended and restated bylaws for the Debtor, a substantially final form of which will be contained in the Plan Supplement to the extent it contains material changes to the Debtor's existing bylaws.

1.9     *Amended Certificate of Incorporation* means the amended or amended and restated certificate of incorporation for the Debtor, a substantially final form of which will be contained in the Plan Supplement to the extent it contains material changes to the Debtor's existing certificate of incorporation.

1.101.8   *Assumed Contracts* means those Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan and set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases filed with the Plan Supplement.

1.111.9   *Australian Liquidators* means Matthew Byrnes, Philip Campbell-Wilson and Michael McCann of Grant Thornton Australia Limited of Level 22, Tower 5 Collins Square 727 Collins Street Melbourne VIC 3008, Australia, in their capacity as joint liquidators of Greensill Australia and without personal liability.

1.121.10 *Avoidance Action* means any claim or Cause of Action of the Estate to recover or avoid transfers or to avoid liens under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including but not limited to sections 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of the Debtor's or the Estate's claim, counterclaim, setoff, or offset rights, regardless of whether or not such action has been commenced prior to the Effective Date.

1.131.11 *Ballot* means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject the Plan and on which the Holder is to indicate, among other things, acceptance or rejection of the Plan.

1.141.12 *Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

1.151.13 *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York.

1.161.14 *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.171.15 *Bar Date* means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any

applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) September 20, 2019 at 5:00 p.m. (prevailing Eastern Time) for Governmental Units; and (e) the Administrative Claims Bar Date.

1.181.16 **Bar Date Order** means the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 253].

1.191.17 **Beneficiaries** means the Holders of Claims and Interests who are the beneficiaries of the Liquidation Trust.

1.201.18 **Business Day** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.211.19 **Cash** means legal tender of the United States of America and equivalents thereof.

1.221.20 **Cause of Action** means any action, proceeding, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, setoff, recoupment, cross-claim, counterclaim, third-party claim, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date. "*Cause of Action*" includes: (a) any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

1.231.21 **Chapter 11 Case** means the bankruptcy case of the Debtor pending under case number 21-10561 (MEW) in the Bankruptcy Court.

1.241.22 **Claim** means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.251.23 **Claims Objection Deadline** means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim;  and (c) such other objection deadline as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.  For the avoidance of doubt, the Claims Objection Deadline may be extended one

or more times by the Bankruptcy Court upon the request of the Debtor or the Liquidation Trust, as applicable.

~~1.26~~1.24 ***Claims Register*** means the official register of Claims maintained by the clerk of the Bankruptcy Court.

~~1.27~~1.25 ***Class*** means a category of Claims or Interests, as described in Article III hereof.

~~1.28~~1.26 ***Confirmation*** means the confirmation of the Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

~~1.29~~1.27 ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

~~1.30~~1.28 ***Confirmation Hearing*** means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

~~1.31~~1.29 ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the UK Administrators with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

~~1.32~~1.30 ***Creditors' Committee*** means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code.

~~1.33~~1.31 ***Cure Amount*** means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, pursuant to Bankruptcy Code section 365, arising under any Assumed Contract.

~~1.34~~1.32 ***D&O Policy*** means any and all insurance policies and contracts for directors' and officers' liability maintained by the Debtor, including any directors' and officers' "tail policy", including, but not limited to, that certain $5,000,000 Axis Management & Entity Liability Insurance Policy, Policy No. P-001-000412753-01.

~~1.35~~1.33 ***Debtor*** means Greensill Capital Inc.

~~1.36~~1.34 ***Disallowed*** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed;  unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

~~1.37~~1.35 ***Disbursing Agent*** means the Liquidation Trustee or the Entity or Entities selected by the Liquidation Trustee to make or facilitate Distributions contemplated under the Plan after the Effective Date.

1.381.36 ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as amended, modified, or supplemented from time to time.

1.391.37 ***Disputed Claim*** means (a) any Claim as to which the Debtor, Creditors' Committee, Liquidation Trust or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Creditors' Committee, Liquidation Trust, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order;  (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed;  (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed;  or (d) any Claim prior to it having become an Allowed Claim.

1.401.38 ***Distribution*** means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

1.411.39 ***Distribution Date*** means a date or dates, including the Initial Distribution Date as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.421.40 ***Distribution Record Date*** means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to received Distributions, which date shall be the first day of the Confirmation Hearing or such other date as designated in a Final Order of the Bankruptcy Court.

1.431.41 ***Effective Date*** means the Business Day the Plan becomes effective as provided in Article IX hereof.

1.441.42 ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.451.43 ***Estate*** means the chapter 11 estate of the Debtor created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.461.44 ***Exchange Act*** means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

1.471.45 ***Exculpated Parties*** means the following parties in their respective capacities as such: (a) the Debtor; (b) the Creditors' Committee and its members (each in their capacities as such); and (c) with respect to each of the foregoing persons in clauses (a) and (b), each of their Related Parties.

1.481.46 ***Executory Contract*** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.491.47 ***Exhibit*** means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.50~~1.48~~ ***Federal Judgment Rate*** means the federal judgment rate, 28 U.S.C. § 1961, in effect as of the Petition Date, compounded annually.

1.51~~1.49~~ ***Finacity Sale*** means the Debtor's sale of its 100% ownership interest in Finacity Corporation to the Purchaser pursuant to the Finacity Sale Documents as approved by the Finacity Sale Order.

1.52~~1.50~~ ***Finacity Sale Documents*** means that certain Stock Sale Agreement, among the Debtor, Finacity Corporation, and the Purchaser, a copy of which is attached as Exhibit A to the Finacity Sale Order (together with the schedules and/or exhibits and all related documents, including the Finacity Settlement Agreement), as they may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

1.53~~1.51~~ ***Finacity Sale Indemnity Obligations*** means the requirement under section 2(g) of the Finacity Settlement Agreement for the Debtor and the Liquidation Trust to indemnify the Purchaser, Finacity Corporation, and the Katz Parties in accordance with section 2(g) of the Finacity Settlement Agreement, which obligations the Liquidation Trust may satisfy at any time in accordance with the Finacity Sale Documents, and upon such satisfaction, any Finacity Sale Reserve Obligations or Finacity Sale Order Superpriority Claims with respect to such satisfied Finacity Sale Indemnity Obligation shall be immediately satisfied, terminated, discharged, and expunged without further order of the Court.

1.54~~1.52~~ ***Finacity Sale Order*** means that certain order of the Bankruptcy Court, entered on August 18, 2021 [Docket No. 236] approving the Finacity Sale.

1.55~~1.53~~ ***Finacity Sale Order Superpriority Claims*** means the Finacity Superpriority Claim and the Katz Superpriority Claim.

1.56~~1.54~~ ***Finacity Sale Reserve Obligations*** means the requirement under paragraph 4 of the Finacity Sale Order for the Debtor and the Liquidation Trust to hold any proceeds of a 2019 Acquisition Cause of Action in trust on account of Finacity Sale Indemnity Obligations arising from such 2019 Acquisition Cause of Action until the Finacity Sale Order Superpriority Claim for such Finacity Sale Indemnity Obligation, if any, is asserted and resolved or as may otherwise be agreed to by the Debtor or the Liquidation Trust, as applicable, and Finacity Corporation or the Katz Parties, as applicable, or, alternatively, until Finacity Corporation and the Katz Parties receive releases, in form and substance satisfactory to Finacity Corporation and the Katz Parties (respectively) that eliminate such Finacity Sale Indemnity Obligation.

1.57~~1.55~~ ***Finacity Settlement Agreement*** means that certain Settlement Agreement among the Debtor, GCUK, GCMC, the UK Administrators, Greensill Australia, the Australian Liquidators, Finacity Corporation, Neely Funding LLC, and the Katz Parties, a copy of which is attached as Exhibit B to the Finacity Sale Order.

1.58~~1.56~~ ***Finacity Superpriority Claim*** has the meaning set forth in the Finacity Sale Order.

1.591.57 ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.601.58 ***GCMC*** means Greensill Capital Management (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.611.59 ***GCUK*** means Greensill Capital (UK) Limited (in administration), a United Kingdom corporation acting by the UK Administrators.

1.621.60 ***GCUK / GCMC Claim Contribution*** means GCUK's and GCMC's contribution to the Debtor of all legal, equitable, and beneficial right under bankruptcy and non-bankruptcy law, to assert any and all claims and causes of action (i) against the shareholders who sold stock of Finacity Corporation to the Debtor and terminated options pursuant to the 2019 Acquisition, including, without limitation, Avoidance Actions in relation to the 2019 Acquisition and/or any transactions consummated pursuant to, or transfer of value resulting from, the 2019 Acquisition. and (ii) that constitute Avoidance Actions that seek the avoidance or recovery of any transfers made by or on behalf of the Debtor of proceeds where such transfers were treated by GCUK as advances under the GCUK Intercompany Loan.

1.631.61 ***GCUK / GCMC Parties*** means the following parties in their respective capacities as such:  (a) GCUK, (b) GCMC, and (c) the UK Administrators.

1.641.62 ***GCUK / GCMC Release Requirements*** means that the GCUK / GCMC Parties shall be included as released parties for purposes of Sections 10.2(a) and 10.2(b) only to the extent that the GCUK / GCMC Parties (a) vote to accept the Plan (solely to the extent such party is entitled to vote) (b) support, act in good faith, and take all reasonable actions necessary to consummate the Plan and implement the terms of the Global Settlement (it being understood that the GCUK / GCMC Parties shall be under no obligation to incur any expense or liability in connection therewith, except to the extent expressly set forth in the Global Settlement), or (c) do not take any action, directly or indirectly, that could reasonably be expected to materially delay, interfere with or impede the confirmation or consummation of the Plan.

1.651.63 ***GCUK Intercompany Loan*** means that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor as borrower, and GCUK, as lender.

1.661.64 ***GCUK Intellectual Property*** means any and all of the Debtor's rights, title and interest in the following (together with all related software and

applications), each (other than Greensill Finance SAP) as more fully described in the *Debtors' Motion for an Order Authorizing and Directing the Debtor to Enter into Intellectual Property Assignment Agreement,* filed on April 21, 2021 [Docket No. 62]: (a) Accounts Receivable Module (ARM); (b) Greensill Payments Engine (GPE); (c) New Core System (NCS); (d) Greensill Trading Module (GTM); (e) Client File Converter (CFC); (f) Allocation Tool; (g) Decision Engine; (h) Shared Services; (i) Verdi (completed or in development); and (j) Greensill Finance SAP.

1.67<u>1.65</u> ***GCUK Intellectual Property Assignment Agreement*** means that certain Assignment of Intellectual Property Agreement between the Debtor and GCUK, in form and substance reasonably acceptable to the Debtor, the Creditors' Committee, GCUK and the UK Administrators, a copy of which shall be included in the Plan Supplement.

1.68<u>1.66</u> ***GCUK L/C Claim*** means Proof of Claim numbered 50 (as amended or modified from time to time) filed by GCUK asserting amounts arising under the debiting of an account in connection with a letter of credit provided as security for the Debtor's obligations under its former corporate headquarters.

1.69<u>1.67</u> ***General Bar Date*** means June 14, 2021 at 5:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against the Debtor must have filed a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.70<u>1.68</u> ***General Unsecured Claim*** means any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, a Priority Wage Claim, or the Subordinated GCUK Intercompany Loan Claim.  For the avoidance of doubt, the GCUK L/C Claim shall be classified and allowed as a Class 5 General Unsecured Claim.

1.71<u>1.69</u> ***GCUK Services Agreement*** means that certain Services Agreement, dated March 25, 2021 (as amended and restated on June 11, 2021 and as may be further amended, modified, restated and/or supplemented from time to time).

1.72<u>1.70</u> ***Global Settlement*** means the settlements and compromises set forth in that certain Addendum to Sale Order, dated August 12, 2021, by among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators, a copy of which is attached as Exhibit C to the Finacity Sale Order.

1.73<u>1.71</u> ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.74<u>1.72</u> ***Greensill Australia*** means Greensill Capital Pty Limited (in liquidation) (receivers and managers appointed), an Australian proprietary limited company, acting by the Australian Liquidators.

1.75<u>1.73</u> ***Holder*** means a holder of a Claim or Interest, as applicable.

1.761.74 *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.771.75 *Initial Distribution Date* means the date or dates on which the Disbursing Agent makes the first distribution to Holders of Allowed Claims pursuant to the terms of the Plan.

1.781.76 *Interest* means any of the equity interests in the Debtor.

1.791.77 *IRC* means the Internal Revenue Code of 1986, as now in effect or hereafter amended.

1.801.78 *IRS* means the Internal Revenue Service.

1.811.79 *Katz Parties* means Adrian Katz, Danalyn Katz (a/k/a Dana Katz), and the Katz Family Trust.

1.821.80 *Katz Superpriority Claim* has the meaning set forth in the Finacity Sale Order.

1.831.81 *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.841.82 *Liquidation Trust* means the trust established pursuant to the Plan and in accordance with the Confirmation Order and Liquidation Trust Agreement.

1.851.83 *Liquidation Trust Agreement* means the trust agreement that documents the powers, duties, and responsibilities of the Liquidation Trust, and which document will be materially consistent with this Chapter 11 Plan and in form and substance reasonably acceptable to the UK Administrators and satisfactory to the Debtor and the Creditors' Committee, as such agreement may be amended from time to time in accordance with its terms.

1.861.84 *Liquidation Trust Assets* means the Debtor's Retained Assets, including, but not limited to, (i) the remaining proceeds of all sales of the Debtor's assets, including the Finacity Sale, after the payment of all allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (ii) all Cash remaining in the Estate after the payment of allowed administrative, professional, and priority claims, and U.S. Trustee Fees; (iii) all Retained Causes of Action; (iv) all rights to tax refunds; (v) all marketable and unsold hard assets of the Debtor, including but not limited to artwork and FFE (but excluding the GCUK Intellectual Property); and (vi) all rights with respect to the insurance policies of the Debtor, including the D&O Policies, and the right to recover therefrom, all of which shall be transferred or assigned to the Liquidation Trust on the Effective Date, free and clear of any liens or claims that might otherwise have existed in favor of any party and (b) Liquidation Trust Proceeds, but excluding the Professional Fee Escrow Account (and the funds therein) and the Plan Reserve Account (and the funds therein) until satisfaction or resolution of Professional Fee Claims and Plan Reserve Obligations, respectively, at which point the remaining

funds in the Professional Fee Escrow Account, if any, and the Plan Reserve Account, if any, shall be become Liquidation Trust Assets.

1.871.85 ***Liquidation Trust Funding Amount*** means an amount equal to (a) the Liquidation Trust Minimum Cash Amount plus (b) all of the Debtor's Cash on hand as of the Effective Date following payments required to be made on the Effective Date on account of all Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, Priority Wage Claims, U.S. Trustee Fees, and to fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount and the Plan Reserve Account with the Plan Reserve Amount; provided that if the Debtor's Cash on hand as of the Effective Date following the payments set forth in the foregoing clause (b) shall be insufficient to satisfy the Liquidation Trust Minimum Cash Amount, the Professional Fee Escrow Amount shall be reduced accordingly on a Pro Rata basis to guarantee the Liquidation Trust Minimum Cash Amount.

1.881.86 ***Liquidation Trust Minimum Cash Amount*** means $250,000.

1.891.87 ***Liquidation Trust GCMC Interests*** means Liquidation Trust Interests representing the right to receive 100% of the Liquidation Trust Net Recovery following payment in full of all Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

1.901.88 ***Liquidation Trust GUC Interests*** means Liquidation Trust Interests representing the right to receive, upon and after the Effective Date, 80% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full.  Notwithstanding the foregoing, and for the sake of clarity, all Estate recoveries made from Retained Causes of Action, including from any settlement thereof, effected prior to the Effective Date, shall be allocated solely (i.e. 100%) to payment of Allowed General Unsecured Claims and distributed on the Initial Distribution Date.

1.911.89 ***Liquidation Trust GCUK Interests*** means Liquidation Trust Interests representing the right to receive (a) upon and after the Effective Date, 20% of the Liquidation Trust Net Recovery until Allowed General Unsecured Claims are paid in full and (b) following payment in full of Allowed General Unsecured Claims, 100% of the Liquidation Trust Net Recovery until the Subordinated GCUK Intercompany Loan Claim is paid in full.

1.921.90 ***Liquidation Trust Interests*** means a beneficial interest in the Liquidation Trust entitling the Holder thereof to the Distribution from the Liquidation Trust as provided for in the Plan and in the Liquidation Trust Agreement.

1.931.91 ***Liquidation Trust Net Recovery*** means the Liquidation Trust Assets available for distributions to Holders of Claims and Interests in accordance with the Plan following payment of Post-Effective Date Expenses, satisfaction of the Finacity Sale Reserve Obligations, the balance of any remaining unpaid Allowed Professional Fee Claims to the extent not satisfied in full from the Professional Fee Escrow, in each case, in accordance with their respective priorities under the Bankruptcy Code or any order of the Bankruptcy Court, including without limitation, the Confirmation Order and the Finacity Sale Order; *provided* that the Disbursing Agent shall be entitled to make

11

Distributions of Liquidation Trust Proceeds, other than amounts used to fund the Finacity Sale Reserve Obligations, prior to any satisfaction of the Finacity Sale Indemnity Obligations.

1.941.92 ***Liquidation Trust Proceeds*** means any and all Cash, property and other rents, profits, and/or proceeds derived from the Liquidating Trust Assets, including reducing Retained Causes of Action to Cash.

1.951.93 ***Liquidation Trustee*** means (a) the Person selected by the Creditors' Committee in consultation with GCUK and the UK Administrators appointed as the trustee pursuant to the Liquidation Trust Agreement or any other Person approved by the Bankruptcy Court and (b) any successor trustee(s) appointed pursuant to the Liquidation Trust Agreement that has the powers and responsibilities set forth in the Plan, the Confirmation Order, and the Liquidation Trust Agreement. Whenever the Liquidation Trustee is referred to herein, all such references are qualified by the Liquidation Trustee's powers rights, and obligations as set forth in the Liquidation Trust Agreement.

1.961.94 ***Liquidation Trustee Disclosure*** means a written disclosure to be filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline disclosing the identity of the Liquidation Trustee, the Liquidation Trustee's credentials, any and all relevant affiliations, connections or actual or potential conflicts of interest and an engagement letter setting forth the terms of the Liquidation Trustee's retention..

1.971.95 ***Other Priority Claim*** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.981.96 ***Other Secured Claim*** means any Secured Claim that is not a Secured Tax Claim.

1.991.97 ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.1001.98      ***Petition Date*** means March 25, 2021, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

1.1011.99      ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time, which shall be in form and substance reasonably acceptable to the UK Administrators solely with respect to the matters set forth in the Global Settlement and satisfactory to the Debtor and the Creditors' Committee.

1.1021.100      ***Plan Reserve Amount*** means the Debtor's reasonable best estimate of amounts necessary to pay in full in Cash all Plan Reserve Obligations, which

12

shall be held in the Plan Reserve Account and used by the Liquidation Trustee to pay such Plan Reserve Obligations.

1.103 1.101      ***Plan Reserve Account*** means an escrow account to be funded by the Plan Reserve Amount on the Effective Date, which shall be used solely to pay the Plan Reserve Obligations.

1.104 1.102      ***Plan Reserve Obligations*** means the Allowed Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims that are not satisfied as of the Effective Date.

1.105 1.103      ***Plan Supplement*** means any supplement to the Plan, and the compilation of documents, forms of documents, and Exhibits to the Plan, as amended, modified, or supplemented from time to time, which may be filed in draft or substantially final or non-final form, in form and substance satisfactory to the applicable parties as provided in the Global Settlement and the Plan, which shall be filed by the Debtor no later than seven (7) calendar days prior to the Voting Deadline, and including the following, without limitation:  (a) the Liquidation Trust Agreement, (b) the Liquidation Trustee Disclosure, (c) a non-exhaustive list of the Retained Causes of Action, (d) the GCUK Intellectual Property Assignment Agreement, (e) the Schedule of Assumed Executory Contracts and Unexpired Leases, (f) the Amended Bylaws and Amended Certificate of Incorporation, and (g(f) any other necessary documentation related to the Plan.

1.106 1.104      ***Post-Effective Date Expenses*** means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred by the Liquidation Trust or the Liquidation Trustee after the Effective Date in connection with the implementation of the Plan, the administration of the post-Effective Date Estate and the implementation of the Liquidation Trust, including, but not limited to:  (a) the Liquidation Trustee's Expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidation Trust or the Liquidation Trust Assets and accrued on or after the Effective Date, (b) U.S. Trustee Fees, if any, which accrued after the Effective Date, (c) the Liquidation Trustee's Expenses in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes and filing tax returns, (d) any Expenses incurred by the Liquidation Trust or the Liquidation Trustee, (e) the Expenses of independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons) providing services to the Liquidation Trustee or the Liquidation Trust, (f) the fees and expenses of any Disbursing Agent selected by the Liquidation Trustee to act as its agent in making Distributions, and (g) the Finacity Sale Order Indemnity Obligations.

1.107 1.105      ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.108 1.106      ***Priority Wage Claim*** means any Claim of a kind specified in sections 507(a)(4) and/or 507(a)(5) of the Bankruptcy Code up to an amount not to exceed the $13,650 statutory cap set forth therein.

1.1091.107      ***Professional*** means any professional employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise.

1.1101.108      ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered and reimbursement of costs incurred prior to and including the Effective Date.

1.1111.109      ***Professional Fee Escrow*** means an escrow account to be funded with the Professional Fee Escrow Amount on the Effective Date which shall be used solely for the purpose of paying all Allowed Professional Fee Claims and thereafter.

1.1121.110      ***Professional Fee Escrow Amount*** means (a) the aggregate Accrued Professional Compensation incurred through the Effective Date as estimated by the Professionals in accordance with Section 2.4 and (b) the aggregate accrued U.S. Trustee Fees as estimated by the Debtor in accordance with Section 2.3.

1.1131.111      ***Pro Rata*** means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests within such Class.

1.1141.112      ***Proof of Claim*** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.1151.113      ***Purchaser*** means White Oak Global Advisors, LLC.

1.1161.114      ***Rejection Damages Claims Bar Date*** means the first Business Day that is thirty (30) days after the Effective Date, or such later date as may be established by order of the Bankruptcy Court or as otherwise agreed to in writing by the Liquidation Trust and the applicable claimant.

1.1171.115      ***Related Parties*** means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.1181.116      ***Releasing Parties*** means the following parties solely to the extent acting in their respective capabilities as such: (a) any Holder of a Claim entitled to vote on the Plan that opts in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; and (b) any Holder of a Claim entitled to vote on the Plan that does not opt in to the Third Party Release on its Ballot as may be approved by the Bankruptcy Court to the maximum extent permitted by law; *provided, however,* none of GCMC, GCUK, the UK

Administrators, Greensill Australia, or the Australian Liquidators is or shall be deemed to be a "Releasing Party" hereunder.

1.119 1.117     ***Retained Assets*** means any and all of the Debtor's assets including, without limitation, (a) the Debtor's Cash on hand as of the Effective Date, following payments required to be made on the Effective Date, (b) all Retained Causes of Action, (c) all rights to tax refunds, (d) all marketable and unsold tangible and intangible assets of the Debtor, including, but not limited to, artwork and fixtures, furniture and equipment, and (d) all rights with respect to insurance policies of the Debtor, including the right to recover therefrom; *provided, however,* "Retained Assets" shall not include any assets expressly assigned or transferred by the Debtor to a party other than the Liquidation Trust pursuant to the Plan (including, for the avoidance of doubt, the GCUK Intellectual Property).

1.120 1.118     ***Retained Causes of Action*** means those Causes of Action to be retained by the Debtor and transferred to the Liquidation Trust in accordance with the Plan, which shall be set forth in the Plan Supplement. Retained Causes of Action shall include, but are not limited to:  (a) all Avoidance Actions; (b) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, managers, employees, affiliates, or insiders of the Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O Policy or fiduciary insurance policies (including for bad faith) maintained by the Debtor; and (c) the right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code.  For the avoidance of doubt, Retained Causes of Action include the 2019 Acquisition Causes of Action to the extent not released pursuant to the Finacity Settlement Agreement and Finacity Sale Order and shall not include any Causes of Action otherwise waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Bankruptcy Court order (including the Finacity Sale Order).

1.121 1.119     ***SEC*** means the U.S. Securities and Exchange Commission.

1.122 1.120     ***Securities Act*** means the Securities Act of 1933, as now in effect or hereafter amended.

1.123 1.121     ***Schedules*** means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.124 1.122     ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means a schedule that may be filed as part of the Plan Supplement of all Executory Contracts and Unexpired Leases that the Debtor intends to assume or assume and assign pursuant to the Plan.

1.125 1.123     ***Secured Claim*** means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to

setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.126~~1.124~~ ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitation therein and including any related Secured Claim for penalties).

1.127~~1.125~~ ***Subordinated GCUK Intercompany Loan Claim*** means Proof of Claim numbered 49 (as may be amended or modified) filed by GCUK asserting amounts allegedly owed under that certain Call Account Loan Agreement, dated January 1, 2019, between the Debtor, as borrower, and GCUK, as lender.

1.128~~1.126~~ ***Third Party Release*** means the release by Holders of Claims as set forth in Section 10.2(b) of the Plan.

1.129~~1.127~~ ***UK Administrators*** means Christine Mary Laverty, Trevor Patrick O'Sullivan and William George Edward Stagg, each a licensed insolvency practitioner of Grant Thornton UK LLP of 30 Finsbury Square, London EC2A 1AG, in their capacity as joint administrators of GCUK and GCMC and without personal liability.

1.130~~1.128~~ ***U.S. Attorney's Office*** means the Office of the United States Attorney.

1.131~~1.129~~ ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.132~~1.130~~ ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estate by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

1.133~~1.131~~ ***Unclaimed Distribution*** means any Distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (i) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check, (ii) given written notice to the Disbursing Agent of an intent to accept a particular Distribution, (iii) responded in writing to the request of the Disbursing Agent for information necessary to facilitate a particular Distribution, or (iv) taken any other action necessary to facilitate such Distribution.

1.134~~1.132~~ ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.135~~1.133~~ ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.136~~1.134~~ ***Voting Deadline*** means the date by which a Holder of a Claim entitled to vote on the Plan must deliver a Ballot to accept or reject the Plan as set

forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

*Rules of Interpretation and Computation of Time*.  For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;  (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;  (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Plan;  (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns;  (e) all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan;  (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;  (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;  (h) subject to the provisions of any contract, certificates of incorporation, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules;  (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;  (j) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply;  (k) "including" means "including without limitation";  and (l) with reference to any Distribution under the Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required);  or (c) at the Debtor's case website at https://cases.stretto.com/greensill.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

*Controlling Document*.  In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall

17

govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Finacity Sale Order Superpriority Claims, Administrative Claims, U.S. Trustee Fees, Priority Tax Claims, and Professional Fee Claims are not classified and are not entitled to vote on the Plan.

2.1     ***Finacity Sale Order Superpriority Claims***.  As of the Effective Date, the Finacity Sale Order Superpriority Claims are contingent obligations of the Debtor and the Liquidation Trust, as applicable, and shall be satisfied in accordance with paragraph 4 of the Finacity Sale Order.  For the avoidance of doubt, the Finacity Sale Order Superpriority Claims shall not be cancelled and discharged absent satisfaction of the Finacity Sale Indemnity Obligations and the Finacity Sale Reserve Obligations as set forth herein.

2.2     ***Administrative Claims.***

(a)     All requests for payment of Administrative Claims other than: (i) Professional Fee Claims; and (ii) Administrative Claims that have been Allowed on or before the Effective Date must be in writing and filed with the Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation Trustee, and the U.S. Trustee so as to be received by 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "**Administrative Claims Bar Date**").  Such request for payment must include at a minimum: (i) the name of the holder of the asserted Administrative Claim; (ii) the amount of the Administrative Claim; (iii) the basis of the Administrative Claim; and (iv) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

(b)     On or as soon as reasonably practicable on the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Allowed Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

2.3     ***Payment of U.S. Trustee Fees.***  On the Effective Date, the Debtor shall (a) pay all accrued and outstanding U.S. Trustee Fees, if any, and (b) fund the

18

Professional Fee Escrow with the Debtor's good faith estimate of U.S. Trustee Fees anticipated to be incurred through and including the Effective Date.  Following the Effective Date, the Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee, if any, in accordance with Section 11.3.

2.4  ***Professional Fee Claims***.

(a)  To the extent not filed prior to the Effective Date, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)  Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date and shall deliver such good faith estimate to the Debtor no later than five (5) Business Days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of such Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtor shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

(c)  As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Liquidation Trust and (y) shall be held in trust for Professionals; provided that any remaining Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall vest in the Liquidation Trust.

(d)  Allowed Professional Fee Claims shall be paid in Cash to such Professionals (i) from the funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtor's and the Liquidation Trust's obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of the funds held in the Professional Fee Escrow; and (ii) if the Professional Fee Escrow is insufficient to pay Allowed Professional Fee Claims, the Allowed Professional Fee Claims shall be paid from Liquidation Trust Net Recovery on a Pro Rata basis until all Allowed Professional Fee Claims of Togut Segal, & Segal LLP, counsel to the Debtor, and Arent Fox LLP, counsel to the Creditors' Committee, have been paid in full.

(e)  The Debtor and the Liquidation Trustee, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

2.5 ***Priority Tax Claims.*** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1 ***Classification in General***. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2 ***Summary of Classification***. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 4 | Priority Wage Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Subordinated GCUK Intercompany Loan Claim | Impaired | Yes |
| 7 | Interests | ~~Unimpaired~~Impaired | ~~No~~Yes |

20

3.3    ***Treatment of Classes***.

(a)    *Class 1 – Secured Tax Claims*

(i)    *Claims in Class*:  Class 1 consists of all Secured Tax Claims.

(ii)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claims agrees to different, less favorable treatment, each Holder of an Allowed Secured Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Allowed Secured Tax Claim becomes Allowed.

(iii)    *Voting:*  Class 1 is Unimpaired and not entitled to vote.

(b)    *Class 2 – Other Secured Claims*

(i)    *Claims in Class:*  Class 2 consists of all Other Secured Claims.

(ii)    *Treatment:*  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to different, less favorable treatment, each Holder of an Allowed Other Secured Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed.

(iii)    *Voting:*  Class 2 is Unimpaired and not entitled to vote.

(c)    *Class 3 – Other Priority Claims*

(i)    *Claims in Class:*  Class 3 consists of all Other Priority Claims.

(ii)    *Treatment:*  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each Holder of an Allowed Other Priority Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

(iii)    *Voting:*  Class 3 is Unimpaired and not entitled to vote.

(d)    *Class 4 – Priority Wage Claims*

(i)    *Claims in Class:*  Class 4 consists of all Priority Wage Claims.

(ii)    *Treatment:* Except to the extent that a Holder of an Allowed Priority Wage Claim agrees to different, less favorable treatment, each Holder of an Allowed Priority Wage Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Holder's Allowed Priority Wage Claim on the Effective Date.

(iii)    *Voting:* Class 4 is Unimpaired and not entitled to vote.

(e)    *Class 5 – General Unsecured Claims*

(i)    *Claims in Class:* Class 5 consists of all General Unsecured Claims.

(ii)    *Treatment:* Subject to the terms herein and Section 5.6~~7~~, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, Holders of Allowed General Unsecured Claims shall receive such Holder's Pro Rata share of the Liquidation Trust GUC Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, their Pro Rata share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iii)    *Voting:* Class 5 is Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(f)    *Classes 6 – Subordinated GCUK Intercompany Loan Claim*

(i)    *Claims in Class*: Class 6 consists of the Subordinated GCUK Intercompany Loan Claim.

(ii)    *Allowance:* On the Effective Date, pursuant to the Global Settlement, the Subordinated GCUK Intercompany Loan Claim shall be allowed in the amount of $52,840,506.80.

(iii)    *Treatment:* Pursuant to the Global Settlement, as the sole Holder of the Subordinated GCUK Intercompany Loan Claim, GCUK shall receive, in full and final satisfaction of such Claim, the Liquidation Trust GCUK Interests and as a beneficiary of the Liquidation Trust shall receive, on a Distribution Date, its share of net Cash derived from the Liquidation Trust Net Recovery available for Distribution on each such Distribution Date as provided under the Plan and the Liquidation Trust Agreement.

(iv)    *Voting:* Class 6 is Impaired and GCUK as holder of the Subordinated GCUK Intercompany Loan Claim is entitled to vote.

(g)    *Class 7 – Interests*

(i)    *Claims in Class*: Class 7 consists of all Interests.

(ii)    *Treatment*: ~~Pursuant to the Global Settlement, as~~ As the sole Holder of the Interests, ~~(a)~~ GCMC ~~shall~~(a) will not retain ~~its~~any Interests under the

22

Plan,  and on the Effective Date the Interests will be cancelled, and (b) will receive the Liquidation Trust GCMC Interests.

(iii)    *Voting*:  Class 7 is ~~Unimpaired and not~~ Impaired and GCMC as holder of the Interests is entitled to vote.

3.4    ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and the Debtor or the Liquidation Trustee, as applicable, may agree in writing; *provided*, *however*, that under no circumstances may the Debtor agree to provide any other Distribution or treatment to any Holder of an Allowed Claim that would adversely impair the Distribution or treatment provided to any other Holder of an Allowed Claim.

3.5    ***Special Provision Regarding Unimpaired Claims***.  Except as otherwise provided in the Plan, nothing shall affect the Debtor's or the Liquidation Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6    ***Subordinated Claims.***  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code or otherwise.

3.7    ***Controversy Concerning Impairment.***  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THE PLAN**

4.1    ***Acceptance by Class Entitled to Vote***.  Classes 5 (General Unsecured Claims~~) and~~), 6 (Subordinated GCUK Intercompany Loan Claim), and 7 (Interests) are the Classes of Claims and Interests of the Debtor that are entitled to vote to accept or reject the Plan.  Pursuant to the Global Settlement, GCUK (as a Holder of Class 5 and Class 6 Claims) has agreed to vote to accept the Plan.

4.2    ***Presumed Acceptance of the Plan***.  Classes 1 (Secured Tax Claims), 2 (Other Secured Claims), 3 (Other Priority Claims), and 4 (Priority Wage Claims), ~~and 7 (Interests)~~ are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3     ***Elimination of Classes***.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     ***Plan Objective***.  The Plan's objective is to transfer all Retained Assets, including the Retained Causes of Action, to the Liquidation Trust.  The Liquidation Trustee will administer the Liquidation Trust and liquidate such Retained Assets, including the resolution of any Retained Causes of Action.  The Plan divides Holders' legal rights and interests into unclassified Claims and Classes of Claims and Interests based on the Holders' legal rights and interests, and the Liquidation Trustee will distribute the proceeds of the Retained Actions to Holders of Allowed Claims in satisfaction of the Debtors' obligations under the Plan.  Holders of the Interests will retain their Interests and receive any remaining value on account of such Retained Assets following payment in full of Allowed General Unsecured Claims and the Subordinated GCUK Intercompany Loan Claim.

5.2     5.2     ***Allowance and Classification of GCUK Claims; GCUK / GCMC Claim Contribution.***

(a)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the Subordinated GCUK Intercompany Loan Claim is allowed in the amount of $52,840,506.80 and classified in Class 6 of the Plan.

(b)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, the GCUK L/C Claim has been allowed in the amount of $526,000 and classified in Class 5 of the Plan.

(c)     Pursuant to the Global Settlement and subject to the occurrence of the Effective Date, GCUK shall be deemed to have made the GCUK / GCMC Claim Contribution.

5.3     ***Global Settlement.***  The provisions of the Plan relating to the Global Settlement constitute a good faith compromise and settlement among the Debtor, the Creditors' Committee, GCUK, GCMC, and the UK Administrators.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

Upon the occurrence of the Effective Date, in exchange for (a) GCUK's voluntary and consensual subordination of its claims arising under the GCUK Intercompany Loan which have been asserted as General Unsecured Claims in the

amount of approximately $53 million, (b) the GCUK / GCMC Claim Contribution, (c) GCUK's, GCMC's and the UK Administrators' continued support for the Debtor prior to and during the Chapter 11 Case (including pursuant to the GCUK Services Agreement) and the Plan, and (d) other valuable consideration provided under the Global Settlement, GCUK, GCMC, and the UK Administrators shall receive, as applicable, (1) allowance of the GCUK L/C Claim as a Class 5 Allowed General Unsecured Claim in the amount set forth herein, (2) the Liquidation Trust GCUK Interests and Liquidation Trust GCMC Interests on account of the Subordinated GCUK Intercompany Loan Claim and Interests, respectively, (3) the Debtor's transfer and assignment of the GCUK Intellectual Property pursuant to the GCUK Intellectual Property Assignment Agreement, and (4) the Releases and Third Party Releases as provided in Section 10.2 of the Plan.

Absent the Global Settlement, the Subordinated GCUK Intercompany Loan Claims may substantially reduce the recoveries to Holders of Allowed General Unsecured Claims, and the Debtor and the Creditors' Committee would likely seek nonconsensual recharacterization or subordination of such claims arising under the GCUK Intercompany Loan, litigation in relation to which will be costly and has an uncertain outcome.

5.4     *Intellectual Property Assignment.*  On the Effective Date, pursuant to the Global Settlement, the Debtor and GCUK shall enter into the GCUK Intellectual Property Assignment Agreement pursuant to which the Debtor will assign, transfer, and convey the GCUK Intellectual Property to GCUK.  The Confirmation Order shall authorize and direct the Debtor to enter into the GCUK Intellectual Property Assignment Agreement in accordance with the terms and conditions thereof.  Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement, any and all of the Debtor's legal, equitable, and beneficial right, title, and interest in, to, and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK free and clear of any liens, claims, interests, and encumbrances.  The Debtor and the Liquidation Trust shall not be required to pay any Cure Amount in connection with their entry into the GCUK Intellectual Property Assignment Agreement or assignment of the GCUK Intellectual Property as provided therein.

5.5     *Vesting of Assets.*  Unless otherwise provided under the Plan, on the Effective Date, the Retained Assets will vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other interests.  On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidation Trust will be deemed final and irrevocable and Distributions may be made from the Liquidation Trust.  In connection with the foregoing:  (a) on the Effective Date, the appointment of the Liquidation Trustee shall become effective and the Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement and the Plan and may use, acquire and dispose of the Liquidation Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Confirmation Order will provide the Liquidation Trustee with express authority to convey, transfer, and assign any and all of the Liquidation Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action;  and (c) as of the Effective Date, the Liquidation Trust Assets will be

free and clear of all liens, claims and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  To the extent the GCUK / GCMC Parties have possession, custody, or control of the Debtor's documents, they shall preserve all of such documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing), in accordance with the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) in the context of their pending English law administration proceedings, until the earlier of (i) their making them available to or transfer to the Debtor and/or the Liquidation Trustee, as applicable, (ii) the termination of the GCUK / GCMC Administration Proceedings or conversion of same to liquidation proceedings, and (ii) any further order of the Court.  All rights of the GCUK / GCMC Parties are reserved with respect to the characterization or ownership of any and all books and records in possession or control of the GCUK / GCMC Parties.

5.6    ***Continued Corporate Existence of the Debtor;*** **Termination of Current Officers, Directors, Employees and Professionals.** The Debtor shall continue to exist after the Effective Date as a separate corporate Entity from the Liquidation Trust with all the powers of a corporation pursuant to applicable non-bankruptcy law and its certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan, the Plan Supplement, or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval, as permitted by applicable law.  On the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and Creditors' Committee shall be deemed to terminate.

5.7    ***Liquidation Trust.***

(a)    *Liquidation Trustee.*  On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.

(i)  The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Liquidation Trust Agreement.  The Liquidation Trustee shall not be required to file a fee application to receive compensation.

(ii)  The Liquidation Trustee will be a disinterested Person designated by the Creditors' Committee, in consultation with GCUK and the UK Administrators, and identified in the Liquidation Trustee Disclosure.

(iii) The Liquidation Trustee shall carry out the duties as set forth in this Section 5.6~~7~~ and in the Liquidation Trust Agreement.  Pursuant to Bankruptcy Code §1123(b)(3), the Liquidation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights,

26

claims, and Retained Causes of Action in accordance with the best interests of and for the benefit of the Beneficiaries.

(iv) The Liquidation Trustee shall have the power and authority to perform the acts described in the Liquidation Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation as set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any other provision of the Plan, the Liquidation Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidation Trustee, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee or provided herein and to conserve and protect the Liquidation Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan. The Liquidation Trustee shall have the power and authority without further approval by the Court to liquidate the Liquidation Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Claims of the Estate, including but not limited to Retained Causes of Action, and otherwise take any action as shall be necessary to administer the cases and effect the closing of the cases, including, without limitation, as follows: (a) the power to invest funds, in accordance with section 345 of the Bankruptcy Code, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trust in accordance with the Plan and Liquidation Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidation Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve and compromise and settle any Retained Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval but in accordance with the Liquidation Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth in the Plan and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash. Subject to the other terms and provisions of the Plan, the Liquidation Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Retained Causes of Action based upon its powers as a bankruptcy appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.

27

(b)    *Effectiveness of the Liquidation Trust*.  On the Effective Date, if not previously signed, the Debtor and the Liquidation Trustee will execute the Liquidation Trust Agreement, and the Liquidation Trust Agreement will become effective without any further action by any party.  The Liquidation Trust is organized and established as a trust for the benefit of the Beneficiaries, and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Liquidation Trust will be an affiliate of the Debtor (within the meaning and solely for purposes of sections 1125(e) and 1145(a) of the Bankruptcy Code.  The Liquidation Trustee may elect for the Liquidation Trust to be treated as a partnership or a corporation or other entity for tax purposes only, if the Liquidation Trustee may determine, in his or her reasonable discretion, that such election would be in the best interests of the Beneficiaries.  The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

(c)    *Beneficiaries*.  In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidation Trust will be the Holders of all Allowed Claims against the Debtors as provided under the Plan.  The Holders of Allowed Claims will receive an allocation of the respective Liquidation Trust Interests as provided for in the Plan and the Liquidation Trust Agreement.  The Holders of Liquidation Trust Interests will receive Distributions from the Liquidation Trust as provided for in the Plan and the Liquidation Trust Agreement.  The Beneficiaries shall be treated as grantors and owners of such Beneficiaries' respective portion of the Liquidation Trust.

(d)    *Implementation of the Liquidation Trust*.  On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidation Trustee shall execute the Liquidation Trust Agreement and take all such actions that are required to transfer the Retained Assets to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee will be authorized to, and shall, implement the Liquidation Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidation Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims, prosecuting or otherwise resolving Retained Causes of Action and causing Distributions from the Liquidation Trust to be made to the Beneficiaries.

(e)    *Transfer of the Retained Assets*.  As discussed in Section 5.5, unless otherwise expressly provided under the Plan, on the Effective Date, the Retained Assets will automatically vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges and other interests, with the Liquidation Trust being vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to all Liquidation Trust Assets.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. To the extent required to implement the transfer of the Retained Assets to the Liquidation Trust, as provided for herein, all Entities and Persons shall cooperate with the Debtor and the Estate to assist the Debtor and the Estate to implement the transfers.  Upon completion of the transfer of the Liquidation

Trust Assets to the Liquidation Trust, except as otherwise set forth in the Plan or Confirmation Order, the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets, or the Liquidation Trust. Likewise, upon completion of such transfer and subject to such exceptions as may be set forth in the Plan or Confirmation Order, the Liquidation Trust shall have no rights, title, or interest in or to any property of the Debtor or the Estate other than the Liquidation Trust Assets. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement, which Distributions, for the avoidance of doubt, shall be made by the Liquidation Trustee or the Disbursing Agent, as applicable, and shall not be made by or on behalf of the Debtor.

(f)     *Purpose of the Liquidation Trust.* The Liquidation Trust shall be established for the purpose of liquidating the Liquidation Trust Assets, prosecuting any Retained Causes of Action to maximize recoveries for the benefit of the Beneficiaries, and making Distributions in accordance with the Plan to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes consistent with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as grantors and owners of the trust.

(g)     *Representative of the Estate.* The Liquidation Trustee will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and vested with the authority and power (subject to the Liquidation Trust Agreement) of the representative of the Estate. After the Effective Date, the Liquidation Trust shall have the authority and right on behalf of the Debtor without the need for Bankruptcy Court approval (unless otherwise expressly indicated herein), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)     oversee and control the Liquidation Trust;

(ii)     collect and liquidate the Liquidation Trust Assets under the jurisdiction of the Bankruptcy Court;

(iii)     assert, prosecute, pursue, compromise, and settle in accordance with the Liquidation Trustee's reasonable business judgment, all Claims and Causes of Action, and enforce all legal or equitable remedies and defenses belonging to the Debtor or the Estate, including, without limitation, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; *provided that* (x) prior to payment in full of Allowed General Unsecured Claims, the Liquidation Trustee shall consult with the UK Administrators with respect to the negotiation of any proposed financing for Retained Causes of Action and any proposed settlements and compromises of Retained Causes of Action, and (y) following payment in full of Allowed General Unsecured Claims any proposed settlements and compromises of Retained Causes of Action shall be subject to the UK Administrators' review and consent (which shall not be unreasonably withheld, conditioned, or delayed);

(iv)    object to Claims in accordance with the Liquidation Trustee's reasonable business judgment;

(v)    make Distributions to Holders of Allowed Claims;

(vi)    exercise reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandonment of the Retained Assets and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(vii)    prosecute all Retained Causes of Action on behalf of the Debtor for the benefit of the Holders of Allowed Claims, elect not to pursue any Retained Causes of Action;

(viii)   retain, compensate and reimburse professionals to assist in performing the Liquidation Trustee's duties under the Plan;

(ix)    maintain the books and records and accounts of the Debtor and the Liquidation Trust and destroy such records consistent with applicable law and the Liquidation Trustee's duties;

(x)    invest the Cash of the Liquidation Trust and any income earned thereon;

(xi)    hold any reserves created on the Effective Date and create any reserves for payments required to be made pursuant to the Plan, including on account of the Plan Reserve Obligations, the Finacity Sale Order Indemnity Obligations, and the Finacity Sale Order Reserve Obligations;

(xii)   incur and pay reasonable and necessary expenses in connection with the performance of the Liquidation Trustee's duties under the Plan, including the reasonable fees and expenses of professionals retained by the Liquidation Trustee;

(xiii)  administer the Liquidation Trust's and the Debtor's tax obligations, including (1) filing tax returns on behalf of the Liquidation Trust and the Debtor, as applicable, and paying tax obligations, (2) requesting, if necessary, an expedited determination of any unpaid tax liability of the Liquidation Trust or the Debtor under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtor ending after the Petition Date through the liquidation of the Liquidation Trust as determined under applicable tax laws, and (3) representing the interest and account of the Liquidation Trust and the Debtor before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit;

(xiv)   prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidation Trust that are required hereunder, by any Governmental Unit, or under applicable law;

(xv)    arrange for the liquidation and/or dissolution of the Debtor in accordance with applicable law and to indemnify, out of the assets of the

Liquidation Trust, any liquidator appointed under the applicable law, or to seek any appropriate relief in furtherance of the Plan in any appropriate jurisdiction;

(xvi)   take such action as required to administer, wind-down and close the Chapter 11 Case; and

(xvii)   perform other duties and functions that are consistent with the implementation of the Plan as deemed by the Liquidation Trustee to implement the Plan and are not otherwise inconsistent with the Liquidation Trust Agreement.

(h)    *Liquidation Trust Funding.*  On the Effective Date, the Liquidation Trust shall be funded with the Liquidation Trust Funding Amount established from the Liquidation Trust Assets.  Subject to the provisions of the Liquidation Trust Agreement, the Liquidation Trust Funding Amount shall be used to pay the expenses of the Liquidation Trust, including, without limitation, costs and expenses of counsel.  The Liquidation Trust is authorized, without further order or approval of the Bankruptcy Court, to obtain third party financing from one or more parties as determined by the Liquidation Trustee as necessary to pursue the Liquidation Trust's objectives; *provided that* the Liquidation Trustee shall consult with the UK Administrators with respect to any proposed financing for Retained Causes of Action.

(i)    *Funding of Post-Effective Date Expenses.*  All expenses related to implementation of the Plan incurred from and after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case will be expenses of the Liquidation Trust, and the Liquidation Trustee will disburse funds from the Liquidation Trust Assets for purposes of paying the Post-Effective Date Expenses without the need for any further approval or order of the Bankruptcy Court.

(j)    *Indemnification.*  From and after the Effective Date, the Liquidation Trust shall indemnify and hold harmless the Liquidation Trustee, solely in his or her capacity as the Liquidation Trustee for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidation Trustee's gross negligence, willful misconduct, or criminal conduct.

(k)    *Dissolution.*  The Liquidation Trustee and the Liquidation Trust shall be discharged and/or dissolved, as the case may be, at such time as (i) all of the Liquidation Trust Assets have been distributed pursuant to the Plan and Liquidation Trust Agreement, (ii) the Liquidation Trustee determines, in its sole discretion, that the administration of any remaining Liquidation Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made.  If at any time the Liquidation Trustee determines, in reliance upon such professionals as the Liquidation Trust may retain, that the expense of administering the Liquidation Trust so as to make a final Distribution to Holders of Allowed Claims is likely to exceed the value of the assets remaining in the Liquidation Trust, the Liquidation Trust may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to dissolve the Liquidation Trust, (y) donate any balance to a charitable organization (A) described in section

501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Liquidation Trust, and any insider of the Liquidation Trust, and (z) dissolve such Liquidation Trust

(l)    *Provisions Relating to Federal Income Tax Compliance.*  The Liquidation Trust generally is intended to be treated for United States federal income tax purposes, (i) in part as a grantor trust that is a liquidating trust within the meaning of Treasury Regulations § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and (ii) in part as one or more disputed ownership funds within the meaning of Treasury Regulations § 1.468B-9(c)(ii).  For United States federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of the Liquidation Trust Assets from the Debtor to the Holders of Liquidation Trust Interests, followed by the Holders of Liquidation Trust Interests' transfer of the Liquidation Trust Assets to the Liquidation Trust.  The Holders of Liquidation Trust Interests will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets. The Holders of Liquidation Trust Interests shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be allocated by the Liquidation Trust to the Holders of Liquidation Trust Interests using any reasonable allocation method.

(m)    *Miscellaneous Tax Matters.* The Liquidation Trustee will be required by the Liquidation Trust Agreement to file income tax returns for the Liquidation Trust as a grantor trust of the Holders of the Liquidation Trust Interests (and file separate returns for the disputed ownership fund(s) pursuant to Treasury Regulations § 1.468B-9(c)(ii) and pay all taxes owed on any net income or gain of the disputed ownership fund(s), on a current basis from Liquidation Trust Assets).  In addition, the Liquidation Trust Agreement will require consistent valuation by the Liquidation Trust and the Holders of Liquidation Trust Interests, for all federal income tax and reporting purposes, of any property held by the Liquidation Trust.  The Liquidation Trust Agreement also will limit the investment powers of the Liquidation Trust in accordance with IRS Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the Holders of Liquidation Trust Interests (as such may have been determined at such time) its net income (net of any payment of or provision for taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets.

(n)    *Certain Securities Laws Matters.*  The Liquidation Trust Interests shall not be "securities" under federal and state securities laws or, to the extent they are "securities," their issuance shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or other law requiring registration prior to the offering, issuance, Distribution or sale of securities, in accordance with and pursuant to section 1145 of the Bankruptcy Code.  The Plan prohibits, and the Liquidation Trust Agreement will prohibit, the transfer or assignment of the Liquidation Trust Interests except by will, intestate succession or by operation of law.  In addition, to the extent the Liquidation Trust Interests are "securities" the

Liquidation Trust Interests will not be required to be registered under Section 12(g) of the Exchange Act.

      5.8    **_Effectuating Documents; Further Transactions_**.  Any officer or director of the Debtor and the Liquidation Trustee is authorized to execute, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The secretary of the Debtor and the Liquidation Trustee shall be authorized to certify or attest to any of the foregoing actions.

      5.9    **_Exemption from Certain Transfer Taxes and Recording Fees._**  To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

      5.10    **_Further Authorization._**  The Debtor and the Liquidation Trust, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

      5.11    **_Preservation of Insurance._**  Nothing contained in this Plan shall diminish or impair the enforceability of any insurance policy, including the D&O Policy that may cover claims against the Debtor or any additional insureds, including the directors and officers thereof.

      5.12    **_Dissolution of the Debtor._**  Upon the Effective Date, the Debtor shall be deemed dissolved without any further notice, action or order.  Except as otherwise provided herein, on the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and Professionals of the Debtor and the Creditors' Committee shall be deemed to terminate.

## ARTICLE VI

## DISTRIBUTIONS

      6.1    **_Disbursing Agent_**.  The Liquidation Trustee shall serve as the Disbursing Agent under the Plan or select another Entity to serve as the Disbursing Agent.  Any Entity other than the Liquidation Trustee that acts as the Disbursing Agent for the Liquidation Trust will be an agent of the Liquidation Trustee and not a separate taxable Entity with respect to, among other things, the assets held, income received or

disbursements or Distributions made for the Liquidation Trustee. The Disbursing Agent shall make all Distributions required under the Plan. The Disbursing Agent, if not the Liquidation Trustee, shall be authorized, after consultation with the Liquidation Trustee, to implement such procedures as it deems necessary to make Distributions pursuant to the Plan so as to efficiently and economically assure prompt and proportionate Distributions. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

6.2 ***No Postpetition Interest on Claims.*** Postpetition interest shall not accrue or be paid on any General Unsecured Claims or the Subordinated GCUK Intercompany Loan Claim and no Holder of such Claims shall be entitled to interest accruing on or after the Petition Date, except to the extent permitted under the Plan or the Bankruptcy Code.

6.3 ***Date of Distributions***. Unless otherwise provided in the Plan, any Distributions and deliveries to be made under the Plan shall be made on or before the Effective Date or as soon thereafter as is practicable, in the Liquidation Trustee's sole discretion or as otherwise required by the Liquidation Trust Agreement.

6.4 ***Distribution Record Date***. Unless a notice of transfer of Claim or Interest has been filed with the Bankruptcy Court prior to the Distribution Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent will rely on the Claims Register when determining Holders on the Record Date.

6.5 ***Books and Records***. The Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's books and records. The Debtor, the Liquidation Trustee, and Disbursing Agent (if other than the Liquidation Trustee) shall cooperate in good faith to comply with the reporting and withholding requirements outlined in Section 6.15.

6.6 ***Delivery of Distributions***. Subject to Sections 6.7, 6.10, 6.11, 6.13, and 6.15 of the Plan, the Disbursing Agent will issue or cause to be issued the applicable consideration under the Plan and, subject to Bankruptcy Rule 9010, will make all Distributions as and when required by the Plan to Holders of Allowed Claims to the address of the Holder of such claim on the books and records of the Debtor or its agents or the address in any written notice of address change delivered to the Debtor, the Liquidation Trustee or the Disbursing Agent, as applicable, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001. In the event that any Distribution is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to locate the Holder of an Allowed Claim whose Distribution is returned as undeliverable. If such reasonable efforts are not successful, no further Distributions to such Holder of such Claim shall be made unless and until the Disbursing Agent is notified of then-current address of such Holder of the Claim, at

34

which time all missed Distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind. Amounts in respect of undeliverable Distributions shall be returned to the Liquidation Trust until such Distributions are claimed or become subject to Section 6.7.

6.7    ***Reversion***.  Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Liquidation Trust, free and clear of any restrictions thereon.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandonment, or unclaimed property laws to the contrary.

6.8    ~~***Satisfaction of Claims***.  Unless otherwise provided herein, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.~~

6.9~~6.8~~    ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtor or the Liquidation Trust, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Liquidation Trust, as applicable.

6.10~~6.9~~   ***De Minimis Cash Distributions***. The Disbursing Agent shall not have any obligation to make a Distribution that is less than $50.00 in Cash.

6.11~~6.10~~ ***No Distribution in Excess of Amount of Allowed Claim***. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

6.12~~6.11~~ ***Allocation of Distributions Between Principal and Interest***. Except as otherwise provided in the Plan and subject to Section 3.3 of the Plan, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

6.13~~6.12~~ ***Setoffs and Recoupments***. The Liquidation Trust or each Debtor or its designee as instructed by such Liquidation Trust or Debtor, as applicable, may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Liquidation Trust or the Debtor or its successors, as applicable, may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Liquidation Trust or Debtor, as applicable, and Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that

neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Liquidation Trust or the Debtor or its successor, as applicable, of any claims, rights, or Causes of Action that the Liquidation Trust or the Debtor or its successor or assign, as applicable, may possess against such Holder.

6.14~~6.13~~ ***Rights and Powers of Disbursing Agent***.

(a)    *Powers of the Disbursing Agent*.  The Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable Distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (a) as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date) or pursuant to the Plan or (2) as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(b)    *Expenses Incurred on or After the Effective Date*.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Liquidation Trustee or the Debtor, as applicable, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidation Trustee or the Debtor, as applicable.

6.15~~6.14~~ ***Withholding and Reporting Requirements***.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or the Liquidation Trust, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements.  In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Under the backup withholding rules of the Internal Revenue Service, a Holder may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which includes corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax

obligations, on account of such Distribution. The Debtor or the Liquidation Trust, as applicable, have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

The Debtor or the Liquidation Trust, as applicable, may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtor or the Liquidation Trust, as applicable, make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor or the Liquidation Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor or the Liquidation Trust, as applicable, or its respective property.

### 6.16~~6.15~~ *Claims Paid or Payable by Third Parties*.

(a)    *Claims Paid by Third Parties.* The Debtor or the Liquidation Trust, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or the Liquidation Trust. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or the Liquidation Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtor or the Liquidation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

(b)    *Claims Payable by Third Parties*. Except as otherwise provided in the Plan, (i) no Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Applicability of Insurance Proceeds*. Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance,

nor shall anything contained herein (i) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (ii) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1      ***Allowance of Claims***.  After the Effective Date, the Debtor and the Liquidation Trust shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

7.2      ***Objections to Claims***.

(a)      *Authority*. The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  The Debtor or the Liquidation Trust, as applicable, shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that he or she may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim after the Effective Date outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Trustee or the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)      *Amendments to Claims.*  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Trustee or Debtor, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)      *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, the Debtor, and after the Effective Date, the Liquidation Trust, may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Debtor or the Liquidation Trust, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The

Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Liquidation Trust, as applicable.

7.3    **Estimation of Claims**.  For purposes of calculating and making Distributions and establishing reserves under the Plan, the Debtor or the Liquidation Trust, as applicable, may at any time after the Effective Date in good faith request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidation Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidation Trust as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4    **No Distributions Pending Allowance**.  If an objection to a Claim is filed as set forth in Section 7.2 hereof, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5    **Resolution of Claims**.  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor or the Liquidation Trust, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  The Debtor or the Liquidation Trust or their respective successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor and the Liquidation Trust, as applicable.

7.6    **Disallowed Claims**.  All Claims held by persons or entities against whom or which the Debtor or the Liquidation Trust have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Section 7.6 shall continue to be Disallowed for all purposes until such Claim has been settled or

resolved by Final Order and any sums due to the Debtor or the Liquidation Trust from such party have been paid.

7.7    ***No Recourse***.  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed claims in the respective Class, no Claim Holder shall have recourse against the Distribution Agent, the Debtor, the Liquidation Trustee, the Liquidation Trust, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property.  **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIM.**

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1    ***Rejection of Executory Contracts and Unexpired Leases***.  Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order);  (b) is the subject of a motion to assume filed on or before the Effective Date;  (c) is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases;  (d) has expired or terminated pursuant to its own terms;  or (e) is described in Section 8.2 of the Plan.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Debtor or the assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

8.2    ***Indemnification***.  Except as otherwise specifically limited in the Plan, any obligations or rights of the Debtor to defend, indemnify, reimburse, or limit the liability of the Debtor's present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers, and consultants (the "***Covered Persons***") pursuant to the Debtor's certificate of incorporation ~~(or Amended Certificate of Incorporation), bylaws (or Amended Bylaws),~~, bylaws, indemnification agreements, policy of providing employee

indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

8.3    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed no later than the Rejection Damages Claims Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases under the Plan shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims;  provided, however, that if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral to secure obligations under such rejected Executory Contract or Unexpired Lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in such collateral, with the deficiency, if any, treated as a General Unsecured Claim.

8.4    ***Reservation of Rights.***    Nothing contained in the Plan shall constitute an admission by the Debtor that any particular contract or lease is in fact and Executory Contract or Unexpired Lease, as applicable, or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor and the Liquidation Trust, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

9.1    ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)      the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)      the Plan Supplement, including the Liquidation Trust Agreement, shall have been filed with the Bankruptcy Court;

(c)      the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount, the Plan Reserve Account shall have been funded with the Plan Reserve Amount, and the Liquidation Trust shall have been funded with the Liquidation Trust Funding Amount.

(d)      the Debtor shall have made all Distributions required to be made on or before the Effective Date;

(e)      satisfaction of the GCUK / GCMC Release Requirements;

(f)      all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(g)      all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.2      ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 may be waived only if waived in writing by the Debtor, the Creditors' Committee, and the UK Administrators to the extent required by the Global Settlement without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  For the avoidance of doubt and notwithstanding anything to contrary herein, waiver of the condition precedent set forth in Section 9.1(e) shall only be effective if such condition precedent is waived in writing by the UK Administrators.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1      ***Binding Effect***.  Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Liquidation Trust, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of the Plan, and their respective successors and assigns.

10.2    ***Releases and Related Matters***.

(a)    *Release by the Debtor*.  **Without limiting any other applicable provisions of, or releases contained in, the Plan or the Finacity Sale Order and Finacity Sale Documents, pursuant to section 1123(b) of the Bankruptcy Code and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, the Debtor, its Estate, the Liquidation Trustee, and any other Person or Entity seeking to exercise the rights of the Estate, to the extent permitted by applicable law, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Person or Entity seeking to exercise the rights the Estate has, had, or may have against any GCUK / GCMC Parties based on or relating to the Debtor, the Estate, the Chapter 11 case, any prepetition financing arrangements, the Debtor's financial statements, the debtor-in-possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, or any other transactions in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligation arising under the Plan or the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud). For the avoidance of doubt, nothing in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair, release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action against the GCUK / GCMC Parties arising from facts that occur after the Effective Date based on a breach or an alleged breach of the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) arising from or related to the ownership, custodianship, preservation, and/or retention of the Debtor's documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing).   Nothing in the Plan releases actions against the GCUK / GCMC Parties under sections 542 and 543 of the Bankruptcy Code.**

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the foregoing release by the Debtor pursuant to Bankruptcy Rule 9019,

and further, shall constitute the Bankruptcy Court's finding that the release is: (1) essential to the Confirmation of the Plan; (2) an exercise of the Debtor's business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (5) in the best interests of the Debtor and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the foregoing releases by the Debtor.

(b)      *Releases by the Releasing Parties.*  **To the greatest extent permissible and without limiting any other applicable provisions of, or releases contained in, the Plan, and subject to the satisfaction of the GCUK / GCMC Release Requirements, as of the Effective Date, in consideration for the obligations of the Debtor under the Plan, and the consideration and other waivers, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with the Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all Causes of Action, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any GCUK / GCMC Party based on or relating to the Debtor, the Estate, the Chapter 11 Case, any prepetition financing arrangements, the Debtor's financial statements, the debtor in possession financing, the sale or transfer of any and all assets of the Debtor (including the Finacity Sale), the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of the Plan, the Plan Supplement and Exhibits, the Disclosure Statement, any amendments thereof, or supplements thereto, or any other transaction in connection with this Chapter 11 Case or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under the Plan and the obligations assumed hereunder (including any claim based on theories of alleged negligence, misrepresentation, non-disclosure, or breach of fiduciary duty).  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (i) any post-Effective Date obligations of any Person or Entity under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (ii) the liability of any GCUK / GCMC Party that would otherwise result from any act or omission of such GCUK / GCMC Party to the extent that such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct (including fraud).  Notwithstanding anything to the contrary herein, nothing set forth in the Plan, Plan Supplement, Confirmation Order, or any related documents shall impair, release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of Action by Sage Realty Corporation and its affiliates ("*Sage*") against GCUK and their affiliates (other than the Debtor), including but not limited to those claims and Causes of Action arising from or related to: (i) that certain indenture of lease, dated July 20, 2016 (as amended from time to time) by and between Sage and the Debtor for a certain parcel of non-residential real property located at 2 Gansevoort Street, New York, New York 10014 (the "*Lease*"); (ii) guarantees or any other obligations by GCUK with respect to the Lease, including**

**that certain guaranty (as amended from time to time) dated July 14, 2016 executed by GCUK (the "*Guarantee*").**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration and substantial contributions provided by the GCUK / GCMC Parties; (3) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (4) in the best interests of the Debtor and its Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; (7) consensual as to the Holders of Claims that opt in to the Third Party Release on their Ballots; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

(c)     *Waiver of Statutory Limitation on Releases*.  Without limiting any other applicable provisions of, or releases contained in, the Plan, each Releasing Party in each of the releases contained in the Plan (including under this Section) expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, it has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the GCUK / GCMC Parties.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen

10.3     ***Injunction***.  Except as otherwise provided in the Plan or the Confirmation Order, and subject to the satisfaction of the GCUK / GCMC Release Requirements, from and after the Effective Date, to the extent a party's Cause of Action has been released pursuant to Section 10.2 or otherwise treated pursuant to the Plan or the Confirmation Order (including, without limitation, being subject to exculpation pursuant to Section 10.4), such Releasing Party shall be permanently enjoined from pursuing such Cause of Action against the applicable GCUK / GCMC Party for any reason at any time on or after the Effective Date, including (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Line, Claim, or encumbrance of any kind; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, our obligation due to the Debtor, the Liquidating Trustee, the Liquidation Trust, or the GCUK / GCMC Parties unless such Releasing Party has filed a motion requesting the right to perform such setoff on or before the Effective Date, notwithstanding an indication of a claim or interest or otherwise that such Releasing Party asserts, has, or intends to preserve any right of setoff pursuant to

applicable law or otherwise; and (v) commencing or continuing any act, in any manner, or in any place to assert any Cause of Action, or send any notice or invoice in respect of any Cause of Action that has been released under the Plan that does not otherwise comply with or is inconsistent with the provisions of the Plan, or from making or threatening to make or assert any claim in any liquidation of the Debtor under any applicable law; *provided, however*, that nothing contained in the Plan shall preclude a Person or Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of the Plan.

All assets of the Debtor shall be applied to the payment of Claims and expenses only in the manner and in the order set forth in the Plan, and Holder of Claims and Interests shall be enjoined from interfering with the Distributions and payments contemplated by the Plan.  All of Debtor's and the Liquidation Trust's rights are reserved as to whether as a matter of non-bankruptcy law the payment, in full, of a Claim or expense obligation constitutes a "satisfaction" of that Claim or expense obligation.

10.4    ***Exculpation and Limitation of Liability***. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE LIQUIDATION TRUST AGREEMENT, THE PLAN SUPPLEMENT, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any of the Exculpated Parties' post-Effective Date obligations under the Plan, the Finacity Sale Order, or the Finacity Sale Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

10.5    ***No Discharge*.** Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests other than the Releasing Parties.

10.6    ***Term of Bankruptcy Injunction or Stays***.  Except as provided otherwise in the Plan, from and after the entry of an order or other deemed action under the Plan closing the Chapter 11 Case, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

10.7    ***Post-Confirmation Date Retention of Professionals***.  Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and Debtor or the Liquidation Trust, as applicable, will employ and pay professionals in the ordinary course of business.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    ***Retention of Jurisdiction***.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(e)    modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection

with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date the payment of fees and expenses by the Debtor or the Liquidation Trust, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)     adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)     resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)     hear and determine Retained Actions by or on behalf of the Debtor or the Liquidation Trust;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(m)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)     enter an order closing the Chapter 11 Case.

11.2     ***No Limitation on Enforcement by SEC or the U.S. Attorney's Office on Non-Debtors.***     Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the

SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

**ARTICLE XII**

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

12.1     ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Liquidation Trust until the earlier of the conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  The Liquidation Trustee shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2     ***Dissolution of the Creditors' Committee.***  On the Effective Date, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee, and professionals retained by the Creditors' Committee in accordance with section 1103 of the Bankruptcy Code shall be deemed released from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Case, except with respect to: (i) prosecuting applications for professionals' compensation and reimbursement of expenses incurred as a member of the Creditors' Committee; (ii) asserting, disputing, and participating in the resolution of Professional Fee Claims; and (iii) defending any appeal of the Confirmation Order or any request for reconsideration thereof, in either case prior to entry of a Final Order or Final Orders approving all Professional final fee applications in accordance with Section 2.4.  Upon the conclusion of (i) through (iii) above, the Creditors' Committee shall be immediately dissolved and released.

12.3     ***Amendment or Modification of the Plan***.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, Debtor reserves the right to alter, amend, or modify the Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan, subject to the express written consent of the Creditors' Committee and the UK Administrators to the extent such consent is required pursuant to the terms hereof or the Global Settlement.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.4     ***Substantial Consummation***.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

49

12.5     ***Severability of Plan Provisions***.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court, at the request of the Debtor and with the consent of the Committee and the UK Administrators (not to be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6     ***Successors and Assigns***.  The Plan shall be binding upon and inure to the benefit of the Debtor and successors and assigns, including the Liquidation Trust, as applicable.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7     ***Revocation, Withdrawal, or Non-Consummation***.  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8     ***Governing Law***.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9     ***Time***.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the

terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Holders of Claims and Interests, the GCUK / GCMC Parties, the Exculpated Parties, and each of their respective successors and assigns, including the Liquidation Trust. The Debtor will request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

12.11    ***Entire Agreement***. On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.12    ***Notice***. All notices, requests, and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> TOGUT, SEGAL & SEGAL LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn: Albert Togut, Esq., Kyle J. Ortiz, Esq., Bryan M. Kotliar, Esq., and Amanda C. Glaubach, Esq.
> E-mail: altogut@teamtogut.com, kortiz@teamtogut.com, bkotliar@teamtogut.com, and aglaubach@teamtogut.com
>
> Attorneys for the Debtor
>
> -and-
>
> ARENT FOX LLP
> 1301 Avenue of the Americas, Floor 42
> New York, NY 10019
> Attn: George P. Angelich, Esq.
> E-mail: george.angelich@arentfox.com
>
>
> - and-
>
> Arent Fox LLP
> The Prudential Tower
> 800 Boylston Street, Floor 32
> Boston, MA 02199
> Attn: Justin A. Kesselman, Esq.
> E-mail: justin.kesselman@arentfox.com

*[Remainder of page left blank intentionally; signature page follows]*

### ARTICLE XIII

### ARTICLE XIII

### CONFIRMATION REQUEST

The Debtor requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.


Dated: ~~September 24~~October 26, 2021
New York, New York

GREENSILL CAPITAL, INC.


By:   */s/ Matthew Tocks*
      Name:  Matthew Tocks
      Title:    Chief Restructuring Officer

## Exhibit D

**Amended Proposed Confirmation Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.: 21-10561 (MEW) |
| Debtor.[1] | **Related Docket No. ___** |

### AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DISCLOSURE STATEMENT AND CONFIRMING SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR GREENSILL CAPITAL INC.

**WHEREAS,** Greensill Capital Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), as "proponent of the plan" within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"), filed the solicitation versions of the *Chapter 11 Plan of Liquidation for Greensill Capital Inc.*, dated September 24, 2021 [Docket No. 275, Ex. B] (the "Solicitation Plan") and the *Disclosure Statement for the Chapter 11 Plan of Liquidation of Greensill Capital Inc.*, dated September 24, 2021 [Docket No. 275, Ex. A] (the "Disclosure Statement");

**WHEREAS,** on September 21, 2021, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Second Amended Order (I) Approving Certain Key Dates Relating to Confirmation of the Debtor's Plan, Including Scheduling a Combined Hearing to Consider Approval of the Debtor's Disclosure Statement and Plan; (II) Approving the Form and Manner of Combined Hearing Notice; (III) Approving the Debtor's Disclosure Statement on a Provisional Basis; and (IV) Approving (A) Procedures for Solicitation; (B) Forms of Ballots and Notices; (C) Procedures for Tabulation of Votes; and*

---

[1]    The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

*(D) Procedures for Objections* [Docket No. 271] (the "<u>Scheduling Order</u>"), which among other things, (a) approved the Disclosure Statement on a provisional basis, subject to final approval at the Combined Hearing (as defined below), (b) scheduled a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan (as defined below) (the "<u>Combined Hearing</u>") for October 26, 2021 at 10:00 a.m. (prevailing Eastern Time), (b) approved certain procedures for solicitation and tabulation of votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>"); and (c) approved the Ballots (as defined in the Scheduling Order) and the other materials distributed by the Debtor in connection with Confirmation of the Plan (collectively, the "<u>Solicitation Materials</u>");

**WHEREAS**, as set forth in the *Amended Affidavit of Service*, dated October 7, 2021 [Docket No. 285] (the "<u>Solicitation Declaration</u>"), the Debtor caused copies of the Solicitation Materials to be served in accordance with the Scheduling Order;

**WHEREAS**, on October 5, 2021, the Debtor filed the *Plan Supplement in Connection with the Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 283] (collectively with the Second Plan Supplement (as defined below), and as thereafter amended, modified, or supplemented from time to time, the "<u>Plan Supplement</u>");

**WHEREAS**, on October 22, 2021, the Debtor filed the *Second Plan Supplement in Connection with the Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 301] (the "<u>Second Plan Supplement</u>"), which included the Liquidation Trustee Disclosure (as defined in the Plan);

**WHEREAS**, on October 18, 2021, the Debtor filed the *Declaration of John C. Gallego of Togut, Segal & Segal LLP Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation of Greensill Capital Inc.* [Docket No. 295]

(the "Voting Declaration") attesting and certifying the method and results of the

tabulation for Claims in Classes 5 and 6 entitled to vote to accept or reject the Plan;

**WHEREAS,** on October 22, 2021, the Debtor filed the *Supplemental*

*Declaration of John C. Gallego of Togut, Segal & Segal LLP Regarding the Solicitation of Votes*

*and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation of Greensill Capital Inc.*

[Docket No. 299] (the "Supplemental Voting Declaration") attesting and certifying the

methods and results of the tabulation for Interests in Class 7 entitled to vote to accept or

reject the Plan;

**WHEREAS**, on October 22, 2021, the Debtor filed a notice [Docket

No. 300] (the "Amended Plan Notice") disclosing certain modifications to the

Solicitation Plan (the "Modifications") set forth in the *First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.*, a copy of which was attached to the Amended Plan

Notice and is reattached hereto as **Exhibit A** (as may be amended, modified, and/or

supplemented from time to time, the "Plan");[2]

**WHEREAS**, on October 22, 2021, the Debtor filed the *Debtor's*

*Memorandum of Law in Support of Confirmation of First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.* [Docket No. 302] (the "Confirmation Brief") and the

*Declaration of Jill Frizzley in Support of Confirmation of the First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.*, a copy of which was attached to the Confirmation

Brief as Exhibit A (the "Frizzley Declaration" and, together with the Solicitation

Declaration, the Voting Declaration, and the Supplemental Voting Declaration, the

"Declarations"); and

**WHEREAS**, the Combined Hearing was held on October 26, 2021.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the Plan.

**NOW, THEREFORE**, based on the Confirmation Brief, the Declarations, the record of the Combined Hearing, including the arguments of counsel made at the Combined Hearing, and the entire record of the Chapter 11 Case;  and after due deliberation thereon and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**DEEMED MODIFICATIONS TO THE PROPOSED PLAN OF LIQUIDATION**

1.      Because the Debtor is liquidating, the Debtor will not be entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any other Holders of Claims or Interests.  The Debtor has made an effort to remove both the discharge provisions from the Plan and any reference to language concerning the "full and final satisfaction, settlement, and release" of Claims that may have the effect of a discharge.  Accordingly, out of an abundance of caution and for the sake of clarity:

  a.  Any remaining provisions of the Plan that state that the proposed payments are made in full and final satisfaction, settlement, and release and / or discharge of the underlying obligations shall not be applicable, and such underlying obligations shall be released only to the extent they have been released pursuant to Article X of the Plan and this Confirmation Order.

  b.  Nothing in the modifications described in subparagraph (a) above is intended to foreclose an argument that as a matter of non-bankruptcy law the payment in full, of a claim or expense obligation constitutes a "satisfaction" of that claim or expense obligation.

  c.  In addition, and for the avoidance of doubt, notwithstanding the technical issue as to whether certain claims are fully settled, released, satisfied or discharged, all assets of the Debtor shall be applied to the payment of claims and expenses only in the manner and in the order set forth in the Plan, and creditors shall be enjoined from interfering with the distributions and payments contemplated by the Plan.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[3]

**A.      Exclusive Jurisdiction;  Venue;  Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**

2.      The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.      Adequacy of Disclosure Statement.**

3.      The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy rules, laws, and regulations, including the Securities Act, and (b) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein.

**C.      Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

4.      The Plan, the Disclosure Statement, the Combined Hearing Notice, the Scheduling Order, and the Solicitation Materials (including the Ballots) were transmitted and served in good faith and in compliance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), and any other applicable rules, laws, and regulations.  Such transmittal and service were due, timely, adequate, and

---

[3]   The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

sufficient based upon the circumstances of the Chapter 11 Case, all parties in interest had the opportunity to appear and be heard at the Combined Hearing, and no other or further notice is or shall be required.  All persons who solicited votes on the Plan solicited such votes in good faith, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions in Section 10.4 of the Plan.

5.    The solicitation of votes on the Plan and the Solicitation Materials complied with the Solicitation Procedures in the Scheduling Order, were appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Scheduling Order.

**D.    Burden of Proof.**

6.    The Debtor, as the proponent of the Plan, has satisfied its burden of proving by a preponderance of the evidence that the Plan satisfies the requirements of section 1129(a) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code is not applicable to the Plan because all Impaired Classes entitled to vote have voted to accept the Plan.

**E.    Plan Supplement.**

7.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the

Bankruptcy Code, the Bankruptcy Rules, and the Scheduling Order, and no other or further notice is or shall be required.

**F.    Modifications to the Plan.**

8.    Disclosure of the Modifications pursuant to the Amended Plan Notice as set forth in the Confirmation Brief, and on the record at the Combined Hearing constitutes due and sufficient notice of any and all Modifications. The Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Modifications do not materially and adversely affect or change the treatment of any Claims or Interests without the consent of the affected holders of such Claims or Interests, and no parties in interest or party that previously voted on the Plan raised an objection or concern with respect to any Modifications.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

**G.    Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1).**

9.    The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code. In addition, the Plan is dated and identifies the Debtor as the plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

**H.    Proper Classification – 11 U.S.C. §§ 1122, 1123(a)(1).**

10.    As required by section 1123(a)(1) of the Bankruptcy Code, in addition to the Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which need not be classified, the Plan designates the seven Classes of Claims and Interests. As required by section 1122(a) of

the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate between Holders of Claims and Interests. Furthermore, pursuant to the Global Settlement (as defined below), GCUK has consented to separate classification of the GCUK Intercompany Loan Claim in Class 6 of the Plan. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**I.      Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2).**

11.      Article III of the Plan specifies that Classes 1, 2, 3, and 4 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

**J.      Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).**

12.      Article III of the Plan designates Classes 5, 6, and 7 as Impaired and specifies the treatment of Claims in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.[4]

**K.      No Discrimination – 11 U.S.C. § 1123(a)(4).**

13.      The Plan provides for the same treatment of each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

---

[4]      While Claims in Class 7 were not originally impaired, after the solicitation period, the Debtor amended the Plan to cancel the Interests, impairing the Interests. Although the sole Holder of the Interests, namely GCMC has agreed to its treatment under the Plan and no other classes of creditors are affected by this change, the Debtor submitted a Ballot to the Holder of the Interests, and the Holder of the Interests voted in favor of the Plan.

**L.      Implementation of Plan – 11 U.S.C. § 1123(a)(5).**

14.      The Plan and the various documents and agreements referred to therein or set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

**M.      Selection of Officers, Directors, or Trustees – 11 U.S.C. § 1123(a)(7).**

15.      On the Effective Date, the Debtor will not have directors and officers.  The Debtor has disclosed the identity of the Liquidation Trustee pursuant to the Liquidation Trustee Disclosure, which is consistent with the interest of the creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

**N.      Impairment / Unimpairment of Classes of Claims and Equity Interests – 11 U.S.C. § 1123(b)(1).**

16.      As contemplated by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves Unimpaired each class of Claims and Interests.

**O.      Assumption and Rejection of Executory Contracts and Unexpired Leases – 11 U.S.C. § 1123(b)(2).**

17.      Article VIII of the Plan governing the assumption and rejection of Executory Contracts and Unexpired Leases satisfies the requirements of section 365(b) of the Bankruptcy Code and, accordingly, the requirements of section 1123(b)(2) of the Bankruptcy Code.

**P.      Settlement of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3).**

18.      <u>Jurisdiction</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the release and exculpations set forth in Article X of the Plan.

19.    <u>Integrated Compromise and Settlement</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Plan incorporates an integrated compromise and settlement of certain Claims, issues, and disputes designed to achieve a beneficial and efficient resolution of this Chapter 11 Case for all parties in interest, including the provisions of the Addendum to Sale Order, entered into among the Debtor, the Creditors' Committee, and the GCMC / GCUK Parties, a copy of which was attached as Exhibit C to the Finacity Sale Order (the "<u>Global Settlement</u>").  Based upon the record of the Combined Hearing, the Court finds that (a) each of the GCUK / GCMC Parties has satisfied and shall continue to comply with the GCUK / GCMC Release Requirements and (b) the compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan are based on sound business judgment and consistent with the Bankruptcy Code and applicable law.  The Plan and the Global Settlement result from months of hard-fought, good faith, and arm's-length negotiating, and the Global Settlement is above the lowest range of reasonableness, and within the settlement standards established by section 1123(b) of the Bankruptcy Code, Bankruptcy Rule 9019, and prevailing case law.

20.    <u>The Debtor Release</u>.  The release of claims and causes of action by the Debtor described in Section 10.2(a) of the Plan against the GCUK / GCMC Parties (the "<u>Debtor Release</u>") represents a valid exercise of the Debtor's business judgment, is fair and equitable, and constitutes good faith compromises and settlements of the matters covered thereby.

21.    The Debtor Release also appropriately offers protection to parties that participated in the Chapter 11 Case and the Debtor's wind down process. Specifically, the GCUK / GCMC Parties have made significant concessions and contributions to the Debtor and its Chapter 11 Case, including, as applicable, by

agreeing to consensually subordinate and separately classify the GCUK Intercompany

Loan Claim separate from General Unsecured Claims, funding substantially all of the

Debtor's ordinary course payroll and wage obligations for its current employees during

the Chapter 11 Case, entering into a compromise and settlement of an obligation

between GCUK and Finacity that facilitated the Finacity Sale, and waiving rights and

Claims against the Debtor under the Plan.  For the avoidance of doubt, nothing in the

Plan, Plan Supplement, Confirmation Order, or any related documents shall impair,

release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of

Action against the GCUK / GCMC Parties arising from facts that occur after the

Effective Date based on a breach or an alleged breach of the standards and practices

applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators,

only in their capacities as administrators of GCUK and GCMC and not in their personal

capacities) arising from or related to the ownership, custodianship, preservation,

and/or retention of the Debtor's documents (including, but not limited to, written

documents and communications, electronically stored documents, emails, banking and

other financial records, employee files, compensation records, tax documents, and any

and all electronic servers and/or other media containing any of the

foregoing).   Nothing in the Plan releases actions against the GCUK / GCMC Parties

under sections 542 and 543 of the Bankruptcy Code.

22.    The scope of the Debtor Release is appropriately tailored to the

facts and circumstances of the Chapter 11 Case.  In light of, among other things, the

value provided by the GCUK / GCMC Parties to the Debtor and its Estate and the

critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

23.    <u>Consensual Third-Party Release</u>.  The voluntary release by Holders

of Claims entitled to vote on the Plan that opted-in to the releases set forth in Section

10.2(b) of the Plan with respect to the GCUK / GCMC Parties is appropriate because it was voluntary, consensual, and adequately disclosed in and noticed through the Ballots and the other Solicitation Materials, the Disclosure Statement, and the Plan.  The foregoing voluntary release is fair and reasonable, integral to the Plan, and given in exchange for fair, sufficient, and adequate consideration provided by the GCUK / GCMC Parties.

24.    <u>Nonconsensual Third-Party Release</u>.  The release by all other Holders of Claims entitled to vote on the Plan that did not opt in to the releases set forth in Section 10.2(b) of the Plan with respect to the GCUK / GCMC Parties satisfies the standards contained in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) and are (a) in exchange for the good, valuable and substantial consideration provided by the GCUK / GCMC Parties; (b) in the best interests of the Debtor, its Estate, the Liquidation Trust, and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and an opportunity for a hearing; (e) justified by truly unusual circumstances; (f) a bar to any Releasing Party asserting a claim or cause of action released pursuant to Section 10.2(b) against any of the GCUK / GCMC Parties.  The Global Settlement is an essential component and critical to the success of the Plan, and the efficient resolution of the Chapter 11 Case, because among other things, it subordinates the GCUK Intercompany Loan Claim, provides for the GCUK / GCMC Claim Contribution, and maximizes recoveries for Holders of Allowed General Unsecured Claims.

25.    <u>Exculpation</u>.  The exculpation provisions set forth in Section 10.4 of the Plan were proposed in good faith and are essential to the Plan.  The record in the Chapter 11 Case and at the Combined Hearing fully supports the exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated

Parties from inappropriate litigation while excluding actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct (including fraud).

26.    <u>Injunction</u>.  The injunction provisions set forth herein and in Section 10.3 of the Plan are (a) essential to the Plan, (b) necessary to preserve and enforce the provisions and consummate the implementation of the Plan, and (c) are appropriately tailored to achieve those purposes.

27.    <u>Retained Causes of Action</u>.   In accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, Sections 1.120, 5.5, and 5.7 of the Plan appropriately provide for the preservation of Retained Causes of Actions in the Liquidation Trust.  The provisions regarding the Retained Causes Actions in the Plan are appropriate and are in the best interests of the Debtor or the Liquidation Trust, as applicable.

**Q.    Modification of Rights – 11 U.S.C. § 1123(b)(5).**

28.    In accordance and compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of Holders of Claims in Classes 5, 6, and 7.  The Plan also leaves unaffected the rights of Holders of Claims and Interests in Classes 1, 2, 3, and 4.

**R.    Additional Plan Provisions – 11 U.S.C. § 1123(b)(6).**

29.    The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**S.      The Debtor Is Not an Individual – 11 U.S.C. § 1123(c).**

30.     The Debtor is not an individual and, accordingly, section 1123(c) of

the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**T.      Cure of Defaults – 11 U.S.C. § 1123(d).**

31.     As set forth in the Schedule of Assumed Executory Contracts and

Unexpired Leases, the Plan does not provide for the assumption of any Executory

Contracts or Unexpired Leases, and as such, the Debtor does not propose to cure any

defaults by the Debtor.  Thus, section 1123(d) of the Bankruptcy Code is inapplicable in

this Chapter 11 Case.

**U.      The Debtor's Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(2).**

32.     The Debtor has complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

Specifically:

    a.      the Debtor is a proper debtor under section 109 of the Bankruptcy
            Code and is a proper proponent of the Plan under section 1121(a) of
            the Bankruptcy Code;

    b.      the Debtor has complied with applicable provisions of the
            Bankruptcy Code, except as otherwise provided or permitted by
            orders of this Court; and

    c.      the Debtor has complied with the applicable provisions of the
            Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy
            Rules, and the Scheduling Order in transmitting the Solicitation
            Materials and related notices and in soliciting and tabulating votes
            on the Plan.

**V.      Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3).**

33.     The Debtor has proposed the Plan and all other agreements,

documents, and instruments necessary to effectuate the Plan in good faith and not by

any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy

Code.  The Debtor's good faith is evident from the facts and record of this Chapter 11

Case, the Disclosure Statement, and the record of the Combined Hearing, and other

proceedings held in this Chapter 11 Case.  The Plan and other agreements and documents contemplated thereby or set forth in the Plan Supplement are based upon extensive, arms'-length, good faith negotiations between and among the Debtor, the Creditors' Committee, and the GCUK / GCMC Parties.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and effectuating an orderly liquidation of the Debtor.  Further, the Plan's classification, exculpation, release, injunction, and settlement provisions, including, without limitation, Article X of the Plan, have been negotiated in good faith and at arms' length, consistent with sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.

**W.    Payments for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4).**

34.    Any payment made or to be made by the Debtor for services or for costs and expenses incurred prior to the Effective Date in connection with this Chapter 11 Case, or in connection with the Plan and incidental to this Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**X.    Directors, Officers, and Insiders – 11 U.S.C. § 1129(a)(5).**

35.    Upon the Effective Date, the Debtor shall be dissolved, and thus, will not have continuing directors and officers.  The Debtor has disclosed the identity of the Liquidation Trustee pursuant to the Liquidation Trustee Disclosure, which is consistent with the interest of the creditors and with public policy.  Accordingly, the Debtor has complied with section 1129(a)(5) of the Bankruptcy Code.

**Y.        No Rate Changes – 11 U.S.C. § 1129(a)(6).**

36.        The Debtor is not charging rates that are the subject of any regulatory commission jurisdiction.  Thus, section 1129(a)(6) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**Z.        Best Interests of Creditors – 11 U.S.C. § 1129(a)(7).**

37.        Due to, among other things, the Global Settlement embodied in the Plan and the Liquidation Trust Minimum Cash Amount, Holders of General Unsecured Claims would receive substantially less in a chapter 7 liquidation than they stand to receive under the Plan.  For these reasons, and based upon the other evidence related thereto in support of the Plan, each holder of an Impaired Claim that is entitled to vote on the Plan either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.  Such evidence is both persuasive and credible and based upon reasonable and sound assumptions.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

**AA.      Acceptance by Certain Classes – 11 U.S.C. § 1129(a)(8).**

38.        Classes 1, 2, 3, and 4, are Unimpaired under the Plan, and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 5, 6, and 7 are Impaired under the Plan and have voted to accept the Plan in accordance with section 1126(c) and (d) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code is satisfied.

**BB.      Treatment of Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, and Other Priority Claims – 11 U.S.C. § 1129(a)(9).**

39.        The treatment of Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority

16

Claims, pursuant to Sections 2.1, 2.2, 2.4, and 2.5 of the Plan, respectively, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code, as applicable. The treatment of Other Priority Claims pursuant to Section 3.3(c) of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. On the Effective Date, the Debtor will have sufficient Cash to pay Administrative Claims, Priority Tax Claims, and Other Priority Claims, and to fund the Professional Fee Escrow. To the extent that the Debtor does not have sufficient cash on the Effective Date to pay the aforementioned claims, Togut, Segal & Segal and Arent Fox LLP (counsel to the Debtor and the Creditors' Committee, respectively) will defer payment on a portion of their Allowed Professional Fee Claims on a pro rata basis sufficient to ensure the Liquidation Trust Minimum Cash Amount of $250,000 is fully funded.

40.     The Plan provides for the treatment of the Finacity Sale Order Superpriority Claims in accordance with the Finacity Sale Order and the Finacity Settlement Agreement. The Finacity Sale Order Superpriority Claims are contingent obligations for which the Debtor is not required to pay or reserve on the Effective Date and is capped in the amount of the proceeds from any claim or cause of action against former shareholders of Finacity arising from the 2019 Acquisition in accordance with section 2(g) of the Finacity Settlement Agreement. In addition, the parties to the Finacity Settlement Agreement have consented to the treatment of such Claims. Thus, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to the treatment of the Finacity Sale Order Superpriority Claims.

**CC.    Acceptance by Impaired Classes – 11 U.S.C. § 1129(a)(10).**

41.     Class 5 is Impaired and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Classes 6 and 7 are Impaired and entitled to vote and have voted to accept the Plan by the requisite majorities, but are not included for purposes of section 1129(a)(10) because the Claims in Classes 6 and 7 are held by insiders.

**DD.    Feasibility – 11 U.S.C. § 1129(a)(11).**

42.    The Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down of the Debtor's Estate.  Such evidence (a) is persuasive and credible; (b) based on reasonable assumptions;  and (c) has not been controverted by other evidence.

**EE.    Payment of Statutory Fees – 11 U.S.C. § 1129(a)(12).**

43.    Pursuant to Section 12.1 of the Plan, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code, will be paid as required. Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**FF.    Benefit Plans – 11 U.S.C. § 1129(a)(13).**

44.    The Debtor does not have retiree benefit obligations within the meaning of section 1129(a)(13) of the Bankruptcy Code.  Thus, section 1129(a)(13) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**GG.    Non-Applicability of Certain Sections (Sections 1129(a)(14), (15), and (16)).**

45.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to this Chapter 11 Case.  The Debtor does not owe domestic support obligations, is not an individual, and is not a moneyed, business, or commercial corporation or trust.

**HH.    Only One Plan – 11 U.S.C. § 1129(c).**

46.    Because the Plan is the only chapter 11 plan filed in this Chapter 11 Case, the Plan satisfies section 1129(c) of the Bankruptcy Code.

## II.    Principal Purpose of the Plan – 11 U.S.C. § 1129(d).

47.    Because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, the Plan satisfies section 1129(d) of the Bankruptcy Code.

## JJ.    Not a Small Business Case – 11 U.S.C. § 1129(e).

48.    This Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## KK.    Implementation.

49.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

## LL.    Executory Contracts and Unexpired Leases.

50.    The Debtor has exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Section 8.1 of the Plan.  Each rejection of an Executory Contract or Unexpired Lease pursuant to Section 8.1 of the Plan shall be legal, valid, and binding upon the Debtor and its assignee to such Executory Contract or Unexpired Lease, as if such rejection had been effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.

## MM.   Waiver of Stay.

51.    Sufficient cause has been shown to waive any stay to the immediate effectiveness of this Confirmation Order.

**NN.    Satisfaction of Confirmation Requirements.**

52.    The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**OO.    Retention of Jurisdiction.**

53.    The Court may, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.    Disclosure Statement Approved.**

54.    The Disclosure Statement is approved in all respects on a final basis.

**II.    Confirmation.**

55.    The Plan attached hereto as **Exhibit A** and each of its provisions, as modified pursuant to the Modifications, are hereby approved and **CONFIRMED** under section 1129 of the Bankruptcy Code.  Any objections that have not been consensually resolved or withdrawn are overruled on the merits pursuant to this Confirmation Order.

**III.    Modifications.**

56.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are hereby deemed to accept the Plan, as modified.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan (including the Modifications) or the Plan Supplement or any further modifications or amendments with respect thereto in

compliance with the terms of the Plan, this Confirmation Order, and section 1127 of the Bankruptcy Code.

## IV.    Plan Supplement.

57.    The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtor, are authorized and approved.

## V.    Plan Implementation Authorization.

58.    The formation of the Liquidation Trust pursuant to Section 5.7 of the Plan and the Liquidation Trust Agreement is approved.  The Liquidation Trustee shall have authority and right to carry out and implement all provisions of the Plan as the successor in interest of the Debtor, as provided in the Liquidation Trust Agreement and Section 5.7 of the Plan.

59.    The Debtor or the Liquidation Trustee, as applicable, shall be authorized and empowered to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as are necessary to consummate the Plan.  All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan and this Confirmation Order).  The Debtor or the Liquidation Trustee, as applicable, is hereby authorized to make Distributions and other payments in accordance with the Plan and Liquidation Trust Agreement.

VI.    **Vesting of Assets.**

60.    On the Effective Date, pursuant to Section 5.5 of the Plan and

sections 1141(b) and (c) of the Bankruptcy Code, the Retained Assets will vest in the

Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other

interests, except as may be provided pursuant to the Plan or this Confirmation Order.

On and after the Effective Date, the transfer of the Retained Assets from the Estate to

the Liquidation Trust will be deemed final and irrevocable and Distributions may be

made from the Liquidation Trust.  In connection with the foregoing: (a) on the Effective

Date, the appointment of the Liquidation Trustee shall become effective and the

Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the

terms of the Liquidation Trust Agreement and the Plan and may use, acquire and

dispose of the Liquidation Trust Assets free of any restrictions imposed under the

Bankruptcy Code; (b) the Liquidation Trustee has express and sole authority to convey,

transfer, and assign any and all of the Liquidation Trust Assets and to take all actions

necessary to effectuate the same and to prosecute any and all Retained Causes of

Action;  (c) as of the Effective Date, the Liquidation Trust Assets will be free and clear of

all liens, claims and interests of Holders of Claims and Interests, except as may be

otherwise provided in the Plan;  and (d) from and continuing after the Effective Date,

the GCUK / GCMC Parties shall preserve all of such documents (including, but not

limited to, written documents and communications, electronically stored documents,

emails, banking and other financial records, employee files, compensation records, tax

documents, and any and all electronic servers and/or other media containing any of the

foregoing), in accordance with the standards and practices applicable to the GCUK /

GCMC Parties (and with respect to the UK Administrators, only in their capacities as

administrators of GCUK and GCMC and not in their personal capacities) in the context

22

of their pending English law administration proceedings, until the earlier of (i) their making them available to or transfer to the Debtor and/or the Liquidation Trustee, as applicable, (ii) the termination of the GCUK / GCMC Administration Proceedings or conversion of the same to liquidation proceedings, and (iii) any further order of the Court.  All rights of the GCUK / GCMC Parties are reserved with respect to the characterization or ownership of any and all books and records in possession or control of the GCUK / GCMC Parties.

**VII.    Dissolution of the Debtor.**

61.    Upon the Effective Date, the Debtor shall be deemed dissolved without any further notice, action, or order.

**VIII.    Executory Contracts and Unexpired Leases.**

62.    In accordance with Section 8.1 of the Plan, on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases. Any claims arising from the rejection of an Executory Contract or Unexpired Lease must be filed no later than the Rejection Damages Claims Bar Date.

**IX.    GCUK Intellectual Property Assignment Agreement.**

63.    On the Effective Date, the Debtor is authorized and directed to enter into the GCUK Intellectual Property Assignment Agreement and to transfer the GCUK Intellectual Property in accordance with the terms and conditions set forth therein.  Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement and upon the occurrence of the Effective Date, any and all of

the Debtor's legal, equitable, and beneficial right, title, and interest in, to and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK.

64.    The Debtor is authorized to make such non-material changes to the GCUK Intellectual Assignment Agreement as it deems necessary and appropriate prior to entering into the GCUK Intellectual Property Assignment Agreement.

## X.    Certain Securities Law Matters.

65.    The Liquidation Trust Interests shall not be "securities" under federal and state securities laws, or to the extent they are "securities," their issuance shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable United States laws requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code.  To the extent that the Liquidation Trust Interests are "securities," the Liquidation Trust Interests will be not be required to be registered under Section 12(g) of the Exchange Act.

## XI.    Exemption from Certain Transfer Taxes.

66.    To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any of the taxes listed in Section 5.9 of the Plan, and this Confirmation Order hereby directs and is deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment, as more fully set forth therein.

XII.     **Federal Income Tax Treatment of the Liquidation Trust.**

67.     The Federal Income Tax Treatment of the Liquidation Trust pursuant to Section 5.7 of the Plan is approved.

XIII.     **Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**

68.     The releases, injunctions, exculpations, and related provisions set forth in Article X of the Plan and the Global Settlement are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further notice to or order or action on the part of this Court or any other party. The Debtor and the Liquidation Trustee, as applicable, are duly authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Global Settlement and each of the settlements embodied therein.

69.     Upon entry of this Confirmation Order, all Holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or interfering with the Distributions and payments contemplated by the Plan.

70.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**XIV.    Waiver of Stay.**

71.    Notwithstanding any provision of the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, or applicable nonbankruptcy law, this

Confirmation Order is effective immediately and not subject to any stay.

**XV.    Notice of Effective Date.**

72.    As soon as practicable after the occurrence of the Effective Date, the

Debtor, shall serve notice of the entry of this Confirmation Order and the occurrence of

the Effective Date on all creditors and interest holders, and parties in interest on the

Debtor's creditor matrix, by causing notice of the Effective Date in the form annexed

hereto as **Exhibit B** ("Notice of Effective Date") to be delivered to such parties by first-

class mail, postage prepaid.  The Debtor shall also post the Notice of Effective Date on

the Case Website.  The Notice of Effective Date shall include notice of the deadline for

(a) filing Proofs of Claim arising out of rejection of Executory Contracts or Unexpired

Leases upon the Effective Date; and (b) filing Administrative Claims; and (c) filing

Professional Fee Claims.

**XVI.    Retention of Jurisdiction.**

73.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this

Court shall retain exclusive jurisdiction with respect to all matters arising from or

related to the Chapter 11 Case, the Plan, and the implementation of this Confirmation

Order, including, without limitation, those matters set forth in Article XI of the Plan,

including, all Retained Actions by or on behalf of the Debtor or the Liquidation Trust.

**XVII.    Payment of Statutory Fees.**

74.    On the Effective Date, the Debtor shall pay (a) all accrued and

outstanding U.S. Trustee Fees, if any, and (b) fund the Professional Fee Escrow with the

Debtor's good faith estimate of the U.S. Trustee Fees anticipated to be incurred through

and including, the Effective Date.  All U.S. Trustee Fees payable after the Effective Date,

if any, shall be paid by the Liquidation Trust until the earlier of the conversion, dismissal, or closure of the Chapter 11 Case.

**XVIII.    Preservation of Insurance.**

75.    Unless otherwise provided in the Plan or the Confirmation Order, nothing shall impair or diminish the enforceability of any insurance policy, including the D&O Policy that may cover claims against the Debtor or any additional insureds, including the directors and officers thereof.

**XIX.    Payment of Professionals After the Effective Date.**

76.    The Liquidation Trust is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.  On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount minus amounts required to fund the Liquidation Trust Minimum Cash Amount of $250,000.

**XX.    Activities in Anticipation of the Effective Date.**

77.    The Debtor is hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, effectuating the transactions contemplated by the Plan and this Confirmation Order.

**XXI.    Substantial Consummation.**

78.    On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

**XXII.    Severability.**

79.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be amended in accordance with Section 12.5 of the Plan, is (a) valid and enforceable pursuant to its

27

terms; (b) integral to the Plan and may not be deleted or amended other than in accordance with Section 12.5 of the Plan, and (c) non-severable and mutually dependent.

**XXIII.    Immediate Binding Effect.**

80.    Pursuant to section 1141, as applicable, and the other applicable provisions of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan (including all documents and agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtor  the Liquidation Trust, the Releasing Parties, the Exculpated Parties, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and other , party in interest in this Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.  On the Effective Date, all releases (including, without limitation, the releases set forth in Article X of the Plan), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**XXIV.    Conflicts Between Confirmation Order and the Plan.**

81.    To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are

integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

**XXV.    Modifications and Amendments.**

82.    The Plan may be amended, modified, or supplemented by the Debtor in accordance with Section 12.3 of the Plan.

**XXVI.    Final Order.**

83.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

[*Concludes on the Following Page*]

**XXVII.**    **Post-Confirmation Reporting.**

84.    The Liquidation Trust shall file post-confirmation quarterly reports until the Chapter 11 Case is converted,  dismissed, or closed by entry of a final decree.

Dated:  October __, 2021
         New York, New York

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.**

[to be attached separately]

<u>**Exhibit B**</u>

**Notice of Effective Date**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.: 21-10561 (MEW) |
| Debtor.[1] | |

<u>**NOTICE OF EFFECTIVE DATE**</u>

      **PLEASE TAKE NOTICE** that on October [__], 2021, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered an order [Docket No. [__]] (the "<u>Confirmation Order</u>") confirming the *Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. [__]] (as may be modified, supplemented, restated, and further amended from time to time, the "<u>Plan</u>") (attached as Exhibit A to the Confirmation Order).[2]

      **PLEASE TAKE FURTHER NOTICE** that the effective date of the Plan occurred on [_____] [___], 2021 (the "<u>Effective Date</u>").

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Confirmation Order, the settlement, release, injunction, and exculpation provisions in Article X of the Plan are now in full force and effect.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to section [8.3] of the Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court by the Rejection Damages Claim Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

      **PLEASE TAKE FURTHER NOTICE** that except as otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, all requests for payment of Administrative Claims must be filed with the Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation

---

[1]    The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Trustee and the U.S. Trustee no later than [_____] [__], 2021 (the "Administrative Claims Bar Date").  Holders of Administrative Claims that fail to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

         **PLEASE TAKE FURTHER NOTICE** that pursuant to Section 2.4 of the Plan, the deadline to file final requests for payment of Professional Fee Claims is [___] [__], 2021 (i.e., 30 days after the Effective Date).

         **PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtor, the Liquidation Trustee, and any Holder of a Claim against or Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or Entity voted to accept the Plan.

         **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and all other documents filed in the Debtor's Chapter 11 Case are publicly available and may be obtained from (a) the office of the Clerk of the Bankruptcy Court (the "Clerk's Office") during normal business hours;  (b) the Bankruptcy Court's electronic case filing system at www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov);  (c) the Debtor's counsel, Togut, Segal & Segal LLP via email at greensillballots@teamtogut.com;  or (d) at the Chapter 11 Case website at https://cases.stretto.com/greensill/.  **PLEASE NOTE:  Neither the staff of the Clerk's Office nor the Debtor's counsel can give you legal advice.**

Dated:  October [__], 2021
       New York, New York

                          GREENSILL CAPITAL INC.,
                          *Debtor and Debtor in Possession*
                          By its Counsel
                          TOGUT, SEGAL & SEGAL LLP,
                          By:

                          *DRAFT.*_____
                          ALBERT TOGUT
                          KYLE J. ORTIZ
                          BRYAN M. KOTLIAR
                          AMANDA C. GLAUBACH
                          One Penn Plaza, Suite 3335
                          New York, New York 10119
                          (212) 594-5000

**<u>Exhibit E</u>**

**Redline Comparison of the Proposed Confirmation
Order and the Amended Proposed Confirmation Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.: 21-10561 (MEW) |
| Debtor.[1] | **Related Docket No. ___** |

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW,**

**AND ORDER APPROVING
THE DISCLOSURE STATEMENT
AND CONFIRMING FIRSTSECOND AMENDED
CHAPTER 11 PLAN
OF LIQUIDATION FOR GREENSILL CAPITAL INC.**

**WHEREAS,** Greensill Capital Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), as "proponent of the plan" within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"), filed the solicitation versions of the *Chapter 11 Plan of Liquidation for Greensill Capital Inc.,* dated September 24, 2021 [Docket No. 275, Ex. B] (the "Solicitation Plan") and the *Disclosure Statement for the Chapter 11 Plan of Liquidation of Greensill Capital Inc.,* dated September 24, 2021 [Docket No. 275, Ex. A] (the "Disclosure Statement");

**WHEREAS,** on September 21, 2021, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Second Amended Order (I) Approving Certain Key Dates Relating to Confirmation of the Debtor's Plan, Including Scheduling a Combined Hearing to Consider Approval of the Debtor's Disclosure Statement and Plan; (II) Approving the Form and Manner of Combined Hearing Notice; (III) Approving the Debtor's Disclosure Statement on a Provisional Basis; and (IV) Approving (A) Procedures for*

---

[1] The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

*Solicitation; (B) Forms of Ballots and Notices; (C) Procedures for Tabulation of Votes; and (D) Procedures for Objections* [Docket No. 271] (the "<u>Scheduling Order</u>"), which among other things, (a) approved the Disclosure Statement on a provisional basis, subject to final approval at the Combined Hearing (as defined below), (b) scheduled a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan (as defined below) (the "<u>Combined Hearing</u>") for October 26, 2021 at 10:00 a.m. (prevailing Eastern Time), (b) approved certain procedures for solicitation and tabulation of votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>"); and (c) approved the Ballots (as defined in the Scheduling Order) and the other materials distributed by the Debtor in connection with Confirmation of the Plan (collectively, the "<u>Solicitation Materials</u>");

**WHEREAS**, as set forth in the *Amended Affidavit of Service*, dated October 7, 2021 [Docket No. 285] (the "<u>Solicitation Declaration</u>"), the Debtor caused copies of the Solicitation Materials to be served in accordance with the Scheduling Order;

**WHEREAS**, on October 5, 2021, the Debtor filed the *Plan Supplement in Connection with the Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 283] (collectively with the Second Plan Supplement (as defined below), and as thereafter amended, modified, or supplemented from time to time, the "<u>Plan Supplement</u>");

**WHEREAS**, on October 22, 2021, the Debtor filed the *Second Plan Supplement in Connection with the Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. 301] (the "<u>Second Plan Supplement</u>"), which included the Liquidation Trustee Disclosure (as defined in the Plan);

**WHEREAS**, on October 18, 2021, the Debtor filed the *Declaration of John C. Gallego of Togut, Segal & Segal LLP Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation of Greensill Capital Inc.* [Docket No. 295]

(the "Voting Declaration") attesting and certifying the method and results of the

tabulation for Claims in Classes 5 and 6 entitled to vote to accept or reject the Plan;

**WHEREAS,** on October 22, 2021, the Debtor filed the *Supplemental*

*Declaration of John C. Gallego of Togut, Segal & Segal LLP Regarding the Solicitation of Votes*

*and Tabulation of Ballots Cast on the Chapter 11 Plan of Liquidation of Greensill Capital Inc.*

[Docket No. 299] (the "Supplemental Voting Declaration") attesting and certifying the

methods and results of the tabulation for Interests in Class 7 entitled to vote to accept or

reject the Plan;

**WHEREAS**, on October 22, 2021, the Debtor filed a notice [Docket

No. 300] (the "Amended Plan Notice") disclosing certain modifications to the

Solicitation Plan (the "Modifications") set forth in the *First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.*, a copy of which was attached to the Amended Plan

Notice and is reattached hereto as **Exhibit A** (as may be amended, modified, and/or

supplemented from time to time, the "Plan");[2]

**WHEREAS**, on October 22, 2021, the Debtor filed the *Debtor's*

*Memorandum of Law in Support of Confirmation of First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.* [Docket No. 302] (the "Confirmation Brief") and the

*Declaration of Jill Frizzley in Support of Confirmation of the First Amended Chapter 11 Plan of*

*Liquidation for Greensill Capital Inc.*, a copy of which was attached to the Confirmation

Brief as Exhibit A (the "Frizzley Declaration" and, together with the Solicitation

Declaration, the Voting Declaration, and the Supplemental Voting Declaration, the

"Declarations"); and

**WHEREAS**, the Combined Hearing was held on October 26, 2021.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the Plan.

**NOW, THEREFORE**, based on the Confirmation Brief, the Declarations, the record of the Combined Hearing, including the arguments of counsel made at the Combined Hearing, and the entire record of the Chapter 11 Case; and after due deliberation thereon and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**DEEMED MODIFICATIONS TO THE PROPOSED PLAN OF LIQUIDATION**

1.     Because the Debtor is liquidating, the Debtor will not be entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any other Holders of Claims or Interests. The Debtor has made an effort to remove both the discharge provisions from the Plan and any reference to language concerning the "full and final satisfaction, settlement, and release" of Claims that may have the effect of a discharge. Accordingly, out of an abundance of caution and for the sake of clarity:

   a.   Any remaining provisions of the Plan that state that the proposed payments are made in full and final satisfaction, settlement, and release and / or discharge of the underlying obligations shall not be applicable, and such underlying obligations shall be released only to the extent they have been released pursuant to Article X of the Plan and this Confirmation Order.

   b.   Nothing in the modifications described in subparagraph (a) above is intended to foreclose an argument that as a matter of non-bankruptcy law the payment in full, of a claim or expense obligation constitutes a "satisfaction" of that claim or expense obligation.

   c.   In addition, and for the avoidance of doubt, notwithstanding the technical issue as to whether certain claims are fully settled, released, satisfied or discharged, all assets of the Debtor shall be applied to the payment of claims and expenses only in the manner and in the order set forth in the Plan, and creditors shall be enjoined from interfering with the ~~distribution's~~distributions and payments contemplated by the Plan.

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[3]

**A.**    **Exclusive Jurisdiction;  Venue;  Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**

2.    The Court has jurisdiction over the Chapter 11 Case pursuant to

28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and

the Court has exclusive jurisdiction to determine whether the Plan complies with the

applicable provisions of the Bankruptcy Code and should be confirmed.

**B.**    **Adequacy of Disclosure Statement.**

3.    The Disclosure Statement (a) contains sufficient information of a

kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy

rules, laws, and regulations, including the Securities Act, and (b) contains "adequate

information" (as such term is defined in section 1125(a) of the Bankruptcy Code and

used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan,

and the transactions contemplated therein.

**C.**    **Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation
Notices.**

4.    The Plan, the Disclosure Statement, the Combined Hearing Notice,

the Scheduling Order, and the Solicitation Materials (including the Ballots) were

transmitted and served in good faith and in compliance with the Scheduling Order, the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern

District of New York (the "<u>Local Bankruptcy Rules</u>"), and any other applicable rules,

laws, and regulations.  Such transmittal and service were due, timely, adequate, and

---

[3]    The findings and conclusions set forth herein, together with the findings of fact and conclusions of
law set forth in the record of the Combined Hearing constitute the Court's findings of fact and
conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the
"<u>Bankruptcy Rules</u>"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.
To the extent any of the following conclusions of law constitute findings of fact, they are adopted as
such.

sufficient based upon the circumstances of the Chapter 11 Case, all parties in interest had the opportunity to appear and be heard at the Combined Hearing, and no other or further notice is or shall be required.  All persons who solicited votes on the Plan solicited such votes in good faith, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions in Section 10.4 of the Plan.

5.    The solicitation of votes on the Plan and the Solicitation Materials complied with the Solicitation Procedures in the Scheduling Order, were appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Scheduling Order.

**D.    Burden of Proof.**

6.    The Debtor, as the proponent of the Plan, has satisfied its burden of proving by a preponderance of the evidence that the Plan satisfies the requirements of section 1129(a) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code is not applicable to the Plan because all Impaired Classes entitled to vote have voted to accept the Plan.

**E.    Plan Supplement.**

7.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the

6

Bankruptcy Code, the Bankruptcy Rules, and the Scheduling Order, and no other or further notice is or shall be required.

**F.      Modifications to the Plan.**

8.      Disclosure of the Modifications pursuant to the Amended Plan Notice as set forth in the Confirmation Brief, and on the record at the Combined Hearing constitutes due and sufficient notice of any and all Modifications.  The Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Modifications do not materially and adversely affect or change the treatment of any Claims or Interests without the consent of the affected holders of such Claims or Interests, and no parties in interest or party that previously voted on the Plan raised an objection or concern with respect to any Modifications.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

**G.      Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1).**

9.      The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Debtor as the plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

**H.      Proper Classification – 11 U.S.C. §§ 1122, 1123(a)(1).**

10.      As required by section 1123(a)(1) of the Bankruptcy Code, in addition to the Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which need not be classified, the Plan designates the seven Classes of Claims and Interests.  As required by section 1122(a) of

the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate between Holders of Claims and Interests. Furthermore, pursuant to the Global Settlement (as defined below), GCUK has consented to separate classification of the GCUK Intercompany Loan Claim in Class 6 of the Plan. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**I.    Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2).**

11.    Article III of the Plan specifies that Classes 1, 2, 3, and 4 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

**J.    Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).**

12.    Article III of the Plan designates Classes 5, 6, and 7 as Impaired and specifies the treatment of Claims in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.[4]

**K.    No Discrimination – 11 U.S.C. § 1123(a)(4).**

13.    The Plan provides for the same treatment of each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

---

[4]    While Claims in Class 7 were not originally impaired, after the solicitation period, the Debtor amended the Plan to cancel the Interests, impairing the Interests. Although the sole Holder of the Interests, namely GCMC has agreed to its treatment under the Plan and no other classes of creditors are affected by this change, the Debtor submitted a Ballot to the Holder of the Interests, and the Holder of the Interests voted in favor of the Plan.

**L.      Implementation of Plan – 11 U.S.C. § 1123(a)(5).**

14.      The Plan and the various documents and agreements referred to

therein or set forth in the Plan Supplement provide adequate and proper means for the

Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

**M.      Selection of Officers, Directors, or Trustees – 11 U.S.C. § 1123(a)(7).**

15.      On the Effective Date, the Debtor will not have directors and

officers.  The Debtor has disclosed the identity of the Liquidation Trustee pursuant to

the Liquidation Trustee Disclosure, which is consistent with the interest of the creditors

and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

**N.      Impairment / Unimpairment of Classes of Claims and Equity Interests – 11
U.S.C. § 1123(b)(1).**

16.      As contemplated by section 1123(b)(1) of the Bankruptcy Code,

Article III of the Plan impairs or leaves Unimpaired each class of Claims and Interests.

**O.      Assumption and Rejection of Executory Contracts and Unexpired Leases – 11
U.S.C. § 1123(b)(2).**

17.      Article VIII of the Plan governing the assumption and rejection of

Executory Contracts and Unexpired Leases satisfies the requirements of section 365(b)

of the Bankruptcy Code and, accordingly, the requirements of section 1123(b)(2) of the

Bankruptcy Code.

**P.      Settlement of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3).**

18.      <u>Jurisdiction</u>.  The Court has jurisdiction under sections 1334(a) and

(b) of title 28 of the United States Code to approve the compromises, settlements,

releases, exculpations, and injunctions set forth in Article X of the Plan.  Sections 105(a)

and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval

of the release and exculpations set forth in Article X of the Plan.

19.    <u>Integrated Compromise and Settlement</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Plan incorporates an integrated compromise and settlement of certain Claims, issues, and disputes designed to achieve a beneficial and efficient resolution of this Chapter 11 Case for all parties in interest, including the provisions of the Addendum to Sale Order, entered into among the Debtor, the Creditors' Committee, and the GCMC / GCUK Parties, a copy of which was attached as Exhibit C to the Finacity Sale Order (the "<u>Global Settlement</u>").  Based upon the record of the Combined Hearing, the Court finds that (a) each of the GCUK / GCMC Parties has satisfied <u>and shall continue to comply with</u> the GCUK / GCMC Release Requirements and (b) the compromises, settlements, releases, exculpations, and injunctions set forth in Article X of the Plan are based on sound business judgment and consistent with the Bankruptcy Code and applicable law.  The Plan and the Global Settlement result from months of hard-fought, good faith, and arm's-length negotiating, and the Global Settlement is above the lowest range of reasonableness, and within the settlement standards established by section 1123(b) of the Bankruptcy Code, Bankruptcy Rule 9019, and prevailing case law.

20.    <u>The Debtor Release</u>.  The release of claims and causes of action by the Debtor described in Section 10.2(a) of the Plan against the GCUK / GCMC Parties (the "<u>Debtor Release</u>") represents a valid exercise of the Debtor's business judgment, is fair and equitable, and constitutes good faith compromises and settlements of the matters covered thereby.

21.    The Debtor Release also appropriately offers protection to parties that participated in the Chapter 11 Case and the Debtor's wind down process. Specifically, the GCUK / GCMC Parties have made significant concessions and contributions to the Debtor and its Chapter 11 Case, including, as applicable, by

agreeing to consensually subordinate and separately classify the GCUK Intercompany

Loan Claim separate from General Unsecured Claims, funding substantially all of the

Debtor's ordinary course payroll and wage obligations for its current employees during

the Chapter 11 Case, entering into a compromise and settlement of an obligation

between GCUK and Finacity that facilitated the Finacity Sale, and waiving rights and

Claims against the Debtor under the Plan.  For the avoidance of doubt, nothing in the

Plan, Plan Supplement, Confirmation Order, or any related documents shall impair,

release, modify, discharge, limit, waive, exculpate, or enjoin any claims or Causes of

Action against the GCUK / GCMC Parties arising from facts that occur after the

Effective Date based on a breach or an alleged breach of the standards and practices

applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators,

only in their capacities as administrators of GCUK and GCMC and not in their personal

capacities) arising from or related to the ownership, custodianship, preservation,

and/or retention of the Debtor's documents (including, but not limited to, written

documents and communications, electronically stored documents, emails, banking and

other financial records, employee files, compensation records, tax documents, and any

and all electronic servers and/or other media containing any of the

foregoing).   Nothing in the Plan releases actions against the GCUK / GCMC Parties

under sections 542 and 543 of the Bankruptcy Code.

22.    The scope of the Debtor Release is appropriately tailored to the

facts and circumstances of the Chapter 11 Case.  In light of, among other things, the

value provided by the GCUK / GCMC Parties to the Debtor and its Estate and the

critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

23.    Consensual Third-Party Release.  The voluntary release by Holders

of Claims entitled to vote on the Plan that opted-in to the releases set forth in Section

10.2(b) of the Plan with respect to the GCUK / GCMC Parties is appropriate because it was voluntary, consensual, and adequately disclosed in and noticed through the Ballots and the other Solicitation Materials, the Disclosure Statement, and the Plan. The foregoing voluntary release is fair and reasonable, integral to the Plan, and given in exchange for fair, sufficient, and adequate consideration provided by the GCUK / GCMC Parties.

24.    Nonconsensual Third-Party Release. The release by all other Holders of Claims entitled to vote on the Plan that did not opt in to the releases set forth in Section 10.2(b) of the Plan with respect to the GCUK / GCMC Parties satisfies the standards contained in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) and are (a) in exchange for the good, valuable and substantial consideration provided by the GCUK / GCMC Parties; (b) in the best interests of the Debtor, its Estate, the Liquidation Trust, and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and an opportunity for a hearing; (e) justified by truly unusual circumstances; (f) a bar to any Releasing Party asserting a claim or cause of action released pursuant to Section 10.2(b) against any of the GCUK / GCMC Parties. The Global Settlement is an essential component and critical to the success of the Plan, and the efficient resolution of the Chapter 11 Case, because among other things, it subordinates the GCUK Intercompany Loan Claim, provides for the GCUK / GCMC Claim Contribution, and maximizes recoveries for Holders of Allowed General Unsecured Claims.

25.    Exculpation. The exculpation provisions set forth in Section 10.4 of the Plan were proposed in good faith and are essential to the Plan. The record in the Chapter 11 Case and at the Combined Hearing fully supports the exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated

Parties from inappropriate litigation while excluding actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct (including fraud).

26.    <u>Injunction</u>.  The injunction provisions set forth herein and in Section 10.3 of the Plan are (a) essential to the Plan, (b) necessary to preserve and enforce the provisions and consummate the implementation of the Plan, and (c) are appropriately tailored to achieve those purposes.

27.    <u>Retained Causes of Action</u>.   In accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, Sections 1.120, 5.5, and 5.7 of the Plan appropriately provide for the preservation of Retained Causes of Actions in the Liquidation Trust.  The provisions regarding the Retained Causes Actions in the Plan are appropriate and are in the best interests of the Debtor or the Liquidation Trust, as applicable.

**Q.    Modification of Rights – 11 U.S.C. § 1123(b)(5).**

28.    In accordance and compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of Holders of Claims in Classes 5, 6, and 7.  The Plan also leaves unaffected the rights of Holders of Claims and Interests in Classes 1, 2, 3, and 4.

**R.    Additional Plan Provisions – 11 U.S.C. § 1123(b)(6).**

29.    The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**S.      The Debtor Is Not an Individual – 11 U.S.C. § 1123(c).**

30.      The Debtor is not an individual and, accordingly, section 1123(c) of

the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**T.      Cure of Defaults – 11 U.S.C. § 1123(d).**

31.      As set forth in the Schedule of Assumed Executory Contracts and

Unexpired Leases, the Plan does not provide for the assumption of any Executory

Contracts or Unexpired Leases, and as such, the Debtor does not propose to cure any

defaults by the Debtor.  Thus, section 1123(d) of the Bankruptcy Code is inapplicable in

this Chapter 11 Case.

**U.      The Debtor's Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(2).**

32.      The Debtor has complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

Specifically:

a.      the Debtor is a proper debtor under section 109 of the Bankruptcy
Code and is a proper proponent of the Plan under section 1121(a) of
the Bankruptcy Code;

b.      the Debtor has complied with applicable provisions of the
Bankruptcy Code, except as otherwise provided or permitted by
orders of this Court; and

c.      the Debtor has complied with the applicable provisions of the
Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy
Rules, and the Scheduling Order in transmitting the Solicitation
Materials and related notices and in soliciting and tabulating votes
on the Plan.

**V.      Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3).**

33.      The Debtor has proposed the Plan and all other agreements,

documents, and instruments necessary to effectuate the Plan in good faith and not by

any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy

Code.  The Debtor's good faith is evident from the facts and record of this Chapter 11

Case, the Disclosure Statement, and the record of the Combined Hearing, and other

proceedings held in this Chapter 11 Case. The Plan and other agreements and documents contemplated thereby or set forth in the Plan Supplement are based upon extensive, arms'-length, good faith negotiations between and among the Debtor, the Creditors' Committee, and the GCUK / GCMC Parties. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and effectuating an orderly liquidation of the Debtor. Further, the Plan's classification, exculpation, release, injunction, and settlement provisions, including, without limitation, Article X of the Plan, have been negotiated in good faith and at arms' length, consistent with sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.

**W.      Payments for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4).**

34.      Any payment made or to be made by the Debtor for services or for costs and expenses incurred prior to the Effective Date in connection with this Chapter 11 Case, or in connection with the Plan and incidental to this Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**X.      Directors, Officers, and Insiders – 11 U.S.C. § 1129(a)(5).**

35.      Upon the Effective Date, the Debtor shall be dissolved, and thus, will not have continuing directors and officers. The Debtor has disclosed the identity of the Liquidation Trustee pursuant to the Liquidation Trustee Disclosure, which is consistent with the interest of the creditors and with public policy. Accordingly, the Debtor has complied with section 1129(a)(5) of the Bankruptcy Code.

**Y.      No Rate Changes – 11 U.S.C. § 1129(a)(6).**

36.      The Debtor is not charging rates that are the subject of any regulatory commission jurisdiction.  Thus, section 1129(a)(6) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**Z.      Best Interests of Creditors – 11 U.S.C. § 1129(a)(7).**

37.      Due to, among other things, the Global Settlement embodied in the Plan and the Liquidation Trust Minimum Cash Amount, Holders of General Unsecured Claims would receive substantially less in a chapter 7 liquidation than they stand to receive under the Plan.  For these reasons, and based upon the other evidence related thereto in support of the Plan, each holder of an Impaired Claim that is entitled to vote on the Plan either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.  Such evidence is both persuasive and credible and based upon reasonable and sound assumptions.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

**AA.      Acceptance by Certain Classes – 11 U.S.C. § 1129(a)(8).**

38.      Classes 1, 2, 3, and 4, are Unimpaired under the Plan, and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 5, 6, and 7 are Impaired under the Plan and have voted to accept the Plan in accordance with section 1126(c) and (d) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code is satisfied.

**BB.      Treatment of Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, and Other Priority Claims – 11 U.S.C. § 1129(a)(9).**

39.      The treatment of Finacity Sale Order Superpriority Claims, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority

16

Claims, pursuant to Sections 2.1, 2.2, 2.4, and 2.5 of the Plan, respectively, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code, as applicable.  The treatment of Other Priority Claims pursuant to Section 3.3(c) of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  On the Effective Date, the Debtor will have sufficient Cash to pay Administrative Claims, Priority Tax Claims, and Other Priority Claims, and to fund the Professional Fee Escrow.  To the extent that the Debtor does not have sufficient cash on the Effective Date to pay the aforementioned claims, Togut, Segal & Segal and Arent Fox LLP (counsel to the Debtor and the Creditors' Committee, respectively) will defer payment on a portion of their Allowed Professional Fee Claims on a pro rata basis sufficient to ensure the Liquidation Trust Minimum Cash Amount of $250,000 is fully funded.

40.    The Plan provides for the treatment of the Finacity Sale Order Superpriority Claims in accordance with the Finacity Sale Order and the Finacity Settlement Agreement.  The Finacity Sale Order Superpriority Claims are contingent obligations for which the Debtor is not required to pay or reserve on the Effective Date and is capped in the amount of the proceeds from any claim or cause of action against former shareholders of Finacity arising from the 2019 Acquisition in accordance with section 2(g) of the Finacity Settlement Agreement.  In addition, the parties to the Finacity Settlement Agreement have consented to the treatment of such Claims.  Thus, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to the treatment of the Finacity Sale Order Superpriority Claims.

**CC.    Acceptance by Impaired Classes – 11 U.S.C. § 1129(a)(10).**

41.    Class 5 is Impaired and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Classes 6 and 7 are Impaired and entitled to vote and have voted to accept the Plan by the requisite majorities, but are not included for purposes of section 1129(a)(10) because the Claims in Classes 6 and 7 are held by insiders.

**DD.    Feasibility – 11 U.S.C. § 1129(a)(11).**

42.    The Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down of the Debtor's Estate.  Such evidence (a) is persuasive and credible; (b) based on reasonable assumptions;  and (c) has not been controverted by other evidence.

**EE.    Payment of Statutory Fees – 11 U.S.C. § 1129(a)(12).**

43.    Pursuant to Section 12.1 of the Plan, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code, will be paid as required. Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**FF.    Benefit Plans – 11 U.S.C. § 1129(a)(13).**

44.    The Debtor does not have retiree benefit obligations within the meaning of section 1129(a)(13) of the Bankruptcy Code.  Thus, section 1129(a)(13) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**GG.    Non-Applicability of Certain Sections (Sections 1129(a)(14), (15), and (16)).**

45.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to this Chapter 11 Case.  The Debtor does not owe domestic support obligations, is not an individual, and is not a moneyed, business, or commercial corporation or trust.

**HH.    Only One Plan – 11 U.S.C. § 1129(c).**

46.    Because the Plan is the only chapter 11 plan filed in this Chapter 11 Case, the Plan satisfies section 1129(c) of the Bankruptcy Code.

**II.    Principal Purpose of the Plan – 11 U.S.C. § 1129(d).**

47.    Because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, the Plan satisfies section 1129(d) of the Bankruptcy Code.

**JJ.    Not a Small Business Case – 11 U.S.C. § 1129(e).**

48.    This Chapter 11 Case is not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**KK.    Implementation.**

49.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**LL.    Executory Contracts and Unexpired Leases.**

50.    The Debtor has exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Section 8.1 of the Plan.  Each rejection of an Executory Contract or Unexpired Lease pursuant to Section 8.1 of the Plan shall be legal, valid, and binding upon the Debtor and its assignee to such Executory Contract or Unexpired Lease, as if such rejection had been effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.

**MM.    Waiver of Stay.**

51.    Sufficient cause has been shown to waive any stay to the immediate effectiveness of this Confirmation Order.

**NN.    Satisfaction of Confirmation Requirements.**

52.    The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**OO.    Retention of Jurisdiction.**

53.    The Court may, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.    Disclosure Statement Approved.**

54.    The Disclosure Statement is approved in all respects on a final basis.

**II.    Confirmation.**

55.    The Plan attached hereto as **Exhibit A** and each of its provisions, as modified pursuant to the Modifications, are hereby approved and **CONFIRMED** under section 1129 of the Bankruptcy Code.  Any objections that have not been consensually resolved or withdrawn are overruled on the merits pursuant to this Confirmation Order.

**III.    Modifications.**

56.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are hereby deemed to accept the Plan, as modified.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan (including the Modifications) or the Plan Supplement or any further modifications or amendments with respect thereto in

compliance with the terms of the Plan, this Confirmation Order, and section 1127 of the Bankruptcy Code.

## IV.    Plan Supplement.

57.    The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtor, are authorized and approved.

## V.    Plan Implementation Authorization.

58.    The formation of the Liquidation Trust pursuant to Section 5.7 of the Plan and the Liquidation Trust Agreement is approved.  The Liquidation Trustee shall have authority and right to carry out and implement all provisions of the Plan as the successor in interest of the Debtor, as provided in the Liquidation Trust Agreement and Section 5.7 of the Plan.

59.    The Debtor or the Liquidation Trustee, as applicable, shall be authorized and empowered to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as are necessary to consummate the Plan.  All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan and this Confirmation Order).  The Debtor or the Liquidation Trustee, as applicable, is hereby authorized to make Distributions and other payments in accordance with the Plan and Liquidation Trust Agreement.

VI.    **Vesting of Assets.**

60.    On the Effective Date, pursuant to Section 5.5 of the Plan and sections 1141(b) and (c) of the Bankruptcy Code, the Retained Assets will vest in the Liquidation Trust free and clear of all claims, liens, encumbrances, charges, and other interests, except as may be provided pursuant to the Plan or this Confirmation Order. On and after the Effective Date, the transfer of the Retained Assets from the Estate to the Liquidation Trust will be deemed final and irrevocable and Distributions may be made from the Liquidation Trust.  In connection with the foregoing: (a) on the Effective Date, the appointment of the Liquidation Trustee shall become effective and the Liquidation Trustee shall begin to administer the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement and the Plan and may use, acquire and dispose of the Liquidation Trust Assets free of any restrictions imposed under the Bankruptcy Code; (b) the Liquidation Trustee has express and sole authority to convey, transfer, and assign any and all of the Liquidation Trust Assets and to take all actions necessary to effectuate the same and to prosecute any and all Retained Causes of Action; and (c) as of the Effective Date, the Liquidation Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Interests, except as may be otherwise provided in the Plan; and (d) from and continuing after the Effective Date, the GCUK / GCMC Parties shall preserve all of such documents (including, but not limited to, written documents and communications, electronically stored documents, emails, banking and other financial records, employee files, compensation records, tax documents, and any and all electronic servers and/or other media containing any of the foregoing), in accordance with the standards and practices applicable to the GCUK / GCMC Parties (and with respect to the UK Administrators, only in their capacities as administrators of GCUK and GCMC and not in their personal capacities) in the context

22

of their pending English law administration proceedings, until the earlier of (i) their making them available to or transfer to the Debtor and/or the Liquidation Trustee, as applicable, (ii) the termination of the GCUK / GCMC Administration Proceedings or conversion of the same to liquidation proceedings, and (iii) any further order of the Court.  All rights of the GCUK / GCMC Parties are reserved with respect to the characterization or ownership of any and all books and records in possession or control of the GCUK / GCMC Parties.

**VII.    Dissolution of the Debtor.**

61.    Upon the Effective Date, the Debtor shall be deemed dissolved without any further notice, action, or order.

**VIII.    Executory Contracts and Unexpired Leases.**

62.    In accordance with Section 8.1 of the Plan, on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases. Any claims arising from the rejection of an Executory Contract or Unexpired Lease must be filed no later than the Rejection Damages Claims Bar Date.

**IX.    GCUK Intellectual Property Assignment Agreement.**

63.    On the Effective Date, the Debtor is authorized and directed to enter into the GCUK Intellectual Property Assignment Agreement and to transfer the GCUK Intellectual Property in accordance with the terms and conditions set forth therein.  Following the Debtor's and GCUK's entry into the GCUK Intellectual Property Assignment Agreement and upon the occurrence of the Effective Date, any and all of

the Debtor's legal, equitable, and beneficial right, title, and interest in, to and under, and possession of the GCUK Intellectual Property shall be immediately vested in GCUK.

64.     The Debtor is authorized to make such non-material changes to the GCUK Intellectual Assignment Agreement as it deems necessary and appropriate prior to entering into the GCUK Intellectual Property Assignment Agreement.

## X.    Certain Securities Law Matters.

65.     The Liquidation Trust Interests shall not be "securities" under federal and state securities laws, or to the extent they are "securities," their issuance shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable United States laws requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code.  To the extent that the Liquidation Trust Interests are "securities," the Liquidation Trust Interests will be not be required to be registered under Section 12(g) of the Exchange Act.

## XI.    Exemption from Certain Transfer Taxes.

66.     To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or the Liquidation Trust or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any of the taxes listed in Section 5.9 of the Plan, and this Confirmation Order hereby directs and is deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment, as more fully set forth therein.

XII.    **Federal Income Tax Treatment of the Liquidation Trust.**

67.    The Federal Income Tax Treatment of the Liquidation Trust pursuant to Section 5.7 of the Plan is approved.

XIII.    **Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**

68.    The releases, injunctions, exculpations, and related provisions set forth in Article X of the Plan and the Global Settlement are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further notice to or order or action on the part of this Court or any other party.  The Debtor and the Liquidation Trustee, as applicable, are duly authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Global Settlement and each of the settlements embodied therein.

69.    Upon entry of this Confirmation Order, all Holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or interfering with the Distributions and payments contemplated by the Plan.

70.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### XIV.    Waiver of Stay.

71.    Notwithstanding any provision of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or applicable nonbankruptcy law, this Confirmation Order is effective immediately and not subject to any stay.

### XV.    Notice of Effective Date.

72.    As soon as practicable after the occurrence of the Effective Date, ~~the Liquidation Trust or~~ the Debtor, shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date on all creditors and interest holders, and parties in interest on the Debtor's creditor matrix, by causing notice of the Effective Date in the form annexed hereto as **Exhibit B** ("Notice of Effective Date") to be delivered to such parties by first-class mail, postage prepaid.  The ~~Liquidation Trust~~Debtor shall also post the Notice of Effective Date on the Case Website.  The Notice of Effective Date shall include notice of the deadline for (a) filing Proofs of Claim arising out of rejection of Executory Contracts or Unexpired Leases upon the Effective Date; and (b) filing Administrative Claims; and (c) filing Professional Fee Claims.

### XVI.    Retention of Jurisdiction.

73.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the Chapter 11 Case, the Plan, and the implementation of this Confirmation Order, including, without limitation, those matters set forth in Article XI of the Plan, including, all Retained Actions by or on behalf of the Debtor or the Liquidation Trust.

### XVII.    Payment of Statutory Fees.

74.    On the Effective Date, the Debtor shall pay (a) all accrued and outstanding U.S. Trustee Fees, if any, and (b) fund the Professional Fee Escrow with the Debtor's good faith estimate of the U.S. Trustee Fees anticipated to be incurred through and including, the Effective Date.  All U.S. Trustee Fees payable after the Effective Date,

if any, shall be paid by the Liquidation Trust until the earlier of the conversion,

dismissal, or closure of the Chapter 11 Case.

**XVIII.    Preservation of Insurance.**

75.    Unless otherwise provided in the Plan or the Confirmation Order,

nothing shall impair or diminish the enforceability of any insurance policy, including

the D&O Policy that may cover claims against the Debtor or any additional insureds,

including the directors and officers thereof.

**XIX.    Payment of Professionals After the Effective Date.**

76.    The Liquidation Trust is authorized to pay compensation for

services rendered or reimbursement of expenses incurred after the Effective Date in the

ordinary course without the need for Bankruptcy Court approval.  On the Effective

Date, the Debtor shall establish and fund the Professional Fee Escrow with Cash equal

to the Professional Fee Escrow Amount minus amounts required to fund the

Liquidation Trust Minimum Cash Amount of $250,000.

**XX.    Activities in Anticipation of the Effective Date.**

77.    The Debtor is hereby authorized and empowered to take all

necessary steps, and pay all related expenses, in anticipation of the Effective Date,

including, without limitation, effectuating the transactions contemplated by the Plan

and this Confirmation Order.

**XXI.    Substantial Consummation.**

78.    On the Effective Date, the Plan shall be deemed to be substantially

consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

**XXII.    Severability.**

79.    This Confirmation Order shall constitute a judicial determination

and shall provide that each term and provision of the Plan, as it may be amended in

accordance with Section 12.5 of the Plan, is (a) valid and enforceable pursuant to its

terms; (b) integral to the Plan and may not be deleted or amended other than in accordance with Section 12.5 of the Plan, and (c) non-severable and mutually dependent.

**XXIII.    Immediate Binding Effect.**

80.    Pursuant to section 1141, as applicable, and the other applicable provisions of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan (including all documents and agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtor  the Liquidation Trust, the Releasing Parties, the Exculpated Parties, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and other , party in interest in this Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.  On the Effective Date, all releases (including, without limitation, the releases set forth in Article X of the Plan), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**XXIV.    Conflicts Between Confirmation Order and the Plan.**

81.    To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are

integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

**XXV.    Modifications and Amendments.**

82.    The Plan may be amended, modified, or supplemented by the Debtor in accordance with Section 12.3 of the Plan.

**XXVI.    Final Order.**

83.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

[*Concludes on the Following Page*]

**XXVII.    Post-Confirmation Reporting.**

84.    The Liquidation Trust shall file post-confirmation quarterly reports

until the Chapter 11 Case is converted,  dismissed, or closed by entry of a final decree.

Dated:  October __, 2021
        New York, New York

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**~~First~~Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.**

[to be attached separately]

**<u>Exhibit B</u>**

**Notice of Effective Date**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GREENSILL CAPITAL INC., | Case No.:  21-10561 (MEW) |
| Debtor.[1] | |

<u>**NOTICE OF EFFECTIVE DATE**</u>

   **PLEASE TAKE NOTICE** that on October [__], 2021, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered an order [Docket No. [__]] (the "<u>Confirmation Order</u>") confirming the ~~*First*~~*Second Amended Chapter 11 Plan of Liquidation for Greensill Capital Inc.* [Docket No. [__]] (as may be modified, supplemented, restated, and further amended from time to time, the "<u>Plan</u>") (attached as Exhibit A to the Confirmation Order).[2]

   **PLEASE TAKE FURTHER NOTICE** that the effective date of the Plan occurred on [_____] [___], 2021 (the "<u>Effective Date</u>").

   **PLEASE TAKE FURTHER NOTICE** that pursuant to the Confirmation Order, the settlement, release, injunction, and exculpation provisions in Article X of the Plan are now in full force and effect.

   **PLEASE TAKE FURTHER NOTICE** that pursuant to section [8.3] of the Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court by the Rejection Damages Claim Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed by the Rejection Damages Claims Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

   **PLEASE TAKE FURTHER NOTICE** that except as otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, all requests for payment of Administrative Claims must be filed with the

---

[1] The last four digits of the Debtor's federal tax identification number are 3971.  The Debtor's address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Bankruptcy Court and served on the Debtor, the Creditors' Committee, the Liquidation Trustee and the U.S. Trustee no later than [_____] [__], 2021 (the "Administrative Claims Bar Date").  Holders of Administrative Claims that fail to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.

PLEASE TAKE FURTHER NOTICE that pursuant to Section 2.4 of the Plan, the deadline to file final requests for payment of Professional Fee Claims is [___] [__], 2021 (i.e., 30 days after the Effective Date).

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding on the Debtor, the Liquidation Trustee, and any Holder of a Claim against or Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or Entity voted to accept the Plan.

PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan, and all other documents filed in the Debtor's Chapter 11 Case are publicly available and may be obtained from (a) the office of the Clerk of the Bankruptcy Court (the "Clerk's Office") during normal business hours;  (b) the Bankruptcy Court's electronic case filing system at www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov);  (c) the Debtor's counsel, Togut, Segal & Segal LLP via email at greensillballots@teamtogut.com;  or (d) at the Chapter 11 Case website at https://cases.stretto.com/greensill/.  **PLEASE NOTE:  Neither the staff of the Clerk's Office nor the Debtor's counsel can give you legal advice.**

Dated:    October [__], 2021
       New York, New York

           GREENSILL CAPITAL INC.,
           *Debtor and Debtor in Possession*
           By its Counsel
           TOGUT, SEGAL & SEGAL LLP,
           By:

           *DRAFT.*_____
           ALBERT TOGUT
           KYLE J. ORTIZ
           BRYAN M. KOTLIAR
           AMANDA C. GLAUBACH
           One Penn Plaza, Suite 3335
           New York, New York 10119
           (212) 594-5000